DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300
(520) 322-5000

Ryan O'Neal (AZ # 031919)
roneal@dmyl.com
Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Estados Unidos Mexicanos,<br><br>                                  Plaintiff,<br><br>*vs.*<br><br>Diamondback Shooting Sports, Inc., an Arizona corporation; SNG Tactical, LLC, an Arizona limited liability company; Loan Prairie, LLC D/B/A The Hub, an Arizona limited liability company; Ammo A-Z, LLC, an Arizona limited liability company; Sprague's Sports, Inc., an Arizona corporation,<br><br>                                  Defendants. | NO.<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................2

II.   PARTIES ...........................................................................................9

III.   JURISDICTION AND VENUE..........................................................11

IV.   EACH DEFENDANT KNOWINGLY PARTICIPATES IN GUN
TRAFFICKING TO MEXICO. ......................................................................12

   A.  Defendants Have Made Arizona a Center of Gun-Trafficking to Mexico. ...12

   B.  Defendants Are Among the Worst Offenders in Arizona. ............................14

   C.  Defendants Know the "Red Flags" that Indicate Unlawful Gun Trafficking.17

   D.  Each Defendant Knows that Military-Style Weapons Are the Cartels' Weapons
of Choice. ..................................................................................................21

V.   EXAMPLES OF SPECIFIC SALES ILLUSTRATE THAT DEFENDANTS'
PARTICIPATION IN THE TRAFFICKING IS SYSTEMATIC AND KNOWING.
22

VI.   DATA CONFIRM THAT DEFENDANTS' PARTICIPATION IN THE
TRAFFICKING IS SYSTEMATIC AND KNOWING. ..........................................48

VII.   EACH DEFENDANT HAS VIOLATED ITS LEGAL DUTIES TO SELL ITS
GUNS SAFELY AND AVOID ARMING CRIMINALS IN MEXICO. ...............51

   A.  Each Defendant violated U.S. Federal Prohibitions on Straw Sales. ............53

   B.  Each Defendant Violated Mexican and U.S. Federal Prohibitions on Gun
Trafficking to Mexico. ...............................................................................58

   C.  Each Defendant Violated Applicable Tort Law. ..........................................61

   D.  Defendants Cannot Avoid Their Duties by Being Willfully Blind to the Facts.
...................................................................................................................64

VIII.   EACH DEFENDANT KNOWINGLY PARTICIPATES IN
RACKETEERING ACTIVITIES...................................................................67

   A.  Each Defendant Systematically Commits Mail and Wire Fraud—18 U.S.C.
§§ 1341, 1343. ...........................................................................................68

   B.  Each Defendant Systematically Makes Straw Sales of Firearms—18 U.S.C. §
932. ............................................................................................................78

   C.  Each Defendant Systematically Participates in Trafficking    Firearms—18
U.S.C. § 933(a)...........................................................................................79

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd, Suite 200
Tucson, AZ 85716-5300

I:\FILES\DOCS\ESTA01\20220809\EMAIL\18P8460.DOCX

D.  Each Defendant Systematically Engages in Money Laundering—18 U.S.C. § 1956(a)(3). ...................................................................................80

IX.     EACH DEFENDANT VIOLATES THE CONSUMER FRAUD STATUTE.83

1.  Diamondback .....................................................................83

2.  SnG Tactical ......................................................................93

3.  Ammo AZ ..........................................................................95

4.  Sprague's Sports ...............................................................97

5.  The Hub..............................................................................99

X.  EACH DEFENDANT HAS INFLICTED MASSIVE HARM ON THE GOVERNMENT AND ITS CITIZENS. ...........................................................103

A.  Gun Trafficking from the United States Causes Death and Destruction in Mexico..........................................................................................105

B.  Each Defendant's Gun Trafficking Causes Measurable and Compensable Harm to the Government and Its Citizens. .......................................108

XI.     CLAIMS FOR RELIEF...........................................................................112

XII.    DEMAND FOR JUDGMENT .................................................................137

DECONCINI McDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd, Suite 200
Tucson, AZ 85716-5300

# I.   INTRODUCTION

1.     Defendants in this civil lawsuit are Arizona gun dealers that systematically participate in trafficking military-style weapons and ammunition to drug cartels in Mexico by supplying gun traffickers. Defendants know or should know that their reckless and unlawful business practices – including straw sales, and bulk and repeat sales of military-style weapons – supply dangerous criminals in Mexico and the U.S. For decades U.S. law enforcement has tied these practices to gun trafficking and called on the gun industry to institute safer sales practices. Most gun dealers – 80-90% – use safe sales practices and, as a result, sell no crime guns. Defendants choose to sell guns using reckless and unlawful practices, despite the foreseeability – indeed, virtual certainty – that they are thereby helping cause deadly cartel violence across the border. Defendants engage in these reckless and unlawful actions because it makes them money. This lawsuit intends to hold them accountable, and make them stop.

2.     Gun trafficking from the United States into Mexico, which is widely acknowledged to be the source of the cartels' arsenals, is a crisis of extraordinary proportions. U.N. OFF. DRUGS & CRIME, *Global Study on Firearms Trafficking 2020*, (2020), https://www.unodc.org/unodc/en/firearms-protocol/firearms-study.html. Defendants have turned Arizona into an epicenter of this unlawful trafficking. These five Defendants are among the worst gun-trafficking offenders in

Arizona and the United States. Defendants have had that notorious distinction for years. For instance, in September 2019 the United States arrested two men who trafficked at least 40 guns, 25,000 rounds of ammunition, and 760 AK-type and AR-type 30-round magazines into Mexico. These included 15 pistols sold by Defendant Ammo AZ; 3 pistols, 1 AK-47 assault rifle, and 60 assault-rifle magazines sold by Defendant Diamondback Shooting Sports; and 4 pistols (including 2 AK-47 style pistols) sold by Defendant SnG Tactical.

3.      Similarly, the United States arrested four people who, in a 6-month period in 2018, bought from Defendant Sprague's Sports for trafficking into Mexico 8 guns and several boxes of ammunition. During that same time period, another gun trafficker was making weekly visits to Sprague's which sold him almost two dozen guns in 15 different transactions, all bound for Mexico.

4.      Defendant SnG Tactical sold a cartel buyer 6 pistols and 3 AK-47 assault rifles between January and April of this year. And, less than three weeks ago, the United States indicted 11 individuals for trafficking more than 50 firearms to Mexico: Diamondback Shooting Sports sold them 2 AK-47 assault rifles and an AR-15 assault rifle; Defendant The Hub sold them 4 AK-47 assault rifles and 1 AR-15 assault rifle; and SnG Tactical sold them 11 AK-47 assault rifles and a pistol.

5.      The guns that Defendants traffic into Mexico include .50 caliber sniper rifles that can shoot down helicopters and penetrate lightly armored vehicles and

bullet-proof glass; AK-47 assault rifles (versions of the Russian Army's Kalashnikov rifle); and AR-15 assault rifles (versions of the U.S. Army's M-16 rifle). Defendants know that these military-style weapons are favorites of the cartels, and the cartels' agents have been shopping for them for years in Defendants' stores.

6.     Plaintiff Estados Unidos Mexicanos (the "Government") brings this action on its own behalf to help stop this reckless and unlawful weapons trade and stanch the massive damage that the Defendants cause to the Government, including the death of and injury to its military personnel, National Guard, and police, as well as vastly increased spending on a wide range of services to try to prevent and to mitigate the effects of the gun-violence epidemic that Defendants have unleashed in Mexico. The Government also brings this action *in parens patriae* on behalf of its citizens. Defendants materially contribute to the nation's rate of gun-related homicides (among the worst in the world), to a significant decrease in life expectancy, and to the deterioration in the quality of life in Mexico, where more than 40% of young people hear or see frequent gunfire.

7.     This lawsuit does not in any way challenge the right of law-abiding U.S. citizens to bear arms, or the right of responsible gun dealers to operate a business of selling guns to law-abiding U.S. citizens. This lawsuit concerns a common cause of both Mexico and the United States, two sovereign nations whose citizens suffer when gun dealers along our shared border illegally supply the criminal market in Mexico.

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd. Suite 200
Tucson, AZ 85716-5300

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

8.     The Government has deep sympathy with our neighbors in the United States whose residents also are victimized by identical reckless and unlawful gun sales, and who daily awaken to news of mass shootings in which isolated, disturbed individuals use semi-automatic weapons in random and unspeakable murderous rampages. Mexican citizens daily awaken to a similar horror in which pitiless drug cartels that, as part of their business model, use these same types of weapons to maim and kill activists, journalists, judges, police, citizens, children—anyone who happens to be in their way.

9.     These Defendant gun dealers systematically participate in trafficking these weapons of war to the cartels. This lawsuit is part of the Government's effort to cut off the cartels' supply at its source.

10.     The ongoing cartel violence in Mexico, fueled primarily by assault weapons supplied by unscrupulous border-state dealers like the Defendants, is the world's second-deadliest conflict this century. Seth Harp, *Arming the Cartels: The Inside Story of a Texas Gun-Smuggling Ring*, Rolling Stone (Aug. 7, 2019), https://www.rollingstone.com/culture/culture-features/arming-mexican-cartels-inside-story-of-a-texas-gun-smuggling-ring-866836/. With 28 people per every 100,000 being murdered every year, Mexico's homicide rate is over four-and-a-half times the world average. This carnage occurs despite Mexico's strict controls on the

lawful possession of guns, and despite the nation having only one gun store—located on an Army base.

11.     In participating in straw sales and trafficking of guns and ammunition into Mexico, Defendants violate Mexican statutes on importing guns and on gun possession, as well as Mexico's tort law. They also violate U.S. statutes that prohibit selling guns without a license, exporting guns without a license, selling to ineligible customers, selling to straw purchasers, falsifying sales records, selling machine guns, and participating in cross-border gun trafficking, as well as state tort law and state statutes applicable to selling and marketing guns.

12.     Among the U.S. statutes that Defendants violate is the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq. Through their supply of firearms to traffickers who arm the cartels, each Defendant regularly participates with one or more of the drug cartels in Mexico, including the Sinaloa Cartel and Cartel Jalisco Nueva Generación, in gun trafficking to Mexico. Repeatedly committing mail fraud, wire fraud, unlawful straw selling, unlawful cross-border smuggling, and money laundering, each Defendant conducts and participates in the affairs of an unlawful criminal enterprise whose purposes include trafficking guns into Mexico.

13.     To help put an end to the pernicious and pervasive gun trafficking, the Government asks the Court to appoint monitors who, for a minimum of ten years,

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

will have the authority to establish, modify, and closely oversee the sales practices of each of the Defendants. Appointing these monitors will allow the gun dealers to sell to law-abiding U.S. citizens in the United States, while preventing them from continuing to supply the cartels in Mexico.

## II.    PARTIES

14.    Plaintiff Estados Unidos Mexicanos (the "Government") is a sovereign nation that shares a border with the United States. The Government brings this action on its own behalf and on behalf of its citizens in *parens patriae*.

15.    Defendant Diamondback Shooting Sports, Inc. ("Diamondback") is a corporation organized and existing under the laws of Arizona, with its principal place of business at 7030 East Broadway Boulevard, Tucson, Arizona. Diamondback regularly conducts business in this district through its store located in Tucson. Diamondback's participation in the gun trafficking alleged below resulted in guns that it sold from its Tucson store being used in criminal activities in Mexico, causing the harm about which the Government complains.

16.    Defendant SnG Tactical, LLC ("SnG Tactical") is a corporation organized and existing under the laws of Arizona, with its principal place of business at 3441 South Palo Verde Road, Tucson, Arizona. SnG Tactical regularly conducts business in this district through its Tucson store. SnG Tactical's participation in the gun trafficking alleged below resulted in guns that it sold from its Tucson store being

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

used in criminal activities in Mexico, causing the harm about which the Government complains.

17.    Loan Prairie, LLC, D/B/A Hub Target Sports ("The Hub") is a corporation organized and existing under the laws of Arizona, with its principal place of business at 4501 W. Grand Rd, Tucson. The Hub regularly conducts business in this district through its Tucson store. The Hub's participating in the gun trafficking alleged below resulted in guns that it sold from its Tucson store being used in criminal activities in Mexico, causing the harm about which the Government complains.

18.    Defendant Ammo A-Z, LLC ("Ammo AZ") is a corporation organized and existing under the laws of Arizona, with its principal place of business at 2040 W. Deer Valley Rd # C, Phoenix, Arizona. Ammo AZ regularly conducts business in this district through its Phoenix store. Ammo AZ's participation in the gun trafficking alleged below resulted in guns that it sold from its Phoenix store being used in criminal activities in Mexico, causing the harm about which the Government complains.

19.    Defendant Sprague's Sports, Inc. ("Sprague's Sports") is a corporation organized and existing under the laws of Arizona, with its principal place of business at 1460 W 18ᵗʰ St., Yuma, Arizona. Sprague's Sports regularly conducts business in this district through its Yuma store. Sprague's Sports' participation in the gun

trafficking alleged below resulted in guns that it sold from its Yuma store being used in criminal activities in Mexico, causing the harm about which the Government complains.

20.     All of the Defendants' wrongful actions described in this complaint are part of, and in furtherance of, the unlawful conduct alleged herein, and were authorized, ordered, and undertaken by the Defendants' various officers, agents, employees, or other representatives while actively engaged in the management of the Defendants' affairs (or that of their predecessors-in-interest) within the course and scope of their duties and employment, and with the Defendants' actual, apparent, and ostensible authority.

## III.    JURISDICTION AND VENUE

21.     This action is between a foreign state as plaintiff and citizens of a State or of different States, and the matter in controversy exceeds the sum or value of $75,000.00. The Court therefore has subject matter jurisdiction under U.S. Const., Art. III, § 2, cl. 1, and 28 U.S.C. § 1332(a)(4). This action also arises under RICO, 18 U.S.C. §§ 1961 et seq., and the Court therefore also has subject matter jurisdiction under 18 U.S.C. §§ 1964, 1965, and 28 U.S.C. § 1331.

22.     Venue is appropriate in this district under 28 U.S.C. §1391(b)(2)&(3), and under 18 U.S.C. § 1965(a), in that each Defendant resides in this district, each

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

Defendant regularly transacts business in this district, and a substantial part of the events or omissions giving rise to the claim occurred in this district.

## IV.   EACH DEFENDANT KNOWINGLY PARTICIPATES IN GUN TRAFFICKING TO MEXICO.

23.     Each Defendant knowingly participates in trafficking guns into Mexico. That participation violates all of the duties described in Section VII below and materially contributes to the massive harm suffered by the Government and its people as detailed in Section X below.

### A.  Defendants Have Made Arizona a Center of Gun-Trafficking to Mexico.

24.     Defendants supply significant numbers of guns to the criminal market in Mexico. Defendants know that they engage in straw sales, multiple sales, repeat sales, and other business practices that supply traffickers who arm the drug cartels.

25.     A small minority of gun dealers—fewer than 10%—sell about 90% of crime guns. Defendants are part of the small percentage of dealers that sell virtually all crime guns recovered in Mexico. Arizona is a hotbed of the unlawful gun trafficking into Mexico; these Defendants made it so.

26.     The U.S. Department of Justice has long recognized that the "Tucson corridor"—Tucson, Arizona to Nogales, Mexico—is one of the three largest gun smuggling corridors in the United States. U.S. Department of Justice, "Interim Review of ATF's Project Gunrunner" September 2009, page 11-12.

DECONCINI McDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd, Suite 200
Tucson, AZ 85716-5300

27.     An independent analysis of U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") trace data showed that Maricopa County was one of the two largest sources of crime guns recovered in Mexico, with Pima County not far behind.



Stop US Arms to Mexico analysis of firearms recovered in Mexico, by county of purchase (based on 2007-2010 ATF traces); Stop US Arms to Mexico, *Gross Human Rights Abuses: The Legal and Illegal Gun Trade to Mexico* (Aug. 2018), https://stopusarmstomexico.org/gross-human-rights-abuses-the-legal-and-illegal-gun-trade-to-mexico/.

28.     Gun dealers in Arizona retain that status today. In 2021, the U.S. Government Accountability Office ("GAO") reported on ATF trace data for guns recovered in Mexico. U.S. GOV'T ACCOUNTABILITY OFFICE, GAO-21-322, *Firearms Trafficking: U.S. Efforts to Disrupt Gun Smuggling into Mexico Would Benefit from Additional Data and Analysis*" (2021), https://www.gao.gov/assets/gao-21-322.pdf. It revealed that of the 26,860 firearms recovered at crime scenes in Mexico between 2014 and 2018 that were traceable to an initial U.S purchase, 4,444 of them were traced to Arizona. *Id*. at 18. This is by far the largest number per capita

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd, Suite 200
Tucson, AZ 85716-5300

of the three principal states, nearly twice as large as Texas and well more than four times larger than California.

29. The number of guns *traced* from gun dealers in Arizona to Mexico is just a small fraction of the number of guns *trafficked* from those dealers into Mexico. The vast majority of trafficked guns are never recovered—they stay in circulation in Mexico continuing to cause death and destruction.

30. The Government, of course, does not challenge in any way the State of Arizona's gun laws or other policies. This lawsuit challenges only the action of private corporations that knowingly and systematically participate in the trafficking of guns from Arizona into Mexico.

**B. Defendants Are Among the Worst Offenders in Arizona.**

31. Arizona has extremely large number of gun dealers, as its dealers supply not just Arizona gun owners but illegal gun traffickers and criminals in Mexico. With a population of only 7,276,316, Arizona is home to almost 1,500 gun dealerships.

32. Among this abundance of gun dealers and traffickers, the Defendants here are among the worst offenders in participating in the trafficking of guns into Mexico. They are a trusted and reliable source of guns for traffickers and straw purchasers, who go out of their way to visit Defendants' stores.

33.    The following maps[1] illustrate the central role that these Defendants play in the gun-trafficking:



34.    These maps demonstrate that the cartels especially seek out these Defendants' stores. For example, starting at the border in Nogales, Arizona and traveling north on U.S. Interstate 19 to Tucson, i.e. "The Tucson Corridor," the smuggler will travel about 70 miles and pass more than 100 gun dealers along the way before reaching Defendants SnG Tactical or The Hub. And they would have to drive past more than 160 gun dealers before reaching Defendant Diamondback.

---

[1] These maps were constructed using the Listing of Federal Firearms Licensees reported by the ATF in 2015. Importer and manufacturer licensees are not included in the data set.

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd, Suite 200
Tucson, AZ 85716-5300



35.     Similarly, starting in Nogales and traveling northwest on Interstate 19 and Interstate 10 to Phoenix, the smuggler will travel about 180 miles and pass more than 1,100 gun dealers along the way before reaching Defendant Ammo AZ.

I:\FILES\DOCS\ESTA01\20220809\EMAIL\18P8460.DOCX

36.     The late federal judge Jack B. Weinstein found as a fact, in a U.S. domestic trafficking case, that it is an indicator of sales to gun traffickers where the buyer "bypasse[s] geographically closer dealers … i.e., the purchaser for illegal use goes out of his way geographically to buy from retailers with a poor record for crime gun traces." *NAACP v. AcuSport, Inc.*, 271 F. Supp. 2d 435, 521-522 (E.D.N.Y. 2003).

37.     Other data confirm that the cartels essentially go shopping for their weapons of war at Defendants' stores. Over the last 5 years, each of these Defendants is among the 10 dealers with the most crime guns recovered in Mexico and traced back to a dealership in Arizona. The ATF has concluded that a high volume of crime guns traced back to a particular dealership is a trafficking indicator, suggesting that the dealer is engaged in unlawful sales such as straw sales. ATF, *Commerce in Firearms in the United States*, 25 (2000). Judge Weinstein concurred, including on his list of gun-trafficking indicators "[r]elatively excessive numbers of traces to specific retailers" and "out of state traces." *NAACP v. AcuSport, Inc.*, 271 F. Supp. 2d at 504, 521-522.

## C.  Defendants Know the "Red Flags" that Indicate Unlawful Gun Trafficking.

38.     For many years, each Defendant has sold countless guns that have been obtained by unauthorized and irresponsible persons in Mexico through straw sales and other of Defendants' unlawful and unreasonable sales practices. Many of these

DECONCINI McDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

sales have occurred in circumstances that clearly indicated to gun dealers that the transaction was a straw sale. Those sales would not have been made if Defendants properly trained their employees and committed to following the law and their obligations to safely and responsibly sell guns. As a result, unauthorized and irresponsible persons, including convicted felons, have obtained thousands of guns from these sources, some of which thereafter have been used or will be used to injure the Government and its citizens.

39.     Each Defendant knows the "red flags" that indicate that guns purchased at its stores are destined for the drug cartels in Mexico. These include straw purchases, bulk purchases, and repeat purchases. Each Defendant's response to these red flags has been to double down on the exact practices that it knows supply the cartels with military-style arsenals. Each Defendant actively maximizes rather than minimizes its sales to the criminal markets in Mexico.

40.     Straw sales are the most common method of trafficking guns into Mexico. Illegal diversion through straw sales has been common knowledge in the industry, and known by Defendants, for many years. In one law enforcement study, more than half of the guns subject to gun trafficking investigations had been acquired as part of a straw sale. The unlawful practice has been the subject of numerous ATF reports and newsletters and congressional hearings.

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

41.     A licensed dealer that knowingly makes a sale to a straw purchaser for trafficking into Mexico violates the law of Mexico on imports, the U.S. law on exports, and specific U.S. law on straw purchases. The straw purchaser fraudulently certifies on the ATF Form 4473, required for almost all guns purchases at a licensed dealer, that he or she is the actual purchaser of the gun. Knowing that the information is false, the gun dealer participates in that falsification and completes the sale. The many other violations that each Defendant commits in connection with straw sales are further detailed below in Section VIII.

42.     The purchase of more than one handgun in a short period is an indicator that the purchaser might be involved in trafficking. Therefore, to monitor and deter handgun trafficking, U.S. federal law requires a dealer to report all transactions in which an unlicensed buyer buys two or more handguns within 5 days. *See* 18 U.S.C. § 923(g)(3)(A); 27 C.F.R. § 478.126a.

43.     For years U.S. law enforcement has recognized the special problem of straw purchasing and gun trafficking from Arizona and other border states into Mexico, and for that reason requires gun dealers in this region alone to report multiple sales of certain long guns as well, including assault rifles.

44.     Guns are diverted to the illegal market in Mexico after being sold as part of a "multiple sale" in which the gun dealer sells more than one gun at once over a limited period to the same buyer. The buyer later transfers the guns to others who do

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

not want to submit to a background check. Traffickers also prefer to buy guns in bulk, buying 2, or 10, or even 20 or more guns at one time. Large multiple sales to one person by a single dealer are a further source of guns for the illegal market in Mexico, as are repeat sales in which traffickers return to stores for multiple purchases.

45.     Each Defendant regularly sells guns as part of multiple purchases that are then diverted to the illegal market and subsequently trafficked into Mexico. Many of the multiple sales have occurred under circumstances that indicated or should have indicated to defendants that the guns were destined for the unlawful market. As a result, unauthorized and irresponsible persons have obtained thousands of guns from these sources, some of which thereafter have been used or will be used to injure the Government and its citizens.

46.     The U.S. Congress and ATF for years have warned that making large volume sales is a high-risk practice and a means by which traffickers obtain guns to sell in illegal markets, including in Mexico. Each Defendant's response has been to rely more and more on repeat and bulk customers.

47.     Judge Weinstein concluded as fact in *NAACP v. AcuSport, Inc.*, 271 F. at 509, that "[f]irearms manufactured, imported or distributed by defendants were acquired as part of a multiple purchase, [and] diverted to the illegal market."

DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

48.     Each Defendant continues to use unrestricted multiple sales to sell their guns. The trafficking of each Defendant's assault weapons and other guns into Mexico, having been acquired through multiple purchases in the U.S., continues unabated.

**D.  Each Defendant Knows that Military-Style Weapons Are the Cartels' Weapons of Choice.**

49.     Military-style weapons are useful for killing large numbers of people in a short amount of time, taking on well-armed military or police forces, and intimidating and terrorizing people. Each Defendant recklessly and unlawfully sells assault weapons that are effective people-killing machines.

50.     Among the military-style weapons that each Defendant trafficks to the drug cartels in Mexico are AR-15s, which fire in semi-automatic rather than fully automatic mode but are otherwise essentially identical the U.S. military's M-16. Century Arms' WASR-10 is a variant of the Romanian AK-47 assault weapon.

51.     These assault weapons have key features that distinguish them from traditional sporting rifles, such as the capacity to lay down a high volume of fire over a wide killing zone. This "hosing down" of an area is better suited for military combat than sporting guns. And civilian assault weapons have much less recoil than traditional sporting guns, facilitating quicker pulls of the trigger.

52.     The assault weapons that each Defendant recklessly and unlawfully sells are designed so they can accept large-capacity ammunition magazines that can hold

DᴇCᴏɴᴄɪɴɪ McDᴏɴᴀʟᴅ Yᴇᴛᴡɪɴ & Lᴀᴄʏ, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

20, 30, even 75 or 100 rounds that can then be fired without reloading.  Each Defendant's assault rifles, especially when coupled with large capacity magazines, can enable military-style assaults in which many rounds can be fired in seconds.

53.    The Barrett .50 caliber sniper rifle shoots rounds that are 5 to 10 times larger than those fired by semi-automatic models, including the AR-15 and AK-47. Given the range and power of a .50 caliber Browning Machine Gun round, a rifle chambered to fire this round can be used to take down slow- or low-flying aircraft, punch holes in pressurized chemical tanks, or penetrate lightly armored vehicles— such as those used by law enforcement and protective limousine services. The danger posed by these weapons is compounded by the criminals using them. Numerous officials noted that assault weapons are the "weapon of choice" for drug traffickers, gangs, and terrorists. Each Defendant is well aware that assault rifles are preferred by violent cartels in Mexico, that they are routinely trafficked over the U.S. border into Mexico, and that both the Mexican and U.S. governments struggle to prevent the diversion.

## V.    EXAMPLES OF SPECIFIC SALES ILLUSTRATE THAT DEFENDANTS' PARTICIPATION IN THE TRAFFICKING IS SYSTEMATIC AND KNOWING.

54.    Authorities have repeatedly identified and recovered each Defendant's guns in connection with systematic trafficking to the cartels and other criminal organizations in Mexico. Each Defendant is fully aware of these incidents, having

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

received notice of them through ATF trace requests, news reports, and court filings. But each Defendant continues the same sales practices, because it intends to profit from sales to the cartels.

55.    A handful of criminal indictments provides recent examples of the prominent roles played by each Defendant in trafficking guns from Arizona into Mexico. The Defendants' unlawful activity is not limited to these incidents—they are merely illustrative. The facts of these examples are summarized in this chart:

| UNLAWFUL SALE | DATE | CRIMINAL BUYER |
|---|---|---|
| Diamondback | | |
| Century Arms 7.62x39mm rifle<br><br>Romarm Cugir WASR10 7.62x39mm rifle | 10/01/18 | Denise Faye Burress |
| 1,030 rounds of 9mm ammunition | 01/23/19 | Leonid Cornejo |
| 1,000 rounds of 10mm ammunition | 01/23/19 | Jesse Cortez-Arguelles |
| 20 Croatian 30-round magazines | 06/16/19 | Francisco Dario Mora |
| CM Draco 7.62x39mm caliber pistol<br><br>AK-47 assault rifle<br><br>10 Colt AR-15 30-round magazines<br><br>75-round drum magazine | 08/04/19 | Francisco Dario Mora |
| 30 Croatian AK-47 30-round magazines | 08/05/19 | Francisco Dario Mora |
| CM Micro Draco 7.62x39mm caliber pistol | 08/17/19 | Francisco Dario Mora |

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

| | | |
|---|---|---|
| Century Arms Draco 7.62x39mm caliber pistol | 07/19/19 | Pedro Adan Sevilla |
| Browning Buckmark .22 caliber pistol<br><br>Ruger LCP .380 caliber pistol | 02/20/19 | Daniel Pacheco |
| Century Arms VSKA 7.62x39mm rifle | 10/10/19 | Kyle Rene Fazlollah |
| DPMS A15 5.56mm rifle<br><br>Riley Defense RAK47 7.62x39mm rifle | 10/24/19 | Fernando Palomares, Jr. |
| Ruger AR-556 5.56 rifle | 08/10/19 | Kaleb Jacob Valencia |
| Del-Ton DTI-15 5.56 rifle | 01/30/20 | Kaleb Jacob Valencia |
| Glock 17 Gen5 9mm pistol | 02/01/20 | Kaleb Jacob Valencia |
| Glock 17 9mm caliber pistol | 03/01/22 | Luis Fernando Cruz-Valenzuela |
| Glock 22 .40 caliber pistol | 03/01/22 | Carlos Abel Cruz |
| **SnG Tactical** | | |
| Century Arms AK63DS rifle | 01/21/18 | Jose Montoya |
| Century Arms RAS47 7.62x39mm rifle<br><br>Century Arms RAS47 7.62x39mm rifle | 09/18/18 | Michael Anthony Sweigart |
| Century Arms RAS47 7.62x39mm rifle<br><br>Romarm Cugir WASR10, 7.62x39mm rifle | 09/19/18 | Michael Anthony Sweigart |
| Century Arms RAS47 7.62x39mm rifle<br><br>Century Arms RAS47 7.62x39mm rifle | 09/25/18 | Michael Anthony Sweigart |
| Century Arms RAS47 7.62x39mm rifle | 09/28/18 | Denise Faye Burress |

I:\FILES\DOCS\ESTA01\20220809\EMAIL\18P8460.DOCX

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

| Century Arms RAS47 7.62x39mm rifle | | |
|---|---|---|
| Century Arms RAS47 7.62x39mm rifle | 10/05/18 | Tamra Michelle Potts |
| Century Arms RAS47 7.62x39mm rifle | | |
| Century RAS 7.62 caliber rifle | 05/06/17 | Isaias Delgado |
| Beretta pistol | 10/26/18 | Isaias Delgado |
| Smith & Wesson pistol | 10/27/18 | Isaias Delgado |
| Smith & Wesson SD 9mm caliber pistol | 12/17/18 | Isaias Delgado |
| Smith & Wesson SD 9mm caliber pistol | | |
| Smith & Wesson SD .40 caliber pistol | | |
| Romarm WASR-10 | 12/20/18 | Isaias Delgado |
| Barrett .50 caliber rifle | 02/19/19 | Isaias Delgado |
| Smith & Wesson 9mm pistol | | |
| Beowulf .50 caliber rifle | 02/24/19 | Isaias Delgado |
| Multicaliber receiver | 03/05/19 | Isaias Delgado |
| Multicaliber receiver | | |
| Barrett .50 caliber BMG rifle | 03/07/19 | Isaias Delgado |
| FN Model M249 | | |
| Beretta 9mm pistol | 03/15/19 | Isaias Delgado |
| Diamondback 5.56mm rifle | | |
| Diamondback DB-15 5.56 NATO caliber rifle | 03/28/19 | Isaias Delgado |
| AK-47 style pistol | 07/19/19 | Pedro Adan Sevilla |
| AK-47 style pistol | | |
| AK-47 style pistol | 07/19/19 | Francisco Dario Mora |

| | | |
|---|---|---|
| AK-47 style pistol | | |
| Zastava ZPA P92 7.62x39mm caliber pistol<br><br>Pioneer Arms Corp. Hellpop 7.62x39mm caliber pistol | 08/23/19 | Francisco Dario Mora |
| Radom/Pioneer Arms Sporter 7.62x39mm rifle<br><br>Romarm/Cugir WASR 7.62x39mm rifle | 11/27/19 | Fernando Palomares, Jr. |
| Century Arms VSKA 7.62x39mm rifle<br><br>Radom/Pioneer Arms Sporter 7.62x39mm rifle | 01/24/20 | Fernando Palomares, Jr. |
| Century Arms M70AB2 7.62x39mm rifle<br><br>Century Arms M70AB2 7.62x39mm rifle | 02/16/20 | Fernando Palomares, Jr. |
| Radom/Pioneer Arms Sporter 7.62x39mm rifle<br><br>Radom/Pioneer Arms Sporter 7.62x39mm rifle | 01/24/20 | Kyle Rene Fazlollah |
| FA Cugir M&M Inc. M10-762 7.62x39mm rifle | 06/04/20 | Kyle Rene Fazlollah |
| FA Cugir M&M Inc. M10-762 7.62x39mm rifle<br><br>Century Arms M70AB2 7.62x39mm rifle | 02/15/20 | Elizar Olivares |
| Sig Sauer P320 9mm pistol | 04/18/20 | Ray Alberto Laborin |
| Century Arms-Romarm WASR10 7.62 rifle | 02/03/20 | Jose Gilberto Inzunza |
| Century Arms-Romarm WASR10 7.62 rifle | 02/04/20 | Kaleb Jacob Valencia |

I:\FILES\DOCS\ESTA01\20220809\EMAIL\18P8460.DOCX

DECONCINI MCDONALD YETWIN & LACY, P.C.<br>2525 East Broadway Blvd. Suite 200<br>Tucson, AZ 85716-5300

| Century Arms-Romarm Mini Draco 7.62 pistol | 02/06/20 | Kaleb Jacob Valencia |
|---|---|---|
| FN SCAR17s .308 caliber rifle | 11/20/21 | Richardo Caro |
| Glock 22 Gen 5 .40 caliber pistol | 02/03/22 | Luis Fernando Cruz-Valenzuela |
| Glock pistol<br><br>Glock pistol<br><br>Glock pistol | 01/18/22 | Nicolas Meraz |
| Glock pistol | 03/18/22 | Nicolas Meraz |
| Pioneer Arms Hellpup 7.62x39mm pistol<br><br>Zastava ZPAP M70 7.62x39mm rifle | 03/15/22 | Omar Trujillo |
| Century Arms VSKA 7.62x39mm rifle<br><br>Century Arms VSKA 7.62x39mm rifle<br><br>Glock 19X 9mm pistol | 04/18/22 | Omar Trujillo |
| **The Hub** | | |
| Radical Firearms RF 15 multi-caliber rifle<br><br>Riley Defense RAK47 7.62x39mm rifle | 10/17/19 | Fernando Palomares, Jr. |
| Romarm/CUGIR RH10 7.62x39mm rifle | 10/22/19 | Kyle Rene Fazlollah |
| Romarm/Pioneer Arms WASR 7.62x39mm rifle | 05/06/20 | Kyle Rene Fazlollah |
| Riley Defense RAK47 7.62x39mm rifle | 02/15/20 | Elizar Olivares |
| Glock 17Gen5 9mm pistol | 01/28/20 | Kaleb Jacob Valencia |
| Riley Defense RAK47 7.62 caliber rifle | 02/10/20 | Kaleb Jacob Valencia |
| Century Arms VSKA 7.62 rifle | 12/18/20 | Jose Gilberto Inzunza |

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

| Barrett .50 caliber rifle | 12/01/21 | Anthony Ortiz |
|---|---|---|
| **Ammo AZ** | | |
| Century Arm AK63DS rifle | 01/16/18 | Jose Montoya |
| Glock pistol | 07/02/19 | Francisco Dario Mora |
| CM Micro Draco pistol<br><br>American Tactical Imports (ATI) Omni Hybrid 5.56 pistol | 07/17/19 | Francisco Dario Mora |
| Pioneer Arms Corp. Hellpup 7.62 x 39mm caliber pistol<br><br>Pioneer Arms Corp. Hellpup 7.62 x 39mm caliber pistol<br><br>Pioneer Arms Corp. Hellpup 7.62 x 39mm caliber pistol | 08/07/19 | Francisco Dario Mora |
| Century Arms Micro Draco pistol | 07/02/19 | Pedro Adan Sevilla |
| CM Micro Draco<br><br>Glock pistol<br><br>ATI pistol | 07/17/19 | Pedro Adan Sevilla |
| Pioneer Arms Corp. Hellpup 7.62 x 39mm caliber pistol<br><br>Pioneer Arms Corp. Hellpup 7.62 x 39mm caliber pistol<br><br>Pioneer Arms Corp. Hellpup 7.62 x 39mm caliber pistol | 08/07/19 | Pedro Adan Sevilla |
| Pistol (unknown type)<br><br>Pistol (unknown type)<br><br>Pistol (unknown type) | 08/13/19 | Pedro Adan Sevilla |
| FN M249S 5.56 caliber rifle | 04/16/19 | Yibran Lopez-Rosales |
| Barrett M82A1 .50 caliber BMG rifle | 08/28/19 | Yibran Lopez-Rosales |
| **Sprague's Sports** | | |

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

| | | |
|---|---|---|
| FN rifle | 11/23/18 | Rafael Palomares, Jr. |
| Several boxes of ammunition | 12/27/18 | Jose Rodrigo Felix-Quiroz |
| Glock pistol<br><br>Glock pistol | 05/24/18 | Daniel Langstaff Mirazo |
| Century Arms rifle | 07/27/18 | Daniel Langstaff Mirazo |
| IWI rifle | 08/31/18 | Daniel Langstaff Mirazo |
| Barrett .50 caliber rifle | 09/22/18 | Daniel Langstaff Mirazo |
| Inland rifle | 10/03/18 | Daniel Langstaff Mirazo |
| FN rifle | 11/23/18 | Rafael Palomares, Jr. |
| FN rifle | 11/27/18 | Jesus Sanchez Vega |
| Firearm(s), unknown type | 09/20/18 | Juan Rafael Castaneda, Jr. |
| Century Arms AK-47 rifle<br><br>Beretta A300 12-gauge shotgun | 10/02/18 | Juan Rafael Castaneda, Jr. |
| Firearm(s), unknown type | 10/22/18 | Juan Rafael Castaneda, Jr. |
| Firearm(s), unknown type | 10/25/18 | Juan Rafael Castaneda, Jr. |
| Firearm(s), unknown type | 11/10/18 | Juan Rafael Castaneda, Jr. |
| Firearm(s), unknown type | 11/19/18 | Juan Rafael Castaneda, Jr. |
| Firearm(s), unknown type | 11/20/18 | Juan Rafael Castaneda, Jr. |
| Firearm(s), unknown type | 11/21/18 | Juan Rafael Castaneda, Jr. |
| Firearm(s), unknown type | 12/01/18 | Juan Rafael Castaneda, Jr. |
| Firearm(s), unknown type | 12/08/18 | Juan Rafael Castaneda, Jr. |
| Firearm(s), unknown type | 12/28/18 | Juan Rafael Castaneda, Jr. |
| Ruger LCPII firearm<br><br>Ruger LCPII firearm | 01/07/19 | Juan Rafael Castaneda, Jr. |
| Firearm(s), unknown type | 01/14/19 | Juan Rafael Castaneda, Jr. |
| Firearm(s), unknown type | 01/16/19 | Juan Rafael Castaneda, Jr. |
| Glock 42 .380 pistol | 09/03/19 | Josue Isai Valdez-Reyes (through unnamed straw purchaser) |
| Glock 42 .380 pistol | 09/05/19 | Josue Isai Valdez-Reyes (through unnamed straw purchaser) |
| 300 rounds of .50 caliber ammunition | 03/25/20 | Noe Mendoza<br><br>Marcos Balderas Millan |

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd, Suite 200
Tucson, AZ 85716-5300

56.     The details of these examples follow.

57.     **2018—Sprague's Sports.** As outlined in an April 2019 superseding indictment and other court filings, Defendant Sprague's Sports straw sold to Jose Rodrigo Felix-Quiroz and eight accomplices at least 57 guns in the Yuma area over a six-month period in 2018. Eight codefendants pleaded guilty to straw purchasing guns in Arizona at Felix-Quiroz's direction. He recruited the straw purchasers, told them what guns to buy, supplied them with cash to buy the guns, and paid them for their work. He transported the guns to Mexico, where he sold them at a markup to multiple individuals after arranging deals via text and WhatsApp messages.

58.     On December 27, 2018, Defendant Sprague's Sports also unlawfully sold Jose Rodrigo Felix-Quiroz—at the height of his gun-trafficking operation—several boxes of ammunition. Defendant Sprague's Sports could not lawfully sell the ammunition to him because he was not a resident of the United States and did not have any U.S. identification.

59.     Investigation subsequently revealed that, at the direction of and on behalf of Felix-Quiroz, Daniel Langstaff Mirazo frequented Defendant Sprague's Sports five times between May and October 2018 to straw purchase guns. On May 24, 2018, Defendant Sprague's Sports straw sold to Mirazo two Glock pistols.

60.     On July 27, 2018, Defendant Sprague's Sports straw sold to Mirazo a Century Arms rifle; on August 31, 2018, straw sold to him an IWI rifle; on

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

September 22, 2018 straw sold to him a Barrett .50-caliber rifle; and again on October 3, 2018 straw sold to him an Inland rifle.

61.     Defendant Sprague's Sports did similarly brisk business with others associated with Felix-Quiroz. On November 23, 2018, Defendant Sprague's Sports straw sold to Rafael Palomares, Jr. an FN rifle.

62.     Similarly, on November 27, 2018, Defendant Sprague's Sports initiated a straw sale to Jesus Sanchez Vega of an FN rifle; it completed the sale when Vega returned a few days later.

63.     The frequency of visits and the types of guns, such as a Barrett .50-caliber rifle, were unmistakable signals to Defendant Sprague's Sports that it was systematically making straw sales. Even the accomplices' criminal defense lawyer admitted in a court filing that gun dealers are well aware of these illegal patterns: "The unfortunate truth about the straw purchases that are typically made in border towns like Yuma… is that the persons who supply the cartels actively recruit young, naïve persons who are United States citizens, but who live in Mexico and are largely Spanish-speaking and unfamiliar with how these schemes are run. *The Federal Firearms Licensees who operate in the area know what to look for in the form of repeat purchases of certain specific classes of firearms for cash* by young people who clearly have little or no experience with firearms." *U.S. v. Jose Rodrigo Felix-*

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

*Quiroz et al.*, (D. Ariz.), No. 2:19-cr-00089-JJT, Def. Sent. Memo., at 6 (D. Ariz.

Mar. 31, 2021), ECF No. 432 (emphasis added).

64.      From September 2018 to January 2019, Defendant Sprague's Sports was

also supplying trafficker Juan Rafael Castaneda, Jr. with an arsenal of powerful

firearms over 15 separate visits in less than 4 months, sometimes straw selling

multiple guns in one day. Castaneda admitted in his plea agreement that he knew the

guns were destined for Mexico. In one particularly fruitful week in November,

Sprague's sold him guns three days in a row. This pattern of returning to the store so

frequently, including back-to-back visits, was a clear signal to Sprague's that it was

making straw sales.

65.      **2018—Ammo AZ and SnG Tactical.** In January 2018, Jose Montoya

bought 10 semi-automatic rifles from various firearm dealers in the Phoenix area. He

bought them for delivery to the Jalisco New Generation cartel in Mexico. One of the

weapons was recovered in Mexico on August 15, 2018 in the aftermath of a shooting

between Mexican federal police and military personnel and members of the Jalisco

Cartel.

66.      On January 16, 2018, Defendant Ammo AZ straw sold to Montoya a

Century Arms AK63DS rifle.

67.      On January 21, 2018, Defendant SnG Tactical straw sold to Montoya a

Century Arms AK63DS rifle.

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

68.   **2018—SnG Tactical and Diamondback.** On September 18, 2018, Defendant SnG Tactical straw sold to Michael Anthony Sweigart two Century Arms RAS47 7.62x39 mm rifles.

69.   When Sweigart returned to the store the next day, Defendant SnG Tactical again unlawfully sold to him another Century Arms RAS47 7.62x39 mm rifle, plus a Romarm Cugir WASR10 7.62x39mm rifle.

70.   Six days later, Defendant SnG Tactical again straw sold to Sweigart two more Century Arms RAS47 7.62x39 mm rifles—meaning 5 of the 6 AK-47s sold to Sweigart in just one week were the same exact model, which was a major signal to Defendant SnG Tactical that it was making straw sales.

71.   In pleading guilty to counts of making a false statement during the acquisition of a firearm, Sweigart stated: "As I personally purchased six 7.62x39 mm semi-automatic rifles for another person with cash from that other person within a week, I had reason to believe that I was trafficking the firearms (on behalf of that person) … who intended to use the firearms unlawfully. In addition, I submit that one of the firearms that I purchased has been already recovered by law enforcement authorities in Mexico." *U.S. v. Tamra Michelle Potts, et al.*, No.4:19-cr-01758-RM-MSA, Plea Agreement, at 13 (D. Ariz. Mar. 4, 2020), ECF No. 82.

DeCONCINI McDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

72.     On September 28, 2018 Defendant SnG Tactical straw sold to another accomplice, Denise Faye Burress the same type of weaponry it had sold to Sweigart: two Century Arms RAS47 7.62x39 mm rifles.

73.     On October 5, 2018, Defendant SnG Tactical straw sold to yet another accomplice, Tamra Michelle Potts, two Century Arms RAS47 7.62x39mm rifles. In its case against Potts, the United States stated that she "purchased two (2) 7.62x39 mm rifles, AK-47-type rifles, assault rifles, for a person she knew was a convicted felon… for money to sustain her drug-using lifestyle. Just four short months later, one of those AK-47-type rifles was recovered by law enforcement officers in Mexico… a very quick time to crime." *U.S. v. Tamra Michelle Potts, et al.*, No.4:19-cr-01758-RM-MSA, Gov't's Obj. to the PSR and Sent. Memo., at 2, 4 (D. Ariz. Apr. 20, 2020), ECF No. 109.

74.     Not to be left out, on October 1, 2018 Defendant Diamondback Shooting Sports straw sold to Denise Faye Burress a Century Arms 7.62x39 mm rifle and a Romarm Cugir WASR10 7.62x39mm rifle. The United States wrote in court filings that "AR-15 and AK-47-type rifles are weapons of choice for Mexican drug cartels." *Id.* at 2. They "are assault rifles which carry increased destructive and deadly consequences… Innocent Mexican citizens are being killed as a result of Mexican drug cartels using these weapons of choice to gain dominance and control of Mexico's lucrative drug trade." *Id.* at 3.

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

75. **2019—Diamondback.** On January 23, 2019, U.S. Customs and Border Protection ("CBP") officers conducting outbound inspections arrested Leonid Cornejo and Jesse Cortez-Arguelles at the Mariposa Port of Entry in Nogales, Arizona. They were charged with attempting to smuggle three firearms and over 2,000 rounds of ammunition into Mexico.

76. Earlier that day Defendant Diamondback unlawfully sold the ammunition to Cornejo and Cortez-Arguelles. Defendant Diamondback could not lawfully sell the ammunition to them because Cornejo was a convicted felon and was then on probation for theft. Similarly, Cortez-Arguelles had an extensive criminal history with a felony and ten misdemeanor convictions, and at the time he was on probation in four separate cases. Their lawyer admitted that the pair made the purchases on behalf of cartels in Mexico.

77. **2018-2019—SnG Tactical.** Between May 6, 2017, and April 4, 2019, in and around Tucson, Isaias Delgado spent over $80,000 on at least 39 firearms, including many thousands of dollars worth of weapons straw sold to Delgado by Defendant SnG Tactical. Included in Delgado's purchases were numerous high-value, large caliber firearms such as multiple Barrett .50 caliber BMG rifles, FNH 249 belt-fed rifles, .50 caliber Beowulf firearms, AR-15/M4 type rifles and pistols, AK-47 type rifles, and numerous 9mm and .40 caliber handguns. In the two-week period between March 14 and 27, 2019, alone, Defendant SnG Tactical straw sold to

I:\FILES\DOCS\ESTA01\20220809\EMAIL\18P8460.DOCX

Delgado many of the 11 firearms he bought *in cash* for a total purchase price of approximately $48,500. The many red flags raised by these sales left Defendant SnG Tactical in no doubt that it was participating in gun trafficking.

78.    Delgado is a U.S. citizen but lived in Mexico with his wife and child. He provided a false Tucson address when making his gun buys. He trafficked most of the weapons into Mexico, and at least two of them were recovered at crime scenes in Mexico.

79.    On May 6, 2017, Defendant SnG Tactical sold to Delgado a Century RAS 7.62 caliber rifle. On back-to-back visits on October 26 and 27, 2018, it sold him a Beretta pistol and a Smith & Wesson pistol, respectively. On December 17, 2018, it sold him three more Smith & Wesson pistols—a multiple sale that should have raised red flags for SnG Tactical. Three days later, it sold him a Romarm WASR-10 rifle. On February 19, 2019, it sold him a Smith & Wesson 9mm pistol and a Barrett .50 caliber rifle; he returned 5 days later to acquire a Beowulf .50 caliber rifle. On four separate dates in March 2019, Defendant SnG Tactical sold Delgado a total of two multicaliber receivers and five guns: a Barrett .50 caliber BMG rifle and FN M249 (on the 7th), a Beretta 9mm pistol and Diamondback 5.56mm rifle (on the 15th), and a Diamondback DB-15 5.56 NATO caliber rifle (on the 28th).

DECONCINI McDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

80.    In its sentencing memorandum, the United States noted: "The correlation between the [Delgado's] border crossing records, financial records, and firearm purchases indicates he trafficked most or all of the firearms into Mexico, and the potential devastation that has been, is being, and will be caused by each of these as-yet unrecovered firearms – as a direct result of the defendant's crime – is beyond measure. Of note, all of the firearms the defendant bought and sold are considered 'weapons of choice' preferred and sought after by criminal organizations in Mexico. . . . While every firearm is a deadly weapon with the capacity to cause an immense amount of harm, the firearms the defendant illegally trafficked are particularly alarming." *U.S. v. Isaias Delgado*, No. 4:19-cr-01094-JGZ-JR-1, Gov't's Sent. Memo., at 4, 5 (D. Ariz. May 26, 2022), ECF No. 179.

81.    **2019—Diamondback, SnG Tactical, and Ammo AZ.** In September 2019, the ATF started investigating firearm purchases from several dealers, including Diamondback Shooting Sports, SnG Tactical, and Ammo AZ by Francisco Dario Mora of Tucson and Pedro Adan Sevilla of Phoenix, on information that three of their guns had been recovered in Mexico by Mexican law enforcement. ATF agents discovered that from June 2019 through September 2019, Mora and Sevilla and their coconspirators smuggled 40 guns into Mexico, including AK-type rifles and AR-type pistols, in addition to 25,000 rounds of ammunition, and 760 AK-type and AR-type magazines, each with a capacity of 30 rounds.

82.     Mora bought at least 19 guns, one of which was recovered in Mexico just 27 days after he purchased it. Sevilla bought at least 21 guns, two of which were recovered in Mexico, also a short time after they were bought. Collectively, Mora and Sevilla—who both earned low wages as store clerks in Arizona—paid approximately $45,000 in cash to several dealers, including Defendants Diamondback, SnG Tactical, and Ammo AZ for the guns and ammunition over the course of a three-month period. They crossed into Mexico from the United States dozens of times to deliver the guns and munitions.

83.     U.S. prosecutors wrote in a court filing that "[t]he deadly violence being spread by the drug cartels in Mexico has had a devastating impact on the innocent civilians in Mexico." *U.S. v. Francisco Dario Mora et al.*, No. 4:19-cr-03289-SHR-MSA, Gov't Sent. Memo., at 4 (D. Ariz. Apr. 29, 2021), ECF No. 91. Mora, who had close contacts in Mexico, "was essentially arming a Mexican drug cartel army," the prosecutors wrote. *Id.* at 3. They emphasized the hundreds of magazines that Mora and Sevilla bought, noting that "[t]he deadly and devastating impact of 760 30-round magazines cannot be ignored nor justified." *Id.*

84.     At a detention hearing, an ATF agent testified that "[a] lot of the calibers that they (Mora and Sevilla) were purchasing were those calibers that are typically highly sought after by Mexican cartels… Primarily they were like AK-47 style rifles or pistols, AR-15 style pistols, 9mm caliber handguns." *U.S. v. Francisco*

*Dario Mora, et al.*, No. 4:19-cr-03289-SHR-MSA, Det. Hrg. Tr. At 6 (D. Ariz. Apr. 29, 2021), ECF No. 18. He further testified that he had never seen customers lawfully buy these makes and models of guns for themselves in "that kind of quantity." *Id*. at 38. Moreover, the massive number of 30-round magazines acquired by Mora and Sevilla was a clear indication of gun trafficking.

85.     The Court concluded that it was impossible to overlook the dangers to Mexican citizens that the traffickers had caused: "Because the pattern of conduct involving the trafficking of firearms… you can't draw a blind eye of what's happening in Mexico. Huge numbers of people being murdered. These are people who are, through their own conduct, taking the firearms to Mexico and giving them to the people that… are contributing to this violent activity… I can't turn a blind eye to the fact that these firearms were destined for use in a drug war in Mexico… These firearms have been able to penetrate deep into Mexico and pose a real danger to the people living down there." *Id*. at 66-67.

86.     The Tucson branch of this unlawful scheme included Defendants Diamondback and SnG Tactical. On June 16, 2019, Defendant Diamondback sold 20 Croatian 30-round magazines to Mora. In August 2019, Diamondback increased its volume of sales: a CM Draco 7.62 x39mm caliber pistol, an AK-47 assault rifle, 10 Colt AR-15 30-round magazines, and a 75-round drum magazine sold to Mora on August 4, 2019; the next day it sold to him 30 Croatian AK-47 30-round magazines.

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

On August 17, 2019 Diamondback sold to Mora another CM Micro Draco, 7.62 x 39mm caliber pistol, and made a straw sale to Sevilla of a Century Arms Draco, 7.62 x. 39mm caliber pistol.

87.     Defendant SnG Tactical sold to each of Mora and Sevilla two AK-47 style pistols on July 19, 2019. One of each of their weapons was recovered 27 days later at a residence near Guadalajara, Mexico.

88.     Defendant SnG Tactical went on to make another same-day, multiple sale to Mora on August 23, 2019, including a Zastava ZPA P92, 7.62 x. 39mm caliber pistol and a Pioneer Arms Corp. Hellpup,7.62x39mm caliber pistol.

89.     Defendant Ammo AZ was also in on the action. Mora made repeated trips to Defendant Ammo AZ on days in close proximity, with Defendant Ammo AZ making multiple sales to him in most of these transactions. Both patterns are highly indicative of straw sales and a gun trafficking operation. Defendant Ammo AZ sold to Mora a Glock pistol on July 2, 2019, and on July 17, 2019 sold him a CM Micro Draco pistol and an American Tactical Imports (ATI) Omni Hybrid 5.56 pistol. On August 7, 2019, Defendant Ammo AZ sold him three Pioneer Arms Corp. Hellpup, 7.62 x 39mm caliber pistols—another blatant red flag of trafficking given the same makes and models of gun.

90.     Defendant Ammo AZ's sales to Sevilla showed similar patterns suggestive of gun trafficking. Sevilla frequented Defendant Ammo AZ on some of

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

the same days that Mora did. Defendant Ammo AZ sold to Sevilla a Century Arms Micro Draco pistol on July 2, 2019, a CM Micro Draco, a Glock pistol and an ATI pistol, in a multiple sale, on July 17, 2019, and three Pioneer Arms Corp. Hellpup, 7.62 x 39mm caliber pistols on August 7, 2019—the same type guns that Defendant Ammo AZ sold to Mora on that same day. Defendant Ammo AZ sold to Sevilla three more pistols on August 13, 2019.

91.     On November 3, 2020, Yibran Lopez-Rosales was indicted in Arizona federal court on charges of making false statements in the acquisition of firearms.

92.     Upon further investigation, the ATF found three additional similar straw sales to Rosales. These included Defendant Ammo AZ's straw sale on April 16, 2019 of an FN M249S 5.56 caliber rifle and its August 28, 2019 straw sale of a Barrett M82A1 .50 caliber BMG rifle. As stated in court filings, Rosales was paid a total of approximately $2,000 to buy these guns and pass them on to his "director."

93.     **2019—SnG Tactical and Diamondback.** On September 21, 2022, 11 individuals were indicted in Arizona federal court for conspiracy to illegally transport more than 50 firearms to Mexico, including six Barrett 82A1 .50 caliber rifles and other high-powered assault rifles they readily acquired from Tucson gun stores.

DECONCINI McDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

94.     The accomplices individually circulated among selected gun stores favored by other traffickers of firearms to Mexico and straw purchased the type of assault weapons widely known in the industry to be in great demand by the cartels.

95.     Victor Coronado provided the straw buyers with the direction and funds to purchase the firearms. The buyers then immediately transferred the guns to Coronado and others, and the arms were smuggled into Mexico.

96.     On November 27, 2019 Defendant SnG Tactical straw sold to Fernando Palomares, Jr. a Radom/Pioneer Arms Sporter 7.62x39mm rifle and a Romarm/Cugir WASR 7 .62x39mm rifle; on January 24, 2020 straw sold to him, in another multiple sale, a Century Arms VSKA 7.62x39mm rifle and a Radom/Pioneer Arms Sporter 7.62x39mm rifle; and on February 16, 2020 straw sold to him two more assault rifles, both Century Arms M70AB2 7.62x39mm rifles. On or about September 22, 2020, one of the Century Arms M70AB2 7.62x39mm rifles was recovered in Mexico.

97.     Palomares' buying patterns—specifically both the number of visits to Defendant SnG Tactical and the make and models of guns he bought—were obvious red flags of a Mexican gun smuggling scheme in action. Yet Defendant SnG Tactical never turned him away.

98.     Defendant Diamondback was not to be left out. On October 10, 2019 it straw sold to Kyle Rene Fazlollah a Century Arms VSKA 7.62x39mm rifle. On

October 24, 2019 it straw sold to accomplice Fernando Palomares, Jr. a DPMS Al5 5.56mm rifle and a Riley Defense RAK47 7.62x39mm rifle.

99.     **2019-2020—The Hub.** The Hub also supplied the smuggling ring with multiple assault rifles. Fernando Palomares, Jr. acquired both an AR-15 and an AK-47 on the same day, October 17, 2019, when The Hub sold him a Radical Firearms RF 15 multiple caliber rifle and a Riley Defense RAK47 7.62x39mm rifle. Five days later, it straw sold co-conspirator Kyle Rene Fazlollah a Romarm/Cugir RH10 7.62x39mm rifle—which was later seized at a crime scene in Mexico. It straw sold Fazlollah a Romarm/Pioneer Arms WASR10 7.62x39mm rifle on May 6, 2020, and sold co-conspirator Elizar Olivares a Riley Defense RAK47 7.62x39mm rifle on February 15, 2020, providing the cartel with 5 assault rifles in under 6 months.

100.     **2020—SnG Tactical.** The pattern continued when Fazlollah walked into Defendant SnG Tactical on January 24, 2020, and it straw sold to him two Radom/Pioneer Arms Sporter 7.62x39mm rifles on behalf of Victor Coronado. On June 4, 2020, Fazlollah returned to Defendant SnG Tactical, which again straw sold to him a FA Cugir M&M Inc M10-762 7.62x39mm rifle.

101.     On February 15, 2020 Defendant SnG Tactical made straw sales to accomplice Elizar Olivares, in yet another multiple sale: a FA Cugir M&M Inc. M10-762 7.62x39mm rifle and a Century Arms M70AB2 7.62x39mm rifle.

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

102.   On April 18, 2020 Defendant SnG Tactical straw sold to accomplice Ray Alberto Laborin a Sig Sauer P320 9mm pistol.

103.   Defendant SnG Tactical had quite a week in early February 2020. It started on February 3 by making an unlawful straw sale to the ringleader of another smuggling ring—Jose Gilberto Inzunza—of a Century Arms-Romarm WASR10 7.62 rifle, a military style weapon that Defendant SnG Tactical knows is a favorite of the cartels in Mexico. The following day, Defendant SnG Tactical straw sold the same model assault rifle to Inzunza's coconspirator Kaleb Jacob Valencia. After taking a day off, on February 6 Defendant SnG Tactical made another straw sale to their affiliate Jacob Valencia, this time of a Century Arms-Romarm Mini Draco 7.62 pistol—another known cartel favorite.

104.   **2019-2020—Diamondback.** Defendant Diamondback also made a straw sale of a Ruger AR-556 to Kaleb Jacob Valencia on August 10, 2019. He was back at the store on January 30, 2020 and Defendant Diamondback delivered a Del-Ton DTI-15 5.56 rifle to him in another straw sale; two days later Defendant Diamondback sold him a Glock 17 Gen5 9mm pistol in another straw sale. The proximity of the latter two sales indicated that Valencia was staggering them to evade ATF multiple-sales reporting requirements—a standard tactic of gun traffickers with which Defendant Diamondback is very familiar.

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

105.   **2020—The Hub.** Defendant The Hub also made multiple illegal sales to Kaleb Jacob Valencia and his coconspirator Jose Gilberto Inzunza in early 2020. On January 28, 2020 it straw sold Valencia a Glock 17 Gen5 9mm pistol, and the very next day it straw sold him a Century Arms RH10 7.62 rifle. One week later, it straw sold Valencia a second AK-47—a Riley Defense RAK47 7.62 caliber rifle—to be smuggled into Mexico by Inzunza. Inzunza visited Defendant The Hub on December 18, 2020 and it sold him a third AK-47—a Century Arms VSKA 7.62 rifle.

106.   **2020—Sprague's Sports.** In another incident, On March 25, 2020, Noe Mendoza and Marcos Balderas Millan applied for entry from Mexico into the United States at the San Luis Port of Entry in Arizona. They then traveled to Yuma, Arizona where Defendant Sprague's Sports sold to them 300 rounds of .50 caliber ammunition. Then, the two men drove to the desert, removed the .50 caliber ammunition from the boxes and hid it in the floorboard, dash compartment, and under the hood of their vehicle.

107.   They discarded the ammunition boxes as they traveled to the San Luis Port of entry. Mendoza and Millan then re-entered Mexico. While at the port of entry, they were subject to secondary inspection revealing the 300 rounds of ammunition hidden in the vehicle.

108.   Defendant Sprague's Sports sold the several hundred rounds of ammunition to Mendoza and Millan even though they may not have been American

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

citizens or residents; one or both were teenagers (Mendoza was 19 years old at the time of the offense); and they were buying ammunition for .50-caliber rifles—heavy artillery in demand by the cartels and not used by civilians for self-protection or hunting.

109.   **2021—SnG Tactical.** On or about November 20, 2021 Defendant SnG Tactical straw sold to Richardo Caro a F.N. SCAR17s .308 caliber, semi-automatic rifle. The rifle was smuggled or intended to be smuggled into Mexico.

110.   **2021—The Hub.** Less than two weeks later, Richardo Caro's accomplice Anthony Ortiz visited The Hub, which sold him a Barrett .50 caliber rifle—a gun notorious for its armor-piercing capability.

111.   **2022—Diamondback and SnG Tactical.** Another very recent case confirms the same pattern of unlawful conduct by these same corrupt Defendants. The criminal complaint in *United States v. Luis Fernando Cruz-Valenzuela et al.*, No. 4:22-cr-00596 (D. Ariz. Mar. 2, 2022), ECF No. 1, alleges that on March 1, 2022, a vehicle driven by Luis Fernando Cruz-Valenzuela was stopped by CBP officers who were conducting outbound inspections at the Mariposa Port of Entry in Nogales, Arizona. At inspection, Cruz-Valenzuela denied having any currency over $10,000 or firearms to declare. CBP officers discovered four firearms and eight firearm magazines hidden in his car. These included two Glock 17 9mm handguns, one Glock 19 9mm handgun, one Glock 22 .40 caliber handgun, six 9mm caliber

DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

magazines, and two .40 caliber magazines. A further search revealed a receipt for a Glock 17s purchased earlier that day from Defendant Diamondback in Tucson with Cruz-Valenzuela's name. A subsequent indictment filed on March 30, 2022 (ECF No. 9) filled out the following details.

112.    Defendant SnG Tactical straw sold a Glock 22 Gen 5 .40 caliber pistol to Cruz-Valenzuela on February 3, 2022. Defendant Diamondback straw sold a Glock 17 9mm caliber pistol to Cruz-Valenzuela on March 1, 2022. The same day, Diamondback straw sold a Glock 22 .40 caliber pistol to another accomplice, Carlos Abel Cruz.

113.    **2022—SnG Tactical.** From October 2021 through May 2022 Arizona gun dealers—the same stores that repeatedly show up as the favored shopping stops of the cartels—made straw sales of dozens of rifles and pistols to be smuggled into Mexico.

114.    Among the weapons cited in an indictment filed on September 15, 2022 in Arizona federal court: 16 Glock pistols; nine Century Arms assault rifles and pistols; three Colt assault rifles; one Barrett 50-caliber rifle; one Smith & Wesson assault rifle.

115.    One of the primary suppliers of this smuggling ring was Defendant SnG Tactical, which on January 18, 2022 straw sold to Nicolas Meraz three Glock pistols

in the same transaction; on March 18, 2022, it straw sold to him a fourth Glock pistol.

116.   On March 15, 2022 Defendant SnG Tactical straw sold to Trujillo a Pioneer Arms Hellpup 7.62x39mm pistol and a Zastava ZPAP M70 7.62x39mm rifle; on April 18, 2022 it straw sold to him two Century Arms VSKA 7.62x39mm rifles and a Glock 19X 9mm pistol. All of these weapons were destined for the cartels in Mexico.

117.   These examples illustrate that each Defendant knowingly sells its military-style weapons to gun traffickers in straw sales, multiple sales, and repeat sales. The above are provided simply as illustrative examples; they do not even begin to catalogue all instances in which each Defendant has participated in gun trafficking to Mexico. Such a list would be almost incomprehensible in scope.

## VI.   DATA CONFIRM THAT DEFENDANTS' PARTICIPATION IN THE TRAFFICKING IS SYSTEMATIC AND KNOWING.

118.   Each Defendant's knowing and systematic participation in gun trafficking into Mexico is also confirmed by looking beyond the specific examples to the broader data.

119.   Every year authorities traced substantial number of guns to these Defendants from crime scenes in Mexico. And the number of guns *recovered* (and therefore traced) is just a small fraction of the guns that Defendants have participated in *trafficking* into Mexico. It is the guns trafficked into Mexico, not just those that are

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

recovered at crime scenes, that allow the drug cartels to wreak havoc in Mexican society.

120.    Estimates of the number of guns trafficked from the U.S. to Mexico, to the number of guns traced from the U.S. to Mexico, range from 18:1 to 45:1. Based on those estimates, and the annual traces from Mexico to each of these Defendants, the range of the number of guns that each Defendant participates in trafficking into Mexico annually is:

   a.  Diamondback: 140 - 352

   b.  SnG Tactical: 55 -137

   c.  Ammo AZ: 227 - 567

   d.  The Hub: 90 - 225

   e.  Sprague's Sports: 328 - 822

121.    Each Defendant participates in this trafficking for the extra profits that it brings. For each of these Defendants, as for many gun dealers, the unlawful flow of arms into Mexico is their economic lifeblood. Researchers have estimated that without the demand for weapons trafficking to Mexico, roughly 47% of licensed gun dealers would go out of business. Topher McDougal et al., *The Way of the Gun: Estimating Firearms Traffic Across the U.S.-Mexican Border*, Igarapè Institute, 17 (March 2013), https://catcher.sandiego.edu/items/peacestudies/way_of_the_gun.pdf. That percentage is almost certainly significantly higher for dealers in border states that arm cross-border traffickers like Defendants.

122.    Each Defendant sells firearms to straw purchasers and gun traffickers even though it knows, based on the circumstances of these transactions and its own training, that these "customers" are not making bona fide purchases for themselves. By disregarding its legal obligations, each Defendant gains access to the lucrative criminal secondary market for firearms in Mexico and profits from the sale of firearms to criminals and other prohibited persons.

123.    These profits come primarily from aggressive sales of military-style assault weapons. The sales of these weapons have skyrocketed since the expiration of the U.S. assault weapons ban in 2005. In the last decade alone, gun manufacturers have made more than $1 billion selling assault-style weapons to civilians, with gun dealers riding the wave of exponential profits.

124.    Border-state gun dealers, such as Defendants, sell twice as many firearms as dealers in other areas of the country. Catherine R. Dooley and Ariadne Medler, *A Farewell to Arms: Managing Cross-border Weapons Trafficking*, HEMISPHERE FOCUS (Ctr. for Strategic & In't Studies, Wash, D.C.) (Sept. 9, 2008), https://csis-website-prod.s3.amazonaws.com/s3fs-public/legacy_files/files/media/csis/pubs/hf_v16_02.pdf. Participating in the illicit trafficking to Mexico, and partaking in the immense profits to be made, has swelled the number of dealers in the border states. In 2010, there were 8,354 gun dealers (including pawn shops) in California, Texas, New Mexico, and Arizona. By 2019,

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd. Suite 200
Tucson, AZ 85716-5300

DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

more than 1,569 new gun dealers set up shop in those states, in contrast to the nationwide number of gun dealers, which is actually decreasing. Devika Agrawal, *Combating U.S. Gun Trafficking to Mexico*, U.C. Berkeley, 25 (2019), https://stopusarmstomexico.org/wp-content/uploads/2019/10/U.S.-Guns-to-Mexico-Final.pdf.

## VII.  EACH DEFENDANT HAS VIOLATED ITS LEGAL DUTIES TO SELL ITS GUNS SAFELY AND AVOID ARMING CRIMINALS IN MEXICO.

125.   The flow of guns from each Defendant's stores to the streets of Mexico is the foreseeable and intended result of its decision to participate in gun trafficking to Mexico for profit.



126.   Gun dealers have a duty to act as agents of enforcement of U.S. federal and state gun laws, and play an important role on the front lines in keeping guns out of dangerous hands. Federally licensed firearms dealers have "the responsibility to '[e]nsure that, in the course of sales or other dispositions …, weapons [are not] obtained by individuals whose possession of them would be contrary to the public interest.'" *Abramski v. United States*, 573 U.S. 169, 190 (2014).

127.   Each Defendant knows it has an obligation to help enforce the gun laws, and not to circumvent them. But each Defendant continually violates and actively undermines these laws in order to profit from the criminal market in Mexico.

128.   The cartels that cause such bloodshed and terror in Mexico are able to do so only because of each Defendant's deliberate decisions made in Arizona.

129.   Guns are restricted, lethal weapons, sought by persons who cannot legally possess them. Therefore U.S. law allows only persons who commit to fully comply with all applicable laws, and to act as agents of law enforcement, to engage in the gun business at any level.

130.   Each Defendant chose to apply for and obtain a U.S. federal license to engage in the gun business. When it did so, it effectively took an oath to the United States that, to obtain the privilege of selling guns, it would fully comply with and help enforce the law to prevent its guns from being obtained by criminals. Each Defendant voluntarily assumed a duty to market and sell guns while carefully adhering to all relevant law in the U.S., as well as the law in Mexico where it knows its guns are routinely trafficked and used to maximize violence.

131.   By engaging in the conduct alleged above, each Defendant violated its legal obligations summarized below.

I:\FILES\DOCS\ESTA01\20220809\EMAIL\18P8460.DOCX

**A.  Each Defendant violated U.S. Federal Prohibitions on Straw Sales.**

132.    U.S. federal laws and regulations closely regulate commercial sales of firearms. Lawful dealers, known as "licensees," must get a U.S. federal license to operate a business that manufactures, distributes, or sells firearms. A person is categorically prohibited from "engag[ing] in the business of importing, manufacturing, or dealing in firearms" without a federal firearms license. 18 U.S.C. §§ 922(a)(1)(A), 923(a). Persons must be licensed if they "devote [ ] time, attention, and labor to dealing in" the selling of firearms with the purpose of making a profit. *See* 18 U.S.C. § 921(a)(21)(C). Even a person who deals in guns part-time is required to obtain a license. *See* 27 C.F.R. § 478.11.

133.    U.S. federal law also prohibits dealers and anyone else from assisting an individual's unlawful dealing in firearms: it is illegal to aid and abet or conspire with another to deal in firearms without a license. *See* 18 U.S.C §§ 2, 3. Concealing an individual's unlawful dealing in firearms is also prohibited: dealers or other persons violate 18 U.S.C. § 4 when they know of the commission of a felony firearms offense but conceal it rather than report it to law enforcement.

134.    These statutory offenses are designed to prevent crime by keeping guns out of the hands of certain persons who have a heightened risk of misusing guns or are not otherwise entitled to possess them, such as persons who have a felony conviction or are not U.S. citizens. *See generally* 18 U.S.C. § 921 *et seq.*

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

135.   The U.S. Congress designed federal law to achieve this aim by channeling firearms commerce through licensees. Regulating the distribution of guns is intended to prevent trafficking and reduce access to firearms by persons prohibited from possessing them. Gun dealers are trained on how to spot traffickers and straw purchasers through multiple publications and programs sponsored by the the the ATF and the gun industry, including the "Don't Lie for the Other Guy" program, newsletters, reference guides, regulatory updates, and ATF seminars.

136.   As the National Shooting Sports Foundation's standards as part of "Don't Lie for the Other Guy" make clear, "If suspicions arise, it is more prudent to **follow the precautionary principle of politely refusing the sale** to protect yourself from the risk of contributing to a possible illegal transaction. It's not just good business. *It's your responsibility*." (Bold emphasis theirs; italics emphasis added).

137.   Before transferring a gun to any person who is not a licensed dealer, a licensed dealer must conduct a background check, examine the individual's identification, and record the transaction on a firearms transaction record ("ATF Form 4473"). *See* 18 U.S.C. § 922(t)(1), 27 C.F.R. §§ 478.102, 478.124(a).

138.   Before completing a purchase of a gun from a licensee, a buyer must fill out ATF Form 4473, which asks the following question with the following bolded warning:

**Are you the actual transferee/buyer of the firearm(s) listed on this form? . . . Warning: You are not the actual transferee/buyer if you**

DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd, Suite 200
Tucson, AZ 85716-5300

**are acquiring the firearm(s) on behalf of another person. If you are not the actual transferee/buyer, the dealer cannot transfer the firearm(s) to you.**

139.   This warning puts the buyer and the dealer on notice: the buyer is prohibited from buying a gun on someone else's behalf while falsely claiming that it is for the buyer. Correspondingly, the dealer is prohibited from selling the gun in these circumstances. Such an unlawful transaction is known as a "straw purchase" or a "straw sale," and the transferee is known as a "straw purchaser." On ATF Form 4473, buyers must certify that their answers on the form are true, correct, and complete. The buyer violates U.S. federal law by filling out the form inaccurately.

140.   The dealer violates U.S. federal law by selling the gun while knowing or having reason to know that the form is filled out inaccurately. Dealers certify on ATF Form 4473 that it is their "belief that it is not unlawful [ ] to sell, deliver, transport, or otherwise dispose of the firearm(s) listed on this form to the person identified in Section B." Dealers must truthfully complete this portion of the form.

141.   ATF Form 4473 makes clear that the dealer must do more than simply run a background check. The notices and instructions on the form explain that "[t]he transferor/seller of a firearm must determine the lawfulness of the transaction and maintain proper records of the transaction." The form also explains that a dealer "must stop the transaction if there is reasonable cause to believe that the

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

transferee/buyer is prohibited from receiving or possessing a firearm[.]" The form contains a clear admonition:

> **WARNING:** Any person who transfers a firearm to any person he/she knows or has reasonable cause to believe is prohibited from receiving or possessing a firearm violates the law, even if the transferor/seller has complied with the Federal background check requirements.

142.   The dealer must keep a record of all transactions with unlicensed persons in an acquisition and disposition book. 27 C.F.R. §§ 478.123(b), 478.125(e). A dealer violates U.S. federal law by knowingly making false statements or misrepresentations, failing to make appropriate entries in, or failing to properly maintain acquisition and disposition records, firearms transaction records, or reports of multiple sales of handguns. 18 U.S.C. §§ 922(m), 924(a)(3); *see also* 18 U.S.C. § 924(a)(1)(A).

143.   Effective June 25, 2022, 18 U.S.C. § 932(b) made it a separate, defined criminal offense for persons to make straw purchases. The statute defines a straw purchase as one made on behalf of a person who the nominal purchaser "know[s] or ha[s] reasonable cause to believe … intends to use, carry, possess, or sell or otherwise dispose of the firearm in furtherance of a felony." *Id*. 933(a)(1). The statute also specifically criminalizes the "transfer … of any firearm to another person … if [the transferor] knows or has reasonable cause to believe that the use, carrying, or possession of a firearm by the recipient would constitute a felony …." It is also a

DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd, Suite 200
Tucson, AZ 85716-5300

criminal offense for a gun dealer to conspire with anyone to commit either of those crimes. *Id*. §§ 932(b), 933(a)(3).

144.    U.S. federal law also enlists dealers in working to detect illegal transactions and trafficking *after* a gun is used unlawfully. When a law enforcement agency recovers a gun at a crime scene or in the course of a criminal investigation, the agency may request a trace report from ATF's National Tracing Center. The National Tracing Center tracks the path of the gun from its manufacturer through the distribution chain to the last retail purchaser. Dealers must provide information from their records about crime guns that the dealer sold. *See* 18 U.S.C. § 923(g)(7); 27 C.F.R. § 478.25a.

145.    Dealers are required to know the U.S. federal firearms laws and regulations. ATF agents review the applicable laws and regulations with dealers when they initially receive their license and during ATF audits. At the conclusion of an audit, the ATF requires dealers to certify acknowledgement of U.S. federal laws and regulations. The acknowledgement form includes certification that the dealer has reviewed laws and regulations regarding: (i) completing and maintaining firearm transaction records; (ii) conducting transfers between licensees; (iii) engaging in the business of firearms dealing; and (iv) straw purchasing.

146.    By engaging in the conduct alleged above, each Defendant systematically violated the foregoing legal obligations.

DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

### B. Each Defendant Violated Mexican and U.S. Federal Prohibitions on Gun Trafficking to Mexico.

147.    Mexico has stringent gun laws, enacted at the federal level, that closely monitor, regulate, and restrict private gun ownership. *See Ley Federal de Armas de Fuego y Explosivos* ("LFAFE") *Artículo 20*, *Diario Oficial de la Federación* [DOF] 11-1-1972, *últimas reformas* DOF 19-02-2021 (Mex.). The United Nations has called these laws among the most restrictive in the world.

148.    LFAFE prohibits gun traffickers—and those aiding and abetting them—from bringing any of Defendants' guns into the country.

149.    LFAFE provides that importing *any* gun into Mexico without a permit is unlawful and carries a prison term of up to 10 years. LFAFE, Article 84bis. And importing without a permit guns classified as exclusively for military use carries a prison term of up to 30 years. LFAFE, Article 84bis.

150.    Gun traffickers do not have the required permits, and Defendants are prohibited from aiding and abetting their importing guns into Mexico.

151.    In addition, applicants for gun permits must prove their need to carry weapons as well as their prior history of honesty and prudence, with the testimony of five persons well-known to the authority. Citizens who pass the background check receive a one-year permit. Applicants must be members of a "shooting club" and are limited to purchasing and owning one handgun. This handgun is available for self-defense only and must be kept inside the home.

152.    Guns are available from only one dealer and store in the entire country—the UCAM (*Unidad de Comercialización de Armamento y Municiones*). The store is located in Mexico City and is owned, operated, and heavily guarded by the Mexican military. The gun store sells on average just 38 guns a day to civilians.

153.    LFAFE, Article 11 reserves for the exclusive use of the Army, Navy, and Air Force numerous types of handguns, rifles, and shotguns. LFAFE prohibits, for example, semi-automatic pistols with a caliber greater than .380 and all guns using the .223 caliber round, commonly used in AR-style rifles.

154.    The United States also prohibits exporting guns to Mexico without an export license.

155.    The Export Control Reform Act of 2018 ("ECRA") provides that "the national security and foreign policy of the United States require that the export … of items, and specific activities of United States persons, wherever located, be controlled . . . ." 50 U.S.C. § 4811. The ECRA therefore grants to the President of the United States the authority "(1) to control the export, reexport, and in-country transfer of items subject to the jurisdiction of the United States, whether by United States persons or by foreign persons; and (2) the activities of United States persons, wherever located, relating to" specific categories of items and information. 50 U.S.C. § 4812(a).

156.   The U.S. Department of Commerce implements ECRA through the Export Administration Regulations ("EAR"), 15 C.F.R. §§ 730-774. Those regulations impose licensing and other requirements for regulated items to be lawfully exported from the United States. The most sensitive items subject to these controls are identified on the Commerce Control List, or "CCL," published at 15 C.F.R. part 774, Supp. No. 1, and are known as "dual-use items."

157.   It is unlawful to export dual-use items to certain nations, including Mexico, without first getting a license or authorization from the Department of Commerce.  Semi-automatic guns (other than shotguns), such as AR-15s and AK-47s, are designated under ECCN 0502.a and flagged as requiring the exporter to apply for a license to transport them to Mexico. Supp. No.1 to 15 C.F.R. 774; Supp. No. 1 to 15 C.F.R. 738.

158.   Exporting these guns without a license, or aiding and abetting such export, is a crime. Pursuant to ECRA, "[i]t shall be unlawful for a person to violate, attempt to violate, conspire to violate, or cause a violation of this part or of any regulation, order, license, or other authorization issued under this part," and, "[a] person who willfully commits, willfully attempts to commit, or willfully conspires to commit, or aids or abets in the commission of, an unlawful act described in subsection (a) shall" be guilty of a crime. 50 U.S.C. § 4819.

I:\FILES\DOCS\ESTA01\20220809\EMAIL\18P8460.DOCX

159.   Effective June 25, 2022, U.S. federal law made it a separate, defined criminal offense to participate in smuggling guns into Mexico. Gun dealers, among others, are prohibited from "smuggl[ing] or knowingly tak[ing] out of the United States a firearm or ammunition, or attempt[ing] or conspir[ing] to do so, with intent to engage in or to promote conduct that . . . would constitute a felony" if the conduct had occurred in the United States. 18 U.S.C. § 924(k)(2).

160.   The drug cartels in Mexico systematically engage in conduct—murder, drug dealing, extortion, and much else—that would constitute a felony if it had occurred in the United States. So the statute prohibits smuggling or conspiring to smuggle guns to the drug cartels in Mexico.

161.   By engaging in the conduct alleged above, each Defendant systematically violated the foregoing legal obligations.

## C.  Each Defendant Violated Applicable Tort Law.

162.   By marketing and selling highly dangerous products, each Defendant assumed a duty to ensure that its guns are sold lawfully and carefully, in full compliance with all applicable laws, and not to circumvent those laws through their business practices.

163.   Mexico's Federal Civil Code regulates tort liability (responsabilidad civil extra-contractual) and wrongful acts, in articles 1910 to 1934bis. Under the

I:\FILES\DOCS\ESTA01\20220809\EMAIL\18P8460.DOCX

DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

Code, each Defendant has a duty not to create any risk that harms a person or entity in Mexico.

164.   The Code imposes on each Defendant an obligation not to engage in any unlawful, negligent, or harmful conduct that causes injury to another. Specifically, Article 1910 of the Code provides:

> Whoever acting illicitly or against good customs causes damage to another, is obliged to repair it, unless they prove that the damage was produced as a consequence of inexcusable fault or negligence of the victim.

165.   Article 1910 requires each Defendant to act with the greatest possible skill and care, taking necessary precautions to avoid causing any damage to others.

166.   Each Defendant must also comply with applicable U.S. state tort law which, like the tort law of Mexico, requires each Defendant to use reasonable care in avoiding harm to the Government of Mexico and its citizens.

167.   By selling guns in circumstances in which it is foreseeable that they will be transported into Mexico, each Defendant assumed an obligation to refrain from knowingly or recklessly supplying the criminal market in Mexico.

168.   Aspects of this duties imposed by the tort law of Mexico and of U.S. states include, but are not limited to:

a.      adopting protocols and safety standards to prevent the unlawful or negligent diversion of guns to bad actors in Mexico;

b.      monitoring and disciplining employees where trace data or other indicators suggest that they are likely engaging in reckless or unlawful practices supplying the criminal market;

c.      where it appears that a Defendant's guns are being trafficked into Mexico, creating special point-of-sale restrictions on the relevant classes of guns;

d.      employing safe and reasonable business practices to enforce and adhere to legal obligations, including but not limited to asking screening questions of customers to identify purchasers likely to illegally sell or misuse guns or transport them into Mexico;

e.      requiring that purchasers show multiple forms of state identification beyond those necessitated by federal or state law;

f.      limiting bulk, multiple, and repeat sales and imposing other limitations designed to prevent illicit gun trafficking into Mexico;

g.      obtaining, retaining, and analyzing relevant information to determine if Defendant's business practices are supplying criminals in Mexico with guns, and taking appropriate responsive action to prevent that continued supply, including but not limited to:

- providing timely information to law enforcement, distributors, and manufacturers regarding Defendant's business practices including alleged or proven violations of law, straw purchasing, or trafficking incidents at

their stores, "missing" guns, trace requests, inspections and audits, sales of assault weapons and sniper rifles, multiple and bulk sales, and repeat purchasers;

- noting and recording all instances of federal or state law enforcement officials tracing guns recovered during criminal investigations in Mexico back to Defendant;

- noting and recording all connections between any of Defendant's guns and criminal misuse in Mexico identified in the media or other sources; conducting continuous, routine analyses of trace or other data so as to determine, among other things, whether Defendant's sales are associated with diversion of guns to the criminal market in Mexico; whether certain types of a Defendant's guns (such as semi-automatic assault rifles and sniper rifles) appear to be disproportionately used by criminals in Mexico; and whether there are any patterns in the manner in which a Defendant's guns are being diverted to the criminal market in Mexico.

169.    By engaging in the conduct alleged above, each Defendant systematically violated the foregoing legal obligations.

**D.  Defendants Cannot Avoid Their Duties by Being Willfully Blind to the Facts.**

170.    The statutes, regulations, and law identified above reflect a standard of conduct and care below which reasonably prudent gun dealers may not lawfully fall. Together, these requirements make clear that each Defendant is required to possess and exercise specialized and sophisticated knowledge, skill, information, and understanding of the market for guns. Each Defendant must also be aware of, and prevent, the risks and dangers of gun trafficking that arise when it chooses to use standardless sales and distribution practices without proper monitoring and discipline.

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

I:\FILES\DOCS\ESTA01\20220809\EMAIL\18P8460.DOCX

171.   Further, these proscriptions make clear that each Defendant has a duty and responsibility to exercise its specialized and sophisticated knowledge, information, skill, and understanding to prevent the diversion of its guns into Mexico.

172.   Prominent among each Defendant's obligations is the duty to be aware of the reality of how its guns are sold and used, to take that reality into account when it decides how to sell and market its guns, and not to be willfully blind to the facts.

173.   Each Defendant also has, and is required to have, access to specialized and detailed knowledge of suspicious sales activities. ATF traces, extensive public reports of unlawful trafficking activity, and sophisticated sales data allow each Defendant to monitor the volume and type of sales that would alert it to suspicious sales activity. These information points enable and require each Defendant to stop the supply of its guns to the cartels in Mexico.

174.   Each Defendant's sales of dangerous products make it an accessory or co-conspirator to illicit conduct by gun traffickers where the Defendant continues to supply, support, or assist the traffickers and has actual or constructive knowledge of the illicit conduct.

175.   "Willful blindness" to clear indicators of unlawful conduct constitutes constructive knowledge of it. "Red flags," when assessed in the aggregate, can render it obvious that a purchaser is engaging in criminal or unlawful activity. A gun dealer

DECONCINI McDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

that continues to supply, support, or assist purchasers, despite the red flags, is a culpable and intentional participant in that unlawful conduct.

176.   The flags that put each Defendant on notice that it was facilitating unlawful trafficking of guns into Mexico were blazingly red and astoundingly numerous. No Defendant can shield itself from responsibility by claiming to be ignorant of the fact that it routinely supplies, and profits from, trafficking to criminals in Mexico.

177.   Nor can any Defendant justly complain that the United States and Mexico have been unable to stop the Defendant's unlawful conduct. The two nations have undertaken many measures to try to stem the flow of illegal weapons into Mexico, including, for example: the 2007, Mérida Initiative in which the U.S. government pledged to address domestic drug demand and the illicit trafficking of guns to Mexico; the 2009 "Binational Conference on Arms Trafficking between Mexico and the United States;" coordinated law enforcement efforts in gun cases; U.S. training of Mexican law enforcement officials to identify gun traffickers; ATF tracing of all U.S. guns recovered in Mexico, to identify traffickers, trends, patterns, and networks; "mirror operations" conducted jointly by CBP, the Mexican Federal Police, and the Secretary of National Defense; regular meetings between Mexican officials and representatives from ATF, the U.S. Department of Homeland Security, CBP, the U.S. Department of State, and the International Narcotics and Law

Enforcement Bureau, within the framework of the Arms Trafficking Subgroup of the U.S.-Mexico High-Level Security Group; the October 2019, Mexico-US Bilateral Workshop entitled "Dismantling the Tools of Transnational Crime-Arms Trafficking and Money Laundering"; a joint strategy (publicly revealed in January 2020) between Mexico and the United States to seal the borders and reduce arms trafficking; and many other joint efforts.

178.   What has been missing is reasonable and responsible efforts by these Defendants and other gun dealers to avoid fueling violence in Mexico by participating in straw sales and other unlawful practices.

## VIII.  EACH DEFENDANT KNOWINGLY PARTICIPATES IN RACKETEERING ACTIVITIES.

179.   U.S. federal law also prohibits Defendants from participating in criminal enterprises, including gun-trafficking rings. The Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq., prohibits persons, including gun dealers, from conducting the affairs of an enterprise through a pattern of racketeering activity. The "predicate violations" that can comprise a pattern of racketeering activity include:

a.   18 U.S.C. §§ 1341 and 1343 (mail and wire fraud), which a gun dealer violates by participating in making false entries in gun-transaction records in connection with straw sales;

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd. Suite 200
Tucson, AZ 85716-5300

b.    18 U.S.C. § 1956 (money laundering), which a gun dealer violates by participating in gun trafficking to the cartels in Mexico, knowing that the purchase funds for the guns is money that the cartels make through drug trafficking.

180.    Notably, the U.S. recently designated two additional "predicate violations" under RICO, specifically directed to the problem of gun trafficking to Mexico.

181.    Effective June 25, 2022, it is a predicate violation under RICO for a person, including a gun dealer, to violate 18 U.S.C. § 932, which prohibits straw sales of firearms. Likewise, it is now a predicate violation under RICO for a gun dealer to violate 18 U.S.C. § 933, which prohibits gun trafficking. *See* 18 U.S.C. §§ 1961(1)(B). The same legislation also designated violations of the prohibition on straw sales (18 U.S.C. § 932) and gun trafficking (18 U.S.C. § 933) as "specified unlawful activity" for purposes of defining prohibited money laundering. *See* 18 U.S.C. § 1956(c)(7)(D).

### A.  Each Defendant Systematically Commits Mail and Wire Fraud—18 U.S.C. §§ 1341, 1343.

182.    Each Defendant has knowingly devised or knowingly participated in a scheme or artifice to defraud the United States or to obtain the money or property (e.g., the profits from illegal guns sales) by means of false or fraudulent pretenses, representations, or promises.

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

183.   U.S. federal law implements a series of checks to, first, try to prevent gun trafficking and, second, try to identify the traffickers when it does occur. All of those checks depend upon gun dealers accurately identifying the persons to whom the dealer has sold guns. Each of the Defendants systematically undermines these checks by providing false information to U.S. authorities about the identities of those purchasers. Each Defendant falsely identifies as purchasers the persons who fill out Form 4473 as the buyers while knowing that in fact the true buyer was an agent of the cartels or other criminal organizations in Mexico.

184.   For example, specifically in order to try to prevent gun trafficking to Mexico, U.S. federal law requires gun dealers in the border states, including Arizona, to submit ATF Form 3310.12 and ATF Form 3310.4 to report the sale of multiple rifles that are semiautomatic, have a caliber greater than .22, or have the ability to accept detachable magazines. Each Defendant knows that "ATF uses the information gathered from multiple sales transactions to investigate possible trafficking cases." ATF, "Reporting Multiple Firearms Sales" https://www.atf.gov/firearms/reporting-multiple-firearms-sales.

185.   Each Defendant systematically misrepresents the identity of the purchasers when submitting these forms to the ATF. Each Defendant submits these false forms via U.S. Mail, facsimile, or email.

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

I:\FILES\DOCS\ESTA01\20220809\EMAIL\18P8460.DOCX

DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd, Suite 200
Tucson, AZ 85716-5300

186.   For each sale of a firearm, U.S. federal law requires the dealer to conduct an NCIS background check to ensure that the buyer is eligible to make the purchase. Each Defendant systematically misrepresents the identity of the purchasers when submitting the information for the background checks. Each Defendant submits the false information for these background checks by phone or online.

187.   When U.S. authorities trace guns that are recovered at crime scenes in Mexico, they contact the gun dealer to determine the identity of the person to whom the dealer sold the gun. When contacted by U.S. authorities in connection with these trace requests, each Defendant again systematically misrepresents the identity of the purchasers. Each Defendant submits the false information for these trace requests by phone or online.

188.   Each Defendant could foresee that the U.S. Postal Service and interstate wires would be used "for the purpose of" advancing, furthering, executing, concealing, conducting, participating in or carrying out the scheme, within the meaning of 18 U.S.C. §§ 1341 and 1343.

189.   In particular, each Defendant knew or could foresee that the U.S. Postal Service and interstate wires would be used to receive and/or deliver communications between the Defendant and federal agencies (including but not limited to the ATF) for the purpose of obtaining and maintaining the dealer's federal license and for the purpose of appearing to comply with U.S. law regarding the sale of guns.

190.   Each Defendant, personally or through its agents, used the U.S. Postal Service and interstate wires or caused the U.S. Postal Service or interstate wires to be used "for the purpose of" advancing, furthering, executing, concealing, conducting, participating in, or carrying out a scheme to defraud the United States and others, within the meaning of 18 U.S.C. §§ 1341 and 1343.

191.   By way of example, upon information and belief, each Defendant used the U.S. Postal Service or interstate wires or caused the U.S. Postal Service or interstate wires to deliver to ATF certain forms required for reporting the sales of multiple firearms, included but not limited to those described below, for the purpose of advancing, furthering, executing, and concealing the scheme to defraud. The Defendants' individual acts of wire fraud are not limited to these incidents—they are merely illustrative:

| Type of Communication | Date | To/From | Description |
|---|---|---|---|
| Email, Fax, or U.S Mail[2] | 10/01/18 | ATF/Diamondback | ATF Form 3301.12 reporting the sale of multiple rifles [Century Arms 7.62x39mm rifle & Romarm Cugir WASR 10 7.62x39mm rifle] to Denise Faye Burress on October 1, 2018, knowing or having reason to know that the ATF |

[2] The ATF Form 3301.12 may be submitted to the National Tracing Center via email at multiplelonggunssalesforms@atf.gov, fax to (877 283-0288, or U.S. Mail to the U.S. Department of Justice, NTC, 244 Needy Road, Martinsburg WV 25405. *See* https://www.atf.gov/resource-center/docs/guide/qas-report-multiple-sale-or-other-disposition-certain-rifles/download

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd, Suite 200
Tucson, AZ 85716-5300

| | | | Form 4473 falsely stated and represented that Denise Faye Burress was the actual buyer of the rifles and was not buying them on behalf of another person. |
|---|---|---|---|
| Email, Fax, or U.S Mail | 10/17/19 | ATF/The Hub | ATF Form 3301.12 reporting the sale of multiple rifles [Radical Firearms RF 15 multi-caliber rifle & Riley Defense RAK47 7.62x39mm rifle] to Fernando Palomares, Jr. on October 17, 2019, knowing or having reason to know that the ATF Form 4473 falsely stated and represented that Fernando Palomares, Jr. was the actual buyer of the rifles and was not buying them on behalf of another person. |
| Email, Fax, or U.S Mail | 9/18/18 | ATF/SnG Tactical | ATF Form 3301.12 reporting the sale of multiple rifles [2 Century Arms RAS47 7.62x39mm rifles] to Michael Anthony Sweigart on September 18, 2018, knowing or having reason to know that the ATF Form 4473 falsely stated and represented that Michael Anthony Sweigart was the actual buyer of the rifles and was not buying them on behalf of another person. |

| Email, Fax, or U.S Mail | 9/19/18 | ATF/SnG Tactical | ATF Form 3301.12 reporting the sale of multiple rifles [Century Arms RAS47 7.62x39mm rifle & Romarm Cugir WASR10, 7.62x39mm  rifle] to Michael Anthony Sweigart on September 10, 2018, knowing or having reason to know that the ATF Form 4473 falsely stated and represented that Michael Anthony Sweigart was the actual buyer of the rifles and was not buying them on behalf of another person. |
|---|---|---|---|
| Email, Fax, or U.S Mail | 9/25/18 | ATF/SnG Tactical | ATF Form 3301.12 reporting the sale of multiple rifles [2 Century Arms RAS47 7.62x39mm rifles] to Michael Anthony Sweigart on September 25, 2018, knowing or having reason to know that the ATF Form 4473 falsely stated and represented that Michael Anthony Sweigart was the actual buyer of the rifles and was not buying them on behalf of another person. |
| Email, Fax, or U.S Mail | 9/28/18 | ATF/SnG Tactical | ATF Form 3301.12 reporting the sale of multiple rifles [2 Century Arms RAS47 7.62x39mm rifles] to Denise Faye Burress on September 28, 2018, knowing or having reason to know that the ATF Form |

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd, Suite 200
Tucson, AZ 85716-5300

| | | | 4473 falsely stated and represented that Denise Faye Burress was the actual buyer of the rifles and was not buying them on behalf of another person. |
|---|---|---|---|
| Email, Fax, or U.S Mail | 10/5/18 | ATF/SnG Tactical | ATF Form 3301.12 reporting the sale of multiple rifles [2 Century Arms RAS47 7.62x39mm rifles] to Tamra Michelle Potts on October 5, 2018, knowing or having reason to know that the ATF Form 4473 falsely stated and represented that Tamra Michelle Potts was the actual buyer of the rifles and was not buying them on behalf of another person. |
| Email, Fax, or U.S Mail | 11/27/19 | ATF/SnG Tactical | ATF Form 3301.12 reporting the sale of multiple rifles [Radom/Pioneer Arms Sporter 7.62x39mm rifle & Romarm/Cugir WASR 7.62x39mm rifle] to Fernando Palomares, Jr. on November 27, 2019, knowing or having reason to know that the ATF Form 4473 falsely stated and represented that Fernando Palomares, Jr. was the actual buyer of the rifles and was not buying them on behalf of another person. |

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

I:\FILES\DOCS\ESTA01\20220809\EMAIL\18P8460.DOCX

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd, Suite 200
Tucson, AZ 85716-5300

| Email, Fax, or U.S Mail | 1/24/20 | ATF/SnG Tactical | ATF Form 3301.12 reporting the sale of multiple rifles [Century Arms VSKA 7.62x39mm rifle & Radom/Pioneer Arms Sporter 7.62x39mm rifle] to Fernando Palomares, Jr. on January 24, 2020, knowing or having reason to know that the ATF Form 4473 falsely stated and represented that Fernando Palomares, Jr. was the actual buyer of the rifles and was not buying them on behalf of another person. |
| --- | --- | --- | --- |
| Email, Fax, or U.S Mail | 2/16/20 | ATF/SnG Tactical | ATF Form 3301.12 reporting the sale of multiple rifles [ ] to Fernando Palomares, Jr. on February 16, 2020, knowing or having reason to know that the ATF Form 4473 falsely stated and represented that Fernando Palomares, Jr. was the actual buyer of the rifles and was not buying them on behalf of another person. |
| Email, Fax, or U.S Mail | 1/24/20 | ATF/SnG Tactical | ATF Form 3301.12 reporting the sale of multiple rifles [2 Radom/Pioneer Arms Sporter 7.62x39mm rifles] to Kyle Rene Fazlollah. on January 24, 2020, knowing or having reason to know that the ATF Form 4473 falsely stated and represented that Kyle Rene |

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

| | | | | Fazlollah was the actual buyer of the rifles and was not buying them on behalf of another person. |
|---|---|---|---|---|
| Email, Fax, or U.S Mail | 02/15/20 | ATF/SnG Tactical | | ATF Form 3301.12 reporting the sale of multiple rifles [FA Cugir M&M Inc. M10-762 7.62x39mm rifle & Century Arms M70AB2 7.62x39mm rifle] to Elizar Olivares. on February 15, 2020, knowing or having reason to know that the ATF Form 4473 falsely stated and represented that Elizar Olivares was the actual buyer of the rifles and was not buying them on behalf of another person. |
| Fax, Email, or U.S. Mail | 05/24/18 | ATF/Sprague's Sports | | ATF Form 3301.4 reporting the sale of multiple pistols and revolvers [2 Glock Pistols] to Daniel Langstaff Mirazo on May 24, 2018, knowing or having reason to know that the ATF Form 4473 falsely stated and represented that Daniel Langstaff Mirazo was the actual buyer of the rifles and was not buying them on behalf of another person. |
| Fax, Email, or U.S. Mail | 2/20/19 | ATF/Diamondback | | ATF Form 3301.4 reporting the sale of multiple pistols and revolvers [Browning Buckmark .22 caliber pistol & Ruger LCP .380 caliber pistol] to Daniel Pacheco on |

| | | | |
|---|---|---|---|
| | | | February 20, 2019, knowing or having reason to know that the ATF Form 4473 falsely stated and represented that x was the actual buyer of the rifles and was not buying them on behalf of another person. |
| Fax, Email, or U.S. Mail | 1/18/22 | ATF/SnG Tactical | ATF Form 3301.4 reporting the sale of multiple pistols and revolvers [3 Glock Pistols] to Nicholas Meraz on January 18, 2022, knowing or having reason to know that the ATF Form 4473 falsely stated and represented that Nicolas Meraz was the actual buyer of the rifles and was not buying them on behalf of another person. |

192.    On information and belief, some of the wire communications described above occurred between persons in the same state but crossed interstate borders by reason of the technology and other mechanisms used to transmit the communication.

193.    Each and every use of the U.S. Postal Service or interstate wires described above was committed by each Defendant with the specific intent to defraud the U.S. Government or for obtaining the money or property (e.g., the profits from illegal guns sales) by means of false or fraudulent pretenses or representations.

DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

194.   It is not possible for the Government to plead with particularity all instances of mail and wire fraud that advanced, furthered, executed, and concealed the scheme because the particulars of many such communications are within the exclusive control and within the exclusive knowledge of Defendants.

195.   Each Defendant's acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343 constitute racketeering activity as defined by 18 U.S.C. § 1961(1)(B).

196.   The Government suffered, continues to suffer, and will suffer substantial injures by reason of each Defendant's acts of mail and wire fraud.

## B.   Each Defendant Systematically Makes Straw Sales of Firearms—18 U.S.C. § 932.

197.   For many years each Defendant's policy has been to knowingly participate in straw sales of weapons favored by the cartels and in circumstances in which Mexico was the likely destination of the guns. Each Defendant has continued that policy from and after June 25, 2022.

198.   Each Defendant violated 18 U.S.C. § 932(b) by knowingly participating in gun traffickers' purchases of firearms in or otherwise affecting interstate or foreign commerce. Each Defendant knowingly participated in those transactions knowing or having reasonable cause to believe that the straw purchasers:

a.   met one or more of the criteria listed in 18 U.S.C. § 922(d),

I:\FILES\DOCS\ESTA01\20220809\EMAIL\18P8460.DOCX

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

b.   intended to use, carry, possess, or sell, or otherwise dispose of the firearm in furtherance of a felony, a federal crime of terrorism, or a drug trafficking crime, or

c.   intended to sell or otherwise dispose of the firearm to a person described in 18 U.S.C. § 932(b)(1) or (2).

199.   Each Defendant's acts of straw selling of firearms in violation of 18 U.S.C. § 932(b) constitute racketeering activity as defined by 18 U.S.C. § 1961(1)(B).

200.   The Government suffered, continues to suffer, and will suffer substantial injures by reason of each Defendant's acts of straw selling of firearms.

## C.   Each Defendant Systematically Participates in Trafficking Firearms—18 U.S.C. § 933(a).

201.   Each Defendant violated 18 U.S.C. § 933(a) by shipping, transporting, causing to be transported, or otherwise disposing of any firearm to another person in or otherwise affecting interstate or foreign commerce with knowledge or reasonable cause to believe that the use, carrying, or possession of the firearm by the recipient would constitute a felony as defined in 18 U.S.C. § 933(a).

202.   Each Defendant's conduct in violation of 18 U.S.C. § 933 includes, but is not limited to, the conduct set forth in detail above.

203.   Each Defendant's acts of trafficking of firearms in violation of 18 U.S.C. § 933(a) constitute racketeering activity as defined by 18 U.S.C. § 1961(1)(B).

DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd, Suite 200
Tucson, AZ 85716-5300

204.   The Government suffered, continues to suffer, and will suffer substantial injures by reason of each Defendant's acts of participation in straw purchasing of firearms.

### D.   Each Defendant Systematically Engages in Money Laundering—18 U.S.C. § 1956(a)(3).

205.   As set forth above, each Defendant violated the following federal statutes: 18 U.S.C. §§ 1341 (mail fraud), and 1343 (wire fraud), 932 (straw purchasing of firearms), and 933 (trafficking in firearms). All of these violations constitute "specified unlawful activity," and the transactions concerning these activities are regulated by the federal money laundering statute. 18 U.S.C. § 1956(c)(7)(A).

206.   Each Defendant violated 18 U.S.C. § 1956(a)(3)(A) by intending to promote the carrying on of its specified unlawful activities and by conducting or attempting to conduct financial transactions involving property represented to be the proceeds of specified unlawful activities or property used to conduct or facilitate specified unlawful activities.

207.   Each Defendant violated 18 U.S.C. § 1956(a)(3)(B) by intending to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of specified unlawful activity and by conducting or attempting to conduct financial transactions involving property represented to be the

DECONCINI McDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

proceeds of specified unlawful activities or property used to conduct or facilitate specified unlawful activities.

208.    Each Defendant's conduct in violation of 18 U.S.C. § 1956(a)(3) includes, but is not limited to, the conduct set forth in detail above.

209.    Not all of each Defendant's sales prices for its unlawful sales are known at this time, each Defendant likely laundered in the tens of thousands of dollars, if not hundreds of thousands, of drug cartel money. For example, a Barrett .50 BMG caliber rifle, like the one SnG Tactical sold Isaias Delgado on March 7, 2019, currently retails online at SnG Tactical's website for between $8,852.70 and $12,414.00. *See* https://www.sngtactical.com/s/barrett. As noted in detail above, Defendants Ammo AZ, The Hub, and Sprague's Sports have also made unlawful sales of Barrett .50 caliber rifles.

210.    Each Defendant decided to make a part of its operating business plan to sell guns as a means of laundering criminal proceeds—that is, to sell guns to and through criminal organizations and to accept criminal proceeds in payment for guns.

211.    Each Defendant created and participated in a circuitous and clandestine distribution chain to sell its guns to organizations engaged in illicit activities and to receive unlawful proceeds as payment for its products, while concealing its activities from U.S. law enforcement.

DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

212. Each Defendant money launderer uses the money from its unlawful straw sales to purchase more guns to sell to the straw purchasers, who in turn use the guns to run their criminal organizations and obtain more money to buy guns— and the cycle repeats itself. In the end, each Defendant received—and continues to receive—the proceeds of narcotics sales in U.S. and Mexico in exchange for its guns. And they know it.

213. Each Defendant created and operates this enterprise because participation in the money laundering enterprise allows Defendants to sell into a huge market. Each Defendant's operations allow the cartels and other criminals to buy large quantities of guns which are then smuggled into and used to devastating effect in Mexico.

214. Each Defendant knows that its customers are involved in the drug trade— because this has been revealed to them repeatedly by U.S. law enforcement agencies. In the end, Defendants are not simply innocent bystanders at a gun smuggling scene. They are the directors of and active participants in the money laundering enterprises, and are themselves money launderers.

215. Each Defendant's acts of money laundering in violation of 18 U.S.C. § 1956(a)(3) constitute racketeering activity as defined by 18 U.S.C. § 1961(1)(B).

216. The Government suffered, continues to suffer, and will suffer substantial injures by reason of Defendants' acts of straw purchasing of firearms.

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

## IX.   EACH DEFENDANT VIOLATES THE CONSUMER FRAUD STATUTE.

217.   Each Defendant's marketing and sales of these weapons of war is also independently unlawful under Arizona state law. Each Defendant violated Arizona's Consumer Fraud Act ("CFA"), by selling guns into the commercial market while characterizing and promoting them as military-style weapons. CFA applies to such false and reckless marketing even where the resulting harm occurs outside of the state but the marketing originated from within the state.

218.   The tort law of Mexico and of U.S. states, independent of obligations under CFA, also requires Defendants to avoid inflammatory or reckless marketing tactics likely to attract and motivate criminals or other dangerous users of their guns.

### 1.   Diamondback

219.   Defendant Diamondback markets and sells assault rifles like the Zastava ZPAPM70 semi-automatic assault rifle, the FN America FFN15 Patrol Carbine AR-15 style rifle, and the MAUSER MP-40 semi-automatic assault rifle from its base of operations in Tucson, Arizona. It is thus subject to Arizona's CFA, which prohibits "any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact." A.R.S. 44-1522.

220.   On its website, Defendant Diamondback advertises these assault weapons using war imagery, for example by directly comparing them to "the official

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd. Suite 200
Tucson, AZ 85716-5300

weapon of many armies all over the world," "firearms built to withstand the varied and unrelenting harsh conditions of battlefields around the world," or "the original WII firearm the MAUSER-MP40" machine gun—or by encouraging shoppers to "add something special to your arsenal." Here are examples:



**$1004.22** ...

Zastava, ZPAPM70, Semi-automatic, 7.62X39mm, 16.5" Chrome lined Barrel, Blued, Right Hand, 30Rd,Black Polymer Furniture, Hogue Handguards, Tango Down Grip

Quantity: [ 1 ]   **ADD TO CART**

Product Details | Product Specifications

The semi-automatic ZPAPM70 series sporting rifle was created on the operating principle of the M70 automatic rifle. Over the decades, Zastava has produced millions of these durable rifles as the official weapon of many armies all over the world. Capable of functioning in all environments, its lightweight, rugged, reliable, no-nonsense features make the ZPAPM70 an excellent excellent addition to your hunting and sporting rifle collection.

https://store.dbackshootingsports.com/rifles/semi-automatic-rifles/zas-zpapm70-ak-762x39mm-blk-poly-hogue-handguard-29

DECONCINI McDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300



**$1187.43** ...

FN America, FFN15 Patrol Carbine, Semi-automatic, AR, 223 Remington, 556NATO, 16", Black, A2 Grip, 30 Round, Flip Up Rear, Hard Coat Anodized, 6 Position Collapsible A2 Stock, Magpul MOE MLOK Handguard

Quantity: [ 1 ]   **ADD TO CART**

Product Details     Product Specifications

Based on firearms built to withstand the varied and unrelentingly harsh conditions of battlefields around the world, FN brings you the FN 15 Patrol. It features a Magpul MOE handguard, M4 collapsible buttstock and fixed A2 front sight.

https://store.dbackshootingsports.com/rifles/semi-automatic-rifles/fn-fn15-carbine-mlok-556-16-30rd845737013103

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

**$474.27** *

## BLG MAUSER MP-40 22LR 9.96 23RD

Quantity:

[ 1 ]

**ADD TO CART**

Product Details   Product Specifications

Own a piece of history without the expensive price tag. The MAUSER MP-40 comes in a cost-effective .22 rimfire package! - Manufactured as a pistol with no stock this replica classic firearm is the closest version of an MP-40 available on the market today. While maintaining a very close overall appearance to the original WWII firearm the MAUSER-MP40 is manufactured with undeniable attention to detail and quality craftsmanship. - Caliber 22 LR - Barrel Length 9.96 - Overall Length 32.48 - Rate of Twist 1 in 16 - Magazine Capacity 23 - Weight 7 1/4 lb

https://store.dbackshootingsports.com/rifles/semi-automatic-rifles/blg-mauser-mp-40-22lr-996-23rd-88

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300



**$2016.50** ...

Steyr AUGM1BLKEXT
AUG A3 M1 with Extended
Rail 223 Rem,5.56 NATO
16" 30+1 Black Fixed
Bullpup Stock

Quantity:

| 1 |

**ADD TO CART**

Product Details    Product Specifications

The iconic bullpup-style Steyr AUG has been one of the most
recognizable rifles in the world since its adoption by the Austrian army in
1977 and is now available for civilian use as the Steyr AUG A3 M1. The
short-stroke gas-piston operation of the AUG runs exceptionally cleaner
by nature because all of the operational exhaust gas vents out of the
front of the rifle. The AUG A3 M1 has all the classic features and
benefits that established it as the pinnacle of modern rifle design. It also
features a quick-change barrel with a collapsible forward grip as well as
a two-position cross-bolt safety that locks the trigger. This firearm is
chambered in 223 Rem/5.56 NATO, has a 16" barrel with a black metal
finish, a black synthetic stock, and has a extended rail for optics.

https://store.dbackshootingsports.com/rifles/semi-automatic-rifles/steyr-
augm1blkext-aug-a3-m1-with-extended-rail-223-rem556-nato-16-301-black-fixed-
bullpup-stock



# $800.00 ...

Beretta, CX4 Storm, Semi-automatic, 9MM, 16.5" Barrel, Black, 92 Series Magazine, Polymer Stock, 20Rd, 1 Magazine

Quantity:

[ 1 ]

**ADD TO CART**

Product Details | Product Specifications

The CX4 is a semiauto pistol-caliber carbine designed to give you the familiar controls of your favorite Beretta combat handgun. The cold-hammer forged barrel delivers easy to use, ultra-reliable and low-recoil, its versatility and accessory options have made it a favorite of recreational shooters. The operating handle, safety and magazine release are reversible and the case ejection can also be switched from right to left. The length of pull is adjustable (one spacer included), making the CX4 easily and intuitively come up to the shoulder of most shooters. The aperture and post sights are user-adjustable, meaning that you can train with your favorite brand of ammo without taking the carbine to a gunsmith.

https://store.dbackshootingsports.com/rifles/semi-automatic-rifles/bta-cx4-storm-92mag-9mm-20rdjx49221m

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300



**$1353.14** …

**BLACK RAIN ORDNANCE SPEC15+5.56MM 16 CRYT SKULLS**

Quantity:

[ 1 ]

**ADD TO CART**

Product Details | Product Specifications

Black Rain Ordnance has made a promise to make your firearm exactly that, YOUR firearm. With the addition of the Spec + Series, you have over 100 different build configurations and 21 different finish options to choose from. If you are looking to add something special to your arsenal, without breaking the bank. The all new Black Rain Ordnance Spec + Series would be a good choice for you.

https://store.dbackshootingsports.com/rifles/semi-automatic-rifles/br-spec15556mm-16-cryt-skulls

221.    Defendant Diamondback has hosted Tactical Response Fighting Rifle courses that it heavily advertises on social media platforms such as Facebook. The course description reads: "You know how to shoot your rifle or subgun now let us teach you how to FIGHT with it!" Components of the course include "battlesight zero," "urban applications," "team drills," "multiple targets," and "the tactics required to employ this potent tool in combat." Here are examples:

DECONCINI McDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd, Suite 200
Tucson, AZ 85716-5300

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**Diamondback Shooting Sports**

May 15 · 🌐                                                  ···

We are hosting Tactical Response's Fighting Rifle, Advanced Fighting Rifle, and Immediate Action Medical this Oct!

We believe mindset and training saves lives! Always add as many tools into the tool box as possible!

https://www.tacticalresponse.com/.../fighting–rifle...

https://www.tacticalresponse.com/.../advanced-fighting...

https://www.tacticalresponse.com/.../immediate-action...



TACTICALRESPONSE.COM
**Fighting Rifle®**
Tactical Response does not allow the recording of any video or audio during...

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

You know how to shoot your rifle or subgun now let us teach you how to FIGHT with it! This course is far more advanced than any other rifle course you can attend (with the exception of our advanced course) and covers trajectory, battlesight zero, gear set-up, sling configurations, transitions to pistol, use of cover and concealment, practical ready and firing positions, close- and medium-range snap shooting, weapons handling, urban applications, team drills, firing while moving, multiple targets, plus the tactics required to employ this potent tool in combat. Every student leaves this class with empty mags, a red hot rifle, and a smile from ear to ear! This is one of our most popular courses.

https://www.tacticalresponse.com/collections/training/products/fighting-rifle?variant=39937432584281&fbclid=IwAR0_JEUYa-jsyUeK2Uyko76q_yQdOpTtdfvBdXX4P5p6xgWUMZnvdOHEZeY

222. Defendant Diamondback also hosts its own monthly training courses which it advertises on social media and on its website. It markets the courses in militaristic terms—they teach shooters how to "set[] a proper battle sight zero;" "introduction to small team tactics;" "CQB [close quarter battle] drills;" and "battle drills." Here are examples:

# COURSE INFORMATION

The **Introduction to Carbine Level 1** course is 3-4 hours of ALL range instruction. Covering our safe gun handling procedures for a cold range, we then move into slow fire for accuracy and setting a proper battle sight zero. Then we move out to the firing line to cover all loading and unloading procedures, manipulation, malfunctions, and defensive shooting skills with carbines.

http://dbacktraining.com/courses/intro-to-carbine-course/

# COURSE INFORMATION

Our **Carbine level 2 courses** focus on utilization of modern rifle platforms (AR/AK) as a primary and handguns as a secondary.

**Combative Carbine 2;** Our level 2 carbine course focuses on utilizing a carbine as a primary weapon system, with a handgun as a secondary weapon. We cover malfunction drills, transitioning to/from the handgun, turn and shoot drills, moving while shooting, speed v accuracy, utilization of cover and concealment, and introduction to small team tactics. .

http://dbacktraining.com/courses/combative-carbine/

# WHAT THIS COURSE COVERS

- Gear use and set up
- Fundamentals revisited (handgun and carbine)
- Several Fast-n-Slow drills
- Utilizing handheld flashlight methods
- Utilizing weapon mounted lights
- Using darkness as cover
- Multiple Target engagements
- How to manipulate a gun in darkness
- Vehicle Ops
- CQB Drills
- Team Drills
- Low-Light/No-Light operations

http://dbacktraining.com/courses/combatative-carbine-handgun-night-shoot/

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd, Suite 200
Tucson, AZ 85716-5300

I:\FILES\DOCS\ESTA01\20220809\EMAIL\18P8460.DOCX

**Combative Carbine 3**; Our most intensive all around course. Students run and gun on our 180 degree range, utilizing many techniques to stress the shooter as much as possible, your skills will be challenged to either bend or break. Our main focus in this course is small team tactics, battle drills, communication, physical stresses and cognitive processing ability, moving while shooting, cover and concealment, and close quarter combat tactics.

http://dbacktraining.com/courses/combative-carbine-lvl-3/

### 2.     SnG Tactical

223.    Defendant SnG Tactical markets and sells assault rifles like the Zastava Arms USA ZPAPM70 AK-47 rifle from its base of operations in Tucson, Arizona. It is thus subject to Arizona's CFA, which prohibits the unethical, oppressive, immoral, and unscrupulous manner in which Defendant SnG Tactical advertises its weapons.

224.    On its website, Defendant SnG Tactical advertises this rifle using military imagery, likening it to "the main battle rifle for many country's [sic]." Here are examples:

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd. Suite 200
Tucson, AZ 85716-5300

I:\FILES\DOCS\ESTA01\20220809\EMAIL\18P8460.DOCX

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Zastava Arms USA ZPAPM70 AK 47 Rifle with Zhukov Stock from Magpul. Over the past few decades, Zastava Arms factory has built millions Kalashnikov patterned rifles and has been adopted as the main battle rifle for many country's. Zastava Arms USA was formed in 2018 as the US wing of the famous Zastava Arsenal. Zastava Arms was founded in 1853 & is proud to be one of the few companies in the world that can provide 165 years of experience in making firearms. They have been able to combine Old school experience with new modern technology to provide a variety of quality rifles and pistols. With this new US location they can extend factory service and parts for the US shooting community. The ZPAP M70 1.5mm rifle has all of the hard working features you are looking for on the AK 47 sporting rifle. This ZPAP model has an impressive list of features like Hammer Forged Chrome Lined barrel, Forged barrel trunnions, properly heat treat matched fire control & bolt carrier groups and more.This rifle also has the thicker 1.5 mm receiver with Bulged Trunnion that the Serbian rifles are well know for. All of this in a beautifully finished rifle backed up by the Zastava Arsenal name. Capable of functioning in all environments, its lightweight, rugged, reliable, no-nonsense features make the ZPAPM70 an excellent addition to your hunting and sporting rifle collection. Comes with 1 -30 round magazine. 7.62x39 Semi Automatic 1.5MM Receiver Buldged Trunnion Threaded 14x1 LH Slant Brake Barrel  16.3" Cold Hammer Forged, Chrome-Lined Bolt hold open notch on safety selector Accepts detachable AK-47 type mags and drums  Hogue Handguard Magpul Zhukov Stock Magpul MOE AK Grip Overall Length:  37" Weight:  7.9 lbs One Year Zastava Arms USA Warranty  30 Round Capacity

https://www.sngtactical.com/cproduct/10737/ZPAPM70762X39BKMAGPUL30RD

225.   Defendant SnG Tactical promoted its business on social media by advertising military surplus items to customers and using the war-related hashtags #wwi, #wwii, #vietnam, and #desertstorm:




sngtactical  ·  Follow



sngtactical Old-School Military Surplus! You don't See this Every Day!
NOVEMBER 20th 9am-3pm is our WAREHOUSE SALE! This is only a small TEASER of the great items that will be available! SAVE THE DATE!
#militarycollectibles #militarysurplus #wwi #wwii #vietnam #desertstorm #comblock #ak47 #ar15 #tucson #arizona
46w






69 likes
NOVEMBER 14, 2021

I:\FILES\DOCS\ESTA01\20220809\EMAIL\18P8460.DOCX

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd, Suite 200
Tucson, AZ 85716-5300

### 3.    Ammo AZ

226.   Defendant Ammo-AZ markets and sells assault rifles like the Zastava ZPAPM70 AK-47 rifle, the FN 15 Patrol, and the Steyr AUG A3 M1 from its base of operations in Phoenix, Arizona. It is thus subject to Arizona's CFA, which prohibits the unethical, oppressive, immoral, and unscrupulous manner in which Defendant Ammo AZ advertises its weapons.

227.   On its website, Defendant Ammo AZ advertises these assault weapons using war imagery by, for instance, directly comparing them to "the official weapon of many armies all over the world," "firearms built to withstand the varied and unrelenting harsh conditions of battlefields around the world." Here are examples:

The semi-automatic ZPAPM70 series sporting rifle was created on the operating principle of the M70 automatic rifle. Over the decades, Zastava has produced millions of these durable rifles as the official weapon of many armies all over the world. Capable of functioning in all environments, its lightweight, rugged, reliable, no-nonsense features make the ZPAPM70 an excellent excellent addition to your hunting and sporting rifle collection.

https://www.ammoaz.com/rifles/semi-automatic-rifles/zas-zpapm70-ak-762x39mm-blk-poly-hogue-handguard-29

Based on firearms built to withstand the varied and unrelentingly harsh conditions of battlefields around the world, FN brings you the FN 15 Patrol. It features a Magpul MOE handguard, M4 collapsible buttstock and fixed A2 front sight.

https://www.ammoaz.com/rifles/semi-automatic-rifles/fn-fn15-carbine-mlok-556-16-30rd845737013103

The iconic bullpup-style Steyr AUG has been one of the most recognizable rifles in the world since its adoption by the Austrian army in 1977 and is now available for civilian use as the Steyr AUG A3 M1. The short-stroke gas-piston operation of the AUG runs exceptionally cleaner by nature because all of the operational exhaust gas vents out of the front of the rifle. The AUG A3 M1 has all the classic features and benefits that established it as the pinnacle of modern rifle design. It also features a quick-change barrel with a collapsible forward grip as well as a two-position cross-bolt safety that locks the trigger. This firearm is chambered in 223 Rem/5.56 NATO, has a 16" barrel with a black metal finish, a black synthetic stock, and has a extended rail for optics.

https://www.ammoaz.com/rifles/semi-automatic-rifles/steyr-augm1blkext-aug-a3-m1-with-extended-rail-223-rem556-nato-16-301-black-fixed-bullpup-stock

The CX4 is a semiauto pistol-caliber carbine designed to give you the familiar controls of your favorite Beretta combat handgun. The cold-hammer forged barrel delivers easy to use, ultra-reliable and low-recoil, its versatility and accessory options have made it a favorite of recreational shooters. The operating handle, safety and magazine release are reversible and the case ejection can also be switched from right to left. The length of pull is adjustable (one spacer included), making the CX4 easily and intuitively come up to the shoulder of most shooters. The aperture and post sights are user-adjustable, meaning that you can train with your favorite brand of ammo without taking the carbine to a gunsmith.

https://www.ammoaz.com/rifles/semi-automatic-rifles/bta-cx4-storm-92mag-9mm-20rdjx49221m

228.   On its website, Defendant Ammo AZ advertises and sells semi-automatic assault rifles and receivers bearing violent markings such as "War," "God Wills It," and "LET IT RAIN." Here are examples:

The Crusader is a great choice for tactical response or competition. This light weight modern sporting rifle features the Crusader shield in place of the normal spider. Fire control markings read "Peace", "War", and "God Wills It". This rifle features a 12" M-LOK rail system over a free floating 14.5" barrel with pinned and welded Spikes Tactical Dynacomp to satisfy legal length restrictions. The rifle has a soft-shooting mid length gas system and enhanced lower parts kit with the Spikes Tactical Battle Trigger.

https://www.ammoaz.com/rifles/semi-automatic-rifles/spikes-tactical-crusader-semi-automatic-rifle-223-rem556nato-16-145-with-pinned-brake-black-finish-magpul-ctr-stock-30rd-w12-mlok-rail-and-dynacomp-2-str5525-m2d

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

The Black Rain Fission rifle features aa aluminum receiver with a Flat Dark Earth Battleworn Cerakote finish, "LET IT RAIN" engraved on the dust cover, Salt Bath Nitride Coated Spec15 BCG, Direct Impingement gas system 750 Non-Adjustable Gas Block, Spec15 Forged Charge Handle, 15" M-LOK Slim aluminum hand-guard and a Magpul MOE black grip and stock.

https://www.ammoaz.com/rifles/semi-automatic-rifles/bro-bross2020frfde-556-fission-16-battleworn-fde

### 4.    Sprague's Sports

229.    Defendant Sprague's Sports markets and sells assault rifles like the Springfield Armory M1A Scout Squad rifle, Daniel Defense M4A1, Zastava M90, and FN 15 Patrol from its base of operations in Yuma, Arizona. It is thus subject to Arizona's CFA, which prohibits the unethical, oppressive, immoral, and unscrupulous manner in which Defendant Sprague's Sports advertised its weapons.

230.    Defendant Sprague's Sports advertises these assault weapons using war and law enforcement imagery—for example, marketing the firearm as "a law enforcement favorite;" "the same high-performance firearm we offer the U.S. Military;" "created on the operating principle of the M70 automatic rifle;" and "built to withstand the varied and unrelenting harsh conditions of battlefields around the world." Here are examples:

Fast becoming a law enforcement favorite, the M1A Scout Squad rifle with forward mounted optical sight base provides an excellent platform for the aimpoint military sight. Benefits are vastly improved target acquisition and unobstructed access to the receiver mechanism. Additional features include a quick handling 18" barrel, proprietary muzzle stabilizer blue and black matte finish, and black and mossy oak camouflage fiberglass or American walnut stock.

https://shop.spragues.com/rifles/semi-automatic-rifles/springfield-armory-m1a-scout-squad-sa-308-win-18-101-walnut-stk-blue-3767821

DECONCINI McDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd, Suite 200
Tucson, AZ 85716-5300

This combat-proven, fast-handling rifle is the same high-performance firearm we offer the U.S. Military. It features a 14.5" barrel inside the M4A1 RIS II Rail System that's been trusted for use by U.S. Special Operations Command (SOCOM) since 2006. -LOWER RECEIVER: Mil-Spec with Enhanced Flared Magazine Well and Rear Receiver QD Swivel Attachment Point. CNC Machined of 7075-T6 Aluminum, Type III Hard Coat Anodized-UPPER RECEIVER: Mil-Spec with Indexing Marks and M4 Feed Ramps. CNC Machined of 7075-T6 Aluminum, Type III Hard Coat Anodized-BARREL: Chrome Moly Vanadium Steel, Cold Hammer Forged, 1:7 Twist, 14.5" M4 Profile, Chrome Lined, Mil-Spec Heavy Phosphate Coated, and HP/MPI Tested-GAS SYSTEM: Pinned Low Profile Gas Block CNC Machined of 4140 hardened steel with Mil-Spec Heavy Phosphate Coating, Carbine length, Direct Impingement-MUZZLE DEVICE: Pinned and Welded Daniel Defense Flash Suppressor, 17-4 PH Stainless Steel, Salt Bath Nitride Finished-BOLT CARRIER GROUP: M16 Profile, Mil-Spec MP Tested, Chrome Lined, Properly Staked Gas Key-BUFFER: H Buffer-SIGHTS: Sold Separately-HANDGUARD: Daniel Defense M4A1 Rail Interface System (RIS) II, CNC Machined of 6061-T6 Aluminum, Type III Hard Coat Anodized FDE-RECEIVER EXTENSION: 6 Position Mil-Spec 7075-T6 Aluminum-BUTTSTOCK: Daniel Defense Buttstock, Glass Filled Polymer with Soft Touch Overmolding-PISTOL GRIP: Daniel Defense Pistol Grip, Glass Filled Polymer with Soft Touch Overmolding-RAIL PANELS:Daniel Defense Rail Panels made from Santoprene, heat resistant to 300 Degrees Fahrenheit-Made in the USA!

https://shop.spragues.com/rifles/semi-automatic-rifles/daniel-defense-m4a1-3770524

The semi-automatic PAP M90 series sporting rifle was created on the operating principle of the M70 automatic rifle. Chambered in the popular 5.56×45/.223 caliber, the PAP M90 is an accurate, easy to control rifle platform for shooters of all types. It comes standard with an adjustable gas system to tune the rifle to various extreme environments. Capable of functioning in all environments, its lightweight, rugged, reliable, no-nonsense features make the PAP M90 an excellent excellent addition to your hunting and sporting rifle collection.

https://shop.spragues.com/rifles/semi-automatic-rifles/zast-pap-m90-556-zhukov-stk-30rd273312

Based on firearms built to withstand the varied and unrelentingly harsh conditions of battlefields around the world, FN brings you the FN 15 Patrol. It features a Magpul MOE handguard, M4 collapsible buttstock and fixed A2 front sight.

https://shop.spragues.com/rifles/semi-automatic-rifles/fn-fn15-carbine-mlok-556-16-30rd845737013103

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

### 5.    The Hub

231.   Defendant The Hub markets and sells assault rifles like the Romarm/Pioneer Arms WASR 7.62x39mm rifle, Radical Firearms RF 15 multi-caliber rifle, and Riley Defense RAK47 7.62x39mm rifle from its base of operations in Tucson, Arizona. It is thus subject to Arizona's CFA, which prohibits the unethical, oppressive, immoral, and unscrupulous manner in which Defendant The Hub advertises its weapons.

232.   Defendant The Hub frequently uses military, law enforcement, and violent imagery while marketing its products. Visitors to its website are immediately greeted with the law enforcement phrase "What's your 20?" and its home page prominently features its simulation-based shooting range where a customer can "shoot zombies or act out real-life scenarios that law enforcement and the military use" or "duel" one's friends for "entertainment." It also invites customers to visit and practice shooting fully automatic weapons that are illegal for civilian ownership. Here are examples:

I:\FILES\DOCS\ESTA01\20220809\EMAIL\18P8460.DOCX

DeCONCINI McDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300



The MILO system projects high-quality video or CGI scenarios onto the wall of our training room. You can choose which situations you prefer from our extensive library. You can shoot zombies or act out real-life scenarios that law enforcement and the military use to hone their decision-making skills. You will use a laser pistol to interact with the simulation and the system will directly react to the choices you make. This means that every outcome is different and depends directly on your decisions.

I:\FILES\DOCS\ESTA01\20220809\EMAIL\18P8460.DOCX

DE CONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# ENTERTAINMENT SESSIONS

The Hub's MILO simulator can be a great option for a fun activity to try in Tucson. You and your friends may find yourself in a rut of predictable outings. Our MILO Range is a great way to break out of this. An entertainment session allows you to choose from our selection of VR scenarios. You can fight off zombies or duel one another in a fun and lively MILO entertainment session. Our system allows up to four individuals at one time.

 **The Hub** was live.

July 8 · 🌐

Check out another cool full-auto gun you can see and fire at The Hub



I:\FILES\DOCS\ESTA01\20220809\EMAIL\18P8460.DOCX

DeCONCINI McDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26



**The Hub**
August 31 · 🌐

Not only was the TANGO6T selected by the U.S. Army for both the Squad Designated Marksman Rifle System and for U.S. Special Forces, but it is also the optic of choice for Team SIG World Champion competitive shooters. It is the IDEAL optic for CQB/mid-range tactical engagements, 3 Gun competitions and hunting on bolt action and AR platforms.

#SIG #SIGSAUER #TANGO6T #NEVERSETTLE

233.   Defendant The Hub recently shared a Tweet to its several hundred followers saying "Fuck FedEx" for ensuring its policies do not enable the criminal trafficking in illegal unserialized assault weapons parts.



⤴ **The Hub AZ Retweeted**

**Firearms Policy Coalition** @gunpolicy · Aug 17    ⋯
FUCK @FedEx @FedExHelp @FedExPolicy

> **Keegan Hamilton** ✔ @keegan_hamilton · Aug 17
> Update @VICENews:
>
> Just received a statement from FedEx's spokesperson saying their
> ghost gun policy will change "to make it clear that unserialized frames
> and receivers… are prohibited, consistent with the new rule going into
> effect on Wednesday, August 24, 2022."

234.   Each Defendant violated CFA by selling guns into the commercial

market while characterizing and promoting them as military-style weapons.

## X.   EACH DEFENDANT HAS INFLICTED MASSIVE HARM ON THE GOVERNMENT AND ITS CITIZENS.

235.   Each Defendant has done the opposite of what it knows is needed to

minimize the flow of guns to criminals in Mexico. Among other things, each

Defendants has increased sales of military-style assault weapons and high-capacity

magazines; increased marketing attractive to criminals; and continued to use

unlawful practices such as straw sales that arm criminals in Mexico.

236.   The nature and magnitude of each Defendant's unlawful conduct has

materially and foreseeably contributed to massive injuries to the Government and its

citizens.

I:\FILES\DOCS\ESTA01\20220809\EMAIL\18P8460.DOCX

237.   Each Defendant's deliberate conduct that floods Mexico with its guns causes untold harm to the Government. Were it not for Defendants' wrongful conduct, there would be far fewer guns in Mexico, and far fewer guns in the hands of the cartels.

238.   Life in Mexico would be a far different place if that were so—a safer place, a place in which fewer tax dollars would be spent on preventing and responding to violence and drug trafficking, and more could be spent on education, social services, and other efforts to positively improve lives.

239.   Everyday existence for the Mexican people would be far different if life could be led without dangers and threats from the armed cartels—less fear, more freedom to gather together and enjoy life.

240.   And without the Defendants' supply of crime guns, the less-armed cartels could be controlled and stopped far more easily and effectively. That would help stem the drug trade that kills not only Mexicans but people in other nations, including the United States. And it would reduce the violence that the cartels spread north of the border.

241.   Defendants' wrongful conduct also ends lives, extraordinary and wonderful lives of Mexicans from every walk of life.

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd, Suite 200
Tucson, AZ 85716-5300

**A. Gun Trafficking from the United States Causes Death and Destruction in Mexico.**

242. Gun trafficking from the United States is undeniably linked to predictable but horrendous consequences in Mexico. U.S.-based gun dealers took advantage of the expiration of the U.S. assault-weapons ban in 2004 to significantly increase their sales of guns, particularly of assault weapons. Contemporaneously, illegal gun ownership per capita in Mexico increased tenfold and the homicide rate increased accordingly. From 2004 to 2008 the homicide rate in Mexico increased by 45%.

243. The chart below shows these two intertwined trends—sales of gun in the U.S. and the concomitant increased gun-homicide rate in Mexico:

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300



**Number of Guns Manufactured in the US and Homicides in Mexico 2000-2012**

Legend: ■ # of Homicides — Guns Manufactured (Millions)

244.   The close link between gun trafficking from the U.S. and gun homicides in Mexico is confirmed by the correlation between the increase in U.S. gun sales and the percentage of homicides in Mexico committed with a gun. The percentage of homicides in Mexico committed with a gun rose from 25% in 2004 to more than 69% in 2018. This increase was exactly contemporaneous with increased U.S. gun sales beginning after the expiration of the U.S. assault-weapons ban:

I:\FILES\DOCS\ESTA01\20220809\EMAIL\18P8460.DOCX



245.   The overwhelming majority of these deaths were caused by guns trafficked from the U.S.—including many weapons sold by Defendants. A gun manufactured in the U.S. is more likely to be used to murder a Mexican citizen (17,000 in 2019) than an American citizen (14,000 in 2019). And Mexico has only 40% of the population of the U.S. and only one gun store.

246.   Other empirical and qualitative measures also confirm the strong connection between U.S.-origin gun trafficking and the devastating effects in Mexico.

**B.  Each Defendant's Gun Trafficking Causes Measurable and Compensable Harm to the Government and Its Citizens.**

247.   The epidemic of violence to which each Defendant has materially contributed has strained the Government's resources, including substantial and unusual costs for providing, for example, extraordinary health care, law enforcement and military and services, criminal justice administration, public assistance, and other social services and public programs.

248.   The Government's injuries include, but are not limited to:

a.      Losses caused by the decrease in funding available for other public services because the funds were diverted to services designed to address the effects of Defendants' conduct;

b.      Costs of providing healthcare and medical care;

c.      Costs of additional and specialized training for military and police;

d.      Costs associated with the deaths of and substantial injuries to police and military personnel;

e.      Costs of mental-health services, treatment, counseling, rehabilitation services, and social services to victims and their families;

f.      Costs of law enforcement and public safety relating to the gun-violence epidemic, including but not limited to attempts to stop the flow of trafficked guns, to

arrest and prosecute the criminals who use those guns, to prevent the epidemic from spreading and worsening, and to deal with the escalating levels of crimes caused by the increased availability of trafficked guns;

g.      Costs of the increased burden on the Government's judicial system, including increased security, increased staff, and the increased cost of adjudicating criminal matters due to the escalating levels of crime caused by Defendants' conduct;

h.      Costs of providing care for children whose parents were victims of Defendants' conduct;

i.      Losses from the decreased efficiency and size of the working population in Mexico;

j.      Losses from the diminished property values in the communities affected by Defendants' conduct;

k.      Losses from decreased business investment and economic activity;

l.      Losses incurred by the Government acting in its commercial capacity, including from armed attacks on employees of state-owned enterprises and compensation paid to such victims.

249.   The magnitude of these deaths is so extensive that, beginning in 2005, it significantly affected the life expectancy of all Mexicans. While life expectancy

DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd, Suite 200
Tucson, AZ 85716-5300

increased by approximately .5 years throughout Mexico from 2000 to 2005, it decreased by about the same amount from 2005 to 2010. Since 2010, in this age of technical and medical progress, life expectancy in Mexico has continued to decrease.

250.   The federal police and military in Mexico have been among the victims in the horror story that Defendants have written. From 2006 to 2021, guns were used to kill at least 415 members of the Mexican Federal Police or National Guard, and to wound at least 840 more. The vast majority of these guns were trafficked from the U.S.

251.   From March 2009 to March 2021, U.S.-origin guns were used to kill 25 members of the Mexican military and to wound another 84.

252.   Each Defendant's conduct has also materially contributed to the massive economic harm suffered by the Government and its citizens. In 2019 more than 3.9 million crimes in Mexico were committed with a U.S.-origin gun. About 161,000 of those crimes were committed against businesses.

253.   The Institute for Economics & Peace's *Mexico Peace Index 2020* estimates that the economic impact of violence in Mexico in 2019 was 4.7 trillion pesos, or $238 billion. This is equivalent to 21.3% of Mexico's gross domestic product (GDP); on a per capita basis, it is approximately five times the average monthly salary in Mexico.

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

254.   These costs include: direct costs incurred by the victim, the government, and the perpetrator; indirect costs, including physical and psychological trauma, lost future income, and the impact of fear; and a multiplier effect that calculates the additional economic activity that would have accrued if the direct costs of violence had been avoided.

255.   Homicides comprised 48% of this impact ($114 billion), the vast majority of which (69.3%) were due to gun violence; violent assaults with a firearm imposed significant additional costs. The report documents that "[t]he rise in gun violence has . . . been driven by the illegal import and sale of firearms from the United States."

256.   Another study estimates the Government's costs of trying to prevent the escalating gun violence to be more than an additional 1.5% of GDP.

257.   In addition, although immigration from Mexico to the U.S. has declined substantially over the last decade, the drug violence perpetrated with trafficked weapons nevertheless causes Mexicans to leave their homes to seek out security in the United States.

258.   Even beyond all of these losses, each Defendant's unlawful conduct has materially contributed to reduced overall quality of life in Mexico. Living with the fear of fire from Defendants' guns, and hearing and experiencing that gun violence, diminishes countless aspects of Mexican life—psychological, educational, social,

I:\FILES\DOCS\ESTA01\20220809\EMAIL\18P8460.DOCX

and cultural, as well as economic. To take only one example, in 2020 more than 40% of people in Mexico under the age of 18 heard or saw frequent gunfire.

259.   If Defendants used reasonable care or chose to fully comply with and enforce the law, Defendants would not sell their guns without reasonable measures, and the trafficking of Defendants' guns into Mexico would be significantly reduced or largely eliminated. But each Defendant's response to this knowledge has been to continue to use the sales practices that put guns into the hands of the cartels. Each Defendant unlawfully supplies the criminal market in Mexico because it makes additional sales and profit.

260.   Each Defendant has materially contributed to undermining the social policy, in addition to the aspirations, of the Government of Mexico and its people. The Government and its citizens bear many direct and indirect costs from these harms, including those identified above.

## XI.   CLAIMS FOR RELIEF

**"It is time to say 'enough' to the indiscriminate trafficking of weapons. Let us all make a commitment so that tragedies like this cannot happen again."**

**-Pope Francis**

## COUNT ONE
### (NEGLIGENCE)

261.   The Government hereby repeats and incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

I:\FILES\DOCS\ESTA01\20220809\EMAIL\18P8460.DOCX

DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

262.   Each Defendant has a duty to exercise ordinary and reasonable care in selling and marketing its guns in order to reduce the risk that its guns would be trafficked into Mexico.

263.   Each Defendant knew or chose to be willfully blind to the fact that its sales and marketing of guns posed a serious risk of harm to people in Mexico and to the Government, but it nevertheless continued to sell and market its guns without exercising reasonable care.

264.   Each Defendant's negligence caused the actual injuries alleged above. That negligence is the material and proximate cause of the epidemic of gun-trafficking into, and gun violence within, Mexico.

265.   As a foreseeable and proximate result of each Defendant's negligence, the Government has suffered actual injury and damages including, but not limited to, significant expenses for police, emergency, health, prosecution, corrections, and other services, as well as other extensive economic losses, and its citizens have suffered the losses described above.

## COUNT TWO
### (PUBLIC NUISANCE)

266.   The Government hereby repeats and incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

I:\FILES\DOCS\ESTA01\20220809\EMAIL\18P8460.DOCX

267.   Each Defendant's conduct arms criminals, constituting a dangerous threat to the public in Mexico.

268.   Each Defendant sells and markets guns with reckless disregard for human life and for the peace, tranquility, and economic well-being of the Mexican public. Each Defendant has knowingly refused to monitor and modify its sales practices, making its guns easily available to anyone intent on crime. Each Defendant knew or chose to be willfully blind to the fact that it facilitates and encourages easy access by persons intent on murder, mayhem, or other crimes, including illegal purchasers who foreseeably traffic the guns into Mexico. Each Defendant's conduct has thereby created and contributed to a public nuisance by unreasonably interfering with public safety and health and undermining Mexico's gun laws, resulting in the specific and particularized injuries suffered by the Government and its citizens.

269.   The Government and its citizens have a common right to be free from conduct that creates unreasonable risk to the public health, welfare, and safety, and to be free from conduct that creates a disturbance and reasonable apprehension of danger to person and property.

270.   Each Defendant intentionally and recklessly markets and sells guns that Defendant knows, or reasonably should know, will be obtained by persons for criminal purposes, causing hundreds or thousands of its guns to be possessed and used in Mexico illegally. Each Defendant materially contributes to an elevated level

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

of crime, death, and injuries to Mexican citizens, and a higher level of fear, discomfort, and inconvenience to the citizens of Mexico.

271.   As a result of the continued use and possession of many of these guns, citizens of Mexico will continue to be killed and injured by these guns, and the public will continue to fear for their health, safety, and welfare, and will be subjected to conduct that creates a disturbance and reasonable apprehension of danger to person and property.

272.   Each Defendant's conduct materially contributes to a public nuisance and, if unabated, will continue to threaten the health, safety, and welfare of the citizens of Mexico, creating an atmosphere of fear that tears at citizens' sense of well-being and security. The Government and its citizens have a clearly ascertainable right to abate conduct that perpetuates this nuisance.

273.   As a material, foreseeable, and proximate result of each Defendant's conduct, the Government and its citizens have suffered actual injury and damages including, but not limited to, significant expenses for police, emergency, health, prosecution, corrections, and other services, as well as other extensive economic losses.

**COUNT THREE**
**(NEGLIGENT ENTRUSTMENT)**

274.   The Government hereby repeats and incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

I:\FILES\DOCS\ESTA01\20220809\EMAIL\18P8460.DOCX

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

275.   As alleged in detail above, each of the Defendants knew or reasonably should have known that the purchasers to whom it sold its guns were engaged in unlicensed dealing in firearms. Each Defendant knew or reasonably should have known that these individuals were coconspirators in trafficking the guns to Mexico.

276.   Each Defendant knew or reasonably should have known that these purchasers' unlicensed dealing created an unreasonable risk of harm to third parties, including the Government and its citizens, because gun violence is a foreseeable and likely consequence of unlicensed dealing of firearms.

277.   Each Defendant acted with complete indifference or with reckless disregard for the rights of others in transferring firearms to the traffickers and their coconspirators. These transfers were made under circumstances indicating a known risk that the guns would be possessed by persons prohibited from possessing firearms and used in gun violence incidents.

278.   Each Defendant had possession and control of guns that it transferred or caused to be transferred to the gun traffickers and their coconspirators.

279.   Each Defendant knew or should have known that its employees and agents who transferred firearms or caused firearms to be transferred to the coconspirators and traffickers was obliged to use its judgment to refuse to transfer firearms to a transferee whom the employees and agents knew or should have known was involved in unlicensed dealing in firearms.

I:\FILES\DOCS\ESTA01\20220809\EMAIL\18P8460.DOCX

280. Each Defendant knowingly transferred guns to straw purchasers, including but not limited to those identified and discussed in detail above. Each Defendant knew or should have known that transferring these guns to the coconspirators and traffickers posed a risk that the guns would be possessed by persons prohibited from possessing the guns and used in gun violence incidents.

281. Guns negligently entrusted by each Defendant have been, and will likely continue to be, found at crime scenes and recovered by law enforcement agents in Mexico.

282. By transferring guns to the coconspirators and traffickers, each Defendant materially and proximately caused harm to the Government and its citizens.

283. As a material, foreseeable, and proximate result of each Defendant's conduct, the Government and its citizens have suffered actual injury and damages including, but not limited to, significant expenses for police, emergency, health, prosecution, corrections, and other services, as well as other extensive economic losses.

## COUNT FOUR
### (NEGLIGENCE PER SE)

284. The Government hereby repeats and incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

285.   Each Defendant violated statutory duties, the Government and its citizens are within the class intended to be protected by the statutes, the statutory violations are a proximate cause of the injuries to the Government and its citizens, and the injuries are of the type against which the statutes are designed to protect.

286.   Each Defendant breached the duties it owes to the Government and its citizens by, among other things, failing to monitor and modify the Defendant's sales practices so as to prevent or reduce the trafficking of its guns into Mexico. In so doing, all Defendants acted with actual malice.

287.   As a material, foreseeable, and proximate result of Defendant's conduct, the Government and its citizens have suffered actual injury and damages including, but not limited to, significant expenses for police, emergency, health, prosecution, corrections, and other services, as well as other extensive economic losses.

## COUNT FIVE
### (GROSS NEGLIGENCE)

288.   The Government hereby repeats and incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

289.   Each Defendant was negligent as described in detail above.

290.   Each Defendant's active participation in the trafficking of guns into Mexico, and its other reckless and unlawful conduct described in detail above, materially contributed to the epidemic of gun violence in Mexico and has strengthened the cartels. Each Defendant's reckless and unlawful conduct has

DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

materially contributed to thousands of deaths and cost hundreds of millions of dollars in harm—circumstances that constituted an imminent or clear and present danger amounting to more than normal and usual peril.

291.   Each Defendant in fact knew of the imminent danger that its conduct posed to the Government and its citizens.

292.   Each Defendant was aware of the devastating and dangerous consequences of failing to monitor and modify its sales practices, of facilitating the unlawful trafficking of guns into Mexico, and of engaging in the other unlawful conduct described in detail above. Each Defendant nevertheless continued, and continues today, to engage in all of that conduct, demonstrating its conscious disregard of the consequences of its actions. Each Defendant's conduct was so reckless and wanting in care that it constituted a conscious disregard of and indifference to the life, safety, and rights of persons in Mexico and of the Government.

293.   As a material, foreseeable, and proximate result of each Defendant's gross negligence, the Government and its citizens have suffered actual injury and damages including, but not limited to, significant expenses for police, emergency, health, prosecution, corrections, and other services, as well as other extensive economic losses.

## COUNT SIX
### (UNJUST ENRICHMENT AND RESTITUTION)

294.   The Government hereby repeats and incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

295.   Each Defendant has reaped enormous profits and gains from the sale of its guns that have foreseeably been trafficked into Mexico.

296.   Those sales have resulted in enormous increases in the Government's expenditures, including but not limited to the following areas: medical care, police investigations, emergency personnel, public health resources, human services, courts, prisons, and related expenses.

297.   The Government has also been negatively affected by each Defendant's sales due to the decrease in property values throughout Mexico, loss of businesses, difficulty in developing the economy and society of Mexico, and loss of substantial productivity.

298.   Each Defendant undertook the wrongful conduct for the purpose of increasing its sales and profits, while at the same time avoiding responsibility for the massive costs caused by those sales, shifting those costs to the Government and its citizens.

299.   Each Defendant has, without justification, unjustly refused and failed to pay for the consequences of its unreasonable conduct and, as a result, the

Government and its citizens have been required to pay for the associated costs resulting from each Defendant's reckless and unlawful conduct.

300.    The Government's expenditure of substantial sums to pay for the associated costs resulting from the use of guns that each Defendant sold for enormous profit has unjustly benefited and enriched each Defendant at the expense of the Government and its citizens, to their detriment.

301.    By virtue of the foregoing, the Government and its citizens have incurred expenses that, in law, equity and fairness, ought to have been borne by each Defendant. Each Defendant has unjustly enriched itself at the expense of the Government and its citizens.

302.    As a material, foreseeable, and proximate result of each Defendant's conduct, the Government and its citizens have suffered actual injury and damages including, but not limited to, significant expenses for police, emergency, health, prosecution, corrections, and other services, as well as other extensive economic losses.

## COUNT SEVEN
### (VIOLATION OF ARIZONA'S CONSUMER FRAUD ACT)

303.    The Government hereby repeats and incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

I:\FILES\DOCS\ESTA01\20220809\EMAIL\18P8460.DOCX

304.   Each Defendant violated Arizona's Consumer Fraud Act ("CFA"), A.R.S. § 44-1522 by marketing that emphasized the ability of civilians to use assault rifles in unlawful, military-style attacks.

305.   Each Defendant knowingly violated Arizona's CFA by marketing products like its semi-automatic assault rifles to the civilian market in ways that highlighted their efficacy for civilians wanting to carry out unlawful military-style combat missions and that encouraged and promoted that misuse.

306.   Each Defendant knew that its marketing and advertising would attract persons and organizations that intended to use the Defendant's products to battle against the military and police, including the military and police in Mexico.

307.   Each Defendant further knew that its products would be trafficked into Mexico for use by the drug cartels there. Each Defendant knew that its marketing of those products created an unreasonable risk of physical injury to persons in Mexico.

308.   Each Defendant's conduct in marketing its military-style assault weapons is a knowing violation of Arizona's CFA, and those violations were a substantial factor in causing the injuries that the Government and its citizens have sustained.

309.   As a material, foreseeable, and proximate result of each Defendant's conduct, the Government and its citizens have suffered actual injury and damages including, but not limited to, significant expenses for police, emergency, health,

prosecution, corrections, and other services, as well as other extensive economic losses.

## COUNT EIGHT
### (PUNITIVE DAMAGES)

310.   The Government hereby repeats and incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

311.   All of each Defendant's acts and omissions stated above were willful and malicious, evidenced a conscious disregard for the rights and safety of other persons, and had a great probability of causing substantial harm.

312.   As a direct and proximate result of each Defendant's conduct, the Government and its citizens have suffered actual injury and damages including, but not limited to, significant expenses for police, emergency, health, prosecution, corrections, and other services, as well as other extensive economic losses.

313.   Each Defendant's unconscionable conduct warrants an assessment of exemplary and punitive damages in an amount appropriate to punish the Defendant and set an example that will deter similar conduct in the future.

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

## COUNT NINE
## (RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT)
## 18 U.S.C. § 1962(c)

### (Defendant SnG Tactical)

314.   The Government hereby repeats and incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

### (Defendant Persons / Enterprises)

315.   The cartels' straw purchasers, including Michael Anthony Sweigart, Denise Faye Burress, Tamra Michelle Potts, Isaias Delgado, Fernando Palomares, Jr., Kyle Rene Fazlollah, Elizar Olivares, Ray Alberto Laborin, Jose Gilberto Inzunza, Kaleb Jacob Valencia, Richardo Caro, and Luis Fernando Cruz-Valenzuela (among MANY others), and SnG Tactical constituted an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c), in that they are "a group of individuals associated in fact" (hereinafter referred to as the "SnG Tactical Straw Sale Enterprise").

    a.   The members of the SnG Tactical Straw Sale Enterprise share the common purpose, among others, of advancing, facilitating, and furthering the cartel's efforts to acquire firearms in the United States.

    b.   The members of the SnG Tactical Straw Sale Enterprise are related in that they, among other things, have engaged in numerous transactions involving the purchase and sale of firearms.

    c.   The SnG Tactical Straw Sale Enterprise possesses sufficient longevity for its members to carry out their purpose(s) in that through the SnG

DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

Tactical Straw Sale Enterprise the cartels have succeeded illegally

acquiring a multitude of firearms in the United States.

316.   Defendant SnG is a "person," within the meaning of 18 U.S.C.

§§ 1961(3) & 1962(c), that individually conducted, participated in, engaged in, and

operated and managed the affairs of SnG Tactical Straw Sale Enterprise through a

pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5)

& 1962(c). The pattern of racketeering activity consisted of, but was not limited to,

the acts of straw purchasing of firearms, trafficking in firearms, mail fraud, wire

fraud, and money laundering in detail above.

**(Pattern of Racketeering Activity)**

317.   All of the acts of racketeering described in detail above were related so as

to establish a pattern of racketeering activity, within the meaning of 18 U.S.C. §

1962(c). The actions of Defendant SnG Tactical and the cartels, personally or through

their agent or agents, directly or indirectly, shared a common purpose to unlawfully sell

and purchase firearms in the United States. The common result of their actions was the

unlawful sale and purchase of military-style weapons in the United States that were

then trafficked to drug cartels in Mexico. Defendant SnG Tactical and the cartels,

personally or through their agent or agents, directly or indirectly participated in all of

the acts and employed the same or similar methods of commission; the straw sale and

purchase of firearms made through and facilitated by some of the most notorious gun

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

dealers in Arizona, along the southern U.S. border. The Government of Mexico and the citizens of Mexico were the victims of the acts of racketeering.

318.   All of the acts of racketeering described in detail above were continuous so as to form a pattern of racketeering activity in that Defendant SnG Tactical has engaged in the predicate acts since January 2018 (at a minimum) and/or the acts of racketeering threaten to continue indefinitely because the acts of racketeering are the regular way in which Defendant SnG Tactical does business.

319.   Pursuant to 18 U.S.C. § 1964(a), the Court should restrain Defendant SnG Tactical from further violating 18 U.S.C. § 1962(c), order it to disgorge all ill-gotten profits earned by its violation of 18 U.S.C. § 1962(c), appoint a monitor to oversee its sales practices, and provide other appropriate relief.

<u>**COUNT TEN**</u>
**(RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT)**
**18 U.S.C. § 1962(c)**

**(Defendant Diamondback)**

320.   The Government hereby repeats and incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

**(Defendant Persons / Enterprises)**

321.   The cartels' straw purchasers, including Denise Faye Burress, Leonid Cornejo, Jesse Cortez-Arguelles, Francisco Dario Mora, Pedro Adan Sevilla, Fernando Palomares, Jr., Kyle Rene Fazlollah, Kaleb Jacob Valencia, and Luis Fernando Cruz-Valenzuela (among others), and Diamondback constituted an "enterprise," within the

DECONCINI McDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

DECONCINI McDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

meaning of 18 U.S.C. §§ 1961(4) & 1962(c), in that they are "a group of individuals associated in fact" (hereinafter referred to as the "Diamondback Straw Sale Enterprise").

    a.  The members of the Diamondback Straw Sale Enterprise share the common purpose, among others, of advancing, facilitating, and furthering the cartel's efforts to acquire firearms in the United States.

    b.  The members of the Diamondback Straw Sale Enterprise are related in that they, among other things, have engaged in numerous transactions involving the purchase and sale of firearms.

    c.  The Diamondback Straw Sale Enterprise possesses sufficient longevity for its members to carry out their purpose(s) in that through the Diamondback Straw Sale Enterprise the cartels have succeeded illegally acquiring a multitude of firearms in the United States.

322.   Defendant Diamondback is a "person," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c), that individually conducted, participated in, engaged in, and operated and managed the affairs of Diamondback Straw Sale Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c). The pattern of racketeering activity consisted of, but was not limited to, the acts of straw purchasing of firearms, trafficking in firearms, mail fraud, wire fraud, and money laundering described in detail above.

**(Pattern of Racketeering Activity)**

323.    All of the acts of racketeering described in detail above were related so as to establish a pattern of racketeering activity, within the meaning of 18 U.S.C. § 1962(c). Defendant Diamondback and the cartels, personally or through their agent or agents, directly or indirectly, shared a common purpose to unlawfully sell and purchase firearms in the United States. The common result of their actions was the unlawful sale and purchase of military-style weapons in the United States that were then trafficked to drug cartels in Mexico. Defendant Diamondback and the cartels, personally or through their agent or agents, directly or indirectly, participated in all of the acts and employed the same or similar methods of commission; the straw sale and purchase of firearms made through and facilitated by some of the most notorious gun dealers in Arizona, along the southern U.S. border. The Government of Mexico and the citizens of Mexico were the victims of the acts of racketeering.

324.    All of the acts of racketeering described in detail above were continuous so as to form a pattern of racketeering activity in that Defendant Diamondback has engaged in the predicate acts since October 2018 (at a minimum) and/or the acts of racketeering threaten to continue indefinitely because the acts of racketeering are the regular way in which Defendant Diamondback does business.

325.    Pursuant to 18 U.S.C. § 1964(a), the Court should restrain Defendant Diamondback from further violating 18 U.S.C. § 1962(c), order it to disgorge all ill-

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

I:\FILES\DOCS\ESTA01\20220809\EMAIL\18P8460.DOCX

gotten profits earned by its violation of 18 U.S.C. § 1962(c), appoint a monitor to oversee its sales practices, and provide other appropriate relief.

## COUNT ELEVEN
## (RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT)
## 18 U.S.C. § 1962(c)

### (Defendant Sprague's Sports)

326.   The Government hereby repeats and incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

### (Defendant Persons / Enterprises)

327.   The cartels' straw purchasers, including Rafael Palomares, Jr., Jose Rodrigo Felix-Quiroz, Daniel Langstaff Mirazo, Jesus Sanchez Vega, Juan Rafael Casteneda, Jr., Josue Isai Valdez-Reyes, Noe Mendoza, Marcos Balderas Millan (among others), and Defendant Sprague's Sports constituted an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c), in that they are "a group of individuals associated in fact" (hereinafter referred to as the "Sprague's Sports Straw Sale Enterprise").

    a.  The members of the Sprague's Sports Straw Sale Enterprise share the common purpose, among others, of advancing, facilitating, and furthering the cartel's efforts to acquire firearms in the United States.

I:\FILES\DOCS\ESTA01\20220809\EMAIL\18P8460.DOCX

b.  The members of the Sprague's Sports Straw Sale Enterprise are related in that they, among other things, have engaged in numerous transactions involving the purchase and sale of firearms.

c.  The Sprague's Sports Straw Sale Enterprise possesses sufficient longevity for its members to carry out their purpose(s) in that through the Sprague's Sports Straw Sale Enterprise the cartels have succeeded illegally acquiring a multitude of firearms in the United States.

328.   Defendant Sprague's Sports is a "person," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c), that individually conducted, participated in, engaged in, and operated and managed the affairs of Sprague's Sports Straw Sale Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c). The pattern of racketeering activity consisted of, but was not limited to, the acts of straw purchasing of firearms, trafficking in firearms, mail fraud, wire fraud, and money laundering described in detail above.

**(Pattern of Racketeering Activity)**

329.   All of the acts of racketeering described in detail above were related so as to establish a pattern of racketeering activity, within the meaning of 18 U.S.C. § 1962(c). Defendant Sprague's Sports and the cartels, personally or through their agent or agents, directly or indirectly, share a common purpose to unlawfully sell and purchase firearms in the United States. The common result of their actions was the

I:\FILES\DOCS\ESTA01\20220809\EMAIL\18P8460.DOCX

DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd, Suite 200
Tucson, AZ 85716-5300

unlawful sale and purchase of military-style weapons in the United States that were then trafficked to drug cartels in Mexico. Defendant Sprague's Sports and the cartels, personally or through their agent or agents, directly or indirectly, participated in all of the acts and employed the same or similar methods of commission; the straw sale and purchase of firearms made through and facilitated by some of the most notorious gun dealers in Arizona, along the southern U.S. border. The Government of Mexico and the citizens of Mexico were the victims of the acts of racketeering.

330.   All of the acts of racketeering described in detail above were continuous so as to form a pattern of racketeering activity in that Defendant Sprague's Sports has engaged in the predicate acts since May 2018 (at a minimum) and/or the acts of racketeering threaten to continue indefinitely because the acts of racketeering are the regular way in which Defendant Sprague's Sports does business.

331.   Pursuant to 18 U.S.C. § 1964(a), the Court should restrain Defendant Sprague's Sports from further violating 18 U.S.C. § 1962(c), order it to disgorge all ill-gotten profits earned by its violation of 18 U.S.C. § 1962(c), appoint a monitor to oversee its sales practices, and provide other appropriate relief.

**COUNT TWELVE**
**RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT**
**18 U.S.C. § 1962(c)**

**(Defendant Ammo AZ)**

332.    The Government hereby repeats and incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

**(Defendant Persons / Enterprises)**

333.    The cartels' straw purchasers, including Jose Montoya, Francisco Dario Mora, Pedro Adan Sevilla, and Yibran Lopez-Rosales (among others), and Defendant Ammo AZ constituted an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c), in that they are "a group of individuals associated in fact" (hereinafter referred to as the "Ammo AZ Straw Sale Enterprise").

    a.    The members of the Ammo AZ Straw Sale Enterprise share the common purpose, among others, of advancing, facilitating, and furthering the cartel's efforts to acquire firearms in the United States.

    b.    The members of the Ammo AZ Straw Sale Enterprise are related in that they, among other things, have engaged in numerous transactions involving the purchase and sale of firearms.

    c.    The Ammo AZ Straw Sale Enterprise possesses sufficient longevity for its members to carry out their purpose(s) in that through the Ammo AZ Straw Sale Enterprise the cartels have succeeded illegally acquiring a multitude of firearms in the United States.

DECONCINI McDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

334.   Defendant Ammo AZ is a "person," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c), that individually conducted, participated in, engaged in, and operated and managed the affairs of Ammo AZ Straw Sale Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c). The pattern of racketeering activity consisted of, but was not limited to, the acts of straw purchasing of firearms, trafficking in firearms, mail fraud, wire fraud, and money laundering described in detail above.

**(Pattern of Racketeering Activity)**

335.   All of the acts of racketeering described in detail above were related so as to establish a pattern of racketeering activity, within the meaning of 18 U.S.C. § 1962(c). Defendant Ammo AZ and the cartels, personally or through their agent or agents, directly or indirectly shared a common purpose to unlawfully sell and purchase firearms in the United States. The common result of their actions was the unlawful sale and purchase of military-style weapons in the United States that were then trafficked to drug cartels in Mexico. Defendant Ammo AZ and the cartels, personally or through their agent or agents, directly or indirectly, participated in all of the acts and employed the same or similar methods of commission; the straw sale and purchase of firearms made through and facilitated by some of the most notorious gun dealers in Arizona, along the southern U.S. border. The Government of Mexico and the citizens of Mexico were the victims of the acts of racketeering.

336.   All of the acts of racketeering described in detail above were continuous so as to form a pattern of racketeering activity in that Defendant Ammo AZ has engaged in the predicate acts since January 2018 (at a minimum) and/or the acts of racketeering threaten to continue indefinitely because the acts of racketeering are the regular way in which Defendant Ammo AZ does business.

337.   Pursuant to 18 U.S.C. § 1964(a), the Court should restrain Defendant Ammo AZ from further violating 18 U.S.C. § 1962(c), order it to disgorge all ill-gotten profits earned by its violation of 18 U.S.C. § 1962(c), appoint a monitor to oversee its sales practices, and provide other appropriate relief.

## COUNT THIRTEEN
## RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT
## 18 U.S.C. § 1962(c)

### (Defendant The Hub)

338.   The Government hereby repeats and incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

### (Defendant Persons / Enterprises)

339.   The cartels' straw purchasers, including Fernando Palomares, Jr., Kyle Rene Fazlollah, Elizar Olivares, Kaleb Jacob Valencia, Jose Gilberto Inzunza, and Anthony Ortiz (among others), and Defendant The Hub constituted an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c), in that they are "a group of

DeCONCINI McDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

individuals associated in fact" (hereinafter referred to as the "The Hub Straw Sale Enterprise").

   a. The members of The Hub Straw Sale Enterprise share the common purpose, among others, of advancing, facilitating, and furthering the cartel's efforts to acquire firearms in the United States.

   b. The members of The Hub Straw Sale Enterprise are related in that they, among other things, have engaged in numerous transactions involving the purchase and sale of firearms.

   c. The Hub Straw Sale Enterprise possesses sufficient longevity for its members to carry out their purpose(s) in that through The Hub Straw Sale Enterprise the cartels have succeeded illegally acquiring a multitude of firearms in the United States.

   340.   Defendant The Hub is a "person," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c), that individually conducted, participated in, engaged in, and operated and managed the affairs of The Hub Straw Sale Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c). The pattern of racketeering activity consisted of, but was not limited to, the acts of straw purchasing of firearms, trafficking in firearms, mail fraud, wire fraud, and money laundering described in detail above.

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

**(Pattern of Racketeering Activity)**

341.   All of the acts of racketeering described in detail above were related so as to establish a pattern of racketeering activity, within the meaning of 18 U.S.C. § 1962(c). Defendant The Hub and the cartels, personally or through their agent or agents, directly or indirectly, shared a common purpose to unlawfully sell and purchase firearms in the United States. The common result of their actions was the unlawful sale of military-style weapons in the United States that were then trafficked to drug cartels in Mexico. Defendant The Hub and the cartels, personally or through their agent or agents, directly or indirectly, participated in all of the acts and employed the same or similar methods of commission; the straw sale and purchase of firearms made through and facilitated by some of the most notorious gun dealers in Arizona, along the southern U.S. border. The Government of Mexico and the citizens of Mexico were the victims of the acts of racketeering.

342.   All of the acts of racketeering described in detail above were continuous so as to form a pattern of racketeering activity in that The Hub has engaged in the predicate acts since October 2019 (at a minimum) and/or the acts of racketeering threaten to continue indefinitely because the acts of racketeering are the regular way in which Defendant The Hub does business.

343.   Pursuant to 18 U.S.C. § 1964(a), the Court should restrain Defendant The Hub from further violating 18 U.S.C. § 1962(c), order it to disgorge all ill-gotten

profits earned by its violation of 18 U.S.C. § 1962(c), appoint a monitor to oversee its sales practices, and provide other appropriate relief.

## XII.   DEMAND FOR JUDGMENT

WHEREFORE, the Government respectfully demands that this Court:

a. Enter joint and several judgments against each Defendant and in favor of the Government;

b. For each Defendant, appoint a monitor who shall have full authority to oversee and direct that Defendant's sales practices, with the costs to be borne by the Defendant;

c. Enter injunctive and equitable relief against each Defendant requiring it to:

 1. Abate and remedy the public nuisance it has created in Mexico;

 2. Create and implement standards sufficient to reasonably monitor and modify its sales practices; and

 3. Fund studies, programs, advertising campaigns, and other events focused on preventing unlawful trafficking of guns;

d. Enter an injunction against each Defendant requiring it to take all necessary action to abate the current and future harm that its conduct is causing and would otherwise cause in the future in Mexico;

e. Award damages to the Government in an amount to be determined at trial;

f. Award civil penalties to the Government as permitted by law;

g. Award punitive damages to the Government in an amount to be determined at trial, and sufficient to punish each Defendant or deter it and others from continuing or repeating its unlawful conduct;

h. Require each Defendant to disgorge the revenue and profits that it has unjustly obtained from its unlawful conduct;

i. Award to the Government pre-and post-judgment interest as permitted by law;

j. Award the Government its costs of suit, including reasonable attorneys' fees, as provided by law; and

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

k.  Award such further and additional relief as the case may require and the Court may deem just and proper.

DATED this 10th day of  October, 2022.

DECONCINI MCDONALD YETWIN & LACY, P.C.

By: /s/*Ryan O'Neal*
Ryan O'Neal
2525 E. Broadway Blvd., Suite 200
Tucson, AZ 85716-5300
Attorneys for Plaintiff

s/ Steve D. Shadowen
Steve D. Shadowen (*pro hac vice forthcoming*)
Nicholas W. Shadowen (*pro hac vice forthcoming*)
Tina J. Miranda (*pro hac vice forthcoming*)
Deirdre R. Mulligan  (*pro hac vice forthcoming*)
SHADOWEN PLLC
1135 W. 6th Street, Suite 125
Austin, TX 78703
Phone: 855-344-3298
sshadowen@shadowenpllc.com
nshadowen@shadowenpllc.com
tmiranda@shadowenpllc.com
dmulligan@shadowenpllc.com

s/ Jonathan E. Lowy
Jonathan E. Lowy (*pro hac vice forthcoming*)
Global Action on Gun Violence
1025 Connecticut Avenue NW #1210
Washington, DC 20036
Phone: (202) 415-0691
jlowy@actiononguns.org

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd, Suite 200
Tucson, AZ 85716-5300