DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300
(520) 322-5000


Ryan O'Neal (AZ # 031919)
roneal@dmyl.com
Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Estados Unidos Mexicanos,<br><br>                  Plaintiff,<br><br>*vs.*<br><br>Diamondback Shooting Sports, Inc., an Arizona corporation; SNG Tactical, LLC, an Arizona limited liability company; Loan Prairie, LLC D/B/A The Hub, an Arizona limited liability company; Ammo A-Z, LLC, an Arizona limited liability company; Sprague's Sports, Inc., an Arizona corporation,<br><br>                  Defendants. | NO. 4:22-cv-00472-JR |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

1

**TABLE OF CONTENTS**

2   INTRODUCTION ................................................................................ 1

3   STATEMENT OF THE FACTS ......................................................... 2

4   ARGUMENT ....................................................................................... 5

5       I.      THE GOVERNMENT HAS ARTICLE III STANDING ........................... 5

6               A.      The Complaint's Causation Allegations Satisfy Article
7                       III. ....................................................................................... 5

8               B.      The Claimed Injuries Can Be Redressed. .......................... 7

9       II.     IF PLCAA APPLIED, IT WOULD NOT PRECLUDE THIS
10              ACTION ................................................................................ 8

11              A.      If PLCAA Applied, the Government's Claims Would Be
                        Within Its "Predicate Exception." ...................................... 9
12
13              B.      If PLCAA Applied, the Government's Claims Would Be
                        Within Its Negligent-Entrustment Exception. ................... 16

14      III.    PLCAA DOES NOT APPLY EXTRATERRITORIALLY. ..................... 18

15      IV.     THE SUBSTANTIVE LAW OF MEXICO APPLIES TO ITS
16              TORT CLAIMS. .................................................................... 24

17      V.      THE COMPLAINT ADEQUATELY PLEADS PROXIMATE
                CAUSE. ................................................................................ 26
18
19      VI.     THE COMPLAINT ADEQUATELY PLEADS A CLAIM
                UNDER ARIZONA'S CONSUMER FRAUD ACT. ........................... 31

20      VII.    THE COMPLAINT ADEQUATELY PLEADS A CLAIM FOR
21              UNJUST ENRICHMENT. ....................................................... 33

22      VIII.   THE COMPLAINT ADEQUATELY PLEADS A CLAIM OF
                PUBLIC NUISANCE. ............................................................ 35
23
24      IX.     THE COMPLAINT ADEQUATELY PLEADS A RIGHT TO
                RELIEF UNDER RICO. ........................................................ 37

25

26

Plaintiff's Opposition Brief

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd, Suite 200
Tucson, AZ 85716-5300

A.    The Government Asserts a Right to Relief Under § 1964(a), Not § Section 1964(c). ..................................................... 37

B.    The Complaint Adequately Pleads that Defendants' Violations Are Ongoing. ................................................... 38

C.    The Complaint Adequately Pleads Mail and Wire Fraud. ............... 38

D.    The Complaint Adequately Pleads Money Laundering. .................. 40

E.    The Complaint Adequately Pleads a Pattern of Racketeering Activity. ....................................................... 41

F.    The Complaint Adequately Pleads Actionable Enterprises. ............................................................ 43

G.    The RICO Claim Is Not an Improper "Shotgun Pleading." ........................................................... 44

H.    The Complaint Adequately Pleads a Right to Equitable Relief. ................................................................ 45

X.    THE COMPLAINT ADEQUATELY PLEADS CLAIMS FOR NEGLIGENCE AND GROSS NEGLIGENCE. ......................................... 48

CONCLUSION ............................................................................. 50

DECONCINI McDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd, Suite 200
Tucson, AZ 85716-5300

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Plaintiff's Opposition Brief

# TABLE OF AUTHORITIES

**Cases**

*Abogados v. AT&T, Inc.,*
  223 F.3d 932 (9th Cir. 2000) ......................................................................... 31

*Abramski v. United States,*
  573 U.S. 169 (2014) ....................................................................................... 12

*Abston v. Ryan,*
  120 F. App'x 659 (9th Cir. 2004) ................................................................... 34

*Alliance Labs, LLC v. Stratus Pharmaceuticals, Inc.,*
  2013 WL 273404 (D. Ariz. Jan. 24, 2013) .................................................... 58

*Allwaste, Inc. v. Hecht,*
  65 F.3d 1523 (9th Cir. 1995) .................................................................... 54, 55

*Arce v. Badger Guns,*
  No 10-cv-18530 (Wis. Cir. Ct. Mar. 24, 2014) ............................... 12, 15, 21

*Armory Park Neighborhood Ass'n v. Episcopal Cmty. Servs. in Arizona,*
  712 P.2d 914 (Ariz. 1985) .............................................................................. 48

*Arnold & Assocs., Inc. v. Misys Healthcare Sys., a div. of Misys, PLC,*
  275 F. Supp. 2d 1013 (D. Ariz. 2003) ........................................................... 45

*Bates v. Superior Ct. of State of Ariz., In & For Maricopa Cnty.,*
  156 Ariz. 46 (1988) ........................................................................................ 32

*BCS Services, Inc. v. BG Investments, Inc.,*
  728 F.3d 633 (7th Cir. 2013) .......................................................................... 51

*Bennett v. Spear,*
  520 U.S. 154 (1997) ......................................................................................... 6

*Block v. Meese,*
  793 F.2d 1303 (D.C. Cir. 1986) ....................................................................... 6

*Bloxham v. Glock Inc.,*
  53 P.3d 196 (Ariz. Ct. App. 2002) ................................................................. 63

*Bond v. United States,*
  572 U.S. 844 (2014) ....................................................................................... 19

*Bostock v. Clayton Cnty., Georgia,*
  140 S. Ct. 1731 (2020) ................................................................................... 61

*Boyle v. United States,*
  556 U.S. 938 (2009) .................................................................................. 55, 56

*Brady v. Walmart Inc.,*
  2022 WL 2987078 (D. Md. July 28, 2022) .................................................... 12

DECONCINI McDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

Plaintiff's Opposition Brief

*Braun v. Soldier of Fortune Mag., Inc.*,
    968 F.2d 1110 (11th Cir. 1992) ...................................................................... 43

*Bridge v. Phoenix Bond & Indemnity Co.*,
    553 U.S. 639 (2008) ..................................................................................... 52

*Brown v. Wal-Mart Stores, Inc.*,
    976 F. Supp. 729 (W.D. Tenn. 1997) ............................................................ 23

*Camden Cnty. Bd. of Chosen Freeholders v. Beretta U.S.A. Corp.*,
    123 F. Supp. 2d 245 (D.N.J. 2000), *aff'd* 273 F.3d 536 (3d Cir. 2001) ....................... 7, 35

*Casey v. Manson Construction Co.*,
    247 Or. 274 (1967) ........................................................................................ 34

*Cheatham v. ADT Corp.*,
    161 F. Supp. 3d 815 (D. Ariz. 2016) .......................................................... 40, 41

*Chevron Corp. v. Donziger*,
    833 F.3d 74 (2d Cir. 2016) ............................................................................ 61

*Chevron Corp. v. Donziger*,
    974 F. Supp.2d 362 (S.D.N.Y. 2014) ............................................................ 60

*Chiapperini v. Gander Mountain Co.*,
    13 N.Y.S.3d 777 (N.Y. Sup. Ct. 2014) .................................................. 11, 14, 21

*Cipollone v. Liggett Grp., Inc.*,
    505 U.S. 504 (1992) ................................................................................ 18, 19

*City of Bos. v. Purdue Pharm, L.P.*,
    2020 WL 977056 (Mass. Super. Jan. 29, 2020) ............................................ 15

*City of Bos. v. Smith & Wesson Corp.*,
    2000 WL 1473568 (Mass. Sup. July 13, 2000) ........................................ passim

*City of Chicago v. Beretta U.S.A. Corp.*,
    821 N.E. 2d 1099 (Ill. 2004) .......................................................................... 38

*City of Chicago v. Purdue Pharma L.P.*,
    No. 14 CV 4361, 2021 WL 1208971 (N.D. Ill. Mar. 31, 2021) ................... 35, 36

*City of Cincinnati v. Beretta U.S.A. Corp.*,
    768 N.E.2d 1136 (Ohio 2002) ................................................................. passim

*City of Gary ex rel. King v. Smith & Wesson*,
    801 N.E.2d 1222 (Ind. 2003) .................................................................... 8, 62

*City of Gary v. Smith & Wesson Corp.*,
    126 N.E.3d 813 (Ind. 2019) ........................................................................... 13

*City of L.A. v. Wells Fargo & Co.*,
    22 F. Supp. 3d 1047 (C.D. Cal. 2014) ........................................................... 46

*City of New York v. A–1 Jewelry & Pawn, Inc.*,
    247 F.R.D. 296 (E.D.N.Y. 2007) ................................................................... 11

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd, Suite 200
Tucson, AZ 85716-5300

Plaintiff's Opposition Brief

*City of New York v. Beretta U.S.A. Corp.*,
   524 F.3d 384 (2d Cir. 2008)...................................................................30

*City of Philadelphia v. Beretta U.S.A. Corp.*,
   277 F.3d 415 (3d Cir. 2002)...............................................................35, 37

*Cobb v. Salt River Valley Water Users' Ass'n*,
   114 P.2d 904 (Ariz. 1941)...................................................................63

*Comm. to Protect Our Agric. Water v. Occidental Oil*,
   235 F. Supp.3d 1132 (E.D. Cal. 2017)...................................................56

*Concha v. London*,
   62 F.3d 1493 (9th Cir. 1995)...............................................................51

*Corporan v. Wal-Mart Stores East, LP*,
   2016 WL 3881341 (D. Kan. July 18, 2016) ...................................11, 14, 21

*Coxie v. Academy, Ltd.*,
   No. 2018-CP-42-04297 (S.C. Ct. Cmmn. Pl. Jul. 29, 2019) ...................14, 21

*Creel v. Dr. Says, LLC*,
   2022 WL 4490141 (E.D. Tex. Sept. 27, 2022) .........................................60

*Day & Zimmermann, Inc. v. Challoner*
   423 U.S. 3 (1975) ............................................................................31

*DeMent v. Abbott Capital Corp.*,
   589 F. Supp. 1378 (N.D. Ill. 1984)........................................................60

*Dept. of Commerce v. New York*,
   139 S. Ct. 2551 (2019) .......................................................................6

*Direct Sales Co., Inc. v. United States*,
   319 U.S. 703 (1943) .........................................................................15

*Englund v. World Pawn Exch., LLC*,
   2017 WL 7518923 (Oregon Cir. Ct. Jun. 30, 2017) .........................11, 14, 21

*Englund v. World Pawn Exch., LLC*,
   No. 16-CV-00598 (Ore. Cir. Aug. 13, 2018) ...........................................14

*Est. of Pemberton v. John's Sports Ctr., Inc.*,
   135 P.3d 174 (Kan. Ct. App. 2006)........................................................20

*Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*,
   2022 WL 4597526 (D. Mass. Sept. 30, 2022)...........................6, 7, 19, 30

*F. Hoffmann–La Roche Ltd. v. Empagran S.A.*,
   542 U.S. 155 (2004) .........................................................................28

*Fed. Trade Comm'n v. Sperry & Hutchinson Co.*,
   405 U.S. 233 (1972) .........................................................................42

*Fedie v. Travelodge Int'l, Inc.*,
   782 P.2d 739 (Ariz. Ct. App. 1989) ...................................................37, 40

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd, Suite 200
Tucson, AZ 85716-5300

*Fox v. L&J Supply, LLC,*
  No. 2014-24619 (Pa. Ct. Cmmn. Pl. Nov. 26, 2018)..............................................11, 14, 21
*Ganim v. Smith & Wesson Corp.,*
  780 A.2d 98 (Conn. 2001)......................................................................................7, 39
*Garcia v. Gen. Motors Corp.,*
  990 P.2d 1069 (Ariz. Ct. App. 1999). ........................................................................33
*Gregory v. Ashcroft,*
  501 U.S. 452 (1991) ...................................................................................................19
*H.J. Inc. v. Northwestern Bell Telephone Co.,*
  492 U.S. 229 (1989) ...................................................................................53, 54, 55
*Harris v. Polskie Linie Lotnicze,*
  820 F.2d 1000 (9th Cir. 1987)....................................................................................32
*Hengle v. Treppa,*
  19 F. 4th 324 (4th Cir. 2021) *cert. dismissed*, 142 S. Ct. 2093 (2022) ............................61
*Hopi Tribe v. Arizona Snowbowl Resort Ltd. P'ship,*
  430 P.3d 362 (Ariz. 2018)...........................................................................................47
*Ileto v. Glock, Inc.,*
  565 F.3d 1126 (9th Cir. 2009)...........................................................................17, 30
*In re Academy, Ltd.,*
  625 S.W.3d 19 (Tex. 2021),.........................................................................................17
*In re Lidoderm Antitrust Litig.,*
  103 F. Supp. 3d 1155 (N.D. Cal. 2015) ......................................................................46
*In re National Prescription Opiate Litig.,*
  2018 WL 6628898 (N.D. Ohio Dec. 19, 2018) ........................................................16, 63
*In re: Juul Labs, Inc., Marketing, Sales Practices, and Products Liability
  Litig.,*
  497 F. Supp. 3d. 552 (N.D. Cal. 2020).......................................................................47
*Ireland v. Jefferson County Sheriff's Dept.,*
  193 F. Supp. 2d 1201 (D. Colo. 2002).................................................................22, 23
*James v. Arms Technology, Inc.,*
  820 A. 2d 27 (N.J. Super. 2003) .........................................................................35, 36, 39
*Johnson v. KB Home,*
  720 F. Supp. 2d 1109 (D. Ariz. 2010)........................................................................32
*King v. Klocek,*
  133 N.Y.S.3d 356 (N.Y. Sup. Ct. 2020)......................................................................11
*Knauss v. DND Neffson Co.,*
  963 P.2d 271 (Ariz. 1997)....................................................................................36, 37

DECONCINI McDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd, Suite 200
Tucson, AZ 85716-5300

Plaintiff's Opposition Brief

*Knight v. Wal-Mart Stores, Inc.*,
  889 F. Supp. 1532 (S.D. Ga. 1995)...................................................................23
*Larsen v. Lauriel Inv., Inc.*,
  161 F. Supp.2d 1029 (D. Ariz. 2001)..............................................................54
*Larson v. Valente*,
  456 U.S. 228 (1982) .........................................................................................9
*Leist v. Acad. Mortg. Corp.*,
  2016 WL 1593815 (D. Ariz. Apr. 20, 2016) .................................................41
*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014) ...................................................................................7, 34
*Little Hocking Water Ass'n v. E.I. du Pont de Nemours & Co.*,
  91 F. Supp. 3d 940 (S.D. Ohio 2015) ............................................................46
*Liu v. Republic of China*,
  892 F.2d 1419 (9th Cir. 1989)........................................................................32
*Loiselle v. Cosas Mgmt. Grp., LLC*,
  228 P.3d 943 (Ariz. Ct. App. 2010) ...............................................................44
*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ......................................................................................6, 9
*Maricopa Cnty. v. Off. Depot, Inc.*,
  2014 WL 6611562 (D. Ariz. Nov. 21, 2014), *aff'd* 759 F. App'x 597 (9th Cir.
  2018).................................................................................................................42
*Massachusetts v. E.P.A.*,
  549 U.S. 497 (2007) ......................................................................................7, 9
*Maurer v. Cerkvenik-Anderson Travel, Inc.*,
  890 P.2d 69 (Ariz. Ct. App. 1994) .................................................................41
*Media v. Garcia*,
  768 F.3d 1009 (9th Cir. 2014)..........................................................................7
*Medtronic, Inc. v. Lohr*,
  518 U.S. 470 (1996) .........................................................................................18
*Monterey Plaza Hotel, Ltd. Partnership v. Local 483 of Hotel Employees and
  Restaurant Employees Union, AFL-CIO*,
  215 F.3d 923 (9th Cir. 2000)..........................................................................52
*Morrison v. Nat'l Australia Bank Ltd.*,
  561 U.S. 247  (2010) ................................................................................25, 30
*Mousa v. Saba*,
  218 P.3d 1038 (Ariz. Ct. App. 2009) .............................................................44
*Murdock-Bryant Const., Inc. v. Pearson*,
  703 P.2d 1197 (Ariz. 1985).............................................................................45

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

Plaintiff's Opposition Brief

DE CONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd, Suite 200
Tucson, AZ 85716-5300

*Nat'l Ass'n of Mfrs. v. Dep't of Def.*,
  138 S. Ct. 617 (2018) ........................................................................................... 61

*Nat'l Org. For Women, Inc. v. Scheidler*,
  267 F.3d 687 (7th Cir. 2001), *rev'd on other grounds*, 537 U.S. 393 (2003) ............... 61

*Norberg v. Badger Guns, Inc.*,
  No. 10-cv-20655 (Wis. Cir. Ct. Jun. 9, 2011) ..................................... 12, 14, 21

*Nw. Env't Defense Center v. Owens Corning*,
  434 F. Supp. 2d 957 (D. Or. 2006) ........................................................................ 9

*People v. Sturm, Ruger & Co.*,
  309 A.D.2d 91 (N.Y. App. Div. 2003) ............................................................... 37

*Physicians Care All., LLC v. All Day Beauty, LLC*,
  2019 WL 176782 (D. Ariz. Jan. 11, 2019) ......................................................... 58

*Plata v. Schwarzenegger*,
  603 F.3d 1088 (9th Cir. 2010) ............................................................................ 61

*Prescott v. Slide Fire Sols., LP*,
  410 F. Supp. 3d 1123 (D. Nev. 2019) .................................................................. 11

*Pyeatte v. Pyeatte*,
  661 P.2d 196 (Ariz. Ct. App. 1982) .................................................................... 45

*Quiroz v. Alcoa Inc.*,
  416 P.2d 824 (Ariz. 2018) .................................................................................. 63

*Religious Tech. Ctr. v. Wollersheim*,
  796 F.2d 1076 (9th Cir. 1986) ............................................................................ 60

*Republic of Venezuela v. Philip Morris Cos.*,
  827 So. 2d 339 (Fla. Dist. Ct. App. 2002) .......................................................... 64

*Ritchie v. Krasner*,
  211 P.3d 1272 (Ariz. Ct. App. 2009) .................................................................. 36

*S.E.C v. Bardman*,
  216 F. Supp. 3d 1041 (N.D. Cal. 2016) .............................................................. 57

*S.E.C. v. Fraser*,
  2010 WL 5776401 (D. Ariz. Jan. 28, 2010) ....................................................... 58

*Sanford v. MemberWorks, Inc.*,
  625 F.3d 550 (9th Cir. 2010) .............................................................................. 50

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
  806 F.2d 1393 (9th Cir. 1986) ............................................................................ 50

*Serv. Emps. Int'l Union Health & Welfare Fund v. Philip Morris Inc.*,
  249 F.3d 1068 (D.C. Cir. 2001) .......................................................................... 64

*Shirley v. Glass*,
  241 P.3d 134 (Kan. App. 2010) .................................................................... 22, 23

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

*Small v. United States,*
    544 U.S. 385 (2005) ................................................................26, 27

*Smith & Wesson Corp. v. City of Gary*,
    875 N.E.2d 422 (Ind. App. 2007) .......................................................13

*Sosa v. Alvarez-Machain*,
    542 U.S. 692 (2004) ..........................................................................32

*Soto v. Bushmaster Firearms Int'l, LLC,*
    202 A.3d 262 (Conn. 2019), *cert denied*, 140 S. Ct. 513 (2019)...........19, 42, 43

*Starr v. Price*,
    385 F. Supp. 2d 502 (M.D. Pa. 2005) ..................................................20

*State Farm Fire & Cas. Co. v. Amazon.com Inc.,*
    2018 WL 1536390 (D. Ariz. March 29, 2018) .......................................41

*State of Rhode Island v. Lead Indus. Ass'n, Inc.,*
    2001 WL 345830 (R.I. Super. April 2, 2001) ........................................46

*State of Sao Paulo of Federative Republic of Brazil v. American Tobacco Co.,*
    919 A.2d 1116 (Del. 2007) .................................................................64

*Stewart v. Fairley,*
    2014 WL 12538164 (D. Ariz. June 4, 2014) .........................................56

*Summers v. Interstate Tractor & Equip. Co.,*
    466 F.2d 42 (9th Cir. 1972).................................................................33

*T&M Jewelry, Inc. v. Hicks*,
    189 S.W.3d 526 (Ky. 2006) ...............................................................20

*Tellez v. Saban,*
    933 P.2d 1233 (Ariz. Ct. App. 1996) ...................................................36

*Travieso v. Glock, Inc.,*
    526 F. Supp. 3d 533 (D. Ariz. 2021), *appeal dismissed*, 2021 WL 4295762 (
    Cir. July 6, 2021) .............................................................................17

*U.S. Aviation Underwriters, Inc. v. Eurocopter*,
    2006 WL 1882709 (D. Ariz. July 7, 2006) ...........................................33

*United States v. Busacca,*
    936 F.2d 232 (6th Cir. 1991)...............................................................55

*United States v. Carney,*
    387 F.3d 436 (6th Cir. 2004)..........................................................12, 16

*United States v. Heredia*,
    483 F.3d 913 (9th Cir. 2007)...............................................................16

*United States v. Nosal,*
    844 F.3d 1024 (9th Cir. 2016)..............................................................16

*United States v. Perry*,
   35 F.4th 293 (5th Cir. 2022) ......................................................................57

*United States v. Philip Morris USA Inc.*,
   566 F. 3d 1095 (D.C. Cir. 2009) ................................................................59

*United States v. Ramos-Atondo*,
   732 F.3d 1113 (9th Cir. 2013) ...................................................................16

*United States v. Turkette*,
   452 U.S. 576 (1981) ....................................................................................57

*Utah Physicians for a Healthy Env't v. Diesel Power Gear LLC*,
   374 F. Supp. 3d 1124 (D. Utah 2019) .........................................................9

*Verduzco v. American Valet*,
   240 Ariz. 221 (Az. App. Div. 2016) ..........................................................22

*Wal-Mart Stores, Inc. v. Tamez*,
   960 S.W. 2d 125 (Tex. App. 1997) ............................................................23

*Wang Elec., Inc. v. Smoke Tree Resort, LLC*,
   283 P.3d 45 (Ariz. Ct. App. 2012) ......................................................44, 45

*Watts v. Medicis Pharm. Corp.*,
   365 P.3d 944 (Ariz. 2016)...........................................................................40

*Wendelken v. Superior Ct. In & For Pima Cnty.*,
   137 Ariz. 455 (1983)...................................................................................33

*White v. Smith & Wesson*,
   97 F. Supp. 2d 816 (N.D. Ohio 2000)...............................................8, 39, 45

*Williams v. Beemiller, Inc.*,
   952 N.Y.S. 2d 333 (N.Y. App. Div. 2012), *amended by* 962 N.Y.S.2d 834
   (N.Y. App. Div. 2013)...........................................................................11, 13

## **Statutes**

15 U.S.C. § 7901 .................................................................18, 25, 26, 28
15 U.S.C. § 7903 .......................................................................25, 27, 29
16 U.S.C. § 3372.................................................................................27
16 U.S.C. § 5102.................................................................................28
18 U.S.C. § 1341.........................................................................47, 48
18 U.S.C. § 1343.........................................................................47, 48
18 U.S.C. § 1956.................................................................................48
18 U.S.C. § 1961.................................................................................48
18 U.S.C. § 1964..........................................................................passim
18 U.S.C. § 924...................................................................................12
18 U.S.C. § 932...........................................................................45, 48

DECONCINI McDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd, Suite 200
Tucson, AZ 85716-5300

Plaintiff's Opposition Brief

18 U.S.C. § 933 .................................................................................................45, 48

19 U.S.C. § 1527 ......................................................................................................27

22 U.S.C. § 3504 ......................................................................................................28

29 U.S.C. § 53 ..........................................................................................................27

42 U.S.C. § 1705 ......................................................................................................27

42 U.S.C. § 18311 ....................................................................................................28

50 U.S.C. § 4819 ......................................................................................................12

A.R.S. § 44-1522 ......................................................................................................40

**Other Authorities**

Dan B. Dobbs, The Law of Torts (2000) ..................................................................28

National Report of Eritrea on its Implementation of the United Nations
    Programme of Action to Prevent, Combat and Eradicate the Illicit Trade in
    Small Arms and Light Weapons in All Its Aspects (Jan. 1, 2010) ....................21

Restatement (Second) Conflict of Laws ...................................................................25

Restatement (Second) of Torts .................................................................................29

Restatement (Third) of Torts ...................................................................................30

Robert L. Nay, Firearms Regulation in Various Foreign Countries (Law
    Library of Congress 1990) ................................................................................21

S. 1805, 108th Cong. § (b)(1) (2003) .......................................................................14

S. 397, 109th Cong. (2005) ......................................................................................14

Wright & Miller, Fed. Prac. & Proc. (3d ed. 2022) ..................................................8

**Rules**

15 C.F.R. § 738.4 .....................................................................................................10

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd, Suite 200
Tucson, AZ 85716-5300

Plaintiff's Opposition Brief

**INTRODUCTION**

Plaintiff Estados Unidos Mexicanos ("the Government") brings this case on behalf of itself and in *parens patrie* on behalf of its citizens. It alleges that five Arizona gun dealers knowingly and repeatedly sell guns in violation of firearms laws of the United States and Mexico, supplying and profiting from obvious cross-border gun traffickers who arm the drug cartels, causing extensive and continuing harm to the Government and its citizens. Those allegations must be taken as true—and they are true. The Government has alleged all elements of its claims—for negligence, public nuisance, negligent entrustment, gross negligence, negligence per se, unjust enrichment, punitive damages, the Arizona Consumer Fraud Act, and RICO. The most fundamental principles of civil justice entitle the Government to redress and authorize this Court to order the Defendants to stop engaging in their unlawful conduct that causes such havoc.

Defendants contend that the Court must deny the Government discovery, dismiss the case on the pleadings, and allow Defendants to continue their unlawful conduct without any accountability. They assert that the Protection of *Lawful* Commerce in Arms Act ("PLCAA") protects their ***un***lawful commerce in arms. But PLCAA's "predicate exception" expressly allows this action because defendants knowingly violate statutes applicable to the sale or marketing of firearms and thereby cause harm. A dozen or more cases (studiously avoided by Defendants) have considered very similar claims and every one has held that they are allowed under the predicate exception.

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

Plaintiff's Opposition Brief

Defendants' other arguments are just as weak. They argue that intervening criminal acts break the chain of causation between their unlawful conduct and the resulting injuries. Courts in gun-liability cases routinely reject that argument: black-letter law provides that foreseeable criminal acts do not cut off liability.

Equally untenable is Defendants' assertion that this lawsuit cannot redress the harm they cause to the Government and its citizens. This Court may hold Defendants liable, award appropriate damages and equitable remedies, and require Defendants to implement reasonable sales practices, which is the relief the Government seeks.

Defendants' kitchen-sink motion also wrongly asserts that they owe no duty to the Government, did not cause the complained-of harm, cannot be liable under Arizona's Consumer Fraud Act, and are not subject to equitable relief under RICO. All of their arguments misstate the law, contradict the Complaint's well-pleaded allegations, or both.

The Court should deny the motion to dismiss. The Government should be permitted to prove its case.

### STATEMENT OF THE FACTS

The Complaint's well-pleaded allegations assert that Defendants "systematically participate in trafficking military-style weapons and ammunition to drug cartels in Mexico by supplying gun traffickers." Compl. ¶ 1. Defendants sell directly to traffickers who are members or agents of the cartels. *Id*. ¶¶ 5, 9, 34, 37, 50, 54, 317, 323, 329, 335, 341. Defendants know that the cartels are the intended recipients of their guns. *Id*. ¶¶ 12, 24, 39, 63, 103, 183, 197, 307.

The express premise of Defendants' motion, starting on page one and running throughout their brief, is a denial of these well-pleaded allegations, e.g., "[t]he Complaint, however, does not allege that any of the moving defendants…sell their firearms to the cartels." Joint Memorandum of Law in Support of Defendants' Motions to Dismiss, ECF 19 (hereafter, "Jnt. Mem.") at 1.[1] But well-pleaded allegations can be contested only on summary judgment, not a motion to dismiss.

These five Defendants are among the worst gun-trafficking suppliers in Arizona and the United States. Compl. ¶ 2. Each of them is among the 10 dealers with the most crime guns recovered in Mexico and traced back to a dealership in Arizona. Compl. ¶ 37. *Every year* each Defendant participates in trafficking *hundreds* of its guns into Mexico— collectively from 840 to 2,932 guns. Compl. ¶ 120.

The guns they supply to the cartels are weapons of war, including .50 caliber sniper rifles that can shoot down helicopters and penetrate lightly armored vehicles and bullet-proof glass; AK-47 assault rifles (versions of the Russian Army's Kalashnikov rifle); and AR-15 assault rifles (versions of the U.S. Army's M-16 rifle).

The Complaint alleges that "each Defendant knowingly sells its military-style weapons to gun traffickers in straw sales, multiple sales, and repeat sales." Compl. ¶ 117. That allegation is backed by 60 paragraphs of illustrative examples of unlawful sales transactions, detailing the names, dates, locations, circumstances, gun models, and bullet

---

[1] For examples of Defendants' similar denials of the Complaint's well-pleaded allegations, see Jnt. Mem. 3, 7, 8, 12, 19, 20, 23, 28, 31, 34-35, 38, 42.

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

calibers. *Id*. ¶¶ 55-117. A few selections from the examples: Defendant Sprague's Sports sold guns to trafficker Juan Rafael Castaneda, Jr. on 15 separate occasions, within a four-month period. Sometimes Sprague's Sports sold him multiple guns on the same day; one week it sold him guns three days in a row. Compl. ¶ 64. Defendant SnG Tactical sold two Century Arms RAS47 7.62x39mm rifles on the same day to arms trafficker Michael Anthony Sweigart. The next day it sold him another Century Arms RAS47 7.62x39mm and a Romarm Cugir WASR10 7.62x39mm rifle. Six days later it sold him two more Century Arms RAS47 7.62x39mm rifles. Compl. ¶¶ 68-70.

The Complaint alleges in detail that Defendants' conduct aids and abets violating U.S. federal statutes on gun sales and marketing, including prohibitions on exporting guns without a license (Compl. ¶¶ 155-60); selling guns without a license (*id*. ¶¶ 132-34); and making straw purchases (*id*. ¶¶ 143). Defendants directly violate U.S. federal bans on selling guns to ineligible buyers. *Id*. ¶¶ 140-42. And each Defendant violates Arizona's Consumer Fraud Act by marketing its guns into the commercial, civilian market while promoting them as military-style weapons for "fighting" on a "battlefield." Compl. ¶¶ 217-34.

All of these violations result in harm to the Government and its citizens that is beyond forseeable—it is a "virtual certainty." Compl. ¶ 1. Each Defendant "actively maximizes rather than minimizes its sales to the criminal markets in Mexico" (*id*. ¶ 39) "because it intends to profit from sales to the cartels" (*id*. ¶ 54; *see also id*. ¶¶ 121-25, 210).

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

Plaintiff's Opposition Brief

Mexico's tort law holds Defendants accountable for their business model of participating in trafficking guns into Mexico. The result would be no different under Arizona law. PLCAA does not bar the claims because Defendants violate U.S. federal and state statutes applicable to gun sales. Defendants' systematic violations of U.S. gun laws put the lie to their assertion that this case involves a "clash of national values" (Jnt. Mem. 3)—both nations outlaw Defendants' conduct. Instead, the facts alleged, which discovery will confirm as true, reveal a different clash—a clash between profits and the value of human life.

For the reasons elaborated below, the Court should deny Defendants' motion.

## ARGUMENT

## I.    THE GOVERNMENT HAS ARTICLE III STANDING.

Defendants' standing and proximate-cause arguments ignore and mischaracterize the allegations, misstate the law, and rehash arguments that numerous courts have properly rejected.

### A.  The Complaint's Causation Allegations Satisfy Article III.

The Government's injury is not only "fairly traceable" to Defendants' unlawful conduct, the allegations have traced it.[2] At the pleading stage, a plaintiff's burden is "relatively modest," and the court will "presume that general allegations embrace those

---

[2] *See, e.g.,* Compl. ¶ 37. "[E]ach of these Defendants is among the 10 dealers with the most crime guns recovered in Mexico and traced back to a dealership in Arizona." *See also id.* ¶¶ 32, 234, 247.

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

Plaintiff's Opposition Brief

specific facts that are necessary to support the claim." *Bennett v. Spear*, 520 U.S. 154, 168-71 (1997) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)) (cleaned up).

Defendants' "traceability" argument hinges and breaks upon the erroneous premise that a plaintiff lacks standing when the defendant's conduct harms the plaintiff through a third party's reaction. There is no such rule of law, and Defendants' argument "is impossible to maintain." *Block v. Meese*, 793 F.2d 1303, 1309 (D.C. Cir. 1986) (Scalia, J.). All that is necessary is that "third parties will likely react in predictable ways . . . even if they do so unlawfully." *Dept. of Commerce v. New York*, 139 S. Ct. 2551, 2566 (2019). Defendants intentionally sell to the cartels, and the cartels are in the business of causing harm.

Accordingly, the district court in Massachusetts held that causation was established in a challenge to the conduct of gun manufacturers in facilitating dealers' illicit gun trafficking to Mexico, despite the existence of third-party action. *Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.,* 2022 WL 4597526, at *9 (D. Mass. Sept. 30, 2022) ("*Smith & Wesson*"). The court concluded that "the complaint plausibly alleges that Mexico's injuries are 'fairly traceable' to [the manufacturers'] conduct" because the "violence in Mexico is a predictable, or 'foreseeable' result of defendants' actions." *Id.* at *8-*9. Nor must Defendants' conduct be the sole cause of the Government's injuries (Jnt. Mem. 14); it need only "contribute[] to [the Government's] injuries." *Massachusetts v. E.P.A.*, 549 U.S. 497, 523-25 (2007) (injury "fairly traceable" because new-car emissions make a "meaningful contribution" to global warming); *see also Media v. Garcia*, 768 F.3d

Plaintiff's Opposition Brief

1009, 1013 (9th Cir. 2014) ("substantial factor" sufficient). Courts routinely allow claims against gun dealers and manufacturers with no qualms over standing. *See infra* Section II.

Defendants cite two old cases holding that local governments had no "standing" to bring certain state-law claims. Jnt. Mem. 7. But those cases applied inapt standards,[3] and numerous other decisions have rejected their reasoning, holding governments have standing, under Article III or state law, to sue those that supply the criminal gun market.[4]

## B. The Claimed Injuries Can Be Redressed.

Unlike the gun manufacturers in *Smith & Wesson*, Defendants here contend that the Government cannot satisfy Article III's redressability requirement. Their apparent argument that damages for past injury do not satisfy redressibility is entirely without support.[5] *Cf.*

---

[3] *See Ganim v. Smith & Wesson Corp.*, 780 A.2d 98, 118-131 (Conn. 2001) (not applying Article III, but Connecticut law based on RICO proximate-cause standard); *Camden Cnty. Bd. of Chosen Freeholders v. Beretta U.S.A. Corp.*, 123 F. Supp. 2d 245, 256-264 (D.N.J. 2000), *aff'd* 273 F.3d 536 (3d Cir. 2001) (six-factor antitrust "proximate cause approach"); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014) ("Proximate causation is not a requirement of Article III standing, which requires only that the plaintiff's injury be fairly traceable to the defendant's conduct.").

[4] *See White v. Smith & Wesson*, 97 F. Supp. 2d 816, 826 (N.D. Ohio 2000) (municipality had Article III standing to bring negligence and nuisance claims against gun manufacturers); *City of Gary ex rel. King v. Smith & Wesson*, 801 N.E.2d 1222, 1248 (Ind. 2003) (municipal plaintiff met standing requirement akin to Article III "by alleging it was financially injured through the sale and use of negligently distributed firearms and by alleging a nuisance within its borders caused by the defendants"); *see also City of Bos. v. Smith & Wesson Corp.*, 2000 WL 1473568, at *3-4 (Mass. Sup. July 13, 2000) (standing under state law); *Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1147-1149 (Ohio 2002) (city has standing to sue gun manufacturers).

[5] Contrary to Defendants' contention (Jnt. Mem. 8), the Complaint does not seek damages of $238 billion, which is instead the alleged economic impact of violence in Mexico in

---

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd, Suite 200
Tucson, AZ 85716-5300

Plaintiff's Opposition Brief

13A Wright & Miller, Fed. Prac. & Proc. § 3531.6 (3d ed. 2022) (nominal damages suffice

for standing). And a plaintiff "need not show that a favorable decision will relieve his *every*

injury." *Larson v. Valente,* 456 U.S. 228, 243 n.15 (1982) (emphasis original).

Defendants' reliance on the plurality opinion in *Defenders of Wildlife* is misplaced.

The issue there was evidence on summary judgment, not the plausibility of allegations on a

motion to dismiss. And it did not concern, as here, unlawful conduct that contributed to the

plaintiff's harm. 504 U.S. at 571.

Redressability is established where the risk of substantial harm "would be reduced to

some extent if [plaintiffs] received the relief they seek." *Massachusetts*, 549 U.S. at 526;

*see also Nw. Env't Defense Center v. Owens Corning*, 434 F. Supp. 2d 957, 968 (D. Or.

2006) (plaintiff need not show that "the challenged action is the exclusive source of that

harm"); *Utah Physicians for a Healthy Env't v. Diesel Power Gear LLC*, 374 F. Supp. 3d

1124, 1136 (D. Utah 2019) (rejecting redressability argument that "violations are but a

'drop in the ocean' of total air pollution").

## II.    IF PLCAA APPLIED, IT WOULD NOT PRECLUDE THIS ACTION.

Section III explains that PLCAA does not apply extraterritorially to claims by

Mexico, for claims under Mexican law, for injuries sustained in Mexico from gun misuse in

Mexico, the Defendants having unlawfully trafficked their guns into Mexico. But even if

PLCAA applied, it would not bar this suit.

---

2019. Compl. ¶ 253. The Complaint does not specify a dollar demand. *See id.*, XII Demand
for Judgment.

DE CONCINI McDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd. Suite 200
Tucson, AZ 85716-5300

DECONCINI McDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

PLCAA prohibits filing a "qualified civil liability action" in a federal or state court. The statute excludes from the definition of prohibited actions those meeting certain criteria, including, as relevant here, those alleging that the defendant violated U.S. federal or state statutes applicable to gun sales or marketing (the "predicate exception"), or that defendant negligently entrusted a gun to a person. Both exceptions apply here.

### A. If PLCAA Applied, the Government's Claims Would Be Within Its "Predicate Exception."

The Protection of **_Lawful_** Commerce in Arms Act does not protect **_un_**lawful commerce in arms. Defendants violate numerous U.S. federal and state statutes applicable to the marketing and sale of guns, and those violations caused harm to the Government. These claims thus fall within PLCAA's "predicate exception," which excepts from PLCAA's preclusion:

> (iii) an action *in which* a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought, including…

§ 7903(5)(A)(iii) (emphasis added).[6]

Other PLCAA exceptions exempt actions "*for*" specific claims, but the predicate exception exempts "an action *in which*" the seller knowingly violated a relevant statute.

---

[6] The Complaint adequately alleges that Defendants' conduct foreseeably causes the Government's injuries. *See, e.g.*, Compl. ¶¶ 125, 167, 242, 276.

Plaintiff's Opposition Brief

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

1    Accordingly, the predicate exception allows all of the plaintiff's tort claims to proceed,

2    regardless of whether each of them would independently fall within an exception.[7]

3        This is an "action in which" the Complaint plausibly alleges that Defendants

4    knowingly violate statutes "applicable to" the sale of guns. The Complaint alleges that

5    Defendants are accomplices in violating numerous laws, including 50 U.S.C. § 4819 and 18

6    U.S.C. § 924(k)(2), which prohibit, respectively, exporting guns without a license and gun

7    smuggling. Compl. ¶¶ 155-60.[8] Defendants systematically violate these statutes by aiding

8    and abetting sales to traffickers. *Id.* ¶ 161. Defendants similarly aid and abet violations of

9    U.S. gun statutes that prohibit selling guns without a license (*id*. ¶¶ 132-34) and making

10   straw purchases (*id*. ¶ 143),[9] and they directly violate U.S. federal prohibitions on selling

11   guns to ineligible buyers (*id*. ¶¶ 140-42).

12

13

14   _____

15   [7] *See, e.g., Prescott v. Slide Fire Sols., LP*, 410 F. Supp. 3d 1123, 1139 n. 9 (D. Nev. 2019);
     *Fox v. L&J Supply, LLC*, No. 2014-24619, 1 n.1 (Pa. Ct. Cmmn. Pl. Nov. 26, 2018);

16   *Englund v. World Pawn Exch., LLC*, 2017 WL 7518923, at *4 (Oregon Cir. Ct. June 30,
     2017); *Corporan v. Wal-Mart Stores E., LP*, 2016 WL 3881341, at *4 n.4 (D. Kan. July 18,

17   2016); *Chiapperini v. Gander Mountain Co.,* 13 N.Y.S.3d 777, 787 (N.Y. Sup. Ct. 2014);
     *Williams v. Beemiller, Inc.,* 952 N.Y.S. 2d 333, 339 (N.Y.App. Div. 2012)  ; *Smith &*

18   *Wesson*, 875 N.E.2d at 434; *City of New York v. A–1 Jewelry & Pawn, Inc*., 247 F.R.D.
     296, 351-53 (E.D.N.Y. 2007); *King v. Klocek*, 133 N.Y.S.3d 356, 359 (N.Y. Sup. Ct. 2020);

19   *Brady v. Walmart Inc*., 2022 WL 2987078 at *12 (D. Md. July 28, 2022); *Norberg v.*

20   *Badger Guns, Inc*., No. 10-cv-20655, *48 (Wis. Cir. Ct. Jun. 9, 2011); *Arce v. Badger*
     *Guns*, No 10-cv-18530 (Wis. Cir. Ct. Mar. 24, 2014).

21

22   [8] *See also* 28 U.S.C. § 2778(b)(1)(A)(i) (registration requirements for "manufacturing,
     exporting, or importing any defense articles . . . designated by the President"); 15 C.F.R. §

23   738.4.

24   [9] A straw purchaser "buys a gun on someone else's behalf while falsely claiming that it is
     for himself." *Abramski v. United States,* 573 U.S. 169, 171-72 (2014) (straw purchaser

25   violates 18 USC §§ 922(a)(6), 924(a)(1)(a)). A dealer that completes a gun sale despite

26   _____

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

Numerous cases have held that similar allegations adequately plead predicate violations that remove the case from PLCAA's preclusion. For example, in *Smith & Wesson Corp. v. City of Gary*, 875 N.E.2d 422, 425 (Ind. App. 2007), the City, like the Government here, alleged that several manufacturers and dealers aided and abetted illegal gun sales and possession through business practices that supplied the criminal market. The Indiana Court of Appeals held that the complaint alleged knowing violations of gun laws, as well as a state public nuisance statute, and thus the City's negligence and public nuisance claims could proceed. *Id.* at 432-34. The Court of Appeals later reaffirmed that decision, reversing a trial court's decision that subsequent PLCAA case law required dismissing the case. *City of Gary v. Smith & Wesson Corp.*, 126 N.E.3d 813, 832-34 (Ind. App. 2019).

The New York Appellate Division reached the same conclusion. *Williams v. Beemiller, Inc.*, 952 N.Y.S.2d 333, 339–40 (N.Y. App. Div. 2012), *amended by* 962 N.Y.S.2d 834 (N.Y. App. Div. 2013). The case law is not simply overwhelming; it is unanimous. *See, e.g.*, *Corporan v. Wal-Mart Stores East*, LP, 2016 WL 3881341, at *4 n. 4 (D. Kan. July 18, 2016) (predicate exception allowed action alleging dealer abetted straw purchase); *Englund v. World Pawn Exch., LLC*, 2017 WL 7518923, at *5-6 (Ore. Cir. June 30, 2017) (same); *Englund v. World Pawn Exch., LLC*, No. 16-CV-00598 (Ore. Cir. Aug. 13, 2018) (attached as Ex. A) (denying motion for summary judgment); *Fox v. L&J Supply*,

---

actual or constructive knowledge that the buyer is a straw purchaser is an accomplice to those purchase-related crimes. *See United States v. Carney,* 387 F.3d 436, 443 n.4, 448-50 (6th Cir. 2004).

Plaintiff's Opposition Brief

*LLC*, No. 2014-24619 (Pa. Ct. Cmmn. Pl. Nov. 26, 2018) (Ex. B) (multiple purchases put dealer on notice of straw purchase or sale to trafficker; predicate exception applied); *Coxie v. Academy, Ltd.*, No. 2018-CP-42-04297 (S.C. Ct. Cmmn. Pl. Jul. 29, 2019) (Ex. C) (repeat purchases put dealer on notice of straw purchase or sale to trafficker; predicate exception applied); *Chiapperini v. Gander Mountain Co.*, 13 N.Y.S.3d 777, 787–88 (N.Y. Sup. Ct. 2014) (predicate exception applied where complaint alleged dealer abetted straw purchase); *Norberg v. Badger Guns, Inc.*, No. 10-cv-20655, *48 (Wis. Cir. Ct. Jun. 9, 2011) (Ex. D) (same); *Arce v. Badger Guns*, No 10-cv-18530 (Wis. Cir. Ct. Mar. 24, 2014) (Ex. E) (same).

The Government's allegations undoubtedly establish violations of applicable gun statutes. The Supreme Court upheld ***a criminal conspiracy conviction*** of a drug manufacturer under facts in many ways weaker than this case. *See Direct Sales Co., Inc. v. United States*, 319 U.S. 703 (1943). Like this case, the seller in *Direct Sales* supplied a licensed buyer (a doctor) with a legal product, there through mail orders. Like this case (*see* Compl. ¶¶ 1, 24, 39, 44-46, 48, 64, 77, 79, 89, 90, 96, 99, 101, 105, 117), the seller had notice that certain sales (bulk sales or "multiple sales") were associated with illegal downstream diversion. Unlike this case, the *Direct Sales* seller responded by no longer engaging in some bulk sales. Nonetheless, it continued to make some large sales, and was convicted of criminal conspiracy when one doctor to whom it supplied high volumes then illegally resold those drugs. The seller in *Direct Sales* did not have any knowledge of the doctor's illegal conduct; it was aware only that the (otherwise legal) bulk sales it supplied to

Plaintiff's Opposition Brief

the downstream seller were suspect. *See also City of Boston v. Purdue Pharm*, *L.P.*, 2020 WL 977056, at *5 (Mass. Super. Jan. 31, 2020) (cities adequately alleged that distributors "knowing[ly] supplied an illicit opioid market over the course of years"); *In re National Prescription Opiate Litig.*, 2018 WL 6628898, at *19 (N.D. Ohio Dec. 19, 2018) (complaint adequately alleged that defendants "fail[ed] to administer responsible distribution practices (many required by law)" and "not only failed to prevent diversion, but affirmatively [and foreseeably] created an illegal, secondary opioid market").

Gun dealers can be convicted of violating the law for making sales when red flags indicate unlawful conduct. *See Carney*, 387 F.3d at 448–50 (gun dealer convicted of participating in straw sales)*; see also United States v. Nosal*, 844 F.3d 1024, 1039 (9th Cir. 2016) ("We have repeatedly held . . . a criminal defendant act[ing] 'knowingly' is 'not limited to positive knowledge, but includes the state of mind of one who does not possess positive knowledge only because he consciously avoided it.'") (quoting *United States v. Heredia*, 483 F.3d 913, 918 (9th Cir. 2007)); *United States v. Ramos-Atondo*, 732 F.3d 1113, 1119 (9th Cir. 2013) (defendants' willful blindness to smuggling operation supported conviction because "[a] failure to investigate can be a deliberate action").

Defendants present no contrary authority. None. Instead, they fail to mention this mountain of similar cases and rely on a few inapposite ones. The only case against a dealer they cite, *In re Academy, Ltd.,* 625 S.W.3d 19 (Tex. 2021), simply held that a Texas gun dealer did not violate any law when it sold to a Colorado resident a high-capacity magazine

Plaintiff's Opposition Brief

that was not prohibited in Texas. So, unlike here, there was no predicate violation to satisfy the predicate exception.

   *Travieso v. Glock, Inc.*, 526 F. Supp. 3d 533 (D. Ariz. 2021), *appeal dismissed*, 2021 WL 4295762 (9th Cir. July 6, 2021), did not consider the predicate exception at all, but construed PLCAA's products-liability exception, which is not at issue here. Similarly, *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1136 (9th Cir. 2009), did not consider violations of gun statutes, but held that California's codified common law was not a predicate statute—it was not "applicable to the sale or marketing" of firearms. Defendants do not, and cannot, dispute that the federal gun laws at issue here are predicate statutes under PLCAA.

   PLCAA's sponsors made clear that gun companies can be liable for negligence when they break the law. PLCAA's chief Senate sponsor, Senator Larry Craig, repeatedly stated on the Senate floor that "If manufacturers or dealers break the law or commit negligence, they are still liable." 151 Cong. Rec. S.9099 (daily ed. July 27, 2005). Sponsor Senator Max Baucus also asserted that "[t]his bill . . . will not shield the industry from its own wrongdoing or from its negligence." 151 Cong. Rec. S9107 (daily ed. July 27, 2005). Further, PLCAA's first Purpose and a Finding indicate Congress's intent to shield only liability for "harm solely caused" by third-party misuse. *See* 15 U.S.C. §§ 7901(a)(6), (b)(1). The addition of "solely" was one of the few changes made to PLCAA after it failed to pass,[10] suggesting it was instrumental to its passage and that Congress wished to preserve

---

[10] *Compare* S. 1805, 108th Cong. § (b)(1) (2003) *with* 15 U.S.C. § 7901 (b)(1) and S. 397, 109th Cong. (2005) (enacted).

Plaintiff's Opposition Brief

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

liability in cases where one cause of the harm was third-party misuse, and another cause was gun company violation of laws applicable to firearms, as the predicate exception provides.

And when claims arise under state law, federalism principles and the presumption against preemption require reading PLCAA to preserve common law actions and narrowly construing the scope of any preemption. *See Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996); *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 522–24 (1992); *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991). The Court should "not read [PLCAA] to [bar state-law claims] unless Congress has made it clear that [they] are *included*." *Gregory*, 501 U.S. at 467 (emphasis in original). PLCAA does not include such a plain statement that negligence or other tort claims are barred. Accordingly, courts "are compelled to resolve any textual ambiguities in favor of the plaintiffs." *Soto v. Bushmaster Firearms Int'l, LLC*, 202 A.3d 262, 312–13 & n. 58 (Conn. 2019), *cert denied*, 140 S. Ct. 513 (2019) (citing *Cipollone*, 505 U.S. at 516 and *Bond v. United States*, 572 U.S. 844, 857–58 (2014)).

The only court to construe PLCAA differently was the trial court in *Smith & Wesson*, which concerned manufacturers, not dealers, and is on appeal and the Government expects will be reversed. That court did not consider, much less distinguish, the mountain of authority cited above. Instead, it held that PLCAA's predicate exception allows only claims that *arise under* the predicate statute, such as implied rights of action. *Smith & Wesson*, 2022 WL 4597526, at *14.

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd, Suite 200
Tucson, AZ 85716-5300

Plaintiff's Opposition Brief

No other court has adopted that reading of PLCAA, and it is contradicted by the statute's plain text. PLCAA lists as non-exhaustive examples of viable predicate violations actions in which a defendant violated the federal Gun Control Act by aiding and abetting illegal gun sales and possession, such as straw purchasing and trafficking. §§ 7903(5)(A)(iii)(I), (II). But according to *Smith & Wesson*, those examples are nullities, since there is no private right of action under those statutes. *See, e.g., Est. of Pemberton v. John's Sports Ctr., Inc.*, 135 P.3d 174, 180–83 (Kan. App. 2006); *T&M Jewelry, Inc. v. Hicks*, 189 S.W.3d 526, 530 (Ky. 2006); *Starr v. Price*, 385 F. Supp. 2d 502, 513 (M.D. Pa. 2005).

The Government alleges predicate violations of gun laws, so PLCAA does not bar this action.

### B.  If PLCAA Applied, the Government's Claims Would Be Within Its Negligent-Entrustment Exception.

Although it is not necessary to satisfy additional exceptions to avoid dismissal, the Government also comes within the negligent-entrustment exception. The applicable Mexican tort law (*see infra* Section IV) comfortably encompasses the elements of what is known in the United States as "negligent entrustment."[11] And it is well settled that a complaint adequately states a claim for negligent entrustment by alleging that a gun dealer sold guns despite indicators of a straw purchase or trafficking. *See, e.g., Englund,* 2017 WL

---

[11] *See* Plaintiff's First Expert Report on Tort Law of Mexico ("First Tort Law Report") ¶ 73, attached as Exhibit A to the Declaration of Steve D. Shadowen.

Plaintiff's Opposition Brief

7518923, at *6 ("[P]laintiff is entitled to go forward on a [negligent entrustment] theory that defendants supplied these firearms to [a prohibited purchaser], through a third person, [] having reason to know that such supplying involved unreasonable risk to others based upon the inherent dangerous nature of straw-purchase transactions."); *Corporan,* 2016 WL 3881341, at *5-6 (same); *Fox,* No. 2014-24619, at 1 n.1 (same); *Coxie,* No. 2018-CP-42-04297, at 3-4 (same); *Chiapperini*, 13 N.Y.S.3d at 790 ("[Defendant's argument] that these red flags [of a straw purchase] are just as capable of an innocuous interpretation as they are a criminal one is unpersuasive to require dismissal [of the negligent entrustment claim].") (internal quotations omitted); *Norberg*, No. 10-cv-20655, at *48 (same); *Arce*, No. 10-CV-18530, at 25-26 (same).

The Complaint here similarly satisfies all elements of negligent entrustment. The Government alleges that each Defendant supplied guns "for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use [] in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use ...." *Verduzco v. American Valet*, 240 Ariz. 221, 224 (Az. App. Div. 2016) (quoted in Jnt. Mem. 14).

Defendants nevertheless argue that they cannot be liable because they sold guns rather than lent them, and previous Arizona negligent entrustment cases have not involved sales. But applicable Mexican law is not so limited. And courts in the U.S. have rejected Defendants' proposed distinction because "the Restatement (Second) of Torts § 390,

Plaintiff's Opposition Brief

comment a, states that the negligent entrustment rule recited in that section 'applies to sellers, lessors, donors or lenders, and to all kinds of bailers, irrespective of whether the bailment is gratuitous or for a consideration'" and "there is now wide support for the legal principle that merchants may be considered to be suppliers of chattels." *Shirley v. Glass,* 241 P.3d 134, 145 (Kan. App. 2010); *see also Ireland v. Jefferson County Sheriff's Dept.*, 193 F. Supp. 2d 1201, 1229 (D. Colo. 2002); *Brown v. Wal-Mart Stores, Inc.*, 976 F. Supp. 729, 734-35 (W.D. Tenn. 1997). Consequently, negligent entrustment claims may be maintained against firearms and ammunition merchants. *See, e.g., Ireland*, 193 F. Supp. 2d at 1227-29; *Brown*, 976 F. Supp. at 734-35; *Knight v. Wal-Mart Stores, Inc.*, 889 F. Supp. 1532, 1539 (S.D. Ga. 1995); *Wal-Mart Stores, Inc. v. Tamez*, 960 S.W. 2d 125, 130 (Tex. App. 1997). Indeed, "a firearms dealer must exercise the highest standard of care in order to avoid selling guns to such felons." *Shirley v. Glass*, 308 P.3d 1, 9 (Kan. 2013).

The same reasoning applies here. The logic behind the negligent entrustment tort is to impose liability for ceding control over an object to someone whom the entrustor should know poses a danger with it. No reason supports making the entrustor's liability hinge on the financial details of the entrustment—those who lend products would be liable but those who sell would not. As the *Shirley* Court noted, the Restatement's comments pointedly reject such illogic.

## III.    PLCAA DOES NOT APPLY EXTRATERRITORIALLY.

Even if PLCAA included no exceptions, it would not bar this case because the gun misuse and injury here occurred in Mexico, not in the United States. Under the Supreme

Plaintiff's Opposition Brief

Court's two-step extraterritoriality analysis, PLCAA does not apply. The first step applies the "presumption against extraterritoriality"—the rule that a federal statute applies extraterritorially only when "Congress has affirmatively and unmistakably instructed that [it] will do so." *RJR Nabisco*, *Inc. v. European Community*, 579 U.S. 325, 335 (2016). If the inquiry proceeds to the second step, the court determines the statute's "focus"; if the conduct and circumstances relevant to that focus occurred abroad, then applying the statute is not a permissible domestic application.

When there is a "clear indication" of a statute's scope, a court "do[es] not proceed to the 'focus' step." *Id*. at 342. Instead, the application of the statute "turns on the limits Congress has (or has not) imposed." *Id*. at 337-38. PLCAA provides just such a "clear indication" that it does not apply to gun misuse and resulting injury abroad, so the inquiry is resolved at the first step.

The presumption against extraterritoriality is grounded in the commonsense notion that "Congress ordinarily legislates with respect to domestic, not foreign, matters." *Morrison v. Nat'l Australia Bank Ltd.,* 561 U.S. 247, 255 (2010). It also prevents courts from "erroneously adopt[ing] an interpretation of U.S. law that carries foreign policy consequences not clearly intended by the political branches." *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 116 (2013). So "[w]hen a [federal] statute gives no clear indication of an extraterritorial application, it has none." *Id.* at 115 (quoting *Morrison*, 561 U.S. at 255).

DeCONCINI McDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd, Suite 200
Tucson, AZ 85716-5300

Plaintiff's Opposition Brief

Defendants cannot overcome the presumption by invoking PLCAA's boilerplate references to "interstate and foreign" commerce. The Supreme Court "ha[s] emphatically rejected reliance on such language, holding that 'even statutes . . . that expressly refer to '*foreign* commerce' do not apply abroad.'" *RJR Nabisco,* 579 U.S. at 353 (quoting *Morrison*, 561 U.S. at 262-63) (emphasis in original); *see also Smith & Wesson*, 2022 WL 4597526, at *11.

Instead, PLCAA affirmatively indicates that it does not apply to claims resulting from gun misuse and injury abroad. It precludes claims seeking "damages . . . or other relief, resulting from the criminal or unlawful misuse" of guns. 15 U.S.C. § 7903(5)(A). It precludes such claims against gun importers, *but not exporters*.[12] Its Findings also omit any reference to exporting, referring only to "[t]he manufacture, *importation*, possession, sale, and use of firearms and ammunition *in the United States*." 15 U.S.C. § 7901 (a)(4) (emphasis added).

Moreover, "criminal or unlawful misuse" means misuse that is criminal or unlawful under U.S. law—misuse that occurred in U.S. territory. It is implausible that Congress

---

[12] 15 U.S.C. § 7903(6)(A); *see also id*. § 7901(b)(1) (among statute's goals is protecting importers from the defined claims; not mentioning exporters). Section 7903(5)(A) defines a prohibited qualified civil liability action as one brought against "manufacturer[s]" and "seller[s]." Section 7903(6)(A) defines "sellers" to include licensed importers, but omits exporters. Section 7903(2) defines a "manufacturer" as someone who is licensed as a manufacturer under 18 U.S.C. § 923. A license to import or manufacture does not include the right to export firearms, which requires additional licenses. And PLCAA refers not just to the status of being an importer (omitting exporters), but also to the business of importing but not of exporting. *See* 15 U.S.C. § 7901(a)(5) (referring to "manufacture, marketing, distribution, importation, or sale to the public"); *id*. §7901(a)(4) (same).

Plaintiff's Opposition Brief

DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

intended to incorporate into the statute foreign criminal law that varies widely and is often inconsistent with U.S. criminal law.[13] *See Small v. United States,* 544 U.S. 385, 389 (2005) (construing federal statute's reference to "convicted in any court" to mean only conviction in a U.S. court). Congress knows how to refer to foreign law when it wants to.[14]

PLCAA provides exceptions where the seller violated certain "State or Federal statute[s]" (15 U.S.C. § 7903(5)(A)(i), (iii)), but not similar foreign statutes, and preserves certain claims, including those of minors, "under Federal or State law" (*id.* § 7903(5)(D)) but not under similar foreign law. These exceptions—without corresponding exceptions based on foreign laws—confirm that Congress had only "domestic [law] in mind." *Small*, 544 U.S. at 388-89 (construing statute to avoid such "anomalies"). And PLCAA's legislative history has no discussion of gun misuse that occurs abroad and no references to Mexico, Canada, or their nationals. *See Small*, 544 U.S. at 389-94.

Similarly, PLCAA pointedly refers to precluding actions "by the Federal Government, States, municipalities [and some non-governmental entities]" but omits any

---

[13] *See, e.g.,* National Report of Eritrea on its Implementation of the United Nations Programme of Action to Prevent, Combat and Eradicate the Illicit Trade in Small Arms and Light Weapons in All Its Aspects at 1 (Jan. 1, 2010) (gun possession outlawed); Robert L. Nay, *Firearms Regulation in Various Foreign Countries* (Law Library of Congress 1990), available at https://www.ojp.gov.

[14] *See, e.g.*, 16 U.S.C. § 3372(a)(2) ("violation of any law or regulation of any State or in violation of any foreign law"); 19 U.S.C. § 1527(a) ("the laws or regulations of any country, dependency, province, or other subdivision of government"); 29 U.S.C. § 53 ("the laws of either the United States, the laws of any of the Territories, the laws of any State, or the laws of any foreign country"); 42 U.S.C. § 1705(a) ("under any other law of the United States, or under the law of any State, Territory, possession, foreign country, or other jurisdiction").

references to foreign governments. *See* 15 U.S.C. § 7901 (a)(7), (8). Again, Congress knows how to include foreign governments when it wants to.[15]

And courts must "separately apply the presumption against extraterritoriality to [the statute's provision creating a] cause of action." *RJR Nabisco*, 579 U.S. at 346. Providing or precluding a damages claim for injuries incurred abroad risks "upsetting a balance of competing considerations that [foreign sovereigns'] own domestic . . . laws embody" and thereby "offend[ing] the sovereign interests of foreign nations." *Id.* at 347-48 (quoting *F. Hoffmann–La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 167 (2004)). Indeed, Defendants acknowledge that for these reasons *RJR Nabisco* construed the statute's reference to a damages claim for "injury" to mean "a *domestic injury*." Jnt. Mem. 40 (emphasis added).

Applying PLCAA would usurp Mexico's sovereign interests by precluding a claim for injury incurred in Mexico, from gun misuse in Mexico, under the tort law of Mexico, against gun dealers that participated in unlawfully importing their guns into Mexico, pursued in the only national forum in which Mexico can get effective injunctive relief against these U.S.-based gun sellers.[16]

---

[15] *See, e.g.*, 16 U.S.C. § 5102(11) ("any Federal, State, local, or foreign government or any entity of any such government"); 42 U.S.C. § 18311(a)(2)(A) ("the Federal Government, a State or local government, or a foreign government"); 22 U.S.C. § 3504(a)(1) ("governments or government agencies, domestic or foreign").

[16] The court in *Smith & Wesson* erroneously ignored *RJR Nabisco*'s "injury" analysis, erroneously relied on an inapplicable decision that pre-dated the modern two-step inquiry, and ignored that the complaint alleged that the defendants there, as here, engage in conduct in Mexico when they aid and abet trafficking guns into Mexico.

Plaintiff's Opposition Brief

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd, Suite 200
Tucson, AZ 85716-5300

So the extraterritoriality inquiry here never proceeds to the second step because PLCAA affirmatively indicates that it does not apply to gun misuse and injury abroad. Regardless, the second step produces the same conclusion. Under that step, the court examines the "focus" of the relevant statutory provisions and whether "the conduct relevant to the statute's focus occurred in the United States" or abroad. *RJR Nabisco*, 579 U.S. at 337. If the conduct or circumstances occurred abroad, "then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory." *Id.*

PLCAA's focus is clear. Subject to its exceptions, it precludes a specified set of lawsuits—"qualified civil liability action[s]" (Section 7902(a))—which it defines as those seeking "damages . . . or other relief, resulting from the criminal or unlawful misuse" of guns. 15 U.S.C. § 7903(5)(A). Section 7902(a) "works in tandem with" and so is "assessed in concert" with Section 7903(5)(A), and the court must separately determine Section 7903(5)(A)'s focus. *WesternGeco*, 138 S. Ct. at 2137. Section 7903(5)(A)'s focus is indisputably gun misuse and the resulting injury.[17]

As the Court of Appeals has concluded, PLCAA "insulat[es] the firearms industry from a specified set of lawsuits"—those defined in Section 7903(5)(A). *Ileto*, 565 F.3d at 1140-41; *see also City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 398 (2d Cir.

---

[17] PLCAA's findings and purposes confirm that the narrow set of precluded claims is those for "harm caused by . . . misuse." *See, e.g.*, 15 U.S.C. § 7901(a)(3); §7901(a)(5); § 7901(a)(6) ("harm . . . solely caused by others"); *id.* § 7901(b)(1) ("harm solely caused by the criminal or unlawful misuse").

2008) (PLCAA protects "a specific type of defendant from a specific type of suit"). The gun misuse and injury occurred in Mexico, so "[this] case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory." *RJR Nabisco*, 579 U.S. at 337.[18]

## IV.    THE SUBSTANTIVE LAW OF MEXICO APPLIES TO ITS TORT CLAIMS.

Defendants' motion rests on their unsupported and incorrect premise that Arizona's substantive law governs the tort claims. Under the applicable[19] Arizona choice-of-law rule, Mexican tort law applies because the injuries occur there, the gun misuse occurs there, Defendants exported/imported their guns there, and the Government and its citizens are domiciled there.

Arizona applies the Restatement (Second) Conflict of Laws § 379 balancing test under which the Court "must ascertain which of the states involved has the most significant contacts with the subject matter of the suit." *Schwartz v. Schwartz*, 103 Ariz. 562, 565

---

[18] *Smith & Wesson* erroneously concluded that PLCAA's focus is "regulat[ing] the types of claims that can be asserted against firearm manufacturers and sellers." 2022 WL 4597526, at *12. But that definition of PLCAA's focus is so broad as to be tautological. *All* statutes "regulate the type" of activity to which they are directed, and *all* such "regulat[ion]" by definition occurs in the United States—in the U.S. courts that apply the statutes. Defining a statute's focus at that level of generality would give courts free rein to try to "divin[e] what Congress would have wanted if it had thought of the situation," *Morrison*, 561 U.S. at 261, rather than ensuring that Congress, not the courts, makes those foreign-policy judgments.

[19] *See Day & Zimmermann, Inc. v. Challoner* 423 U.S. 3, 3–4 (1975); *Abogados v. AT&T, Inc.*, 223 F.3d 932, 935-36 (9th Cir. 2000).

DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd. Suite 200
Tucson, AZ 85716-5300

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

(1968), *abrogated on other grounds by Fernandez v. Romo*, 132 Ariz. 447 (1982). The Court weighs:

> (a) the place where the injury occurred; (b) the place where the conduct occurred; (c) the domicile, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered.

*Id.* (quoting Restatement (Second) Conflict of Laws § 379 (1968)).

The Supreme Court has twice concluded that, under this test, "a court will ordinarily 'apply *foreign* law to determine the tortfeasor's liability' to 'a plaintiff injured in a foreign country.'" *RJR Nabisco*, 579 U.S. at 351 (quoting *Sosa v. Alvarez-Machain*, 542 U.S. 692, 706 (2004)) (emphasis in *RJR Nabisco*). Courts reach the same conclusion specifically under Arizona choice of law: the place where the injury occurred is "the most important factor" in claims for both personal and economic injury, *Johnson v. KB Home*, 720 F. Supp. 2d 1109, 1122 (D. Ariz. 2010), and the law of the place of injury presumptively applies "unless another state has a 'more significant relationship to the [tort] and to the parties.'" *Liu v. Republic of China*, 892 F.2d 1419, 1426 (9th Cir. 1989) (quoting *Harris v. Polskie Linie Lotnicze*, 820 F.2d 1000, 1003–04 (9th Cir. 1987)); *see also Bates v. Superior Ct. of State of Ariz., In & For Maricopa Cnty.*, 156 Ariz. 46, 51 (1988) (same).

Defendants cannot overcome the entrenched presumption that Mexican law applies here. The injuries occur in Mexico, and this is not a "mere fortuitious circumstance" because Defendants purposefully supply the criminal firearms market there. *Summers v. Interstate Tractor & Equip. Co.*, 466 F.2d 42, 49 (9th Cir. 1972). Under this "most important factor," Mexican tort law applies.

Courts consider the place where the conduct occurred, but the fact "[t]hat there is a clearly demonstrable place of injury weakens this factor." *U.S. Aviation Underwriters, Inc. v. Eurocopter*, 2006 WL 1882709, at *5 (D. Ariz. July 7, 2006). And Defendants' conduct is *distinctly cross-border*, as they unlawfully export/import their guns from the United States into Mexico.

The parties' domiciles also weigh in favor of Mexican tort law, with the plaintiff's domicile "accorded great weight." *See, e.g.*, *Garcia v. Gen. Motors Corp.,* 990 P.2d 1069, 1076 (Ariz. Ct. App. 1999). The existence of multiple U.S. domiciliaries does not alter that conclusion. *See Wendelken v. Superior Ct. In & For Pima Cnty.*, 137 Ariz. 455, 459 (1983) (in an action "'brought by an Oregon domiciliary against two Washington corporations' . . . the domicile factor was split between the two states and favored neither state's law" (quoting *Casey v. Manson Construction Co.*, 247 Or. 274, 288 (1967))). Indeed, the Government brings this action on behalf of its 132 million citizens.

Lastly, to the extent a relationship exists between the Government and Defendants, it consists of them exporting their guns into Mexico's sovereign territory.

The situs of the harm ("the most important factor"), the Government's and its citizens' domicile, and Defendants' exporting/importing their guns into Mexico all warrant applying Mexican tort law.

## V.    THE COMPLAINT ADEQUATELY PLEADS PROXIMATE CAUSE.

While there is no basis to dismiss for lack of proximate cause under any reasonable standard, Defendants' proximate-cause arguments fail at the outset because the contours of

DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

Plaintiff's Opposition Brief

the requirement depend on the substantive law being applied. *See, e.g.*, *Abston v. Ryan*, 120 F. App'x 659 (9th Cir. 2004) (Arizona Court of Appeals correctly excluded evidence not considered probative under Arizona standard for proximate cause); *Lexmark*, 572 U.S. at 133 ("Proximate-cause analysis is controlled by the nature of the statutory cause of action."). Here, the law that applies is Mexican law.

The applicable tort principle of Mexico is "adequate cause," similar to "foreseeability" under the common law in U.S. states. First Tort Law Report ¶¶ 67-69. It is a case-specific factual inquiry dependent on the particular circumstances. *Id*. ¶¶ 67-74. Once the plaintiff makes an initial showing that the injury is causally related to the defendant's negligence, the defendant has the burden to show that some unforeseeable event broke the causal chain. *Id*. ¶ 69.

Defendants have nothing to say about whether the Complaint plausibly alleges proximate cause under Mexican law; they instead rely principally on the proximate-cause standard of certain federal statutes or state jurisdictions (Jnt. Mem. 22-24) that is not the standard under Mexican law, Arizona law, or the common law in the U.S. more generally.[20]

---

[20] *See, e.g.*, *James v. Arms Technology, Inc.*, 820 A. 2d 27, 38 (N.J. App. Div. 2003) (city's complaint against gun manufacturers sufficiently alleged proximate cause; the federal antitrust/RICO proximate cause standard applied by courts in *Camden County*, *Ganim*, and *City of Philadelphia* "does not fit squarely in a case . . . involving application of traditional tort concepts under New Jersey law"); *City of Chicago v. Purdue Pharma L.P.*, 2021 WL 1208971, at *13 (N.D. Ill. Mar. 31, 2021) ("Whatever federal courts have said about proximate cause in the context of federal statutes such as [RICO]. . . plaintiff's claims in this case are governed by Illinois law" under which "foreseeability is the touchstone of the legal-cause analysis.") (cleaned up).

Plaintiff's Opposition Brief

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

DECONCINI McDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

1    Defendants argue that there are too many steps in the causal chain to satisfy

2    proximate cause. Jnt. Mem. 23. But under the law of Mexico and Arizona, what counts is

3    not the *number* of steps in the abstract, but whether the Government's injuries were a

4    foreseeable result of Defendants' misconduct.[21] Moreover, Defendants exaggerate the

5    number of steps, which is really just two: (1) Defendants sell guns to traffickers who are

6    agents, or effectively agents, for the cartels; and (2) the cartels use the weapons to inflict

7    violence that causes the harm to the Government and its citizens. And Defendants ignore

8    the ample authority holding that harms to governments from manufacturers' and dealers'

9    supply of an illicit gun market are not too remote for proximate cause.[22] Defendants cite

10   *City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415 (3d Cir. 2002), but that decision

11   is a minority view, involved only manufacturers (noting "the straw's dealings are not with

12

13

14

---

15   [21] *See* First Tort Law Report ¶ 74; *Knauss v. DND Neffson Co.*, 963 P.2d 271, 276 (Ariz.
     1997) ("foreseeability of risk . . . determines whether an actor's conduct was the proximate
16   cause of the injury" (quoting *Tellez v. Saban*, 933 P.2d 1233,1240 n.5 (Ariz. Ct. App.
     1996))); *Ritchie v. Krasner*, 211 P.3d 1272, 1282 (Ariz. Ct. App. 2009) ("A jury may find
17   proximate cause between the defendant's act and the plaintiff's injury if the plaintiff's
     injury was a foreseeable consequence of the act," citing Dan B. Dobbs, The Law of Torts
18   447-53 (2000)).

19   [22] *See City of Boston v. Smith & Wesson Corp*. 2000 WL 1473568, at *4-7 (Mass. Super.
     July 13, 2000); *City of Cincinnati,* 768 N.E.2d at 1148-49; *James*, 820 A.2d at 37-44; *City
20   of Gary*, 801 N.E.2d 1243-45; *see also Ileto v. Glock Inc.*, 349 F.3d 1191, 1206 (9th Cir.
     2003) (allowing negligence and nuisance claims against gun manufacturers and distributors
21   for facilitating illegal secondary market which was a substantial factor enabling the
     interstate trafficking of a gun used to murder to plaintiff's decedent; although gun was
22   transferred among several lawful possessors and multiple criminals, links "[we]re not too
     attenuated" to establish proximate cause); *City of Chicago,* 2021 WL 1208971, at *11-13
23   (discussing and following opioid cases finding proximate cause where manufacturers'
     negligent distribution of opioids allegedly caused "significant knock-on effects" that
24   increased the cost of city services).

25

26

Plaintiff's Opposition Brief

the manufacturers," *id.* at 424), applied an inapt proximate-cause standard (*see supra* n. 20), and did not involve allegations, as here, that defendants intentionally or recklessly violated firearms statutes.[23]

Defendants assert that cartel members' intervening intentional criminal acts are superseding causes as a matter of law. Jnt. Mem. 23-24. But the law of Mexico and Arizona provides that criminal conduct is *not* a superseding cause where it is foreseeable. First Tort Law Report ¶ 73. Indeed, failing to guard against foreseeable criminal conduct is negligence. *Id.* "[A] crime is a superseding cause of harm *unless the defendant should have foreseen the crime." Fedie v. Travelodge Int'l, Inc.*, 782 P.2d 739, 742 (Ariz. Ct. App. 1989) (emphasis added) (citing the Restatement (Second) of Torts § 448); *see, e.g., Knauss*, 963 P.2d at 276 ("we cannot say as a matter of law that the criminal acts against decedent were unforeseeable or constituted a superseding cause").[24] The Complaint plausibly alleges the criminal use of Defendants' guns by the cartels was not only foreseeable, it was a *likely* consequence of Defendants' knowing or reckless sales of firearms to straw purchasers and gun traffickers. Compl. ¶¶ 122, 276. Numerous cases have specifically rejected Defendants'

---

[23] Defendants' reference to *People v. Sturm, Ruger & Co.*, 309 A.D.2d 91 (N.Y. App. Div. 2003), is similarly inapt. *See id.* at 103 (citing to "defendants' *lawful commercial activity*") (emphasis added).

[24] *See* Restatement (Second) of Torts § 448 (criminal act of a third party is not a superseding cause where "the [initial] actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created . . . that a third person might avail himself of the opportunity to commit . . . a tort or crime"); *id.* cmt. c ("The actor's conduct may be negligent solely because he should have recognized that it would expose the person . . . to an unreasonable risk of criminal aggression").

Plaintiff's Opposition Brief

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

argument and held that when criminal misuse of firearms is foreseeable it is not a bar to proximate cause.[25]

Nor are the Government's injuries too remote because they are "wholly derivative" of the harm to its citizens. Jnt. Mem. 24. Mexican tort law does not recognize any such restriction on the Government's right to recover on its own behalf. *See* First Tort Law Report ¶¶ 69-74. And the argument has no applicability to the Government's claim on behalf of its citizens in *parens patriae*. Compl. ¶ 6, 14. In any event, courts have rejected Defendants' assertion that injuries like the Government's are wholly derivative of harm to third parties. For example, in *City of Boston*, 2000 WL 1473568, at *6, the court explained:

> This alleged harm is in large part not "wholly derivative of" or "purely contingent on" harm to third parties. . . . Even if no individual is harmed, Plaintiffs sustain many of the damages they allege due to the alleged conduct of Defendants fueling an illicit market (e.g., costs for law enforcement, increased security, prison expenses and youth intervention services). Similarly, diminished tax revenues and lower property values may harm Plaintiffs separately from any harm inflicted on individuals. Plaintiffs' harm is in essence the type of harm typically suffered by [governments] due to public nuisances. Indeed, much of the harm alleged is of a type that can only be suffered by these plaintiffs.

The same logic applies here. The Government incurs many increased costs to fight gun violence—for example, increased expenses for law enforcement and security—to

---

[25] *See supra* n. 22. Defendants cite *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E. 2d 1099 (Ill. 2004) (Jnt. Mem. 24), but that case (applying Illinois law) is distinguishable because, among other reasons, plaintiffs had not alleged that defendants violated applicable statutes. *Id.* at 1124-1125. *Cf.* Restatement (Third) of Torts: Phys. & Emot. Harm § 33(b) ("An actor who intentionally or recklessly causes harm is subject to liability for a broader range of harms than the harms for which that actor would be liable if only acting negligently.").

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

protect its citizens from *additional future* harms. And the death of, and injury to, Government police and military and the destruction of government property is plainly not "derivative" of citizens' harm.[26] Regardless of which substantive law applies, "proximate cause is usually a question of fact for the jury." *Fedie*, 782 P.2d at 742.

None of Defendants' arguments suggest a different result here.

## VI.     THE COMPLAINT ADEQUATELY PLEADS A CLAIM UNDER ARIZONA'S CONSUMER FRAUD ACT.

Under the Arizona Consumer Fraud Act ("CFA")[27] a plaintiff need establish only two elements: "(1) the defendant made a misrepresentation in violation of the Act, and (2) defendant's conduct proximately caused plaintiff to suffer damages." *Cheatham v. ADT Corp.,* 161 F. Supp. 3d 815, 825 (D. Ariz. 2016). The Complaint contains detailed allegations and descriptions of CFA violations committed by all Defendants in their marketing of firearms (Compl. ¶¶ 217-34) and the specific injuries proximately caused to the Government (*id*. ¶¶ 308-09). Defendants' attacks on these allegations fail.

---

[26] Defendants rely again on *Ganim*, 780 A.2d 98, a ruling under Connecticut law, which, unlike this case, did not involve any "injuries such as physical damage to [government] personal or real property," but instead only "general harms to the municipal polity." *Id.* at 117-18. Other courts have reached the same conclusion as *City of Boston*, and rejected *Ganim*'s approach. *See, e.g., White*, 97 F. Supp. 2d at 825 ("claims are not based on the rights of others, but rather the rights of the City to sue for the harm and economic losses it has incurred"); *City of Cincinnati*, 768 N.E. 2d at 1147-48 ("We agree with the reasoning espoused in *White* and *Boston*."); *James*, 820 A.2d at 41 (cost of governmental services in responding to increased gun crime not derivative).

[27] A.R.S. § 44-1522 et seq.

Plaintiff's Opposition Brief

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

Citing cases holding that it was *sufficient* that a plaintiff was a consumer or "hearer" of the misrepresentation, Defendants assert that having that status is *necessary*. Not so. The CFA does not require any merchant-consumer transaction or relationship between the parties. *See, e.g.*, *Watts v. Medicis Pharm. Corp.*, 365 P.3d 944, 953 (Ariz. 2016); *Maurer v. Cerkvenik-Anderson Travel, Inc.*, 890 P.2d 69, 72-73 (Ariz. Ct. App. 1994); *Leist v. Acad. Mortg. Corp.*, 2016 WL 1593815 at *5 (D. Ariz. Apr. 20, 2016). Defendants cite *State Farm Fire & Cas. Co. v. Amazon.com Inc.,* 2018 WL 1536390 (D. Ariz. March 29, 2018), for the proposition that plaintiff must "show that defendant made a misrepresentation to plaintiff." Jnt. Mem. 26. But *State Farm* acknowledged that the Arizona Supreme Court in *Watts* held that no direct misrepresentation from the defendant to the plaintiff is required; the requirement is only that the defendant made the misrepresentation "in connection with the sale of merchandise." 2018 WL 1536390, at *4.

Nor does the CFA prohibit claims by governmental entities. *Cheatham* held that civil liability is restricted only by the requirement that the plaintiff suffer injury proximately caused by the violation. 161 F. Supp. 3d at 825. Defendants note that the CFA restricts *defendants* to only the defined "persons" (Jnt. Mem. 26), but cite no similar constriction of potential plaintiffs—there is none. Instead, courts permit CFA claims by entities not within the defendant-definition of "persons." *See, e.g., Maricopa Cnty. v. Off. Depot, Inc.*, 2014 WL 6611562 (D. Ariz. Nov. 21, 2014), *aff'd* 759 F. App'x 597 (9th Cir. 2018) (dismissed on other grounds). And the Government pursues this claim in *parens patriae* on behalf of its citizens as well as in its own right.

Plaintiff's Opposition Brief

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

Defendants cannot deny that they advertise their guns with military imagery and language into the civilian market. That is actionable under the CFA. The statute provides that courts should attend to "interpretations given by the federal trade commission and the federal courts to [similar federal statutes]." A.R.S. § 44-1522(C); *see Fed. Trade Comm'n v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n.5 (1972). Courts applying those interpretations permit a wrongful advertising claim where "defendants promoted the use of their civilian assault rifles for offensive, military style attack missions." *Soto*, 202 A. 3d at 291.[28]

Lastly, Defendants invoke the First Amendment, arguing that they have a right to "advertis[e] for lawful products." Jnt. Mem. 27. But they have no First Amendment right to *falsely* advertise their products: "[I]t is . . . well settled that commercial speech that proposes an illegal transaction or that promotes or encourages an unlawful activity does not enjoy the protection of the [F]irst [A]mendment." *Soto*, 202 A.3d at 311 n. 56.[29]

## VII.    THE COMPLAINT ADEQUATELY PLEADS A CLAIM FOR UNJUST ENRICHMENT.

The Government's unjust enrichment claim is viable under Mexican law. *See* First Tort Law Report ¶¶ 80-84. Again, Defendants have not contended otherwise and have not

---

[28] Notably, violating the CFA is a predicate violation under PLCAA even if the Government did not have a claim that arises under the CFA. *See* Section VI above.

[29] *See also Braun v. Soldier of Fortune Mag., Inc.*, 968 F.2d 1110, 1118 (11th Cir. 1992) (imposing liability on magazine for publishing advertisement that on its face "would have alerted a reasonably prudent publisher" that the ad in question contains an offer "to commit a serious violent crime" did not violate the First Amendment).

DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd. Suite 200
Tucson, AZ 85716-5300

Plaintiff's Opposition Brief

provided any choice-of-law analysis pointing to Arizona law. Their motion should be denied on that basis alone.

Even assuming Arizona law applied here, however, the unjust enrichment claim is sufficiently pleaded. "To recover on a claim for unjust enrichment, a claimant must show "(1) an enrichment, (2) an impoverishment, (3) a connection between the two, (4) the absence of justification for the enrichment and impoverishment and (5) the absence of any remedy at law." *Loiselle v. Cosas Mgmt. Grp., LLC*, 228 P.3d 943, 946 (Ariz. Ct. App. 2010) (quoting *Mousa v. Saba*, 218 P.3d 1038, 1045 (Ariz. Ct. App. 2009)). "In short, unjust enrichment provides a remedy when a party has received a benefit at another's expense, and, in good conscience, the benefitted party should compensate the other." *Wang Elec., Inc. v. Smoke Tree Resort, LLC*, 283 P.3d 45, 49 (Ariz. Ct. App. 2012).

Defendants wrongly assume the Government's unjust enrichment claim is premised solely on the "benefit" Defendants received by way of profits from the sale of firearms that were trafficked into Mexico. *See* Jnt. Mem. 42. It is not. The benefit unjustly conferred upon Defendants was "[t]he Government's expenditure of substantial sums to pay for the associated costs resulting from the use of guns that each Defendant sold for enormous profit." Compl. ¶ 300. That is, Defendants "avoid[ed] responsibility for the massive costs caused by those [unlawful gun] sales, shifting those costs to the Government and its citizens." *Id*. ¶ 298. A defendant receives a benefit by not bearing an expense that it causes, *Pyeatte v. Pyeatte*, 661 P.2d 196, 202 (Ariz. Ct. App. 1982); *Arnold & Assocs., Inc. v. Misys Healthcare Sys., a div. of Misys, PLC*, 275 F. Supp. 2d 1013, 1025 (D. Ariz. 2003),

DE CONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

Plaintiff's Opposition Brief

that is, where the plaintiff "pa[ys] for what may be called the Defendants' externalities." *White v. Smith & Wesson*, 97 F. Supp. 2d 816, 829 (N.D. Ohio 2000); *see also City of Boston*, 2000 WL 1473568, at *18.

To the extent Defendants are arguing that unjust enrichment requires something approaching privity between the parties, or that plaintiff transfer a benefit directly to the defendant, they are wrong. An unjust-enrichment claim does not require any contractual or fiduciary relationship between the parties, *Murdock-Bryant Const., Inc. v. Pearson*, 703 P.2d 1197, 1203 (Ariz. 1985); *Wang Elec., Inc. v. Smoke Tree Resort, LLC*, 283 P.3d 45, 49 (Ariz. Ct. App. 2012), and does not require that a defendant receive direct payments from a plaintiff, *In re Lidoderm Antitrust Litig.*, 103 F. Supp. 3d 1155, 1176 (N.D. Cal. 2015). Instead, a defendant is unjustly enriched whenever a third party bears the costs of correcting harm that the defendant caused.[30]

## VIII.  THE COMPLAINT ADEQUATELY PLEADS A CLAIM OF PUBLIC NUISANCE.

Defendants assert that the Government lacks standing to pursue a public-nuisance claim and that the public-nuisance doctrine does not apply to marketing and distributing products that are themselves lawful. Jnt. Mem. 42-43. The Government has standing under the law of Mexico, which applies here and permits the public nuisance claim as alleged.

---

[30] *See, e.g., City of Boston*, 2000 WL 1473568, at *18; *Little Hocking Water Ass'n v. E.I. du Pont de Nemours & Co.*, 91 F. Supp. 3d 940, 986 (S.D. Ohio 2015); *City of L.A. v. Wells Fargo & Co.*, 22 F. Supp. 3d 1047, 1061 (C.D. Cal. 2014); *White*, 97 F. Supp. 2d at 829; *State of Rhode Island v. Lead Indus. Ass'n, Inc.*, 2001 WL 345830, at *15 (R.I. Super. April 2, 2001).

Plaintiff's Opposition Brief

The tort law of Mexico treats the fact pattern of what is known in the U.S. as "public nuisance" under the general principles of negligence. First Tort Law Report ¶¶ 85-90. Those principles do not exclude the misuse of lawful products to cause injury. *Id.* Moreover, courts applying public-nuisance laws in the U.S. agree that recklessly supplying a dangerous product may constitute a public nuisance, even if that product itself is not outlawed. *City of Boston*, for example, found that "alleg[ations that] Defendants intentionally and negligently created and maintained an illegal, secondary firearms market" (along with supporting allegations) were "sufficient . . . to state a claim for public nuisance." 2000 WL 1473568, at *14.[31] That is what the Complaint here alleges. *See, e.g.,* Compl. ¶¶ 266-73.

And Defendants are wrong about Arizona law even if it applied. "'[S]pecial injury' is a requisite element of a *private* plaintiff's prima facie public nuisance claim" and, as such, does not apply to the Government. *Hopi Tribe v. Arizona Snowbowl Resort Ltd. P'ship*, 430 P.3d 362, 365 (Ariz. 2018) (emphasis added); *see also Armory Park Neighborhood Ass'n v. Episcopal Cmty. Servs. in Arizona*, 712 P.2d 914, 918 (Ariz. 1985) (distinguishing between "the right of a private person, as distinguished from a public official, to bring a suit to enjoin the maintenance of a public nuisance").

---

[31] *See also City of Cincinnati*, 768 N.E.2d at 1141-1144; *City of Gary*, 801 N.E.2d at 1234-35; *In re: Juul Labs, Inc., Marketing, Sales Practices, and Products Liability Litig.*, 497 F. Supp. 3d. 552 (N.D. Cal. 2020) (public entities stated claims for public nuisance under various states' laws to recover costs incurred in responding to the youth e-cigarette crisis allegedly caused by defendants' marketing of e-cigarettes towards youth).

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

## IX.    THE COMPLAINT ADEQUATELY PLEADS A RIGHT TO RELIEF UNDER RICO.

Defendants' scattered attacks on the RICO allegations fail. The Government has alleged classic and well supported RICO violations.

### A.  The Government Asserts a Right to Relief Under § 1964(a), Not § Section 1964(c).

Citing 18 U.S.C. § 1964(c) and its attendant case law, Defendants assert that the Government was not "injured in [its] business or property" as that Section requires for a *private right of action for damages*. Jnt. Mem. 28-29. Defendants miscite those cases, but no matter—the Complaint does not assert a claim for damages under § 1964(c).

Rather, the only relief the Government seeks under RICO is equitable relief under § 1964(a) which has no "injured in .. business or property" restriction. For the same reason, Defendants' discussion of § 1964(c)'s proximate-cause requirement is also beside the point. All of the cases they cite construe the elements of a claim under § 1964(c), not (a). Ditto Defendants' selective quotation from the Government's prior brief in the *Smith & Wesson* litigation (Jnt. Mem. 40); that brief demonstrated that the Supreme Court construed *§ 1964(c)'s language* to require "injury [to] business or property" *in the United States*. As we show below, § 1964(a) is focused not on the injury, but on the defendant's unlawful conduct, and the Government meets that provision's requirements.

Plaintiff's Opposition Brief

### B. The Complaint Adequately Pleads that Defendants' Violations Are Ongoing.

Defendants assert that certain recently enacted statutes specifically prohibiting straw purchasing of firearms (18 U.S.C. § 932) and trafficking in firearms (18 U.S.C. § 933), contained in the Bipartisan Safer Communities Act (BSCA), do not operate retroactively. *See* Jnt. Mem. 31-33. The Court need not address the retroactivity issue because the Complaint carefully alleges that each Defendant has violated those provisions since they were enacted on June 25, 2022: "For many years each Defendant's policy has been to knowingly participate in straw sales of weapons favored by the cartels and in circumstances in which Mexico was the likely destination of the guns. *Each Defendant has continued that policy from and after June 25, 2022*." Compl. ¶ 197 (emphasis added); *see also id.* ¶ 55 (examples in Complaint are merely illustrative).

### C. The Complaint Adequately Pleads Mail and Wire Fraud.

If a civil RICO claim is predicated on violations of the mail or wire fraud statute, the complaint must satisfy Rule 9(b) by stating "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Distrib. Co. v. Serv-Well Furniture Co*., 806 F.2d 1393, 1401 (9th Cir. 1986). Contrary to Defendants' bald assertion, Rule 9(b) does not require the Government to identify the means of transmission or the "specific statute" that was violated. Jnt. Mem. 33-34. Rule 9(b) requires only that the "alleged fraud be specific enough to give defendants

DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

notice of the particular misconduct … so that they can defend against the charge….”
*Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010).

Given that the Government specifically describes the transmissions at issue, (Compl. ¶¶ 182-96), Defendants have sufficient notice of the wrongful conduct alleged. The Complaint certainly alleges enough information to allow Defendants to check their own records and determine the method of transmission—i.e., whether it was made by mail or wire.[32]

The mail/wire fraud statutes prohibit “schemes to defraud.” 18 U.S.C. §§ 1341, 1343. Defendants argue that the Complaint fails to allege a scheme to defraud because ATF reports “disclosed the specific firearms that were sold” and would “allow the scheme to be detected.” Jnt. Mem. 34. Defendants’ argument ignores the Complaint’s actual allegations. The Complaint sets forth 15 exemplary transactions that “falsely identif[y] as purchasers the persons who fill out Form 4473 as the buyers while knowing that in fact the true buyer was an agent of the cartels or other criminal organizations in Mexico.” Compl. ¶ 183, 191. Defendants purposefully failed to disclose on Form 4473 that the purchasers were straw buyers and thereby engaged in a scheme to lie to the ATF and to fraudulently conceal the transactions’ unlawfulness.

Defendants incorrectly assert that “the object of the fraud must be property in the victim’s hands.” Jnt. Mem. 34. There is no such requirement. *BCS Services, Inc. v. BG*

---

[32] Rule 9(b) is relaxed where the relevant facts are known only to the defendant. *See Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995).

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

*Investments, Inc.*, 728 F.3d 633, 638 (7th Cir. 2013) ("The property to which section 1341 refers need not be the plaintiffs,' provided [the plaintiffs] are directly injured by the defendants' unlawful acquisition of the property.").[33] The mail/wire fraud statutes are not limited to schemes that deprive the victim of money or property. The mail/wire fraud statutes prohibit any "acquisitive" scheme. *See, e.g.*, *Monterey Plaza Hotel, Ltd. Partnership v. Local 483 of Hotel Employees and Restaurant Employees Union, AFL-CIO*, 215 F.3d 923, 927 (9th Cir. 2000) (mail/wire fraud statute regulates "acquisitive" conduct). Defendants unlawfully acquire property, i.e., money from gun sales that violate U.S. and Mexican law, Compl. ¶¶ 132-69, and Defendants unlawfully profit from these sales at the Government's expense. *Id.* ¶¶ 6, 247-60.

### D.  The Complaint Adequately Pleads Money Laundering.

Defendants cite no authority for their contention that Rule 9(b) requires that a plaintiff specifically allege money laundering. Jnt. Mem. 35-36. Rule 9(b) requires such specificity with respect to fraud, but makes no reference to money laundering.

Nonetheless, the U.S. money-laundering statute, 18 U.S.C. § 1956, prohibits (among other things) financial transactions intended "to promote the carrying on of specified unlawful activity," which includes schemes that violate the mail/wire fraud statutes. 18

---

[33] *See also Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639, 649-50 (2008) (describing a mail/wire fraud violation in which a firm transmits false statements about a competitor to its customers).

Plaintiff's Opposition Brief

U.S.C. §§ 1341, 1343, 1956(a)(3)(A), 1956(c) (7)(A), 1961(1); Compl. ¶¶ 205-16.[34] Thus, to the extent the Government's money-laundering allegations arise from the alleged mail/wire fraud violations, the money-laundering claims also necessarily satisfy Rule 9(b) as set forth above.[35]

### E.  The Complaint Adequately Pleads a Pattern of Racketeering Activity.

A pattern of racketeering consists of related and continuous acts of racketeering. *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989). The Government alleges that each Defendant engaged in a pattern of racketeering activity "consist[ing] of, but [ ] not limited to, the acts of straw purchasing of firearms, trafficking in firearms, mail fraud, wire fraud, and money laundering." Compl. ¶¶ 316, 322, 328, 334, 340.

The Defendants' acts of racketeering are related, i.e., had the same or similar purposes, results, participants, victims, or methods of commission. Compl. ¶¶ 317, 323, 329, 335, 341; *see also H.J. Inc.*, 492 U.S. at 240. Defendants do not argue that these relatedness allegations are insufficient. Jnt. Mem. 35 n.17.

Rather, Defendants assert that the alleged acts of racketeering are "sporadic," "isolated," and not sufficiently continuous. *Id.* at 35. "'Continuity' is both a closed- and open-ended concept." *H.J. Inc.,* 492 U.S. at 241. Closed-ended continuity occurs when the

---

[34] This reasoning applies equally to the Government's claim that Defendants violated 18 U.S.C. § 1956(a)(3)(B).

[35] The same is true of the Government's claims that Defendants engaged in financial transactions to promote violations of 18 U.S.C. § 932 (straw purchasing of firearms) and 18 U.S.C. § 933 (trafficking in firearms). Compl. ¶ 205.

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd, Suite 200
Tucson, AZ 85716-5300

acts extend over a substantial period of time. *Id.* at 242. The Court of Appeals has held that predicate acts extending over a 13-month period satisfy the closed-ended continuity standard. *Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1529 (9th Cir. 1995). The Complaint alleges that all Defendants have engaged in acts of racketeering over a period of ***at least*** three years. Compl. ¶¶ 318, 324, 330, 336, 342. Accordingly, the Government has pleaded closed-ended continuity. *See Allwaste, Inc.*, 65 F.3d at 1528; *Larsen v. Lauriel Inv., Inc.*, 161 F. Supp.2d 1029, 1043 (D. Ariz. 2001) (the plaintiff pleaded a closed-ended pattern that extended for nearly two years).

The Complaint also alleges open-ended continuity, which exists when the acts of racketeering pose a threat of repetition, including when they "are part of an ongoing entity's regular way of doing business." *H.J. Inc.*, 492 U.S. at 242. The entirety of the Complaint alleges that each Defendants' regular way of doing business is to illegally sell guns to straw purchasers and traffickers acting on behalf of the drug cartels and to misrepresent the nature of these sales to the ATF. Compl. ¶¶ 54-161. Each Defendant has been engaged in such illegal conduct as a regular way of doing business for more than three years.

Once the Government filed its Complaint, Defendants could not defeat open-ended continuity by terminating their illegal conduct. If a defendant stops its illegal activity only after it is sued, it cannot successfully contend that the fortuitous interruption of its activity obviates the threat. *United States v. Busacca,* 936 F.2d 232, 238 (6th Cir. 1991); *see also Allwaste*, 65 F.3d at 1530. If any Defendant asserts that it has terminated its unlawful

Plaintiff's Opposition Brief

conduct, the Court can presume that it would not have done so without the Government's filing this action. The Government has alleged an actionable pattern of racketeering.

### F. The Complaint Adequately Pleads Actionable Enterprises.

Defendants argue that the alleged association-in-fact enterprises do not have an "ascertainable structure." Jnt. Mem. 37. In *Boyle v. United States*, 556 U.S. 938 (2009), however, the Supreme Court expressly rejected such a structural requirement. An association-in-fact enterprise is actionable if it has three structural features: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.* at 946. The Government explicitly alleges these elements. *See* Compl. ¶¶ 315(a), 321(a), 327(a), 333(a), 339(a).

Contrary to Defendants' contention, the enterprises' common purpose encompasses more than routine business affairs. Jnt. Mem. 37. The Complaint alleges that Defendants, through their respective enterprises, "systematically participate in trafficking military-style weapons and ammunition to drug cartels in Mexico" and in violation of U.S. law.[36] Compl. ¶¶ 1, 315(b), 321(b), 327(b), 333(b), 339(b). Members of an enterprise are also related when they share a "clear, collective, and criminal purpose."[37] *United States v. Perry*, 35

---

[36] *See Stewart v. Fairley,* 2014 WL 12538164, *3 (D. Ariz. June 4, 2014) (enterprise was actionable where its purpose was to attract potential clients to defendants' fraudulent services and to induce plaintiff's firms and similar firms to use same services from same defendants).

[37] Unlike the defendants in *Comm. to Protect Our Agric. Water v. Occidental Oil*, 235 F. Supp.3d 1132, 1175 (E.D. Cal. 2017) (cited in Jnt. Mem. at 37 n.19), the members of the enterprises alleged by the Government have a clear "unified agenda."

Plaintiff's Opposition Brief

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

F.4th 293, 319 (5th Cir. 2022). The enterprises' longevity is also adequately alleged because through the various enterprises "the cartels have succeeded [in] illegally acquiring a multitude of firearms in the United States." Compl. ¶¶ 315(c), 321(c), 327(c), 333(c), 339(c). Individuals who associate together to traffic in illegal commerce—be it narcotics, prostitution, or guns—are quintessential RICO enterprises. *See United States v. Turkette*, 452 U.S. 576, 580-581 (1981) (RICO enterprise consisting exclusively of narcotics traffickers is actionable).

Defendants' enterprise argument relies on an obsolete, pre-*Boyle* standard. The Government's Complaint satisfies the operative enterprise standard.

## G. The RICO Claim Is Not an Improper "Shotgun Pleading."

Defendants argue that the Complaint is a "shotgun"[38] pleading that violates Rule 8(a)'s requirement of a "short and plain" statement. Jnt. Mem. 38-39. Leaving aside Defendants' simultaneous assertion that the Complaint is inadequate because its allegations are too threadbare, it plainly identifies the wrongdoing committed by each Defendant and the factual bases for the allegations. *See* Compl. ¶¶ 179-216, 314-343.

Shotgun pleadings, in contrast, "make[ ] no attempt to lay out which conduct constitutes the violation alleged." *S.E.C. v. Fraser*, 2010 WL 5776401, at *9 (D. Ariz. Jan. 28, 2010). A complaint is not a shotgun pleading "simply because it incorporates by

---

[38] Shotgun pleadings are those that "overwhelm defendants with an unclear mass of allegations and make it difficult or impossible for defendants to make informed responses to the plaintiff's allegations." *S.E.C v. Bardman*, 216 F. Supp. 3d 1041, 1051 (N.D. Cal. 2016).

Plaintiff's Opposition Brief

reference previous allegations." *Alliance Labs, LLC v. Stratus Pharmaceuticals, Inc.*, 2013 WL 273404, at *2 (D. Ariz. Jan. 24, 2013).

Defendants' 45-page brief was able to respond to all of the Government's allegations completely, if not accurately. *See Physicians Care All., LLC v. All Day Beauty, LLC*, 2019 WL 176782, at *2 (D. Ariz. Jan. 11, 2019) ("The fact that defendants filed their answer is evidence that they were not overwhelmed by plaintiff's complaint"). The Complaint does not violate Rule 8(a).

### H. The Complaint Adequately Pleads a Right to Equitable Relief.

Defendants argue that the Government is not entitled to equitable relief under 18 U.S.C. § 1964(a). To obtain "equitable remedies" under § 1964(a), a civil plaintiff must demonstrate a "reasonable likelihood of further violation[s] in the future." *United States v. Philip Morris USA Inc*., 566 F. 3d 1095, 1132 (D.C. Cir. 2009). When making this assessment, courts consider: 1) whether the defendant's violation was isolated or part of a pattern; 2) whether the violation was flagrant and deliberate or merely technical in nature; and 3) whether the defendant's business will present opportunities to violate the law in the future. *Id.*

Defendants' unlawful conduct is not isolated but part of a continuing pattern. *See, e.g.*, Compl. ¶¶ 54-117, 317-18, 323-24, 329-30, 335-36, 341-42. Their violations are flagrant and deliberate. *See, e.g., id.* ¶¶ 54, 128, 292. Indeed, "[T]he trafficking of each Defendant's assault weapons... continues unabated. *Id.* ¶ 48. And "the acts of racketeering

threaten to continue indefinitely because the acts of racketeering are the regular way in which [Defendants do] … business." *Id.* ¶ 318.

Defendants erroneously argue that only the U.S. Attorney General is entitled to equitable relief. Jnt. Mem. 41. That contention defies § 1964(a)'s broad, unrestricted grant of jurisdiction to the district courts "to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders."[39] Defendants cite only one case—*Religious Tech. Ctr. v. Wollersheim*, 796 F.2d 1076 (9th Cir. 1986)—in support of their proposition, but as Defendants admit, *Religious Tech* held only that "*injunctive relief* is not available to private plaintiffs in civil RICO actions." Jnt. Mem. 41 (emphasis added). Unlike the plaintiff in *Religious Tech*, the Government does not seek *injunctive* relief under RICO, but instead asks the Court to order Defendants "to disgorge all ill-gotten profits … [and] appoint a monitor to oversee [their] sales practices, and provide other appropriate relief." Compl. ¶¶ 319, 325, 331, 337, 343.

*Religious Tech* does not address whether plaintiffs other than the U.S. Attorney General are entitled to the forms of equitable relief sought here. Other courts have awarded

---

[39] This broad language, designed to prevent further unlawful conduct, is sharply distinct from that in § 1964(c), which grants a private *damages claim* to a person "*injured* in his business or property." Defendants concede (Jnt. Mem. 40), and the Government agrees, that federal provisions regarding damages claims for injury abroad do not apply extraterritorially. But RICO's § 1964(a), unlike its § 1964(c) and unlike PLCAA, is not focused on injury.

Plaintiff's Opposition Brief

DECONCINI McDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

such plaintiffs non-injunctive equitable relief under RICO.[40] The Court of Appeals has never precluded non-injunctive forms of equitable relief sought exclusively under § 1964(a). Nor would it today, because the Supreme Court in the intervening years has emphatically rejected[41] *Religious Tech*'s mode of construing a statute by reference to its legislative history rather than its plain text. *See Nat'l Org. For Women, Inc. v. Scheidler*, 267 F.3d 687, 695 (7th Cir. 2001), *rev'd on other grounds*, 537 U.S. 393 (2003) ("*NOW II*") (*Religious Tech* "relied almost exclusively on the legislative history of RICO" rather than "the actual language of the statute," which "no longer conforms to the [Supreme] Court's present jurisprudence").[42] And the Court of Appeals has subsequently directed that "a statute should not be construed to displace courts' traditional equitable powers absent the clearest command to the contrary." *Plata v. Schwarzenegger*, 603 F.3d 1088, 1094 (9th Cir. 2010) (internal citations and quotations omitted).

---

[40] *See DeMent v. Abbott Capital Corp.*, 589 F. Supp. 1378, 1384-85 (N.D. Ill. 1984) ("We therefore hold that even if [the plaintiff's demand for relief] consists of equitable restitution, it describes a form of relief available to a private RICO plaintiff."); *Creel v. Dr. Says, LLC*, 2022 WL 4490141, *8 (E.D. Tex. Sept. 27, 2022) (applying §1964(a) and holding that "an award of disgorgement of Defendants' ill-gotten gains will serve to prevent and restrain future illegal conduct"); *Chevron Corp. v. Donziger*, 974 F. Supp.2d 362, 570 (S.D.N.Y. 2014) ("RICO empowers a district court to grant such equitable relief as may be warranted in cases in which the court finds a violation of the statute and the principles of equity support relief sought.").

[41] *See, e.g.*, *Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1749 (2020); *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 631 (2018).

[42] *See also Chevron Corp. v. Donziger*, 833 F.3d 74 (2d Cir. 2016) (following *NOW II*). *But see Hengle v. Treppa*, 19 F. 4th 324 (4th Cir. 2021) (following *Religious Tech*), *cert. dismissed*, 142 S. Ct. 2093 (2022).

Plaintiff's Opposition Brief

This Court should not extend *Religious Tech*'s holding regarding injunctive relief to other "traditional equitable powers." Under § 1964(a) the Court may appoint monitors to oversee Defendants' sales practices and grant other appropriate equitable relief.

## X.    THE COMPLAINT ADEQUATELY PLEADS CLAIMS FOR NEGLIGENCE AND GROSS NEGLIGENCE.

Defendants assert that "defendants did not owe any legal duty to the Mexican government because they are alleged to have done nothing more than sell legal firearms into the stream of U.S. domestic commerce." Jnt. Mem. 44. Their argument fails because the Complaint contradicts their premise—they systematically failed to use reasonable care and aided and abetted the violation of Mexican and U.S. gun-sales statutes. *See, e.g.*, Compl. ¶¶ 63, 146, 183, 185, 186, 197.

Under Mexican law, Defendants have a duty to use reasonable care to protect against the foreseeable misuse of their dangerous products. *See* First Tort Law Report ¶¶ 25, 28, 34-36, 67-69, 91-100. Other jurisdictions that base a duty on the foreseeability of the injury and the victim are in accord. *See, e.g.*, *City of Boston,* 2000 WL 1473568 at *15; *City of Cincinnati*, 768 N.E.2d at 1144; *City of Gary*, 801 N.E.2d at 1242. *Cf. In re National Prescription Opiate Litig.*, 2018 WL 6628898, at *19.

Defendants say that Arizona law does not base the existence of a duty on the foreseeability of the injury (Jnt. Mem. 43), but they do not deny that Mexican law does. Regardless, even if Arizona law applied, it recognizes duties reflected in "public policy," particularly those emanating from "state and federal statutes." *Quiroz v. Alcoa Inc.*, 416

Plaintiff's Opposition Brief

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd. Suite 200
Tucson, AZ 85716-5300

P.2d 824, 827 (Ariz. 2018). The public policy reflected in the gun laws—prohibiting

unlawful exports, straw sales, and trafficking—fully supports recognizing a duty on dealers

not to engage in or abet that conduct. *Estate of Hernandez v. Ariz. Bd. of Regents*, 866 P.2d

1330, 1339, 1341–42 (Ariz. 1994) (duty arising from statute); *Cobb v. Salt River Valley*

*Water Users' Ass'n*, 114 P.2d 904, 906-07 (Ariz. 1941) (same). Defendants cite *Bloxham v.*

*Glock Inc.*, 53 P.3d 196, 200 (Ariz. Ct. App. 2002), but there the manufacturer was "not

alleged to have broken any laws or regulations and did not participate in the transaction that

resulted in [the shooter's] obtaining the handgun."

Defendants also erroneously rely on tobacco cases brought by foreign governments.

Jnt. Mem. 44. Those cases were decided on the basis that the governments' efforts to

recover the medical costs of treating smokers by direct action rather by subrogation would

"strip the defendants of defenses which would otherwise be available to them." *State of Sao*

*Paulo of Federative Republic of Brazil v. American Tobacco Co.*, 919 A.2d 1116, 1123

(Del. 2007); *see Republic of Venezuela v. Philip Morris Cos.*, 827 So. 2d 339, 341 (Fla.

Dist. Ct. App. 2002) (same basis); *Serv. Emps. Int'l Union Health & Welfare Fund v. Philip*

*Morris Inc.*, 249 F.3d 1068, 1070, 1073, 1074, 1076 (D.C. Cir. 2001) (referring repeatedly

to this point).

Nor can Defendants negate their duty of care by invoking amorphous "Second

Amendment" rights. Jnt. Mem. 44. The drug cartels have no Second Amendment rights to

buy these guns, and the Defendants have no such rights to supply them.

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

Plaintiff's Opposition Brief

**CONCLUSION**

The Court should deny the motion to dismiss, and the Government should be permitted to prove its case.

DATED this 28th day of March 2023.

DeConcini McDonald Yetwin & Lacy, P.C.

By: /s/*Ryan O'Neal*
    Ryan O'Neal
    2525 E. Broadway Blvd., Suite 200
    Tucson, AZ 85716-5300
    Attorneys for Plaintiff

s/ Steve D. Shadowen
Steve D. Shadowen (*pro hac vice*)
Tina J. Miranda (*pro hac vice*)
SHADOWEN PLLC
1135 W. 6th Street, Suite 125
Austin, TX 78703
Phone: 855-344-3298
sshadowen@shadowenpllc.com
tmiranda@shadowenpllc.com

s/ Jonathan E. Lowy
Jonathan E. Lowy (*pro hac vice*)
Global Action on Gun Violence
1025 Connecticut Avenue NW #1210
Washington, DC 20036
Phone: (202) 415-0691
jlowy@actiononguns.org

Plaintiff's Opposition Brief

**CERTIFICATE OF SERVICE**

I, Ryan O'Neal, hereby certify that this document was filed with the Clerk of the Court via CM/ECF. Those attorneys who are registered with the Court's electronic filing systems may access this filing through the Court's CM/ECF system, and notice of this filing will be sent to these parties by operation of the Court's electronic filings system.

Dated: March 28, 2023                    /s/ Ryan O'Neal
                                        Ryan O'Neal

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

Plaintiff's Opposition Brief