LORBER, GREENFIELD & POLITO, LLP
Louis W. Horowitz, Esq. [S.B. #020842]
3930 E. Ray Road, Suite 260
Phoenix, AZ 85044
TEL: (602) 437-4177
FAX: (602) 437-4180
lhorowitz@lorberlaw.com

RENZULLI LAW FIRM LLP
Christopher Renzulli, Esq. (*Pro Hac Vice*)
Peter Malfa, Esq. (*Pro Hac Vice*)
Jeffrey Malsch, Esq. (*Pro Hac Vice*)
One North Broadway, Suite 1005
White Plains, NY 10601
TEL: (914) 285-0700
FAX: (914) 285-1213
crenzulli@renzullilaw.com
pmalfa@renzullilaw.com
jmalsch@renzullilaw.com

*Attorneys for Defendants Diamondback Shooting Sports, Inc.,*
*Loan Prairie, LLC d/b/a The Hub, SNG Tactical, LLC and Sprague's Sports, Inc.*

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Estados Unidos Mexicanos,<br><br>　　　　　　　Plaintiff,<br><br>*vs.*<br><br>Diamondback Shooting Sports, Inc., an Arizona corporation; SNG Tactical, LLC, an Arizona limited liability company; Loan Prairie, LLC D/B/A The Hub, an Arizona limited liability company; Ammo A-Z, LLC, an Arizona limited liability company; Sprague's Sports, Inc., an Arizona corporation,<br><br>　　　　　　　Defendants. | Case No: 4:22-cv-00472-CKJ<br><br><br>**JOINT REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS** |

LORBER, GREENFIELD & POLITO, LLP
13985 Stowe Drive, Poway, California 92064
Telephone (858) 513-1020 / Facsimile (858) 513-1002

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .................................................................................... iii

INTRODUCTION .................................................................................................. 1

ARGUMENT ......................................................................................................... 1

I.    The Mexican Government Lacks Article III Standing ................................. 1

II.   Mexican Law Does Not Apply to This Case ............................................. 2

     A.   The PLCAA bars suits in U.S. courts regardless of the source of tort law .. 3

     B.   Arizona Choice-of-Law rules require the application of U.S. law ............. 3

     C.   Principles of international comity also prohibit application of Mexican law 5

III.   Defendants Owe No Duty to Plaintiff ..................................................... 5

IV.   The PLCAA Bars Mexico's Claims ......................................................... 7

     A.   This is not an "extraterritorial" application of the PLCAA ...................... 7

     B.   Defendants are within the class of businesses protected by the PLCAA ... 10

     C.   The predicate exception does not apply ............................................. 10

         1.   The predicate exception is limited to firearms-specific statutes ............................................................................................ 11

         2.   Defendants have not violated any firearms-specific statute ... 11

         3.   No predicate violation proximately caused any harm to Mexico ............................................................................................ 12

         4.   Predicate violations do not authorize unrelated claims .......... 14

     D.   The Negligent Entrustment Exception Does Not Apply ............................ 15

         1.   Negligent entrustment is not adequately plead ....................... 15

         2.   Negligent entrustment under Arizona law .............................. 15

         3.   Negligent entrustment is limited by the PLCAA .................... 16

V.   Plaintiff is an Improper Party to Bring a Claim Under the Arizona CFA ................. 17

     A.   Failure to plead with particularity ................................................... 17

     B.   Mexico is not a consumer ............................................................... 18

     C.   Mexico's in parens patriae arguments fail ........................................ 19

VI.   Mexico's RICO Claims Must be Dismissed ............................................ 20

     A.   Mexico lacks standing to assert civil RICO claims .............................. 20

     B.   Mexico has not pled a right to relief under either § 1964(a) or § 1964(c), and the Complaint fails to adequately plead a right to equitable relief ..... 20

     C.   The Complaint fails to allege viable and/or ongoing predicate acts ........... 22

LORBER GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

**D.     The Complaint does not adequately plead mail and/or wire fraud** ............ **22**

**E.     The Complaint Does Not Adequately Plead Money Laundering** ............... **23**

**F.     The Complaint Does Not Adequately Plead a Pattern of Racketeering Activity** ................................................................................................ **24**

**G.     The Complaint Does Not Adequately Plead Actionable Enterprises** ......... **25**

**CONCLUSION** ....................................................................................................... **26**

**CERTIFICATE OF SERVICE** ............................................................................ **27**

LORBER, GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

# TABLE OF AUTHORITIES

## Cases

*Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592 (1982) .................................................. 19

*Bank of Am. Corp. v. City of Miami*, 137 S. Ct. 1296 (2017) ...................................................... 13

*Bates v. Superior Ct. of State of Ariz., In & For Maricopa Cnty.*, 156 Ariz. 46 (1988) ........................ 4

*BCS Services, Inc. v. BG Invest., Inc.*, 728 F.3d 633 (7th Cir. 2013) .............................................. 23

*Bredberg v. Middaugh*, No. 21-35156, 2022 WL 2662878 (9th Cir. July 11, 2022) ............................ 25

*Burley v. Kenneth Hudson, Inc.*, 122 N.H. 560 (1982) .............................................................. 16

*Carney v. Bereault*, 204 N.E.2d 448 (Mass. 1965) .................................................................... 6

*Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815 (D. Ariz. 2016) .................................................... 17

*Chevron Corp. v. Donziger*, 833 F.3d 74 (2d Cir. 2016) ............................................................ 21

*Christy v. Baker*, 7 Ariz. App. 354 (Ariz. Ct. App. 1968) ........................................................... 16

*City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384 (2d Cir. 2008) .......................................... 11

*City of Philadelphia v. Beretta U.S.A., Corp.*, 126 F. Supp. 2d 882 (E.D. Pa. 2000) ............................ 6

*City of Philadelphia*, 277 F.3d 415 (3rd Cir. 2002) .................................................................... 5

*Creel v. Dr. Says, LLC*, 2022 WL 4490141 (E.D. Tex. Sept. 27, 2022) .......................................... 21

*DeMent v. Abbott Capital Corp.*, 589 F. Supp. 1378 (N.D. Ill. 1984).......................................... 20, 21

*Department of Commerce v. New York*, 139 S. Ct 2441 (2019) ...................................................... 2

*Direct Sales Co. v. United States*, 319 U.S. 703 (1943) ............................................................... 12

*Estados Unidos Mexicanos v. DeCoster*, 229 F.3d 332 (1st Cir. 2000) ...................................... 19, 20

*Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc., et al.*, - F.Supp.3d -,
2022 WL 4597526 (D. Mass. Sept. 30, 2022) ................................................................... 3, 7, 15

*Eversource Capital LP v. Fimrite*, No. CV-18-02583-PHX-SMM, 2020 WL 8175431
(D. Ariz. Sept. 1, 2020) ............................................................................................. 22

*Fernandez v. Romo*, 132 Ariz. 447 (1982) ............................................................................... 3

*Fletcher v. Kunze*, 125 N.H. 277 (1984) ............................................................................... 16

*Gadson v. ECO Servs., Inc.*, 648 S.E.2d 585 (S.C. 2007) ............................................................ 16

*H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229 (1989) .............................................. 25

*Hemi Grp., LLC v. City of New York*, 559 U.S. 1 (2010) ........................................................ 13, 14

*Hengle v. Treppa*, 19 F.4th 324 (4th Cir. 2021), *cert. dismissed*, 142 S. Ct. 2093 (2022) ...................... 21

*Hunt v. Zuffa, LLC*, No. 19-17529, 2021 WL 4355728 (9th Cir. Sept. 24, 2021)................................. 25

*Ileto v. Glock, Inc.*, 565 F.3d 1126 (9th Cir. 2009).................................................................... 11

*In re Academy, Ltd*, 625 S.W.3d 19 (Tex. 2021) .................................................................. 3, 16

*Jefferies v. District of Columbia*, 916 F. Supp. 2d 42 (D.D.C. 2013)................................................ 3

*Kabatoff v. Safeco Ins. Co. of Am.*, 627 F.2d 207 (9th Cir. 1980) ................................................... 6

*Kozoway v. Massey-Ferguson, Inc.*, 722 F. Supp. 641 (D. Colo. 1989)............................................. 4

*Landgraf v. Usi Film Prods.*, 511 U.S. 244 (1994) .................................................................... 24

*Larson v. Valente*, 456 U.S. 228 (1982) ................................................................................. 2

*Leist v. Academy Mortg. Corp.*, No. CV-16-00314-PHX-DGC,
2016 WL 1593815 (D. Ariz. April 20, 2016) ....................................................................... 19

*Lydia v. Horton*, 583 S.E.2d 750 (S.C. 2003)........................................................................ 16

*Martin v. Schroeder*, 209 Ariz. 531 (Ct. App. 2005).................................................................. 16

*Maurer v. Cerkvenik-Anderson Travel, Inc.*, 890 P.2d 69 (Ariz. Ct. App. 1994) ................................ 19

*Monterey Plaza Hotel Ltd. P'ship v. Local 483 of Hotel Employees and Restaurant Employees Union,
AFL-CIO*, 215 F.3d 923 (9th Cir. 2000) ........................................................................... 23

*Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010) .......................................................... 8

LORBER, GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

iii

*Pareto v. F.D.I.C.*, 139 F.3d 696 (9th Cir. 1998) ........................................................... 22

*Peery v. Hansen*, 585 P.2d 574 (Ariz. Ct. App. 1978) ...................................................... 18

*Petitions of Kinsman Transit Co.*, 388 F.2d 821 (2d Cir. 1968) ........................................ 13

*Ramos v. Wal-Mart Stores, Inc.*, 202 F. Supp. 3d 457 (E.D. Pa. 2016) .............................. 14

*Republic of Venez. ex rel. Garrido v. Philip Morris Cos.*, 827 So. 2d 339 (Fla. Dist. Ct. App. 2002) ...... 6

*RJR Nabisco, Inc. v. European Community*, 579 U.S. 325 (2016) ................................... 7, 8, 9

*Schwartz v. Schwartz*, 103 Ariz. 562 (1968) ...................................................................... 3

*SEIU Health & Welfare Fund v. Philip Morris Inc.*, 249 F.3d 1068 (D.C. Cir. 2001) ............ 6

*Sellinger v. Freeway Mobile Home Sales, Inc.,* 110 Ariz. 573 (Ariz. 1974) .......................... 19

*Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26 (1976) ................................................. 1, 2

*Smagin v. Yegiazaryan*, 37 F.4th 562 (9th Cir. 2022) ....................................................... 20

*Small v. United States*, 544 U.S. 385 (2005) ...................................................................... 9

*State Farm Fire & Cas. Co. v. Amazon.com Inc.*, No. CV-17-01994-PHX-JAT,
2018 WL 1536390 (D. Ariz. Mar. 29, 2018) ............................................................. 18, 19

*State of Sao Paulo of Federative Republic of Braz. v. Am. Tobacco Co.*, 919 A.2d 1116 (Del. 2007)...... 6

*Tellez v. Saban*, 188 Ariz. 165 (Ct. App. 1996) ............................................................... 16

Tissicino v. Peterson, 211 Ariz. 416 (Ct. App. 2005) ....................................................... 16

*Towers of Wash. v. Wash*, 350 F.3d 925 (9th Cir. 2003) ..................................................... 1

*U.S. Aviation Underwriters, Inc. v. Eurocopter*, No. CV-04-2367-PHX-SRB,
2006 WL 1882709 (D. Ariz. July 7, 2006) ..................................................................... 5

*U.S. v. Lew*, 875 F.2d 219 (9th Cir.1989) ....................................................................... 23

*United States v. Manarite*, 44 F.3d 1407 (9th Cir. 1995) ................................................ 23

*United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010) .............................................. 5, 7

*Utah Physicians for a Healthy Envmt. v. Diesel Power Gear, LLC*, 374 F. Supp. 1124 (D. Utah 2019). 2

*Ventures Edge Legal PLLC v. GoDaddy.com LLC*, No. CV-15-02291-PHX-GMS,
2018 WL 619723 (D. Ariz. Jan. 30, 2018) ................................................................... 18

*Verduzco v. American Valet*, 240 Ariz. 221 (App. Div. 2016) .......................................... 15

*Weaver v. Stewart*, 169 N.H. 420 (2016) ....................................................................... 16

*WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129 (2018) ............................. 8, 9

*Williamson v. Allstate Ins. Co.*, 204 F.R.D. 641 (D. Ariz. 2001) ..................................... 17

Woods v. Steadman's Hardware, Inc., 2013 WL 709110 (D. Mont. Feb. 26, 2013) .............. 15

*Young v. Grand Canyon*, 57 F.4th 861 (11th Cir. 2023) ................................................ 17

*Zavala v. Wal-Mart Stores, Inc.*, 393 F.Supp.2d 295 (D. NJ 2005) ................................... 24

## Statutes

15 U.S.C. § 7901 .................................................................................................. passim

15 U.S.C. § 7902 ..................................................................................... 4, 8, 9, 13

18 U.S.C. § 1956 ............................................................................................. 23, 24

18 U.S.C. § 1964 .................................................................................................. 29

18 U.S.C. § 923 .................................................................................................... 12

## Other Authorities

A.R.S. §§ 44-1528-1531 ....................................................................................... 23

Restatement (Second) of Conflict of Laws § 90 (1971) ...................................................... 6

LORBER, GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

**INTRODUCTION**

Mexico's opposition is as novel as the lawsuit itself. Initially, Mexico informs this Court that it must apply Mexican substantive law to a case involving conduct in the State of Arizona. Then, as a back-up plan, Mexico argues that even if the Protection of Lawful Commerce in Arms Act ("PLCAA") applies, it has properly pled statutory violations - which have nothing to do with Defendants or the sales or marketing of firearms - as "predicate exceptions" to the federal immunity act. As a last-ditch effort to save its case, Mexico proclaims that Arizona's narrowly tailored negligent entrustment doctrine should be expanded by this Court, in contradiction to clear precedent from the Arizona Supreme Court.[1] In short, Mexico's opposition fails to substantiate any viable cause of action against the Defendants. Mexico's lawsuit is a misguided effort to promote its gun-control agenda beyond its borders. The United States, however, has a determinative interest in not having its own laws give way to the perilous legal landscape of Mexico, especially when it concerns individual rights enshrined in our Constitution.

This Court should dismiss Mexico's Complaint in its entirety just as the District Court of Massachusetts recently did it an almost identical lawsuit filed by Mexico.[2]

**ARGUMENT**

**I.    The Mexican Government Lacks Article III Standing**

When an alleged injury "results from the independent action of some third party not before the court," the plaintiff lacks Article III standing. *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41-42 (1976). In opposition, Plaintiff does not dispute this principle but rather contends that its burden on this point is "modest" and that it only needs to show that the activities of third

---

[1] Mexico has abandoned any argument that the "negligence per se" exception included in the PLCAA is applicable to its case, despite Count Four in the Complaint, as this argument was not raised in its opening brief. The Ninth Circuit has held, "we review only issues which are argued specifically and distinctly in a party's opening brief." *Indep. Towers of Wash. v. Wash*, 350 F.3d 925, 929 (9th Cir. 2003) (internal quote omitted). Similarly, dismissal is the proper outcome of the pending motion and the Court should not grant Mexico leave to file an amended pleading to avoid immediate dismissal as it did not request such relief.

[2] *Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc., et al.*, - F.Supp.3d -, 2022 WL 4597526 (D. Mass. Sept. 30, 2022)

LORBER, GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

parties are "predictable" and "fairly traceable." Plaintiff's reliance on *Department of Commerce v. New York*, 139 S. Ct 2441 (2019), is misplaced because while standing was found based upon the particular facts in that case, the Supreme Court expressly stated that it will "refus[e] to 'endorse standing theories that rest on speculation about the decisions of independent actors.'" *Id.* at 2566. Here, Mexico's entire claim is based upon speculative assertions related to the conduct of third parties, especially considering that selling a firearm does not cause anyone to use it unlawfully. Moreover, any claim that the cartels would commit less violence without Defendants selling firearms is inherently speculative, which means Mexico's claimed harms are not "fairly traceable" to Defendants. *Simon*, 426 U.S. at 45 n. 25.

In terms of the redressability requirement, Mexico merely contends that this requirement is satisfied where the risk of substantial harm "would be reduced to some extent" if the relief that is sought is provided. This is incorrect, as even the cases Mexico cites explain that for redressability, "a plaintiff must show it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Utah Physicians for a Healthy Envmt. v. Diesel Power Gear, LLC*, 374 F. Supp. 1124, 1135 (D. Utah. 2019). While a plaintiff need not show that a favorable decision will relieve all injuries, it must show that "a favorable decision will relieve a discrete injury to himself." *Larson v. Valente*, 456 U.S. 228, 244 n. 15 (1982). Mexico has made no such showing in opposition, and this matter should be dismissed for lack of Article III standing.

## II.    <u>Mexican Law Does Not Apply to This Case</u>

Implicitly acknowledging that it cannot prevail under Arizona law, Mexico claims that Mexican law should apply, but this reasoning fails for three reasons. First, the PLCAA – which presents a jurisdictional issue – expressly prohibits this type of suit from being "brought" in American courts regardless of the source of the tort claims. Therefore, there is no need for any choice-of-law analysis. Second, even if a choice-of-law analysis is conducted, the case is governed by the law of Arizona, which is where the alleged culpable conduct occurred. Third, comity principles reject applying Mexican law.

LORBER, GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

### A.     The PLCAA bars suits in U.S. courts regardless of the source of tort law

The PLCAA imposes a threshold barrier to suit in American courts. It provides that "[a] qualified civil liability action may not be brought in any Federal or State court." 15 U.S.C. § 7902. This clear directive shows that "Congress was not only concerned about the effect of civil liability on gun sellers, but also the improper use of the judiciary to circumvent legislative judgments" regarding American firearms policy. *Jefferies v. District of Columbia*, 916 F. Supp. 2d 42, 47 (D.D.C. 2013). "A statute can be jurisdictional even if it does not use the word 'jurisdiction.' Examples of jurisdictional language include: 'an action shall not be filed or maintained in a Federal court;' 'an appeal may not be taken;' 'no person shall file or prosecute;' and 'no action shall be brought under.'" *Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc., et al.*, - F.Supp.3d -, 2022 WL 4597526, at *10 (D. Mass. Sept. 30, 2022)(internal citation omitted). As such, and when faced with identical arguments, Chief Judge Saylor found, "[T]he PLCAA, therefore, is a jurisdictional statute. And because it bars exactly this type of action from being brought in federal and state courts, no choice-of-law analysis is necessary." *Id.*; *see also In re Acad., Ltd.*, 625 S.W.3d 19, 35 n. 19 (Tex. 2021) ("[T]he PLCAA tells the court when it is (and is not) available as a forum to decide certain disputes under any law"). Thus, no matter where the claim may come from, or which substantive law might apply, Mexico cannot evade the PLCAA's express barrier to suit in a U.S. court.

### B.     Arizona Choice-of-Law rules require the application of U.S. law

Beyond the threshold issue related to the PLCAA, Mexican tort law does not govern this case. While Mexico acknowledges that Arizona law governs the appropriate choice of law analysis, it ignores Arizona's explicit rejection of the antiquated lex loci delicti rule. *See Schwartz v. Schwartz*, 103 Ariz. 562, 563 (1968), abrogated by *Fernandez v. Romo*, 132 Ariz. 447 (1982). Plaintiff's argument that Mexican law should apply because that is where the alleged injury occurred is clearly inconsistent with Arizona's adoption of the choice of law principles in the Restatement (Second) on Conflict of Laws (1971), which requires application of the "law of the state having the most *significant relationship* to both the occurrence and the parties with respect to any particular question." *Bates v. Superior Ct. of State of Ariz., In & For*

*Maricopa Cnty.*, 156 Ariz. 46, 49 (1988) (emphasis added). Thus, contrary to Mexico's position, several factors are to be considered, including the place where defendants' conduct occurred, the domiciles of the parties, and the place where the relationship between the parties is centered. *Id.* These contacts must also be analyzed through the lens of § 6 of the Restatement which focuses on the interests of the international systems, relevant policies of the forum, uniformity of results, and justifiable expectations of the parties. *See id.*

Since the crux of the case is based entirely on Defendants' Arizona based operations and commercial practices that occur exclusively within the forum state, U.S. federal and Arizona law is the clear choice. Defendants are not "in the business" of exporting firearms into Mexico. Rather, Defendants sell firearms within Arizona to qualified persons in accordance with federal and state law. As such, the domestic sovereign interests of the United States and Arizona in regulating how firearms should be sold in Arizona far outweigh the remote interests of Mexico attempting to apply its law to judicially regulate the American firearms industry from abroad. To hold otherwise would disturb the interests and functioning of the international system by allowing foreign states to reach into the U.S. and apply their laws to U.S. residents.

Courts have recognized that "[t]he United States has a legitimate interest in assuring that domestic law is applied when a foreign plaintiff claiming to have been injured by an American corporation chooses a court in this country in seeking redress." *Kozoway v. Massey-Ferguson, Inc.*, 722 F. Supp. 641, 644 (D. Colo. 1989). If courts were "required to apply the law of other nations," then the United States and "its fifty individual states" would be severely hampered in their ability to "control and protect their domestic corporations." *Id.* Application of the law and regulations that govern a corporation's business activities promotes a "uniformity and predictability." *Id.* But the alternative—where U.S. corporations operating within the U.S. are subject to the "law[s] of other nations"—would severely hamper the country's ability to "control and protect their domestic corporations." *Id.*

Mexico's only argument is that the place of injury is the only factor that should decide this issue. However, numerous intervening acts and transactions by third parties occur before firearms sold by the Defendants in Arizona are brought into Mexico. This attenuated chain of

LORBER GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

events leading up to the alleged injury significantly diminishes whatever weight should be given to the 'place of injury' factor. When a defendant "would not be likely to foresee the injury occurring in that particular state" then the place of injury is "less significant." *U.S. Aviation Underwriters, Inc. v. Eurocopter*, No. CV-04-2367-PHX-SRB, 2006 WL 1882709, at *5 (D. Ariz. July 7, 2006).

### C.  Principles of international comity also prohibit application of Mexican law

International comity also mandates the application of American law. It is a choice-of-law maxim that "[n]o action will be entertained on a foreign cause of action the enforcement of which is contrary to the strong public policy of the forum." Restatement (Second) of Conflict of Laws § 90 (1971). Applying Mexican tort law would violate the strong public policy of the United States to ensure the protection of its citizens' constitutional rights. Subjecting firearm sales occurring in the U.S. to Mexican tort law runs afoul of the Second Amendment since it could require denying or limiting sales that are proper and legal under American law. *See United States v. Marzzarella*, 614 F.3d 85, 92 n.8 (3d Cir. 2010) (noting Second Amendment protects "the commercial sale of firearms"). Applying foreign tort law to the claims brought by Mexico, particularly in a case implicating fundamental policy and constitutional differences between the two countries, is inconsistent with the principles underlying all choice of law questions. *See* Restatement (Second) (1971) § 6.

## III.  Defendants Owe No Duty to Plaintiff

Mexico's common law claims for negligence, gross negligence, public nuisance and unjust enrichment fail because under Arizona law, Defendants do not owe a duty to Mexico to shield it from the criminal violence committed by its own citizens within its own borders. Applying well established tort principles, courts have repeatedly held that "gun manufacturers are under no [general] duty to protect citizens from the deliberate and unlawful use of their products." *City of Philadelphia*, 277 F.3d 415, 425 (3rd Cir. 2002) (collecting cases). And the decision of whether to craft a new rule imposing greater duties on the firearms industry is one

LORBER, GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

5

for the legislature. *See City of Philadelphia v. Beretta U.S.A., Corp.*, 126 F. Supp. 2d 882, 902 (E.D. Pa. 2000).[3]

More broadly, suits like this one, brought by remotely-injured parties against manufacturers, present an especially acute "danger that juries may overlook the nearer causes [of a plaintiff's injury] and wrongly attribute the injury to some antecedent neglect of the manufacturer." *Carney v. Bereault*, 204 N.E.2d 448, 452 (Mass. 1965). For this reason, courts have routinely rejected claims brought by foreign governments, similar to those here, seeking to hold American tobacco companies liable for harms stemming from their citizens' use of tobacco. *State of Sao Paulo of Federative Republic of Braz. v. Am. Tobacco Co.*, 919 A.2d 1116, 1126 (Del. 2007). Allowing governments to sue would present "complex and intricate" concerns affecting the "national economy"—concerns "better addressed by the legislature(s), not by courts applying common law principles." *Id.*[4]

Contrary to these cases, Mexico argues the Defendants have a continuing legal duty to the Mexican government (and every country where firearms could fortuitously end up) to protect some of its citizens from the products Defendants sell from being misused by other citizens within its own borders. That is unprecedented and Mexico cannot cite to any case that has ever found such a duty to a foreign sovereign. And for present purposes, that is dispositive, since federal courts in diversity "must apply the substantive law of the forum state" and Arizona does not extend legal duties to the reaches proffered by Mexico. *Kabatoff v. Safeco Ins. Co. of Am.*, 627 F.2d 207, 209 (9th Cir. 1980).

Lorber, Greenfield & Polito, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

---

[3] S*ee also SEIU Health & Welfare Fund v. Philip Morris Inc.*, 249 F.3d 1068, 1074 (D.C. Cir. 2001) (explaining how countries' claims failed under traditional tort principles); *Republic of Venez. ex rel. Garrido v. Philip Morris Cos.*, 827 So. 2d 339, 341 (Fla. Dist. Ct. App. 2002) (similar). The question of whether to create a freestanding duty on the part of a domestic company to a foreign sovereign is freighted with "complex and intricate" policy questions that are "better addressed by [a] legislature[], not by courts applying common law principles." *State of Sao Paulo of Federative Republic of Braz.,* 919 A.2d at 1126. This conundrum is exacerbated here where subjecting the firearms industry to sweeping multi-national liability would raise serious constitutional concerns.

[4] *See SEIU*, 249 F.3d at 1074; *Republic of Venez.*, 827 So. 2d at 341.

On the policy side, Defendants here have an even stronger argument than tobacco manufacturers, because subjecting the firearm industry to sweeping liability from foreign sovereigns would implicate serious Second Amendment questions. The Second Amendment expressly protects the right to keep and bear arms, which necessarily presupposes the right to produce and sell them to U.S. civilians. *See, e.g.*, *Marzzarella*, 614 F.3d at 92 n.8.

In sum, this Court should not permit a novel lawsuit filed by a foreign sovereign. It should reject Mexico's attempt to commandeer U.S. firearms policy through an unprecedented lawsuit against just five local Arizona businesses, as these businesses owe no duty to it.

**IV.** **The PLCAA Bars Mexico's Claims**

    **A.** **This is not an "extraterritorial" application of the PLCAA**

Mexico is simply wrong that applying the PLCAA here would somehow be "extraterritorial." Opp. 18. This case is about whether Arizona companies can be held liable in an Arizona court for their conduct exclusively in Arizona. The clear focus of the PLCAA is on protecting U.S. companies from liability in U.S. courts based on their sales and manufacturing of firearms in the United States. Because "the conduct relevant to the statute's focus occurred in the United States," this case "involves a permissible domestic application [of the statute] even if other conduct occurred abroad." *RJR Nabisco, Inc. v. European Community*, 579 U.S. 325, 337 (2016). By contrast, Mexico's reading would deprive American companies of the protection Congress provided based solely on criminals smuggling their lawful products across the border for other criminals to use and commit foreign crimes. That is a nonsensical conclusion. Indeed, these same arguments were made by Mexico against firearms manufacturers in Massachusetts, and soundly rejected. *Estados Unidos Mexicanos,* 2022 WL 4597526, *11-13.

Mexico relies on the principle that "Congress ordinarily legislates with respect to domestic, not foreign, matters." Opp. 19. But that only confirms that the PLCAA applies here, because it is a core "domestic concern" whether American companies can be held liable in U.S. courts for selling firearms in the United States. The PLCAA compels this result since it bars any suit like this one from being "brought in any Federal or State court." 15 U.S.C. § 7902(a). Mexico relies on the premise that the law should be construed to "prevent[] courts from

LORBER GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

'erroneously adopt[ing] an interpretation of U.S. law that carries foreign policy consequences not clearly intended by the political branches.'" Opp. 19. Again, that counsels in favor of reading the PLCAA to apply here. U.S. and Arizona laws govern the legality of firearms sales in Arizona, while Mexican law regulates conduct within its own borders. By contrast, displacing U.S. law in favor of Mexican law to regulate the domestic sale of firearms by Arizona companies would turn the presumption against extraterritoriality on its head.

Mexico argues that the "focus" of the PLCAA is on third-party "criminal or unlawful misuse" and the "resulting injury." Opp. 23. Thus, according to Mexico, the PLCAA does not protect U.S. companies from liability when their firearms are misused abroad or plaintiffs are injured abroad. This argument fails because it disregards the clear design and purpose of the PLCAA. As the Supreme Court has made clear, the "focus" of a statute is the primary "object" of "congressional concern." *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 266-67 (2010). Thus, courts determine the statutory "focus" by looking to what "the statute seeks to 'regulate,'" and what it "seeks to 'protec[t].'" *Id.*

Here, it is beyond dispute that Congress enacted the PLCAA to protect American firearm companies from being subject to unwarranted litigation in U.S. courts. In the statutory findings, Congress emphasized that "[b]usinesses in the United States" which are engaged in the lawful manufacturing and sale of firearms "are not, and should not, be liable for the harm caused by those who criminally or unlawfully misuse firearm products." 15 U.S.C. § 7901(a)(5). Likewise, the first stated "purpose[]" of the statute is "[t]o prohibit causes of action against" firearms companies. *Id.* § 7901(b)(1). And to effectuate that purpose, the statute provides that no "qualified civil liability action" may be "brought in any Federal or State court." *Id.* § 7902(a). Thus, as long as a case involves U.S. courts, U.S. companies, and sales activity that "occur[s] in the United States," it "involves a permissible domestic application [of the statute] even if other conduct occurred abroad." *RJR Nabisco*, 579 U.S. at 337. That is the case here.

Next, Mexico argues that the PLCAA's focus must be assessed by looking at all the statutory provisions that work together "in tandem." Opp. 23 (citing *WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129, 2136 (2018)). But looking at the statute as a whole only

LORBER GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

8

confirms that it applies here. In *WesternGeco*, the statute prohibited patent infringement and the question was whether the plaintiff could recover for "lost foreign profits." 138 S. Ct. at 2134. Because the statute focused on "infringement," it applied to the defendant's "domestic act" of infringement in the United States, and it authorized recovery of resulting lost profits even if the losses occurred abroad. *Id.* at 2138. The foreign location of the injury was irrelevant because that was not the statutory focus. *Id.* The same is true here: the PLCAA is focused on protecting U.S. firearm companies against liability in U.S. courts based on their sale of firearms in the U.S.

Mexico also relies on *RJR Nabisco*. But the RICO statute at issue in *RJR Nabisco* created a "private right of action" for persons "injured in [their] business or property." 579 U.S. at 346. Because that provision focused on addressing such injury, it only applied to "domestic injury to . . . business or property." *Id.* The PLCAA expressly does not create private rights of action or remedies. 15 U.S.C. § 7903(5)(C). As in *WesternGeco*, the location of any injury that a plaintiff may allege is irrelevant to the PLCAA analysis.

Mexico also relies on *Small v. United States*, 544 U.S. 385, 387 (2005), to claim that "Congress had only 'domestic [law] in mind'" when it debated and passed the PLCAA, and that injuries sustained outside the U.S. are not covered. Opp. 21. But *Small* preceded the "focus" test of *Morrison* and *RJR Nabisco*; and *Small* involved a criminal statute that barred firearms possession by those who had been "convicted in any court," and thus a prior conviction was a "necessary" element of the prohibited conduct. *Id.* at 389. Since U.S. criminal laws typically apply only to conduct within the U.S., and Congress likely did not intend a violation of foreign law to divest Americans of their right to keep and bear arms in the U.S., the statute was naturally limited to convictions in U.S. courts. *Id.*

Mexico is similarly wrong that applying the PLCAA in this type of case would create any "anomalies." Opp. 21. According to Mexico, it would be anomalous for the PLCAA to allow claims against firearms companies only when they have violated "State or Federal" law, but not when they have violated "similar foreign law." *Id.* But there is nothing anomalous about that. The purpose of the PLCAA is to protect domestic firearms companies that operate "in the

LORBER GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

United States." 15 U.S.C. § 7901(a)(5). It is thus entirely natural for the companies' liability to turn exclusively on whether they have violated "State or Federal" law, not foreign law.

Mexico next argues the PLCAA's "boilerplate references" to "foreign commerce" by themselves are not the type of clear statement that can give a statute extraterritorial reach. Opp. 20. This case falls squarely within the domestic statutory "focus" of protecting American companies against liability in American courts. There is no clear-statement rule to overcome.

Mexico is also wrong to say that the PLCAA's express reference to governmental plaintiffs should include only domestic governments, not foreign ones. Opp. 21-22. This argument fails for all of the reasons discussed above. Indeed, Mexico's argument is especially unconvincing because it would preclude the PLCAA from applying even in cases where foreign plaintiffs assert injuries suffered in the United States based on the criminal misuse of firearms in the United States.

### B.    Defendants are within the class of businesses protected by the PLCAA

Mexico argues that the PLCAA "precludes such claims seeking 'damages … or other relief, resulting from the criminal or unlawful misuse' of guns … against gun importers, *but not exporters*." Opp. 20. Plaintiff supports this statement by contending that the PLCAA makes no reference to "exporting." *Id.* Mexico is again wrong. First, the Defendants do not export firearms into Mexico. But even if Mexico's absurd assertion that Defendants are exporters based on the intervening and illegal acts of third-party smugglers is accepted, the PLCAA's protections clearly apply to licensed American companies that export firearms. A protected "seller" under the PLCAA includes any licensed "dealer," which encompasses exporters because a "dealer" includes anyone who is licensed to sell firearms "in interstate or foreign commerce." 15 U.S.C. § 7903(6)(B)(emphasis added). Other federal statutory requirements governing firearm exports do not eliminate the protection Congress provided to federally licensed firearms dealers.

### C.    The predicate exception does not apply

Aside from its faulty extraterritoriality argument, Mexico does not dispute that this case is a "qualified civil liability action" which cannot be brought in this Court unless an exception to the Act is established. 15 U.S.C. § 7902(a). Here, there is no showing that Defendants

LORBER GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

knowingly violated any "State or Federal statute applicable to the sale or marketing of [firearms]," or that any "violation was a proximate cause of the harm for which relief is sought." *Id.* § 7903(5)(A)(iii). Mexico asserts a variety of arguments in response, but they all fail.

### 1.    The predicate exception is limited to firearms-specific statutes

General statutes which are "applicable" to all consumer industries are not considered "predicate statutes" under the PLCAA. To qualify as a "predicate" statute, the law must be firearms-specific. *See Ileto v. Glock, Inc.*, 565 F.3d 1126, 1137 (9th Cir. 2009); *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 403 (2d Cir. 2008). Mexico concedes this issue because a "broad stroke" application has already been rejected by both the Ninth and Second Circuits, as it would allow the very types of general tort claims that Congress designed the PLCAA to foreclose. See *id.*

### 2.    Defendants have not violated any firearms-specific statute

Mexico cites to 50 U.S.C. § 4819 and 18 U.S.C. § 924(k)(2) as the firearms-specific statutes that it claims Defendants violated. Compl. ¶¶ 155-160. However, these paragraphs in the Complaint simply recite the substance of the laws and their penalties, and then in conclusory fashion Mexico alleges, "[B]y engaging in the conduct alleged above, each Defendant systematically violated the foregoing legal obligations." Compl. ¶ 161.

"A complaint that sets forth a cognizable legal theory will survive a motion to dismiss as long as it contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Legal conclusions couched as factual allegations do not enjoy a presumption of truth and are not sufficient to defeat a Rule 12(b)(6) motion." *Iqbal*, 556 U.S. at 678. At best, Mexico has alleged that Defendants sold certain firearms, and at some remote point thereafter, these firearms were the subject of criminal prosecutions involving parties without any direct or agency relationship to the Defendants. Compl. ¶¶ 55-116. Mexico's allegations that the Defendants violated these two statutes without any factual support are insufficient and require dismissal pursuant to *Iqbal*.

Even if these threadbare allegations are sufficient, Defendants could not have violated either such statute. These two statutes regulate the exportation of certain items and the illegal

LORBER, GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

smuggling of firearms into Mexico, respectively. There is no allegation that Defendants exported firearms directly into Mexico. Further, 18 U.S.C. § 924(k)(2) did not become law until June 25, 2022, and no alleged sale by any named Defendant occurred after this date.

Since Mexico cannot adequately plead that Defendants violated any law applicable to the sale of firearms (as not one Defendant has even been charged with a crime and each is licensed to sell firearms, Compl. ¶¶ 126, 130), in a misguided attempt to fit its claims within the predicate exception, Mexico resorts to strained claims that Defendants "aid and abet" the actual criminals who straw purchased, trafficked or smuggled the firearms. In making this argument, Mexico relies on *Direct Sales Co. v. United States*, 319 U.S. 703 (1943), however, in that case, the Court emphasized that the defendant violated federal law only because it had "more than knowledge, acquiescence, carelessness, indifference, [or] lack of concern" about the doctor's unlawful distribution of morphine. *Id.* at 713. Here, even if a Defendant was generally aware that some of their firearms might end up being illegally brought into Mexico, that does not make them guilty of criminal conspiracy or aiding and abetting. This is precisely the type of situation where *Direct Sales* recognized that federal liability is lacking, because even if "the evidence of knowledge [about some future unlawful sales] is clear, … the further step of finding the required intent cannot be taken." 319 U.S. at 712. In *Direct Sales*, the objective lack of any legitimate purpose of the sales to the doctor was material evidence that the seller was an active participant in the crime. Here, by contrast, firearms were lawfully sold by Defendants and Mexico must admit that only a small percentage were diverted for unlawful purposes. Thus, unlike in *Direct Sales*, Defendants did not "actively participate" in any crime and there are no allegations to support such a claim.

### 3.    No predicate violation proximately caused any harm to Mexico

Because the PLCAA explicitly mandates proximate cause for a predicate violation to be utilized, Mexico must - and fails to - allege how some particular knowing act by a Defendant, which violated a predicate statute, was the proximate cause of its harm.

First, Mexico is wrong to say that the proximate-cause requirement depends on which "substantive [tort] law [is] applied." Opp. 27. The PLCAA imposes a freestanding proximate-

LORBER GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

cause requirement as a matter of federal law, which means federal proximate-cause standards apply. When Congress incorporates "proximate cause" into a federal statute, it has a "well established" meaning that allows liability only if "the harm alleged has a sufficiently close connection to the conduct the statute prohibits." *Bank of Am. Corp. v. City of Miami*, 137 S. Ct. 1296, 1305 (2017). Thus, since Congress incorporated a proximate-cause requirement into the predicate exception, it requires the plaintiff to allege a "close connection" between the alleged harm and the violation of the predicate statute. *Id.*

Second, Mexico contends that proximate cause does not fail due to remoteness but instead argues that an injury only needs to be "foreseeab[le]," no matter how many "steps in the causal chain" there might be. Opp. 28. But the Supreme Court has squarely rejected that argument. "[P]roximate cause 'generally bars suits for alleged harm that is "too remote" from the defendant's unlawful conduct.'" *Bank of Am. Corp.*, 137 S. Ct. at 1306 ("[T]he Eleventh Circuit erred in holding that foreseeability is sufficient to establish proximate cause under the FHA."). The remoteness doctrine applies under all types of federal laws, and it has firm grounding in the common law. *See*, *e.g.*, *Petitions of Kinsman Transit Co.*, 388 F.2d 821, 825 & n.8 (2d Cir. 1968). Significantly, the Supreme Court has recognized that proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged." *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010). "A link that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient." *Id.*

Mexico insists that "defendants exaggerate the number of steps, which is really just two…" Opp. 28. In order to make this assertion, Plaintiff incorrectly lumps the independent actions of numerous third parties together under the single header of "traffickers" and then contends that "traffickers" are "agent[s]" of the cartels. This formulation hides the fact that there are many different intervening actors within the "gun traffickers and cartels."[5] Regardless, the multi-step nature of Mexico's theory of causation is simply undeniable: Defendants sell lawful

---

[5] In addition to the multiple actors involved, most of the firearms that were allegedly straw purchased from defendants were recovered at the border before entering Mexico, Compl. ¶ 75; or they were recovered in Mexico but not connected to any of the named defendants, id. ¶ 65; or the firearms were simply recovered in Mexico with no connection to a violent crime, id. ¶ 73.

LORBER, GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

products through a highly regulated process to customers in U.S. domestic commerce. Firearms smuggled into Mexico must then necessarily pass hand-to-hand through countless intermediaries, some of which find their way into criminal hands through the illegal acts of persons far removed from Defendants and over whom Defendants have no control. By any measure, Mexico's "theory of causation requires us to move well beyond the first step" of causation since there is no allegation that any "purchaser" identified in the Complaint actually injured or killed anyone in Mexico. This means that Mexico "cannot meet" the federal law's "requirement" of proximate cause. *Hemi Grp*, 559 U.S. at 10.

### 4. Predicate violations do not authorize unrelated claims

Mexico argues that once it pleads a statutory violation, "the predicate exception allows all of plaintiff's tort claims to proceed, regardless of whether each of them would independently fall within an exception." Opp. 10. Mexico's reading of the statute is incorrect.

The predicate exception is narrowly crafted to allow only "an action in which [the defendant] knowingly violated a [predicate statute], and the violation was a proximate cause of the harm for which relief is sought." 15 U.S.C. § 7903(5)(A)(iii). The only sensible reading is to allow only causes of action that seek "relief" for harm proximately caused by a predicate violation. Indeed, "while the term 'action' may be most commonly understood to refer to a case, rather than an individual claim, the term is sometimes used instead as shorthand for a single 'cause of action.'" *See*, *e.g.*, *Ramos v. Wal-Mart Stores, Inc.*, 202 F. Supp. 3d 457, 466 (E.D. Pa. 2016) (providing examples). While courts have disagreed on how to apply the predicate exception, this reading is the only way to harmonize the predicate exception with the PLCAA's purpose, which is "[t]o prohibit causes of action" in cases involving the "criminal or unlawful misuse of firearm[s]" by third parties. 15 U.S.C. § 7901(b)(1).

In *Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*, once the court determined that the PLCAA applied, i.e. Mexico's extraterritoriality and choice of law arguments failed, the PLCAA acted as a filter requiring that all causes of action not subject to an enumerated

LORBER GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

exception be dismissed.[6] 2022 WL 4597526, *10.[7] Thus, at a minimum, this Court should find that the PLCAA applies, and therefore, Mexico's Counts 1-2, 4 (because it is abandoned), 5-6 and 8 must be dismissed.

### D.   The Negligent Entrustment Exception Does Not Apply

#### 1.   Negligent entrustment is not adequately plead

Plaintiff argues it satisfies the pleading requirement for this cause of action by stating:

> [T]he Government alleges that each Defendant supplied guns "for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use [] in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use.

Opp. 17 (citing *Verduzco v. American Valet*, 240 Ariz. 221, 224 (App. Div. 2016). These are legal conclusions. There are no factual allegations as to what the Defendants knew or should have known regarding the prospective purchasers/transferees prior to transferring the firearms as alleged. It is the extent of the entrustor's knowledge of the entrustee's "youth, inexperience, or otherwise" before the transfer that is critical. *Verduzco*, 240 Ariz. at 224. Mexico has failed to adequately plead a cause of action for negligent entrustment.

#### 2.   Negligent entrustment under Arizona law

Mexico admits by omission that Arizona substantive law does not support its negligent entrustment cause of action. Opp. 17. Mexico asks this court to instead apply Mexican tort law since it "comfortably encompasses the elements of what is known in the United States as 'negligent entrustment." Opp. 16.[8] Mexico's choice of law analysis is wrong and Arizona and federal law are determinative of whether a negligent entrustment cause of action is viable.

---

[6] The individual claims that were dismissed included: Negligence; Public Nuisance; Defective Condition - Unreasonably Dangerous; Negligence Per Se; Gross Negligence; Unjust Enrichment and Restitution; and Punitive Damages.

[7] *See also Woods v. Steadman's Hardware, Inc.*, 2013 WL 709110, at *4 (D. Mont. Feb. 26, 2013) (explaining that a plaintiff's claims must "pass the PLCAA filter . . . before they can go forward in state court").

[8] In support of this conclusory and ambiguous legal statement, Mexico cites to "Plaintiff's First Expert Report on Tort Law," which comes from paid lawyers retained by Mexico. See Doc. 25-

LORBER GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

In the firearms context, suits under Arizona's common law negligent entrustment doctrine arise solely in situations where the owner of a firearm lends it directly to an individual with known qualities, which makes such possession dangerous. *See Tissicino v. Peterson,* 211 Ariz. 416, 416 (Ariz. Ct. App. 2005); *see also Martin v. Schroeder*, 209 Ariz. 531 (Ariz. Ct. App. 2005). Here, there is no direct relationship between the Defendants and the criminals in Mexico, and thus, Mexico cannot allege that Defendants knew of any qualities making such possessors in Mexico dangerous.

Further, the application of Arizona's negligent entrustment doctrine has not been extended to sellers of goods. The closest precedential authority pertains to automobile rental services, but these cases are clearly in line with the history of negligent entrustment pertaining to the use of automobiles. *See Tellez v. Saban*, 188 Ariz. 165 (Ariz. Ct. App. 1996); *Christy v. Baker*, 7 Ariz. App. 354 (Ariz. Ct. App. 1968).

Just like *In re Academy, Ltd,* 625 S.W.3d 19 (Tex. 2021), none of these Defendants could exert any type of control over the firearms once they were sold to the initial purchasers. Therefore, imposing liability on the Defendants for negligent entrustment without any limitations on the number of transactions, legal and illegal, or time elapsed between the sale and the eventual misuse in another country is akin to imposing absolute liability on a product seller for any future misuse by a buyer or third-party. No Arizona precedent supports this is the type of liability.[9]

### 3.    Negligent entrustment is limited by the PLCAA

This cause of action also fails as a matter of law because negligent entrustment is defined in the PLCAA as:

---

1, ¶¶ 2, 9. Interestingly, the word "entrustment" never appears in this "expert report," and thus, Mexico's argument that somehow Mexican tort law "comfortably encompasses" this unique subset of negligence law is misplaced.

[9] New Hampshire has never extended the negligent entrustment doctrine to the sale of chattel. *See, e.g.*, *Weaver v. Stewart*, 169 N.H. 420 (2016), *Burley v. Kenneth Hudson, Inc.*, 122 N.H. 560 (1982); *Fletcher v. Kunze*, 125 N.H. 277, 278, 480 A.2d 141, 142 (1984); South Carolina only recognizes negligent entrustment claims against owners or lessors, not sellers of chattels. *See, e.g.*, *Gadson v. ECO Servs., Inc.*, 648 S.E.2d 585 (S.C. 2007), *Lydia v. Horton*, 583 S.E.2d 750 (S.C. 2003)

LORBER, GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

> the supplying of a qualified product by a seller for use by another person when the seller knows, or reasonably should know, <u>the person to whom the product is supplied</u> is likely to, and **does**, <u>use the product in a manner involving unreasonable risk of physical injury to the person or others</u>.

15 U.S.C. § 7903 (5)(B)(emphasis added). Mexico does not and cannot connect any harm suffered in Mexico that was the result of a buyer's or transferee's "use" of a firearm. In fact, in most of the transactions cited in the Complaint, firearms that were allegedly straw purchased were recovered at the border before entering Mexico, Compl. ¶ 75; or recovered in Mexico but not connected to any of the named Defendants, *id.* ¶ 65; or simply recovered in Mexico with no connection to a violent crime, *id.* ¶ 73. If no harm was caused by the entrustment, no claim can stand. Further, a harm inflicted by some third party that acquired a firearm from the actual buyer or transferee, or one, two or further steps removed from the actual buyer, does not satisfy the one-step chain of custody limitation imposed by the PLCAA's negligent entrustment exception. While the PLCAA expressly does not create a cause of action for negligent entrustment, it does place a limit on the scope of a viable claim under state law.

## V.     Plaintiff is an Improper Party to Bring a Claim Under the Arizona CFA

To avoid dismissal of the cause of action brought pursuant to Arizona's Consumer Fraud Act ("CFA"), Mexico argues that it need only show that Defendants "made a misrepresentation" and that "defendant's conduct proximately caused plaintiff to suffer damages." Opp. 31 (citing *Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 825 (D. Ariz. 2016)). Mexico is wrong legally and factually.

### A.     Failure to plead with particularity

Pleading a CFA cause action requires a heightened level of particularity. "Rule 9(b) applies to [a CFA] claim because such a claim sounds in fraud." *Young v. Grand Canyon*, 57 F.4th 861, 875 (11th Cir. 2023)(applying Arizona law). "Generalized assertions are not enough to satisfy the who, what, when, where, and how required by Rule 9(b)." *Id.* at 876; *Williamson v. Allstate Ins. Co.*, 204 F.R.D. 641, 644 (D. Ariz. 2001). Plaintiff does not allege any facts to show that the Defendants made a misrepresentation to any purchaser, that any consumer actually

"heard" any such misrepresentation, or that any purchaser or consumer actually relied on any alleged representations or misrepresentations by Defendants. The Complaint states only that Defendants made certain claims to the general public, which does not suffice to plead a CFA claim. Count Seven should be dismissed based on the lack of particularity alone.

### B. Mexico is not a consumer

The purpose of the CFA "is to provide **injured consumers** with a remedy to counteract the disproportionate bargaining power often present in consumer transactions." *State Farm Fire & Cas. Co. v. Amazon.com Inc.*, No. CV-17-01994-PHX-JAT, 2018 WL 1536390, at *4 (D. Ariz. Mar. 29, 2018) (emphasis added). Thus, before the court even addresses the two-step analysis set forth in *Cheatham*, a plaintiff must establish it is an "injured consumer." It is undisputed that Mexico did not purchase any firearms sold or marketed by Defendants. To avoid this legal standing dilemma, Mexico claims that it is not necessary for there to be a "merchant-consumer" relationship to bring a claim under the CFA. This misses the mark. While a "direct" merchant-consumer transaction is not necessary, to have standing, a plaintiff must still allege that misrepresentations were made by the defendant and relied upon by the plaintiff causing the harm alleged. *Id.* at *4-5. This issue was addressed directly in *Ventures Edge Legal PLLC v. GoDaddy.com LLC*, No. CV-15-02291-PHX-GMS, 2018 WL 619723 (D. Ariz. Jan. 30, 2018). There, the court held, "Plaintiff asserts that … individualized reliance inquiries are not required to bring a private right of action under [CFA]. But, such an argument has been consistently rejected by Arizona courts." *Id.* at *3; *see also Peery v. Hansen*, 585 P.2d 574, 577 (Ariz. Ct. App. 1978) (holding "it is clear that before a private party may exert a claim under the statute, he must have been damaged by the prohibited practice. A prerequisite to such damages is reliance on the unlawful acts."). Because Mexico is not a consumer who relied on Defendants' alleged misrepresentations, it cannot assert a claim under the CFA.

This court need look no further than *State Farm*'s analysis on this issue, which held, "*Sullivan* is different from *Watts* in one critical way, the absence of a misrepresentation made to the plaintiff." *State Farm,* at *5 (citing *Sullivan v. Pulte Home Corp.*, 290 P.3d 446, 454 (Ariz. Ct. App. 2012), *vacated in part*, 306 P.3d 1 (Ariz. 2013) and *Watts v. Medicis Pharm. Corp.*,

LORBER GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

LORBER, GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

365 P.3d 944 (Ariz. 2016)). In relying upon *State Farm*, Mexico conveniently left off the requirement that the "representation" must be "made to the plaintiff." *Id.*[10]

### C.  Mexico's in parens patriae arguments fail

Mexico attempts to avoid the infirmities of its CFA claim by stating it is pursuing "this claim in parens patriae of behalf of its citizens as well as in its own right." *See* Opp. 32. This does not save Plaintiff. First, the CFA provides that only the Attorney General of Arizona may enforce the provisions of the CFA on behalf of the citizenry. *See* A.R.S. §§ 44-1528, et seq. Further, the judicially created private cause of action for "persons" must be limited to "a person who has been damaged by the practices declared to be unlawful." *Sellinger v. Freeway Mobile Home Sales, Inc.,* 110 Ariz. 573, 576 (Ariz. 1974). Because Mexico is clearly not a "person" under the definition provided in the CFA, and because Mexico does not stand in the shoes of the Attorney General, its role as parens patriae on behalf of its citizens is insufficient to obtain standing to bring this CFA claim.

Second, the doctrine of parens patriae is not even applicable to this case. This doctrine "creates an exception to normal rules of standing applied to private citizens in recognition of the special role that a State plays in pursuing its quasi-sovereign interests in 'the well-being of its populace.'" *Estados Unidos Mexicanos v. DeCoster*, 229 F.3d 332, 335 (1st Cir. 2000) (citing *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 602, (1982)). "It is a judicially created exception that has been narrowly construed." *Id*. Mexico lacks such prudential standing based on its quasi-sovereign interest in the health and well-being of its residents because "parens patriae standing should not be recognized in a foreign nation unless there is a clear indication of intent to grant such standing expressed by the Supreme Court or by the two coordinate branches of government." *Id.* at 336. While foreign nations may have standing to bring suit in the federal

---

[10] The other cases cited by Mexico similarly do not support its argument. *See Maurer v. Cerkvenik-Anderson Travel, Inc.*, 890 P.2d 69 (Ariz. Ct. App. 1994) (no discussion as to merchant-consumer transaction or relationship); *see also Leist v. Academy Mortg. Corp.*, No. CV-16-00314-PHX-DGC, 2016 WL 1593815 (D. Ariz. April 20, 2016) (there being no dispute that plaintiff received and relied upon defendant's mortgage pre-qualification letter when accepting an offer to purchase from third-party).

courts "in cases in which the foreign nation has suffered a direct injury," the "Supreme Court has never recognized parens patriae standing in a foreign nation where only quasi-sovereign interests are at stake." *Id.* Parens patriae based standing has been given to the States on the basis of federalism, but "by definition, a foreign nation has no cognizable interests in our system of federalism." *Id.* at 339.

**VI.**   **Mexico's RICO Claims Must be Dismissed**

**A.  Mexico lacks standing to assert civil RICO claims**

Mexico's opposition fails to address the threshold issue of statutory standing to assert civil RICO claims, and specifically the prerequisite that it must allege a harm which qualifies as injury to its business or property by reason of the RICO violation.[11] Instead, Mexico claims that it is not required to show a RICO injury to its business or property because it only seeks "equitable relief" under 18 U.S.C. § 1964(a). While Mexico's position is belied by the Complaint's references to the substantive RICO statute, § 1964(c), Mexico's opposition is properly construed as an admission that it cannot allege an injury to its business or property by reason of an alleged RICO violation. Based on these concessions, and as more fully addressed in Section V.A. of the Joint Motion to Dismiss, Mexico lacks statutory standing so pursue a RICO claim.

**B.  Mexico has not pled a right to relief under either § 1964(a) or § 1964(c), and the Complaint fails to adequately plead a right to equitable relief**

Mexico must establish a plausible substantive RICO claim under § 1964(c) – which it cannot as a matter of law – before the viability of equitable remedies is even considered.

The cases Mexico cites in support of its novel contention that private civil RICO plaintiffs are entitled to certain forms of "non-injunctive equitable relief" are incongruent with the allegations in this case. Mexico erroneously relies on *DeMent v. Abbott Capital Corp.*, 589 F. Supp. 1378, 1384-85 (N.D. Ill. 1984), for the proposition that "[o]ther courts have awarded such plaintiffs non-injunctive equitable relief under RICO." *See* Opp. 46-47 n.40. However, *DeMent* involved an assessment of the plaintiff's entitlement to *compensation for actual*

---

[11] *Smagin v. Yegiazaryan*, 37 F.4th 562, 566 (9th Cir. 2022).

LORBER, GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

*damages* it sustained to its business or property by virtue of a substantive RICO violation; not disgorgement, divestiture or monitoring under § 1964(a). *Id.* at 1383-84.

Significantly, *DeMent* explicitly rejected the plaintiff's claims for equitable relief under the RICO statute and refused to issue "[a]n order pursuant to 18 U.S.C. § 1961(a) preventing and restraining defendants from committing further violations of 18 U.S.C. § 1962, and ordering them to divest themselves of any purported interest in [a corporate entity]." *Id.* at 1381, 1383. The equitable relief that the court rejected in *DeMent* is exactly what Mexico seeks in this case. *See*, *e.g.*, Compl. at ¶¶ 319, 325, 331, 337, 343.

Second, Mexico's reliance on *Creel v. Dr. Says, LLC*, 2022 WL 4490141 (E.D. Tex. Sept. 27, 2022), and *Chevron Corp. v. Donziger*, 947 F.Supp.2d 362, 570 (S.D.N.Y. 2014), to support the viability of its "equitable claims only" contention is misplaced. *Creel* concerned a decision to award damages derived from a disgorgement of profits after a jury rendered a verdict against the defendants for both substantive and conspiracy violations of the RICO statute. *Id.* at *5. And, on appeal, the Second Circuit in *Donziger* clarified that "a federal court is authorized to grant equitable relief to a private plaintiff ***who has proven injury to its business or property*** by reason of a defendant's violation of § 1962." *Chevron Corp. v. Donziger*, 833 F.3d 74, 137 (2d Cir. 2016)(emphasis added). Thus, these cases do not stand for the proposition offered by Mexico as the plaintiffs in those cases – unlike Mexico – alleged, proved, and received compensation for injuries to their business or property.

Finally, Mexico's brief cites – but does not discuss – *Hengle v. Treppa*, 19 F.4th 324 (4th Cir. 2021), *cert. dismissed*, 142 S. Ct. 2093 (2022). Opp. 47 n. 42. Citing the Ninth Circuit's decision in *Religious Tech. Ctr. v. Wollersheim*, 796 F.2d 1076 (9th Cir. 1986), *Hengle* held that § 1964(a) does not authorize a private right of action. "Congress's use of significantly different language to create the governmental right of action in Section 1964(b) and the private right of action in Section 1964(c) compels us to conclude by negative implication that, although the government may sue for prospective relief, ***private plaintiffs may sue only for treble damages and costs***." *Hengle*, 19 F.4th at 354 (emphasis added).

### C.  The Complaint fails to allege viable and/or ongoing predicate acts

Mexico offers no substantive response to refute Defendants' argument that the predicate acts of straw purchasing of firearms (18 U.S.C. § 932) and trafficking in firearms (18 U.S.C. § 933) are recently enacted statutes that do not operate retroactively. Instead, Mexico asserts that this Court "need not address the retroactivity issue because the Complaint carefully alleges that each Defendant has violated those provisions since they were enacted on June 25, 2022." Opp. 38. Mexico supports this contention by merely citing the conclusory allegations in its Complaint, and specifically that "[e]ach Defendant has continued [to violate the BSCA] from and after June 25, 2022." Compl. ¶ 197. Such a conclusory recital of "continuing violations" is insufficient to plausibly allege a pattern of racketeering activity to support Mexico's RICO claims. *Eversource Capital LP v. Fimrite*, No. CV-18-02583-PHX-SMM, 2020 WL 8175431, at *7 (D. Ariz. Sept. 1, 2020) (explaining that legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss").

### D.  The Complaint does not adequately plead mail and/or wire fraud

To support its mail and/or wire fraud allegations, Mexico argues that Defendants "purposefully failed to disclose on Form 4473 that the purchasers were straw buyers and thereby engaged in a scheme to lie to the ATF." Opp. 39. Mexico's argument displays a lack of understanding with respect to Form 4473 and the elements of mail/wire fraud. It is impossible for Defendants to have "failed to disclose on Form 4473" because the section related to disclosure of the "actual buyer" on Form 4473 is filled out by the transferee or purchaser of the firearm, not the transferor or seller. Compl. ¶¶ 138-39. Additionally, Form 4473 is <u>not</u> submitted to ATF – via mail, wire, or any other means – as it is required to be maintained on the business premises of the FFL for the duration of the license. Nevertheless, assuming Mexico intended to refer to the multiple sales reports that are required by ATF regulations to be transmitted under limited circumstances (multiple sales of certain firearms within a five-day period), there is no "straw purchase" related question on this form and the transmittal of such reports to the ATF has no direct or indirect relationship to Mexico's alleged injuries.

LORBER GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

Citing *BCS Services, Inc. v. BG Invest., Inc.*, 728 F.3d 633 (7th Cir. 2013), Mexico contends that Defendants are incorrect when stating that "the object of the fraud must be property in the victim's hands." Opp. 39-40. However, the mail fraud scheme at issue in *BCS Services* involved the transmittal of property tax lien notices through the mail which resulted in prospective bidders losing the opportunity to purchase tax liens at auction. In finding a violation of the statute, the Court reasoned that "the defendants took from the City property that, had they not taken it, would have been obtained by the plaintiffs at the same time in the same place—the auction room." *Id.* at 638. Therefore, in stark contrast to this case, the plaintiffs in *BCS Services* were directly injured because the fraud prevented acquisition of property tax liens themselves.[12]

According to Mexico, the "property" involved in Defendants' alleged mail/wire fraud scheme is "money from gun sales." Opp. 40. Money earned from gun sales in the U.S. is clearly not property belonging to Mexico, nor could it be. Additionally, Mexico does not claim that it was injured through the loss of its property via a mail or wire fraud scheme. Rather, Mexico claims that it is injured after the third-party criminal misuse of firearms by cartels in Mexico. Compl. ¶ 23. Mexico fails to allege viable predicate acts of mail or wire fraud.

**E. The Complaint Does Not Adequately Plead Money Laundering**

Mexico has alleged multiple violations of 18 U.S.C. § 1956(a)(3) which is designed for government sting operations[13] using money "represented to be" the proceeds of unlawful activity, but which is, in fact, government property. *United States v. Manarite*, 44 F.3d 1407, 1420 n.10 (9th Cir. 1995). Aside from the fact that there are no factual allegations concerning a

---

[12] Mexico also argues that the mail and wire fraud statutes regulate "acquisitive" conduct and prohibit any "acquisitive" scheme. Opp. 40 (quoting *Monterey Plaza Hotel Ltd. P'ship v. Local 483 of Hotel Employees and Restaurant Employees Union, AFL-CIO*, 215 F.3d 923, 927 (9th Cir. 2000)). However, *Monterey Plaza Hotel* clearly states that the mail and wire fraud statutes "prohibit use of the mails and wires to *obtain* money or property *from the one who is deceived.* Id.* at 926. Further, the Ninth Circuit stated that the "purpose of the mail fraud and wire fraud proscriptions is to punish wrongful transfers of property from the victim to the wrongdoer, not to salve wounded feelings." *Id.* at 927. As such, the property involved must be the plaintiff's property or, at minimum, property for which the plaintiff has a direct monetary interest.

[13] *See*, *e.g.*, the DOJ's Criminal Resource Manual (https://www.justice.gov/archives/jm/criminal-resource-manual-2101-money-laundering-overview).

LORBER GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

23

government sting operation, the Complaint fails to allege any facts to show that a defendant conducted a financial transaction with the intent either: (1) "to promote the carrying on of specified unlawful activity" (§ 1956(a)(3)(A)); or (2) "to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of specified unlawful activity" (§ 1956(a)(3)(B)).

Indeed, federal courts have addressed and properly rejected a civil RICO plaintiff's vague predicate act allegations under § 1956(a)(3). For example, in *Zavala v. Wal-Mart Stores, Inc.*, 393 F.Supp.2d 295 (D. NJ 2005), the court rejected plaintiff's money laundering allegations which – like Mexico in this case – "largely recite the elements of different money laundering provisions, but do not identify the relevant financial transactions or conduct by [the defendant], or describe more particularly the [defendants'] contractors' 'money laundering activities' that allegedly involved banks, accountants, attorneys, and others." *Id.* at 315. Here, the Complaint merely alleges that funds associated with alleged "money laundering" were received by the Defendants as payment for products purchased by individual purchasers. Compl. ¶ 40. The Complaint is devoid of any factual allegations which could even plausibly suggest that any Defendant had a specific intent to either promote or conceal a specified unlawful activity.

### F.  The Complaint Does Not Adequately Plead a Pattern of Racketeering Activity

Mexico's argument that "all Defendants have engaged in acts of racketeering over a period of *at least* three years" is patently false. Opp. 42. The Complaint alleges five separate "Straw Sale Enterprises" which are specific to each Defendant. *See* Compl. ¶¶ 315, 321, 327, 333, 339. Stated differently, none of the Defendants are alleged to have participated in another Defendant's alleged enterprise. Separate patterns of alleged racketeering activity must be applied to each of the five separately alleged enterprises based on the alleged predicate acts which are asserted against each individual Defendant.

First, the alleged acts predicated on recently enacted statutes prohibiting straw purchasing of firearms (18 U.S.C. § 932) and trafficking in firearms (18 U.S.C. § 933) are insufficient to form a pattern of racketeering activity because they do not operate retroactively. *See Landgraf v. Usi Film Prods.*, 511 U.S. 244, 280 (1994).

LORBER, GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

Second, Mexico alleges predicate acts of mail and/or wire fraud, but only offers a single instance of an allegedly fraudulent transaction in relation to some of the Defendants (e.g., Sprague's Sports allegedly committed a single count of fraud on May 24, 2018, and The Hub allegedly committed a single count of fraud on October 17, 2019). *See* Compl. ¶ 191. Similarly, the Complaint only alleges two allegedly fraudulent transactions concerning Defendant Diamondback (October 1, 2018 and February 20, 2019). *See id.* Moreover, no facts are pled to support a mail and/or wire fraud predicate act involving Defendant Ammo A-Z. *Id.* As established by one of the very cases Mexico cites in opposition, *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229(1989), a pattern is not established by merely alleging two predicate acts, and asserting a bare minimum number of predicates is not sufficient to show a pattern of racketeering activity. *Id.* at 236-38

Moreover, Mexico does not allege any pattern of racketeering activity specifically involving money laundering, but rather makes general allegations of money laundering that are contingent on the mail and wire fraud violations. These scant allegations are insufficient to establish a plausible pattern of racketeering activity.

**G. The Complaint Does Not Adequately Plead Actionable Enterprises**

While Mexico contends that it has alleged viable enterprises pursuant to *Boyle v. United States*, 556 U.S. 938 (2009), its argument is predicated entirely upon the Complaint's bare recitation of the legal standards for an association-in-fact enterprise. Compl. ¶¶ 12, 213. However, the Complaint fails to plausibly allege an enterprise which exists for any purpose other than the racketeering activity that is alleged, or that any member of a purported enterprise is associated with it for reasons other than the alleged racketeering activity. *See Bredberg v. Middaugh*, No. 21-35156, 2022 WL 2662878, at *1 (9th Cir. July 11, 2022) (holding that plaintiff failed to establish the existence of a RICO enterprise when the alleged racketeering activity is the only apparent connection among the defendants); *see also Hunt v. Zuffa, LLC*, No. 19-17529, 2021 WL 4355728, at *2 (9th Cir. Sept. 24, 2021).

Therefore, Mexico fails to adequately plead actionable enterprises sufficient to avoid dismissal.

LORBER GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180

## __CONCLUSION__

For the foregoing reasons, all of Mexico's claims should be dismissed with prejudice.

Dated:  May 11, 2023                    LORBER, GREENFIELD & POLITO, LLP

                                        By:     _/s/ Louis W. Horowitz_
                                                Louis W. Horowitz, Esq.
                                                3930 E. Ray Road, Suite 260
                                                Phoenix, AZ 85044

                                                *Attorneys for Defendants Diamondback Shooting
                                                Sports, Inc., Loan Prairie, LLC d/b/a The Hub, and
                                                Sprague's Sports, Inc.*

                                        and

                                        RENZULLI LAW FIRM LLP

                                        By:     _/s/ Christopher Renzulli_
                                                Christopher Renzulli, Esq. (*Pro Hac Vice*)
                                                Peter Malfa, Esq. (*Pro Hac Vice*)
                                                Jeffrey Malsch, Esq. (*Pro Hac Vice*)
                                                One North Broadway, Suite 1005
                                                White Plains, NY 10601

                                                *Attorneys for Defendants Diamondback
                                                Shooting Sports, Inc., Loan Prairie, LLC d/b/a
                                                The Hub, SNG Tactical, LLC
                                                and Sprague's Sports, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11ᵗʰ day of May, 2023, I filed the foregoing using CM/ECF which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Ryan O'Neal, Esq.
DECONCINI MCDONALD YETWIN &
LACY, P.C.
2525 E. Broadway Blvd., Suite 200
Tucson, AZ 85716-5300
roneal@dmyl.com
*Attorneys for Plaintiff*

Steve D. Shadowen, Esq. (*Pro Hac Vice*)
Nicholas W. Shadowen, Esq. (*Pro Hac Vice*)
Tina J. Miranda, Esq. (*Pro Hac Vice*)
Deirdre R. Mulligan, Esq. (*Pro Hac Vice*)
SHADOWEN PLLC
1135 W. 6th Street, Suite 125
Austin, TX 78703
sshadowen@shadowenpllc.com
nshadowen@shadowenpllc.com
tmiranda@shadowenpllc.com
dmulligan@shadowenpllc.com
*Attorneys for Plaintiff*

Jonathan E. Lowy, Esq. (*Pro Hac Vice*)
GLOBAL ACTION ON GUN VIOLENCE
1025 Connecticut Avenue NW, #1210
Washington, DC 20036
jlowy@actiononguns.org
*Attorneys for Plaintiff*

William W. Drury, Esq.
RENAUD COOK DRURY MESAROS, PA
One North Central, Ste. 900
Phoenix, AZ 85004-4117
wdrury@rcdmlaw.com
*Attorneys for Defendant Ammo A-Z, LLC*

Anthony Pisciotti, Esq. (*Pro Hac Vice*)
Danny Lallis, Esq. (*Pro Hac Vice*)
Ryan Erdreich, Esq. (*Pro Hac Vice*)
PISCIOTTI LALLIS ERDREICH
30 Columbia Turnpike, Suite 205
Florham Park, NJ 07932
apisciotti@pisciotti.com
dlallis@pisciotti.com
rerdreich@pisciotti.com
*Attorneys for Defendant Ammo A-Z, LLC*

By: */s/ Jeffrey Malsch*

27

LORBER, GREENFIELD & POLITO, LLP
3930 E. Ray Road, Suite 260, Phoenix, AZ 85044
Telephone (602) 437-4177 / Facsimile (602) 437-4180