DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300
(520) 322-5000

Ryan O'Neal (AZ # 031919)
roneal@dmyl.com
Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

Estados Unidos Mexicanos,

                Plaintiff,

*vs.*

Diamondback Shooting Sports, Inc., an
Arizona corporation; SNG Tactical,
LLC, an Arizona limited liability
company; Loan Prairie, LLC D/B/A
The Hub, an Arizona limited liability
company; Ammo A-Z, LLC, an
Arizona limited liability company;
Sprague's Sports, Inc., an Arizona
corporation,

                Defendants.

NO. 4:22-cv-00472-TUC-CKJ

**PLAINTIFF'S SURREPLY TO DEFENDANTS' MOTION TO DISMISS**

With the Court's permission (ECF 36), Plaintiff Estados Unidos Mexicanos ("the Government") submits this Surreply in response to arguments addressed for the first time in Defendants' Reply (ECF 29) to Plaintiff's Opposition to Defendants' Joint Motion to Dismiss (ECF 26). The Government's arguments here are limited solely to those as to which it sought leave to respond.

## ARGUMENT

### I.    Arizona Choice-of-Law Principles Select Mexican Law.

The Government showed that under Arizona's "balancing" approach to choice-of-law, "Mexican tort law applies because the injuries occur there, the gun misuse occurs there, Defendants exported/imported their guns there, and the Government and its citizens are domiciled there." ECF 26, at 24.

**Plaintiff's domicile**. Defendants' only argument regarding plaintiff's domicile is the incorrect assertion that "Mexico's only argument is that the place of injury is the only factor that should decide this issue." ECF 29, at 4. Not true. Moreover, the plaintiff's domicile is "accorded great weight." *See, e.g.*, *Garcia v. Gen. Motors Corp.,* 990 P.2d 1069, 1076 (Ariz. Ct. App. 1999); ECF 26, at 26.

**Unlawful Conduct**. Defendants assert all their unlawful conduct "occur[s] exclusively in the forum state." ECF 29, at 4. That improperly[1] denies allegations that

---

[1] *See, e.g.*, *Wright v. Allstate Fire & Cas. Ins. Co.*, 2022 WL 1213444, at *3 (W.D. Wash. Apr. 25, 2022) ("[D]rawing all inferences in the light most favorable to Plaintiff, the Court assumes Washington law applies."); *EDAPS Consortium v. Kiyanichenko*, 2005 WL 8162556, at *3 (N.D. Cal. Nov. 1, 2005) ("[C]onstruing all factual allegations in the

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

Plaintiff's Surreply to Defendants' Motion to Dismiss

Defendants participate in trafficking their guns into Mexico. *See, e.g.*, ECF 1 ¶¶23-24, 39, 118-124, 167, 295. Their conduct is trans-national. ECF 26, at 26.

**Place of Injury**.  Defendants say little about the place of injury. The Supreme Court has twice held that "a court will ordinarily 'apply *foreign* law to determine the tortfeasor's liability' to 'a plaintiff injured in a foreign country.'" *RJR Nabisco*, *Inc. v. European Community*, 579 U.S. 325, 351(2016) (quoting *Sosa v. Alvarez-Machain*, 542 U.S. 692, 706 (2004)). In Arizona, it is "the most important factor." ECF 26, at 25. *See also Barten v. State Farm Mut. Auto. Ins. Co.*, 28 F. Supp. 3d 978, 986 (D. Ariz. 2014) (Jorgenson) ("the place where the injury occurred plays an 'important role in the selection of the state of the applicable law,'" quoting Restatement (Second) Conflict of Laws § 145 comment (e)); *Bates v. Superior Ct. of State of Ariz., In & For Maricopa Cnty.*, 156 Ariz. 46, 50, 749 P.2d 1367, 1371 (1988). Applying the law of the place of injury also "preserves the Restatement goals of certainty, predictability, and uniformity of result." *Pounders v. Enserch E & C, Inc.*, 232 Ariz. 352, 356, 306 P.3d 9, 13 (2013).

Defendants assert that where a defendant "would not be likely to foresee the injury occurring in that particular state," the place of injury is "less significant." ECF 29, at 5. But the Complaint alleges that Defendants "foresee" that their guns are shipped into Mexico and cause injury there; they participate in trafficking. *See, e.g.*, ECF 1 ¶23-24, ¶39, ¶118-124, ¶167, ¶295.

---

complaint as true and in the light most favorable to plaintiff, the Court must conclude that only the Ukraine has an interest in having its laws applied.").

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

**Other Defense Arguments**. Defendants cite *dicta* in *Kozoway v. Massey-Ferguson, Inc.*, 722 F. Supp. 641, 644 (D. Colo. 1989), about protecting U.S. corporations. The Eighth Circuit has declined to follow *Kozoway. See Dorman v. Emerson Elec. Co.*, 23 F.3d 1354, 1361 (8th Cir. 1994). And under *RJR Nabisco*, *Sosa*, and others, protecting U.S. corporations from application of foreign law simply is not a permissible, let alone persuasive, factor in the choice-of-law analysis. *See also Day & Zimmermann, Inc. v. Challoner*, 423 U.S. 3, 4 (1975); *Abogados v. AT&T, Inc.*, 223 F.3d 932, 936 (9th Cir. 2000); *Republic of the Philippines v. Marcos,* 862 F.2d 1355, 1361 (9th Cir. 1988); *Franklin Supply Co. v. Tolman*, 454 F.2d 1059, 1076 (9th Cir. 1971).

Regardless, the presumption is that the place of injury governs even when the injury occurs abroad. *See* Conflict Restatement § 10, Rpt.'s Note (courts generally "have not distinguished between international and interstate conflicts"). *Kozoway* declined to apply the law where the injury occurred, based not on a preference for U.S. law, but for the *law that is most protective of the injured plaintiff*. 722 F. Supp. at 644.

Lastly, Defendants assert that Arizona's interests outweigh Mexico's because, they contend, "Defendants sell firearms within Arizona to qualified persons in accordance with federal and state law." ECF 29, at 4. That contradicts allegations that Defendants systematically violate numerous U.S. federal statutes. *See, e.g*., ECF 1 ¶¶ 132-46, 154-61. And Mexico's interests would still be superior, as reflected in courts uniformly placing the most weight on the place of injury. *Ascapolon Corp. v. Ralston Purina Co*., 827 S.W.2d 189, 194 (Mo.1992) (en banc) (state's interest "is less substantial than the foreign nation's

Plaintiff's Surreply to Defendants' Motion to Dismiss

interest in protecting its citizens from injury [] within its borders"). Arizona has no overriding interest in applying its law rather than the law of the place where the Defendants' conduct systematically causes massive injury.

## II.    International Comity Does Not Support Applying Arizona Law.

"International comity" does not support applying Arizona law. ECF 29, at 5. International comity is "deference to foreign states that is not required by international law." Restatement (Fourth), Part IV, Chapter 1, Intro. Note. Defendants have not identified any such principles applicable here.

They instead rely on the public-policy exception to choice-of-law principles. *See* Restatement (Second) of Conflict of Laws § 90 (1971). That exception "has narrow application" that "rarely" governs. Conflict Restatement § 90, cmt. c (only if suit "would violate some principle of justice, some prevalent conception of morals, some deep-seated tradition of the commonwealth"). Defendants have not cited any Arizona case applying the exception.

Defendants do not identify any infringed "strong local public policy" (*id.*, cmt. a). No local policy promotes or protects unlicensed sales, straw sales, unlicensed exports, and systematic gun trafficking into Mexico. Pima County's District Attorney filed an amicus brief in support of the Government in another case. Brief of District Attorneys as Amici Curiae in Support of Plaintiff-Appellant, in *Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*, No. 22-1823, at 2-3 (1st Cir.). She acknowledges that when U.S. gun sellers "export scores of military-style weapons to Mexico, they import human suffering into the

Plaintiff's Surreply to Defendants' Motion to Dismiss

DEĆONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

United States. Their guns are turned on people in our cities and the law enforcement officers who protect them, and they fuel the tragic loss of life ravaging this country. Defendants' profiteering, in short, is paid for in U.S. blood."

Nor is there a conflict with the policies of the United States.[2] Consistent with nearly universal tort-law principles, the Government seeks to hold Defendants liable for trafficking guns into its territory, and seeks tailored injunctive relief directed at halting trafficking *to Mexico*. And whatever rights the Second Amendment confers,[3] it provides no right to traffic firearms to Mexico.

### III.    PLCAA Does Not Apply Extraterritorially.

Defendants never get past the first step of the two-step extraterritoriality analysis because PLCAA's text indicates that it does not apply to claims for injury from gun misuse abroad. *See* ECF 26, at 18-22. Defendants have no response to the fact that PLCAA extends its protections to gun importers but not exporters. *Id*. at 20. Nor do they deny that it is implausible that Congress extended PLCAA to gun misuse and injury abroad, thereby requiring courts to apply *foreign criminal law* to determine whether the misuse was "criminal or unlawful." *Id*. at 19-20.

---

[2] U.S. Deputy Attorney General Lisa O. Monaco recently remarked that "[i]n conversations with the highest levels of Mexican law enforcement, I confirmed that we are aligned on the firearms challenge and the need to do more" and "[d]isrupting illegal firearms trafficking networks—those that operate within our borders and across them—is central to our efforts on both fronts." https://www.justice.gov/opa/speech/deputy-attorney-general-lisa-o-monaco-delivers-remarks-southbound-firearms-trafficking.

[3] *See Teixeira v. County of Alameda*, 873 F.3d 670, 681 (9th Cir. 2017) (en banc) (rejecting a gun seller's argument "that, independent of the rights of his potential customers [to acquire firearms], the Second Amendment grants him a right to sell firearms").

Plaintiff's Surreply to Defendants' Motion to Dismiss

DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd, Suite 200
Tucson, AZ 85716-5300

If PLCAA applied abroad, all of the "anomalies" catalogued in *Small v. United States,* 544 U.S. 385 (2005), would also be present here. ECF 26, at 20-22. Defendants say that *Small* pre-dated the modern two-step analysis. ECF 29, at 9. But courts routinely apply *Small* in those analyses today. *See, e.g.*, *United States v. Vasquez*, 899 F.3d 363, 373 n. 6 (5th Cir. 2018); *Border v. Nat'l Real Est. Advisors, LLC*, 453 F. Supp. 3d 249, 254 (D.D.C. 2020); *United States v. Al-Imam*, 373 F. Supp. 3d 247, 255-257 (D.D.C. 2019); *United States v. Hutchins*, 361 F. Supp. 3d 779, 797 (E.D. Wis. 2019).

If the analysis got to the second step—determining the statutory provision's "focus"—Defendants would fail there too. The Government demonstrated that the focus of PLCAA's Section 7903(5)(A) is injury and criminal or unlawful gun misuse, and the conduct relevant to that focus occurs in Mexico. ECF 26, 23. Defendants do not deny the focus of Section 7903(5)(A) or the location of the conduct relevant to it. It is conceded on this motion.

Instead, Defendants assert that the focus of "the statute" is "protect[ing] American firearm companies from being subject to unwarranted litigation in U.S. courts." ECF 29, at 8. The Supreme Court requires determining the focus not of the statute as a whole, but of its *provisions*. And the Court prohibits locating the focus in some broad, amorphous statutory "intent"—the focus is found in the *statutory text*.

Where a statutory provision "works in tandem" with other provisions, the court must determine the focus of *each provision*. *WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129, 2137 (2018). The provision granting damages for "infringement" (§ 284) worked

in tandem with the provision defining the relevant act of infringement (§ 271(f)(2)), so *WesternGeco* applied the focus of that *provision* ("its focus … is the domestic act of 'suppl[ying] in or from the United States'"). 138 S. Ct. at 2137.

The Court recently re-emphasized determining the focus of each "relevant provision[]." *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 2023 WL 4239255, at *5, n.3 (U.S. June 29, 2023) ("Our cases sometimes refer to whether the 'statute' applies extraterritorially, but the two-step analysis applies at the level of the particular provision implicated."). In *Abitron*, the Lanham Act (15 U.S.C. § 1114(1)) mandated that a person "shall be liable in a civil action" for unlawful uses of trademarked goods, and those uses were defined in two subsections (§1114(1)(a)&(b)). The Court applied the focus of those defining provisions. 2023 WL 4239255, at *9-10.

Sections 7902(a) and 7903(5)(A) work in tandem, the latter providing the definition for the former. The uncontested focus of 7903(5)(A) is injury from gun misuse, which occurs in Mexico.

Defendants also err in positing a broad, amorphous focus of "protecting American firearm companies." *WesternGeco* and other precedent find the focus not in some broad "policy" or "intent," but in the specific statutory text. *Abitron* reinforced this point:

> Congress proscribed the use of a [trade]mark in commerce *under certain conditions*. … Because Congress has premised liability on a *specific action (a particular sort of use in commerce)*, that specific action would be the conduct relevant to any focus on offer today.

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

*Abitron,* 2023 WL 4239255, at *2 (emphasis added).[4]

Untethering the focus from the statutory text would involve courts in "divining what Congress would have wanted if it had thought of the situation." *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 261 (2010). The two-step inquiry prevents such "judicial speculation-made-law," ensuring that only Congress makes those foreign-policy judgments. *Id.* An "expansive understanding of" the relevant focus, unmoored from the text, "threatens to negate the presumption against extraterritoriality" and thereby thrust "the Judiciary … into the unappetizing task of navigating foreign policy disputes belonging to the political branches." *Abitron*, 2023 WL 4239255, at *8 (cleaned up).

*Abitron* reinforced its conclusion by noting that extending the Lanham Act to infringing uses abroad would conflict with an established international trademark regime. 2023 WL 4239255, at *8-9. To similar effect, the Supreme Court has elsewhere explained that, for tort claims, the usual choice-of-law rule selects the substantive law of the place of injury—the standard rule throughout the world. ECF 26, at 25. And the Court held that U.S. courts are open to foreign sovereigns to pursue claims for those injuries under their tort law. *RJR Nabisco,* 579 U.S. at 351.

Consequently, "the 'probability of incompatibility with the applicable laws of other countries is so obvious that if Congress intended such foreign application it would have

---

[4] Defendants purport to find PLCAA's "protection" focus in portions of its findings. ECF 29, at 8. But other portions of those findings emphasize what gun sellers are protected from: claims for *injury from gun misuse. See, e.g.*, Sections 7901(a)(3), (5); (b)(1). Regardless, the Supreme Court requires that the focus be found in the statutory provision's operative text.

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

addressed the subject of conflicts with foreign laws and procedures.'" *Abitron*, 2023 WL 4239255, at *8 (quoting *Morrison*, 561 U.S. at 269). So when the injury occurs abroad, "the need to enforce the presumption [against extraterritoriality] is at its apex." *RJR Nabisco*, 579 U.S. at 348.

**IV.    The Government Has *Parens Patriae* Standing.**

Defendants fail to counter the Government's showing that the CFA does not limit the category of plaintiffs to the Arizona Attorney General or to natural persons. ECF 29, at 31-32. And they are wrong in asserting that "the doctrine of parens patriae is not even applicable to this case." ECF 29, at 19. This case is a poster child for parens patriae standing. The doctrine "allows a sovereign to bring suit on behalf of its citizens when the sovereign alleges injury to a sufficiently substantial segment of its population, articulates an interest apart from the interests of particular private parties, and expresses a quasi-sovereign interest." *Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 847 (9th Cir. 2011); *see also Table Bluff Rsrv. (Wiyot Tribe) v. Philip Morris, Inc.*, 256 F.3d 879, 885 (9th Cir. 2001).

In *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 608 (1982), the Supreme Court held that parens patriae standing is decided on a case-by-case basis, but that, in general, standing will be found where the state has a "quasi-sovereign interest." Governments have a right, developed under the common law, to sue to protect "the health and comfort of their inhabitants." *Missouri v. Illinois*, 180 U.S. 208, 241 (1901).

Plaintiff's Surreply to Defendants' Motion to Dismiss

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd, Suite 200
Tucson, AZ 85716-5300

Defendants argue that the Government cannot exercise its "quasi-sovereign interest," asserting that parens patriae standing is reserved for U.S. states only. But in addition to U.S. states, parens patriae standing is well-established for Native American nations,[5] Washington, D.C.,[6] and U.S. territories.[7]

Defendants rely solely on *Estados Unidos Mexicanos v. DeCoster,* 229 F.3d 332, 337-39 (1st Cir. 2000), for the proposition that foreign nations have no parens patriae standing absent "a clear indication of intent to grant such standing expressed by the Supreme Court or by the two coordinate branches of government."

"Clear indication of intent" is not a requirement for standing[8] as set forth in *Snapp.* A state has a quasi-sovereign interest, first, in "the health and well-being—both physical and economic—of its residents in general" and, second, in "not being discriminatorily denied its rightful status within the federal system." 458 U.S. at 608 (1982). The Court examined the particular complaint before it, noting "[w]e turn now to the allegations of the complaint to determine whether they satisfy *either or both of these criteria.*" *Id.* (emphasis

---

[5] *See, e.g., Table Bluff Rsrv. (Wiyot Tribe) v. Philip Morris, Inc.*, 256 F.3d 879, 885 (9th Cir. 2001); *Quapaw Tribe of Oklahoma v. Blue Tee Corp.*, 653 F. Supp. 2d 1166, 1180 (N.D. Okla. 2009).

[6] *See D.C. v. ExxonMobil Oil Corp.*, 172 A.3d 412 (D.C. 2017).

[7] *See Alfred L. Snapp & Son, Inc. v. Puerto Rico* 458 U.S. 592 (1982).

[8] Nor is "federalism" a concern, as Defendants assert. *See, e.g.* Kenneth Juan Figueroa, *Immigrants and the Civil Rights Regime: Parens Patriae Standing, Foreign Governments and Protection from Private Discrimination*, 102 Colum. L. Rev. 408, 452, 457 (2002) (parents patriae "is a principle based, above all, upon the notion of sovereignty" and "[g]iven the distinction between federalism arguments and the parens patriae inquiry, it becomes clear that the absence of an interest in federalism should not defeat a request for parens patriae standing.").

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

added). Having found that the complaint satisfied the first criterion, the Court then

held "*[a]lternatively*, we find that Puerto Rico does have parens patriae standing"

under the second criterion. *Id*. at 609 (emphasis added).

The Court's references to satisfying "either or both of these criteria" and to Puerto

Rico having standing "alternatively" under each of them, make clear that a sovereign must

satisfy only *one* of the criteria, not *both*. To the extent *Decoster* contradicts this holding, it

is wrong. The Ninth Circuit has emphasized that the test is disjunctive. *State of Alaska v.*

*Nat'l Parks & Conservation Ass'n, Inc.*, 981 F.2d 1259 (9th Cir. 1992); *see also*

*Coordinated Council for N. Am. Affairs v. Northwest Airlines*, 891 F. Supp. 4, 7 n.3 (D.D.C.

1995) ("[f]oreign sovereigns are equally entitled to protect their citizens and may claim

parens patriae standing to the same extent as a state").

## CONCLUSION

For the reasons set forth above and in Plaintiff's Opposition brief, the Government

respectfully requests that the Court deny Defendants' Motion to Dismiss.

DATED this 14th day of July 2023.

DECONCINI MCDONALD YETWIN & LACY, P.C.

By: /s/*Ryan O'Neal*
Ryan O'Neal
2525 E. Broadway Blvd., Suite 200
Tucson, AZ 85716-5300
Attorneys for Plaintiff

1

2

s/ Steve D. Shadowen

Steve D. Shadowen (*pro hac vice*)
Tina J. Miranda (*pro hac vice*)
Nicholas W. Shadowen (*pro hac vice*)
SHADOWEN PLLC
1135 W. 6th Street, Suite 125
Austin, TX 78703
Phone: 855-344-3298
sshadowen@shadowenpllc.com
tmiranda@shadowenpllc.com

s/ Jonathan E. Lowy

Jonathan E. Lowy (*pro hac vice*)
Global Action on Gun Violence
1025 Connecticut Avenue NW
#1210
Washington, DC 20036
Phone: (202) 415-0691
jlowy@actiononguns.org

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

**CERTIFICATE OF SERVICE**

I, Ryan O'Neal, hereby certify that this document was filed with the Clerk of the Court via CM/ECF. Those attorneys who are registered with the Court's electronic filing system may access this filing through the Court's CM/ECF system, and notice of this filing will be sent to these parties by operation of the Court's electronic filings system.


Dated: July 14, 2023                    */s/ Ryan O'Neal*
                                        Ryan O'Neal