1    **WO**

2

3

4

5

6             **IN THE UNITED STATES DISTRICT COURT**

7               **FOR THE DISTRICT OF ARIZONA**

8

9    Estados Unidos Mexicanos,                    No. CV-22-00472-TUC-RM

10              Plaintiff,                         **ORDER**

11   v.

12   Diamondback      Shooting      Sports
     Incorporated, et al.,
13
                Defendants.
14

15          Plaintiff Estados Unidos Mexicanos ("Plaintiff" or "Mexico"), a sovereign nation,

16   sues five Arizona firearm dealers—Diamondback Shooting Sports, Inc.

17   ("Diamondback"); SnG Tactical LLC ("SnG Tactical"); Loan Prairie LLC d/b/a/ the Hub

18   ("the Hub"); Ammo A-Z, LLC ("Ammo A-Z"); and Sprague's Sports, Inc. ("Sprague's

19   Sports") (collectively, "Defendants")—alleging negligence, public nuisance, negligent

20   entrustment, negligence per se, gross negligence, unjust enrichment, violation of

21   Arizona's Consumer Fraud Act ("CFA"), A.R.S. § 44-1522, and violations of the

22   Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c).

23   (Doc. 1.)   Pending before the Court is Defendants' Joint Motion to Dismiss, filed

24   pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  (Doc.

25   18.)   Plaintiff filed a Response (Doc. 26), Defendants filed a Reply (Doc. 29), and

26   Plaintiff, with leave of Court (Doc. 36), filed a Surreply (Doc. 37).  Thereafter, Plaintiff

27   filed a Notice of Supplemental Authority (Doc. 44), to which Defendants, with leave of

28   Court (Doc. 47), responded (Doc. 48).  The Court held oral argument on February 22,

2024, and took the matter under advisement.  (Doc. 47.)

## I.      Plaintiff's Complaint

Plaintiff alleges that Defendants knowingly and "systematically participate in trafficking military-style weapons and ammunition to drug cartels in Mexico" through "reckless and unlawful business practices" including straw sales, bulk sales, and repeat sales.  (Doc. 1 at 4 ¶ 1; *see also id.* at 12 ¶ 23.)[1]  Plaintiff brings this action on behalf of itself and in *parens patriae* on behalf of its citizens.  (*Id.* at 6, 9 ¶¶ 6, 14.)  Plaintiff seeks damages, punitive damages, injunctive and equitable relief, and the appointment of a monitor to oversee and direct Defendants' sales practices.  (*Id.* at 137.)

In support of its claims, Plaintiff makes the following factual allegations.  Despite having strict controls on the lawful possession of guns and only one gun store in the entire country, Mexico's homicide rate is 4.5 times the world average.  (*Id.* at 7–8, 58–59 ¶¶ 10, 147–153.)  The economic impact of violence in Mexico was estimated to be $238 billion in 2019.  (*Id.* at 110 ¶ 253.)  As a result of cartel violence, Plaintiff has suffered death and injury to members of its military, National Guard, and police; increased spending on services aimed at preventing and mitigating the effects of Mexico's gun-violence epidemic; and losses from diminished property values, decreased business investment and economic activity, and decreased efficiency and size of the working population.  (*Id.* at 6, 108–111 ¶¶ 6, 247–248, 250–251, 253–256.)  Plaintiff alleges its citizens have suffered gun-related homicides, a significant decrease in life expectancy, and a deterioration in quality of life.  (*Id.* at 6, 109–112 ¶¶ 6, 249, 252, 254–255, 257–258.)

Cartel violence in Mexico is "fueled primarily by assault weapons supplied by unscrupulous border-state dealers like the Defendants" (*id.* at 7 ¶ 10), who for years have been among the worst gun-trafficking offenders in the United States (*id.* at 4–5 ¶ 2).  "Were it not for Defendants' wrongful conduct, there would be far fewer guns in Mexico,

---

[1] All record citations herein refer to the page numbers generated by the Court's electronic filing system.  Citations to allegations of Plaintiff's Complaint also refer to the relevant paragraph number(s).

and far fewer guns in the hands of the cartels." (*Id.* at 104 ¶ 237.)

Defendants know the "red flags"—including straw sales, bulk purchases, and repeat purchases—that indicate guns purchased from them are destined for drug cartels in Mexico, and they know the cartels favor military-style assault weapons. (*Id.* at 12, 18, 22, 50, 66 ¶¶ 24, 39, 53, 122, 176.) Despite this knowledge, Defendants—motivated by extra profits—continue supplying the cartels with military-style weapons, including AR-15 assault rifles and .50 caliber sniper rifles that can shoot down helicopters and penetrate bullet-proof glass. (*Id.* at 5–6, 18, 20–22, 49–51 ¶¶ 5, 39, 45–46, 48, 50–53, 121, 123–124.) Given the reliable supply, gun traffickers and straw purchasers go out of their way to purchase firearms from Defendants. (*Id.* at 14–17 ¶¶ 32–37.) "[T]he unlawful flow of arms into Mexico" is Defendants' "economic lifeblood." (*Id.* at 49 ¶ 121.)

Plaintiff provides illustrative examples of unlawful firearm and ammunition sales made by Defendants, including sales made by Diamondback from October 1, 2018 to March 1, 2022; by SnG Tactical from January 21, 2018 through April 18, 2022; by the Hub from October 17, 2019 through December 1, 2021; by Ammo A-Z from January 16, 2018 through August 28, 2019; and by Sprague's Sports from November 23, 2018 through March 25, 2020. (*Id.* at 22–48 ¶¶ 54–117.) Among the examples are a December 27, 2018 sale of ammunition by Sprague's Sports to Jose Rodrigo Felix-Quiroz, who had no U.S. identification and was not lawfully able to purchase ammunition (*id.* at 30 ¶ 58); the cash sale by SnG Tactical to Michael Anthony Sweigert of six AK-47 rifles, including five of the same model, over the course of approximately one week in September 2018 (*id.* at 33 ¶¶ 68–71); a January 23, 2019 sale by Diamondback of ammunition to two convicted felons who were on probation (*id.* at 35 ¶ 76); the sale by SnG Tactical to Isaias Delgado of over $80,000 in firearms, including 11 firearms over a two-week period in March 2019, many paid for in cash (*id.* at 35–36 ¶ 77); and the March 25, 2020 sale by Sprague's Sports of several hundred rounds of .50 caliber ammunition to two men, one of whom was a teenager and both of whom may not have been American citizens or residents (*id.* at 45 ¶ 108).

Each year, authorities trace a substantial number of guns to Defendants from crime scenes in Mexico.  (*Id.* at 48–49 ¶ 119.)  Over the last five years, each of the Defendants has been among the ten dealers with the most crime guns recovered in Mexico and traced back to a dealership in Arizona.  (*Id.* at 17 ¶ 37.)  The number of guns traced from gun dealers in Arizona to Mexico is a small fraction of the number of guns trafficked from those dealers into Mexico, as the vast majority of trafficked guns are never recovered.  (*Id.* at 14, 48–49 ¶¶ 29, 119.)  Based on estimates of the number of guns trafficked to the number traced from the United States to Mexico, Plaintiff estimates Defendants each participate in trafficking between 55 to 822 guns to Mexico annually.  (*Id.* at 49 ¶ 120.)

Defendants' conduct violates laws of Mexico, the United States, and Arizona regulating the sale, importation, exportation, and marketing of firearms.  (*Id.* at 8, 19, 53–65, 67-103 ¶¶ 11–12, 41, 132-169, 174, 179–234.)  Defendants violate U.S. laws prohibiting aiding and abetting, conspiring with, or concealing another's unlicensed firearm dealing or exportation; falsely certifying ATF Form 4473 and selling firearms while knowing or having reason to know the buyer has inaccurately completed the form; making straw purchases; and trafficking firearms.  (*Id.* at 19, 53–57, 59–61, 69, 71–79 ¶¶ 41, 132–146, 154–161, 183, 191, 197–198, 201–202 (citing 18 U.S.C. §§ 2–4, 922(a)(1)(A), 922(m), 923(a), 924(a)(3), 924(k)(2), 932(b), 933(a)(1), 933(a)(3); 50 U.S.C. § 4819).)  The federal firearm statutes that Defendants violate "are designed to prevent crime by keeping guns out of the hands of certain persons who have a heightened risk of misusing guns or are otherwise not entitled to possess them.  (*Id.* at 53 ¶ 134 (citing 18 U.S.C. § 921 *et seq.*).)

## II.    Legal Standard

Dismissal of a complaint, or any claim within it, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990)).  "To

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In deciding a Rule 12(b)(6) motion to dismiss, the Court must draw all reasonable inferences in favor of the plaintiff. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

A "facial" attack on subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) accepts the truth of the plaintiff's allegations but asserts that they "are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The court treats a facial attack on jurisdiction under Rule 12(b)(1) as it would a motion under Rule 12(b)(6), taking the plaintiff's allegations as true, drawing all reasonable inference in the plaintiff's favor, and determining whether the allegations are legally sufficient to invoke the court's jurisdiction. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

## III.   Discussion

In their Joint Motion to Dismiss, Defendants argue that Plaintiff lacks Article III standing, that the Protection of Lawful Commerce in Arms Act ("PLCAA") bars this lawsuit, and that the Complaint fails to state claims on which relief can be granted. (Doc. 19.)

### A. Article III Standing

This Court may exercise jurisdiction only in the context of actual "[c]ases" and "[c]ontroversies." U.S. Const. Art. III, § 2, Cl. 1. "For a legal dispute to qualify as a genuine case or controversy, at least one plaintiff must have standing to sue." *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2565 (2019). To establish Article III standing, the plaintiff bears the burden of showing: (1) an "injury in fact" that is (2) "fairly traceable to the challenged action of the defendant" and (3) "likely" to "be redressed by a

1  favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)

2  (internal quotation and alteration marks omitted).

3       Defendants do not challenge whether Plaintiff has suffered an injury for purposes

4  of Article III standing, but the parties dispute whether that injury is fairly traceable to

5  Defendants' conduct and redressable by a favorable decision in this matter.  (Doc. 19 at

6  12–16; Doc. 26 at 17–20; Doc. 29 at 6–7.)

7       **1.  Fairly Traceable Injury**

8       Defendants argue that Plaintiff's alleged harms are not fairly traceable to

9  Defendants' conduct because they are caused by the independent actions of third parties

10  who criminally misuse firearms in Mexico after obtaining them through an attenuated

11  chain of events involving numerous other third parties.  (Doc. 19 at 13–14.)  Plaintiff

12  argues that the harms are fairly traceable to Defendants' conduct because cartel violence

13  in Mexico is a predictable result of Defendants' actions.  (Doc. 26 at 17–19.)

14       "[I]ndirectness of injury" is "not necessarily fatal to standing," but it makes

15  standing "substantially more difficult" to establish.  *Simon v. Eastern Ky. Welfare Rights*

16  *Org.*, 426 U.S. 26, 44–45 (1976).   When a plaintiff's alleged injury depends on

17  independent and unlawful actions of third parties, the plaintiff must show that the "third

18  parties will likely react in predictable ways."  *Dep't of Commerce*, 139 S. Ct. at 2566.

19  Speculative inferences and attenuated chains of conjecture are insufficient.  *Simon*, 426

20  U.S. at 45; *Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1152 (9th

21  Cir. 2000).

22       Drawing all reasonable inferences in favor of Plaintiff, the Complaint plausibly

23  alleges that, as a result of red flags including straw sales, bulk sales, cash sales, and

24  repeat sales of military-style weapons favored by Mexican cartels, Defendants knew or

25  should have known that firearms they sold would ultimately be provided to and used by

26  cartel members for unlawful purposes in Mexico, resulting in violence and economic

27  harm.  The Court finds that the Complaint adequately alleges that the harms suffered by

28  Plaintiff and its citizens are fairly traceable to Defendants' conduct.  *See Estados Unidos*

*Mexicanos v. Smith & Wesson Brands, Inc.*, No. CV 21-11269-FDS, 2022 WL 4597526, at *8–9 (D. Mass. Sept. 30, 2022), *rev'd on other grounds,* 91 F.4th 511 (1st Cir. 2024).[2]

### 2. Redressability

Defendants also argue that Plaintiff's alleged injuries cannot be redressed to any measurable degree by a favorable decision in this matter.   (Doc. 19 at 15–16.) Defendants contend that, even if Plaintiff put them out of business, there would be no appreciable reduction in the number of firearms going to Mexico from the United States. (*Id.* at 15.)   Defendants further argue that no potential financial remuneration obtained from them could in any way redress the $238 billion that Plaintiff claims in damage resulting from cartel violence.   (*Id.* at 15–16.)   Plaintiff argues that redressability is established because a favorable decision in this matter would reduce the risk of harm to some extent.   (Doc. 26 at 19–20.)

"[R]edressability analyzes the connection between the alleged injury and requested judicial relief."   *Tucson v. City of Seattle*, 91 F.4th 1318, 1325 (9th Cir. 2024) (internal quotation marks omitted).   A plaintiff's burden in demonstrating redressability is "relatively modest."   *Id.* (internal quotation marks omitted).   The plaintiff must show only that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."   *Lujan*, 504 U.S. at 561 (internal quotation marks omitted). Redressability is present if the plaintiff shows that a risk of substantial harm "would be reduced to some extent" if the plaintiff obtained the relief requested.   *Massachusetts v. EPA*, 549 U.S. 497, 526 (2007).   The plaintiff "need not show that a favorable decision will relieve [its] *every* injury."   *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982) (emphasis in original).

Here, the Complaint alleges that cartel violence, fueled by firearm trafficking, has injured Plaintiff in the form of increased government spending on law enforcement,

---

[2] Defendants rely on *Camden County Board of Chosen Freeholders v. Beretta U.S.A. Corp.*, 123 F. Supp. 2d 245 (D.N.J. 2000) and *Ganim v. Smith & Wesson*, 780 A.2d 98, 100 (Conn. 2001) (Doc. 19 at 14), but those cases applied inapt standards.   The Court in *Camden County Board of Chosen Freeholders* applied the proximate cause framework applicable to antitrust cases.   *See* 123 F. Supp. 2d at 258-64.   *Ganim* applied Connecticut law and a Second Circuit case analyzing RICO standing.   *See* 780 A.2d at 119-30.

1  criminal justice and other social services aimed at alleviating the gun violence epidemic;

2  reduced property values and economic output; and the injury to and death of government

3  officials.  (Doc. 1 at 6, 108–111 ¶¶ 6, 247–248, 250–251, 253–256.)  Plaintiff alleges that

4  Defendants each participate in trafficking 55 to 822 firearms into Mexico annually.

5  (Doc. 1 at 49 ¶ 120.)  Although a favorable decision in this matter would not relieve all of

6  Plaintiff's alleged injuries, it would reduce the alleged harm to some extent.

7  Accordingly, the Court finds that Plaintiff has met its "relatively modest" burden of

8  demonstrating redressability.  *Tucson*, 91 F.4th at 1325.  Plaintiff has standing for

9  purposes of Article III.

10       **B.** ***Parens Patriae* Standing**

11       Defendants argue for the first time in their Reply that Plaintiff lacks standing to

12  assert claims on behalf of its citizens in *parens patriae* because the doctrine does not

13  extend to foreign nations.  (Doc. 29 at 24–25.)  Although normally the Court would not

14  consider arguments raised for the first time in a reply brief, the Court will do so here,

15  because Plaintiff was afforded the opportunity to file a Surreply addressing the

16  arguments.  (Doc. 37 at 10–12.)

17       *Parens patriae* "standing allows a sovereign to bring suit on behalf of its citizens

18  when the sovereign alleges injury to a sufficiently substantial segment of its population,

19  articulates an interest apart from the interests of particular private parties, and expresses a

20  quasi-sovereign interest."  *Table Bluff Rsrv. (Wiyot Tribe) v. Philip Morris, Inc.*, 256 F.3d

21  879, 885 (9th Cir. 2001) (internal quotation and alteration marks omitted).  Quasi-

22  sovereign interests include a sovereign's "interest in the health and well-being—both

23  physical and economic—of its residents in general," as well as a sovereign state or

24  territory's "interest in not being discriminatorily denied its rightful status within the

25  federal system."  *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 607 (1982).

26       The doctrine of *parens patriae* standing "developed as to States of the United

27  States."  *Estados Unidos Mexicanos v. DeCoster*, 229 F.3d 332, 335 (1st Cir. 2000).  The

28  First Circuit has held that *parens patriae* "standing should not be recognized in a foreign

1  nation unless there is a clear indication of intent to grant such standing expressed by the

2  Supreme Court or by the two coordinate branches of government."  *Id.* at 336; *accord*

3  *Serv. Emps. Int'l Union Health & Welfare Fund v. Philip Morris Inc.*, 249 F.3d 1068,

4  1073 (D.C. Cir. 2001).  The Ninth Circuit has not addressed the issue.

5          In *Alfred L. Snapp & Son*, the Supreme Court recognized *parens patriae* standing

6  in Puerto Rico based on its quasi-sovereign interest in protecting its residents from

7  discrimination.  458 U.S. at 608–09.  The Supreme Court found in the alternative that

8  Puerto Rico also had *parens patriae* standing to pursue its residents' interests in the full

9  benefits of applicable federal employment laws.  *Id.* at 609–10.  The Court made clear

10  this was an alternative holding and that Puerto Rico's quasi-sovereign interest "in

11  securing observance of the terms under which it participates in the federal system," was

12  "[d]istinct from" its interest in "the general well-being of its residents."  *Id.* at 607–08.

13  Because *Alfred L. Snapp & Son* makes clear that a quasi-sovereign interest in

14  participation in our federal system is distinct from a quasi-sovereign interest in the well-

15  being of a sovereign's citizens, and only one quasi-sovereign interest is necessary for

16  recognition of *parens patriae* standing, the Court declines to adopt the First Circuit's

17  holding that "interests in our system of federalism . . . are a critical element of parens

18  patriae standing."  *DeCoster*, 229 F.3d at 339.  The Court notes that the Ninth Circuit has

19  recognized the possibility of *parens patriae* standing in Native American tribes, without

20  any discussion of federalism concerns.  *See Table Bluff Reservation (Wiyot Tribe)*, 256

21  F.3d at 885.

22          Here, the Complaint adequately pleads the requirements of *parens patriae*

23  standing by alleging that firearm violence affects a substantial segment of the population

24  of Mexico, by asserting an interest of Plaintiff's separate from those of private parties,

25  and by identifying a quasi-sovereign interest in the safety and well-being of Plaintiff's

26  citizens.

27  . . . .

28  . . . .

- 9 -

**C. Protection of Lawful Commerce in Arms Act**

Defendants argue that Plaintiff's claims are barred at the outset by the PLCAA. (Doc. 19 at 16–29.)  The PLCAA prohibits "qualified civil actions" from being brought in any federal or state court.  15 U.S.C. § 7902(a).  A "qualified civil action" is an action "brought by any person against a manufacturer or seller of a qualified product" for harm "resulting from the criminal or unlawful misuse of a qualified product by the person or a third party."  15 U.S.C. § 7903(5)(A).  The term "person" includes "any governmental entity."  15 U.S.C. § 7903(3).  The term "seller" includes federally licensed firearm dealers.  15 U.S.C. § 7903(6)(B).  The term "qualified product" includes firearms and ammunition.  15 U.S.C. § 7903(4).  The PLCAA provides a threshold immunity from suit.  *See Ileto v. Glock, Inc.*, 565 F.3d 1126, 1142 (9th Cir. 2009).

Plaintiff, a governmental entity, qualifies as a "person" within the meaning of the PLCAA.  *See* 15 U.S.C. § 7903(3); *Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*, 91 F.4th 511, 525 (1st Cir. 2024) ("any governmental entity" includes foreign governments).  Defendants are alleged to be federally licensed firearm dealers (Doc. 1 at 52 ¶ 130) and are thus "sellers" as defined by the PLCAA.  *See* 15 U.S.C. § 7903(6)(B).  This action alleges harm resulting from the criminal or unlawful misuse of firearms by third parties.  *See id.* § 7903(5)(A).  Accordingly, this action is a qualified civil liability action within the meaning of the PLCAA.

Plaintiff argues, however, that the PLCAA is inapplicable because it does not apply extraterritorially.  (Doc. 26 at 30–36.)  Plaintiff further argues that, even if the PLCAA applies, Plaintiff's claims fall within the predicate and negligent entrustment exceptions.  (*Id.* at 20–30.)[3]

**1. Extraterritoriality**

Plaintiff argues that applying the PLCAA here constitutes an impermissible extraterritorial application because the alleged gun misuse and injury occurred in Mexico

---

[3] Although Plaintiff's Complaint asserts a claim for negligence per se, Plaintiff does not argue in its Response that the PLCAA's negligence per se exception applies.  (*See* Doc. 26 at 20–30.)

rather than the United States, and the focus of 15 U.S.C. § 7903(5)(A) is "indisputably gun misuse and the resulting injury." (Doc. 26 at 35.) Defendants argue that this case involves a permissible domestic application of the PLCAA because Plaintiff is seeking to hold Defendants liable in a United States court for conduct that occurred exclusively in Arizona, and the PLCAA's focus is "protecting U.S. companies from liability in U.S. courts based on their sales and manufacturing of firearms in the United States." (Doc. 29 at 12; *see also id.* at 12–15.)

"Absent clearly expressed congressional intent to the contrary, federal laws will be construed to have only domestic application." *RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325, 335 (2016). This presumption against extraterritoriality applies unless "Congress has affirmatively and unmistakably instructed that the statute" applies extraterritorially. *Id.* If a statute does not apply extraterritorially, then a court must determine whether the case at issue involves a domestic or extraterritorial application by analyzing whether "the conduct relevant to the statute's focus occurred in the United States" or abroad. *Id.* at 337.

The PLCAA states that one of its purposes is to prevent lawsuits from imposing "unreasonable burdens on interstate and foreign commerce." 15 U.S.C. § 7901(b)(4). However, such a general reference to foreign commerce is insufficient to overcome the presumption against extraterritoriality. *See Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 262–63 (2010). The Court finds—and Defendants do not dispute (*see* Doc. 29 at 12–15)—that the PLCAA applies only domestically.

Having so found, the Court must determine whether applying the PLCAA in this action constitutes a permissible domestic application by analyzing whether the alleged conduct and circumstances relevant to the PLCAA's focus occurred in the United States or abroad.[4] "The focus of a statute is the object of its solicitude, which can include the

---

[4] Plaintiff contends that the Court need consider only the first step of the *RJR Nabisco* test because the PLCAA "affirmatively indicates that it does not apply to gun misuse and injury abroad." (Doc. 26 at 35.) However, the Court must proceed to the second step anytime a statute is found not to apply extraterritorially. *See RJR Nabisco*, 579 U.S. at 337.

conduct it seeks to regulate, as well as the parties and interests it seeks to protect or vindicate." *WesternGeco LLC v. ION Geophysical Corp.*, 585 U.S. 407, 413–14 (2018) (internal quotation and alteration marks omitted).  If a defendant's alleged conduct relevant to a statute's focus occurred in the United States, "then the case involves a permissible domestic application even if other conduct occurred abroad." *RJR Nabisco*, 579 U.S. at 337.

The primary object of congressional concern in enacting the PLCAA was to protect U.S. firearm dealers and manufacturers from incurring liability for "harm caused by those who criminally or unlawfully misuse firearm products or ammunition products that function as designed and intended."  15 U.S.C. § 7901(a)(5); *see also id.* § 7901(b)(1).  The statute's "focus is regulating the types of claims that can be asserted against firearm manufacturers and sellers to protect the interests of the United States firearms industry and the rights of gun owners." *Estados Unidos Mexicanos*, 91 F.4th at 520 (internal quotation and alteration marks omitted).  Defendants' alleged conduct relevant to the PLCAA's focus—the sale of firearms—occurred exclusively within the United States.  Accordingly, "the presumption against extraterritoriality does not bar application of the PLCAA to this case." *Id.* at 521.

### 2.  Predicate Exception

The immunity from suit provided by the PLCAA is subject to several exceptions, including, in relevant part, the predicate exception and actions for negligent entrustment or negligence per se.  *See* 15 U.S.C. § 7903(5)(A).  The predicate exception includes any actions "in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought." *Id.* § 7903(5)(A)(iii).  The PLCAA provides specific examples of qualifying statutory violations, including:

> (I) any case in which the manufacturer or seller knowingly made any false entry in, or failed to make appropriate entry in, any record required to be kept under Federal or State law with respect to the qualified product, or aided, abetted, or conspired with any person in making any false or fictitious oral or written

statement with respect to any fact material to the lawfulness of the sale or other disposition of a qualified product; or

(II) any case in which the manufacturer or seller aided, abetted, or conspired with any other person to sell or otherwise dispose of a qualified product, knowing, or having reasonable cause to believe, that the actual buyer of the qualified product was prohibited from possessing or receiving a firearm or ammunition under subsection (g) or (n) of section 922 of Title 18.

*Id.* A statute must be firearm-specific to fall within the predicate exception. *See Ileto*, 565 F.3d at 1136–37.

"[T]he predicate exception encompasses common law claims in addition to statutory claims, as long as there is a predicate statutory violation that proximately causes the harm." *Estados Unidos Mexicanos*, 91 F.4th at 527. To satisfy the PLCAA's proximate cause requirement, a plaintiff must show "some direct relation between the injury asserted and the injurious conduct alleged." *Id.* at 534 (internal quotation marks omitted); *see also Bank of Am. Corp. v. City of Miami*, 581 U.S. 189, 201 (2017) (harm alleged must have "sufficiently close connection" to statutory violation).[5]

Plaintiff argues that the PLCAA's predicate exception allows all its tort claims to proceed because the Complaint alleges that Defendants violated numerous statutes applicable to the marketing and sale of firearms and the violations caused harm to Plaintiff. (Doc. 26 at 21–28.) Defendants contend that the Complaint does not contain sufficient factual allegations to plausibly allege violations of any firearm-specific statutes and that Plaintiff cannot show any such violations proximately caused its alleged injuries. (Doc. 19 at 26–29; Doc. 29 at 16–19.)

Defendants' arguments disregard the well-pleaded factual allegations of the Complaint. The Complaint alleges that Defendants knowingly violated—or aided, abetted, and/or conspired in the violation of—firearm-specific laws of the United States, including unlicensed firearm dealing and exportation, straw sales, firearm trafficking, and false entries on ATF Form 4473. (*See* Doc. 1 at 19, 53–57, 59–61, 69, 71–79 ¶¶ 41, 132–

---

[5] Plaintiff argues that the law of Mexico controls the proximate-cause analysis for purposes of the predicate exception. (Doc. 26 at 35.) The Court disagrees and finds that traditional understandings of proximate cause derived from federal case law are applicable in analyzing the predicate exception of the PLCAA. *See Estados Unidos Mexicanos*, 91 F.4th at 534 n.8.

146, 154–161, 183, 191, 197–198, 201–202 (citing 18 U.S.C. §§ 2–4, 922(a)(1)(A), 922(m), 923(a), 924(a)(3), 924(k)(2), 932(b), 933(a)(1), 933(a)(3); 50 U.S.C. § 4819).)[6] The Complaint provides illustrative examples of unlawful firearm sales.  (*Id.* at 22–48 ¶¶ 54-117.)  Although none of the illustrative examples occurred after the June 25, 2022 effective date of the federal prohibition on straw sales and firearm trafficking, the Complaint specifies that the examples are merely illustrative and not exhaustive, and that each Defendant has continued its policy of making straw sales from and after June 25, 2022.  (*Id.* at 48, 78 ¶¶ 117, 197.)

Furthermore, the Complaint contains factual allegations that correlate with the specific examples provided by 15 U.S.C. § 7903(5)(A)(iii)(I)–(II).   The Complaint alleges that Defendants falsely certified and aided and abetted purchasers making false statements in ATF Form 4473.  *See* 15 U.S.C. § 7903(5)(a)(iii)(I).  The Complaint also alleges that Defendants aided, abetted, or conspired with straw purchasers and firearm traffickers to sell firearms while knowing or having reasonable cause to believe that the actual buyer was a prohibited possessor.  *See id.* § 7903(5)(a)(iii)(II).  In addition, the Complaint provides several illustrative examples of direct sales to prohibited possessors. (*See* Doc. 1 at 30, 35, 45 ¶¶ 58, 76, 108.)

The Complaint also plausibly alleges a direct relationship between Defendants' conduct and Plaintiff's injuries.  Specifically, the Complaint alleges that Defendants know military-style assault weapons are preferred by violent cartels in Mexico and routinely trafficked into Mexico but that, despite this knowledge, Defendants profit by continuing to engage in straw sales, multiple sales, and repeat sales to buyers who are in essence agents of the cartels, with such conduct foreseeably resulting in harm from gun violence in Mexico.  (*See id.* at 4, 22, 48–49, 51, 62 ¶¶ 1, 53, 117, 121, 125, 167.)

Accordingly, the Complaint adequately alleges that Defendants' knowing violation of firearm-specific statutes proximately caused Plaintiff's injuries for purposes

---

[6] The Complaint also alleges violations of firearm-specific laws of Mexico, but the PLCAA's predicate exception is limited to United States federal or state statutory violations.  *See* 15 U.S.C. § 7903(5)(A).

1    of the predicate exception to the PLCAA.  *See Estados Unidos Mexicanos*, 91 F.4th at

2    529–38.  Plaintiff's claims may proceed pursuant to the predicate exception, and the

3    Court need not analyze the PCLAA's other exceptions, such as the negligence per se and

4    negligent entrustment exceptions.

5        **D. Consumer Fraud Act**

6        Plaintiff alleges a violation of Arizona's CFA in Count Seven of the Complaint.

7    (Doc. 1 at 121–123 ¶¶ 303–09.)  Defendants argue that Plaintiff's CFA claim fails

8    because Plaintiff is an improper party to bring a claim under the CFA, there is no

9    allegation that Plaintiff relied on any alleged misrepresentations, the advertisements at

10   issue do not make false or misleading statements, and permitting Plaintiff's CFA claim to

11   proceed would violate Defendants' First Amendment rights.   (Doc. 19 at 32–34.)

12   Plaintiff argues that the CFA requires only a misrepresentation made in connection with

13   the sale of merchandise, and that the statute does not require any direct misrepresentation

14   made by the defendant to the plaintiff.  (Doc. 26 at 44.)  Plaintiff further argues that the

15   CFA does not prohibit claims by governmental entities, and that Defendants'

16   advertisement of firearms into the civilian market using military imagery and language is

17   actionable under the CFA.  (*Id.* at 44–45.)  Finally, Plaintiff argues that Defendants have

18   no First Amendment right to falsely advertise their products.  (*Id.* at 45.)

19       The CFA provides:

20       The act, use or employment by any person of any deception, deceptive or
21       unfair act or practice, fraud, false pretense, false promise,
         misrepresentation, or concealment, suppression or omission of any material
22       fact with intent that others rely on such concealment, suppression or
         omission, in connection with the sale or advertisement of any merchandise
23       whether or not any person has in fact been misled, deceived or damaged
         thereby, is declared to be an unlawful practice.

24   A.R.S. § 44-1522(A).

25       The purpose of the CFA "is to provide injured consumers with a remedy to

26   counteract the disproportionate bargaining power often present in consumer

27   transactions."  *Waste Mfg. & Leasing Corp. v. Hambicki*, 900 P.2d 1220, 1224 (Ariz.

28   App. 1995).  To that end, the CFA implicitly creates a private right of action in favor of

- 15 -

consumers. *Sellinger v. Freeway Mobile Home Sales, Inc.*, 521 P.2d 1119, 1122 (Ariz. 1974).

To succeed on a CFA claim, "a plaintiff must show a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and consequent and proximate injury resulting from the promise." *Kuehn v. Stanley*, 91 P.3d 346, 351 (Ariz. App. 2004). "An injury occurs when a consumer relies, even unreasonably" on the "false or misrepresented information." *Id.* "[A] direct merchant-consumer transaction" is not required. *Watts v. Medicis Pharm. Corp.*, 365 P.3d 944, 953 (Ariz. 2016). However, a misrepresentation made to the plaintiff, and reliance upon that misrepresentation, is necessary. *State Farm Fire & Cas. Co. v. Amazon.com Inc.*, No. CV-17-01994-PHX-JAT, 2018 WL 1536390, at *5 (D. Ariz. Mar. 29, 2018) (misrepresentation to plaintiff required); *Maricopa Cnty. v. Office Depot, Inc.*, No. 2:14-cv-1372-HRH, 2014 WL 6611562, at *7 (D. Ariz. Nov. 21, 2014) (same); *Ventures Edge Legal PLLC v. GoDaddy.com LLC*, No. CV-15-02291-PHX-GMS, 2018 WL 619723, at *3 (D. Ariz. Jan. 30, 2018) (plaintiff must show reliance on misleading advertisement to its detriment).

Here, Plaintiff's Complaint identifies advertisements for products that may be lawfully sold under federal and state law. Truthful advertisements for lawful products are protected by the First Amendment. *See Thompson v. Western States Med. Ctr.*, 535 U.S. 357, 377 (2002); *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 571 (2001); *In re R.M.J.*, 455 U.S. 191, 203 (1982). Though deceptive advertisements are not protected, *In re R.M.J.*, 455 U.S. at 203, the Complaint fails to identify any misrepresentations in the advertisements at issue. The Complaint alleges that Defendants advertise firearms as military-style weapons, but it also alleges that the firearms are, in fact, military-style weapons. (*See, e.g.*, Doc. 1 at 21–22, 83 ¶¶ 49-53, 217.)

Plaintiff relies on *Soto v. Bushmaster Firearms International, LLC*, 202 A.3d 262 (Conn. 2019), to support its position that a wrongful advertising claim is permitted when advertisements promote the use of civilian assault rifles for offensive, military-style

attack missions.  (Doc. 26 at 45.)  In *Soto*, the Connecticut Supreme Court held that a claim premised on a theory that advertisements unethically promoted illegal conduct is actionable under the Connecticut Unfair Trade Practices Act ("CUTPA").  202 A.3d at 291.  Plaintiff has not cited any authority showing that a similar claim is actionable under Arizona's CFA.  (See Doc. 26 at 43–45.)  But even assuming that Arizona's CFA prohibits the use of military imagery to advertise civilian assault rifles, the Complaint nevertheless fails to state a claim under the CFA.  Unlike the statute at issue in *Soto*, Arizona's CFA requires reliance.  *Compare Ventures Edge Legal PLLC*, at *3 (reliance required under Arizona's CFA), *with Hinchliffe v. Am. Motors Corp.*, 440 A.2d 810, 815–16 (Conn. 1981) (reliance not a required element under CUTPA).  Plaintiff does not allege that it or its citizens relied on any of Defendants' allegedly misleading advertisements to their detriment.  Accordingly, the Court will grant Defendants' Motion to Dismiss with respect Plaintiff's CFA claim.[7]

**E. RICO**

In Counts Nine through Thirteen of the Complaint, Plaintiff alleges RICO violations.  (Doc. 1 at 124–137 ¶¶ 314–343.)  Defendants argue that Plaintiff lacks standing to assert RICO claims; Plaintiff cannot establish proximate causation for the alleged predicate offenses; the Complaint fails to allege a pattern of racketeering activity or a RICO enterprise; RICO does not allow recovery for foreign injuries; and equitable relief is unavailable in private civil RICO actions.  (Doc. 19 at 34–48.)

In relevant part, RICO prohibits "any person employed by or associated with any enterprise engaged in" interstate or foreign commerce from conducting or participating "directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."  18 U.S.C. § 1962(c).  RICO's civil remedies provision, 18 U.S.C. § 1964, has several parts.  Section 1964(a) provides that district courts "have jurisdiction

_____

[7] Defendants also argue (1) that the judicially created private cause of action under the CFA should not extend to foreign governments, (2) that Mexico is not a "person" who may sue under the private cause of action recognized in *Sellinger*, and (3) that only the Arizona Attorney General may enforce the CFA on behalf of the citizenry.  (Doc. 19 at 33; Doc. 29 at 24.)  Because the CFA claim fails on other grounds, the Court does not reach these issues.

to prevent and restrain violations" of § 1962 "by issuing appropriate orders, including . . . ordering any person to divest himself of any interest, direct or indirect, in any enterprise" and "imposing reasonable restrictions on the future activities or investments of any person." Section 1964(b) permits the Attorney General to institute proceedings. Section 1964(c) provides that "[a]ny person injured in his business or property by reason" of a violation of 18 U.S.C. § 1962 "may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c).

In a private civil action, a plaintiff has RICO standing only if the plaintiff satisfies § 1964(c)'s injury requirement. *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975 (9th Cir. 2008). To meet this requirement, the plaintiff must allege "harm to a specific business or property interest." *Id.* (internal quotation marks omitted). "[A] governmental entity cannot rely on expenditures alone to establish civil RICO standing." *Id.* at 976. Furthermore, because § 1964(c) does not apply extraterritorially, a private RICO plaintiff "must allege and prove a *domestic* injury to its business or property." *RJR Nabisco*, 579 U.S. at 346 (emphasis in original).

Section 1964(c) "does not expressly limit private plaintiffs" to monetary relief, nor does Section 1964(a) "expressly limit the availability of the illustrative equitable remedies to the government." *Religious Tech. Ctr. v. Wollersheim*, 796 F.2d 1076, 1082–83 (9th Cir. 1986). However, the Ninth Circuit has held, based on the language and legislative history of § 1964, that private RICO plaintiffs are limited to recovering damages, costs, and fees, and cannot obtain equitable relief. *Religious Tech. Ctr.*, 796 F.2d at 1083–89. Furthermore, the Supreme Court has indicated that only the Attorney General may bring suit under § 1964(a), that private civil causes of action may be brought only under § 1964(c), and that, if equitable relief can be sought in a private civil cause of action, any claim for such relief "based on foreign injuries" would necessarily be foreclosed by § 1964(c)'s requirement of a domestic injury to business or property. *RJR Nabisco*, 579 U.S. at 331, 354 n.13.

- 18 -

1   Plaintiff does not argue in response to Defendants' Motion to Dismiss that it can
2   satisfy § 1964(c)'s requirement of showing a domestic injury to business or property.
3   (*See* Doc. 26 at 49–60.)  Instead, Plaintiff argues that it is seeking equitable relief under §
4   1964(a) rather than damages under § 1964(c), and that there is no requirement under §
5   1964(a) to show injury to business or property.  (Doc. 26 at 49.)  But Plaintiff cites no
6   controlling authority showing that a private plaintiff—as opposed to the Attorney
7   General—can bring suit under § 1964(a), and Plaintiff's assertion is contradicted by the
8   Supreme Court's guidance in *RJR Nabisco*.[8]  *See* 579 U.S. at 331 (civil proceedings may
9   be brought by the Attorney General under § 1964(a), and § 1964(c) separately creates a
10  cause of action for private parties); *see also Hengle v. Treppa*, 19 F.4th 324, 353–54
11  (same).

12  Plaintiff also argues that *Religious Technology Center* held only that a private
13  RICO plaintiff cannot obtain injunctive relief, leaving open the question whether a
14  private RICO plaintiff can obtain non-injunctive equitable relief.  (Doc. 26 at 58.)  But
15  the holding of *Religious Technology Center* is not so limited: it applies to all equitable
16  relief.  *See* 796 F.2d at 1088 (finding that RICO's "legislative history and statutory
17  language suggest overwhelmingly that no private equitable action should be implied
18  under civil RICO.").  Furthermore, even if equitable relief were available in a private
19  civil RICO action, Section 1964(c)'s requirement of a domestic injury to business or
20  property would apply to claims seeking such relief, *RJR Nabisco*, 579 U.S. at 354 n.13,
21  and Plaintiff has not alleged—and does not argue that it can allege—any domestic injury
22  to business or property for purposes of RICO standing.  Accordingly, the Court finds that
23  Plaintiff's RICO claims must be dismissed.[9]

24  . . . .

25  . . . .

26

27  [8] *United States v. Philip Morris USA Inc.*, 566 F.3d 1095 (D.C. Cir. 2009), relied upon by Plaintiff (Doc. 26 at 57), provides no support for this proposition, as the United States brought the RICO claims in that matter.
28  [9] Because dismissal is required on these grounds, the Court does not address Defendants' remaining arguments challenging the viability of Plaintiff's RICO claims.

### F. Tort Claims

In Counts One through Six of the Complaint, Plaintiff asserts tort claims for negligence, public nuisance, negligent entrustment, negligence per se, gross negligence, and unjust enrichment.  (Doc. 1 at 112–121 ¶¶ 261–302.)  The parties dispute whether the substantive laws of Arizona or Mexico apply to these claims.  (Doc. 26 at 36–38; Doc. 29 at 7–10; Doc. 37 at 2–6.)  The parties further dispute whether Plaintiff has adequately alleged proximate causation for purposes of these claims.  (Doc. 19 at 29–31; Doc. 26 at 38–43.)  Finally, the parties dispute whether Plaintiff has alleged sufficient facts to satisfy the elements of each of these claims.  (Doc. 19 at 19–23, 48–52; Doc. 26 at 28–30, 45–48, 60–61; Doc. 29 at 10–12, 20–21.)

#### 1. Choice of Law

The parties agree that Arizona's conflict-of-law principles determine which substantive laws apply to Plaintiff's tort claims, but they dispute whether those principles favor the application of the laws of Mexico or Arizona.  (*See* Doc. 26 at 36–38; Doc. 29 at 7–10.)  Plaintiff argues that the substantive laws of Mexico apply because Plaintiff's injuries occurred in Mexico, Defendants engaged in transnational conduct by participating in trafficking firearms to Mexico; Defendants foresaw that the firearms they sold would cause injury in Mexico; and Plaintiff and its citizens are domiciled in Mexico.  (Doc. 26 at 36–38; Doc. 37 at 2–5.)  Defendants argue that the substantive laws of Arizona apply because Plaintiff's claims are based on Defendants' sale of firearms within Arizona in accordance with federal and state law.  (Doc. 29 at 8–9.)  Defendants contend that diminished weight should be given to the "place of injury" factor because intervening third-party acts separate Defendants' conduct from Plaintiff's alleged injuries in Mexico.  (*Id.* at 9–10.)  Defendants further argue that principles of international comity require the application of Arizona law because subjecting firearm sales within the United States to Mexican tort law would violate the Second Amendment.  (*Id.* at 10.)  Plaintiff contends in reply that neither international comity nor public policy supports the application of Arizona law because there is no Second Amendment right to, nor public

policy protecting, the trafficking of firearms into Mexico.  (Doc. 37 at 5–6.)

A federal court sitting in diversity applies the choice-of-law rules of the forum state.  *Abogados v. AT&T, Inc.*, 223 F.3d 932, 934 (9th Cir. 2000).  Under Arizona's choice-of-law rules, courts apply the substantive law of the state "having the most significant relationship to both the occurrence and the parties," considering the "place where the injury occurred," the "place where the conduct causing the injury occurred," the domicile of the parties, and the place where the parties' relationship, if any, is centered.  *Bates v. Superior Ct., Maricopa Cnty.*, 749 P.2d 1367, 1370 (Ariz. 1988) (citing Restatement (2d) of Conflict of Laws § 145 (1971)).  These contacts must be evaluated "'according to their relative importance with respect to the particular issue.'"  *Id.* (quoting Restatement § 145(2)).  The place of injury usually "plays an important role" in the selection of the applicable law governing tort claims, but its importance may be diminished in situations in which "it bears little relation to the occurrence and the parties with respect to the particular issue," such as when "the defendant had little, or no, reason to foresee that his act would result in injury in the particular state."  Restatement § 145, cmt. e.

Other factors relevant to determining the choice of applicable law include the needs of the interstate and international systems; the relevant policies of the forum state and other interested states; the protection of justified expectations; the policies underlying the applicable field of law; certainty, predictability, and uniformity of result; and ease of determining and applying the law.  *See* Restatement § 6(2).  "The 'justifiable expectations' factor applies where parties consciously mold their conduct to conform to the law of a particular forum."  *Garcia v. Gen. Motors Corp.*, 990 P.2d 1069, 1077 (Ariz. App. 1999).

Here, Plaintiff and its citizens are domiciled in Mexico, but all Defendants are domiciled in Arizona.  Defendants' alleged conduct—the sale of firearms—occurred exclusively in Arizona.  To the extent Plaintiff and Defendants have any relationship, it appears to be centered in Arizona, where Defendants' allegedly unlawful firearm sales

occurred.  Defendants mold their relevant conduct to conform to the laws of Arizona and of the United States, rather than the laws of Mexico.  Accordingly, Defendants have a justifiable expectation in the application of Arizona law to the tort claims at issue. Plaintiff's injuries occurred in Mexico but, although the Court finds the injuries foreseeable, the weight afforded to the place-of-injury factor is nevertheless diminished at least to some degree because the injuries resulted from intervening acts by third parties. *See Fanning v. Dianon Sys., Inc*., No. 05-cv-01899-LTB-CBS, 2006 WL 2385210, at *3 (D. Colo. Aug. 16, 2006) (diminished weight to place of injury).  Furthermore, applying the tort law of Mexico to the claims at issue in this case could raise complex concerns involving international relations and the intersection between the Second Amendment and foreign laws.

Given all the factors, the Court finds that Arizona overall has the most significant relationship to the occurrence and the parties.  Accordingly, the Court will apply Arizona law to Plaintiff's tort claims and will disregard arguments made in support of the claims that are premised on the tort law of Mexico.

### 2.  Proximate Causation

A proximate cause of an injury is one "which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces an injury, and without which the injury would not have occurred."  *Stearney v. United States*, 392 F. Supp. 3d 1037, 1053 (D. Ariz. 2019) (internal quotation marks omitted).   The question of proximate causation often hinges on foreseeability of the harm.  *Id.*  An intervening cause—e.g., "an independent cause that occurs between a defendant's negligent conduct and the final harm and is necessary in bringing about that harm"—will be considered a superseding cause that "relieves the original negligent actor from liability" only if it "was unforeseeable by a reasonable person in the position of the original actor and when, looking backward, after the event, the intervening act appears extraordinary."  *Torres v. Jai Dining Servs. (Phoenix) Inc.*, 497 P.3d 481, 484 (Ariz. 2021) (internal quotation marks and emphasis omitted).  The issue of proximate causation is ordinarily a question

1   for the finder of fact.  *Robertson v. Sixpence Inns of Am., Inc.*, 789 P.2d 1040, 1047 (Ariz.

2   1990).

3   Defendants argue that Plaintiff cannot establish proximate causation as a matter of

4   law because the alleged injuries are too remote from Defendants' alleged unlawful

5   conduct, intervening criminal acts break the chain of causation, and Plaintiff's claims of

6   injury are derivative.  (Doc. 19 at 29–31.)  Plaintiff argues that the Complaint adequately

7   pleads proximate causation because it alleges that Plaintiff's injuries were a foreseeable

8   result of Defendants' alleged sales of firearms to straw purchasers and gun traffickers.

9   (Doc. 26 at 38–42.)   Plaintiff notes that Defendants' argument concerning derivative

10  injury has no applicability to Plaintiff's claims asserted on behalf of its citizens in *parens*

11  *patriae*.  (*Id.* at 42.)  Plaintiff further argues that it has suffered direct injuries in the form

12  of increased governmental spending, death and injury to members of its police and

13  military forces, and destruction of government property.  (*Id.* at 42–43.)

14  The Complaint plausibly alleges that the criminal acts of cartels in Mexico are a

15  foreseeable consequence of Defendants' alleged misconduct of selling firearms to straw

16  purchasers and firearm traffickers.   Accordingly, the Court finds that the Complaint

17  adequately pleads proximate causation.  Furthermore, Plaintiff's alleged injuries are not

18  wholly derivative of harm to third parties.  As an initial matter, Plaintiff asserts claims on

19  behalf of its citizens in *parens patriae*, but even disregarding the claims asserted in

20  *parens patriae*, Plaintiff alleges injuries that it has suffered directly, including increased

21  costs of law enforcement and other expenditures.  (*See* Doc. 1 at 108–09 ¶¶ 247-248.)

22  These alleged injuries are not "wholly derivative of harm to a third party."  *Laborers*

23  *Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 236 (2d Cir. 1999);

24  *see also Estados Unidos Mexicanos*, 91 F.4th at 536–37.

25  **3.  Duty of Care—Negligence, Gross Negligence, and Negligence Per Se**

26  "'To establish a defendant's liability for a negligence claim, a plaintiff must prove:

27  (1) a duty requiring the defendant to conform to a certain standard of care; (2) breach of

28  that standard; (3) a causal connection between the breach and the resulting injury; and (4)

- 23 -

actual damages.'" *CVS Pharmacy, Inc. v. Bostwick ex rel. Cnty. of Pima*, 494 P.3d 572, 578 (Ariz. 2021) (quoting *Quiroz v. ALCOA Inc.*, 416 P.3d 824, 827–28 (Ariz. 2018)).  A gross negligence claim requires an additional showing of "gross, willful, or wanton conduct."  *Noriega v. Town of Miami*, 407 P.3d 92, 98 (Ariz. App. 2017) (internal quotation and alteration marks omitted).  The existence of a duty of care "is a matter of law for the court to decide," while the issues of breach and causation "are factual issues usually decided by the jury."  *Gipson v. Kasey*, 150 P.3d 228, 230 (Ariz. 2007).

"Duty is defined as an obligation, recognized by law, which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm."  *Gipson*, 150 P.3d at 230 (internal quotation marks omitted).  Under Arizona law, "foreseeability is not a factor to be considered by courts when making determinations of duty."  *Id.* at 231.  A duty of care is established either by "common law special relationships or relationships created by public policy."  *CVS Pharmacy*, 494 P.3d at 578.  "[T]he primary sources for identifying public policy are state and federal statutes," but in "the absence of such legislative guidance, duty may be based on . . . case law or Restatement sections consistent with Arizona law."  *Quiroz*, 416 P.3d at 827.  Criminal statutes establish a tort duty if they are "designed to protect the class of persons, in which the plaintiff is included, against the risk of the type of harm which has in fact occurred as a result of its violation."  *Gipson*, 150 P.3d at 233 (internal quotation marks omitted); *see also Alaface v. Nat'l Inv. Co.*, 892 P.2d 1375, 1385 (Ariz. App. 1994) (a statute may establish the applicable standard of care if its purpose is: (1) "to protect a class of persons which includes the one whose interest is invaded," (2) "to protect the particular interest which is invaded," (3) "to protect that interest against the kind of harm which has resulted," and (4) "to protect that interest against the particular hazard from which the harm results").

"Under Arizona law, negligence per se is not a cause of action separate from common law negligence," but, instead, "is a doctrine under which a party can establish the duty and breach elements of a negligence claim based on a violation of a statute that

supplies the relevant duty of care." *Manion v. Ameri-Can Freight Sys., Inc.*, No. CV-17-03262-PHX-DWL, 2019 WL 8325752, at *3 (D. Ariz. Oct. 11, 2019) (internal quotation and alteration marks omitted); *see Brannigan v. Rayback*, 667 P.2d 213 (Ariz. 1983) (violating a statute "intended as a safety regulation" constitutes negligence and negligence per se).

Defendants argue that they did not owe a duty of care to Plaintiff because "they are alleged to have done nothing more than sell legal firearms into the stream of U.S. domestic commerce." (Doc. 19 at 51.) Defendants further argue that Plaintiff's status as a foreign sovereign, rather than a victim of gun violence in the United States, highlights the lack of duty. (*Id.*) Defendants aver that there is no duty to control the conduct of a third party absent a special relationship between the defendant and the third person or plaintiff. (*Id.* at 50.) Finally, Defendants assert that policy considerations—including the Second Amendment's protection of the right to keep and bear arms and Arizona law prohibiting political subdivisions from commencing civil actions against firearm sellers for damages arising from the unlawful misuse of firearms by third parties—counsel against finding a duty of care. (*Id.* at 51–52.) With respect to Plaintiff's negligence per se theory of liability, Defendants argue that the Complaint fails to allege facts plausibly showing that Defendants violated any particular statute and that Plaintiff, as a foreign nation, does not fall within the class of persons that any of the federal firearm statutes cited in the Complaint were designed to protect. (Doc. 19 at 19–20.)

Plaintiff argues that the public policy reflected in statutes prohibiting unlawful firearm exports, straw sales, and firearm trafficking supports recognizing a duty on firearm dealers not to engage in or abet that conduct, and the Complaint plausibly alleges violations of such statutes. (Doc. 26 at 22, 60–61.) Plaintiff further argues that Defendants cannot negate their duty of care by invoking the Second Amendment because Defendants have no Second Amendment right to supply firearms to drug cartels. (*Id.* at 61.)

As an initial matter, the Court rejects Defendants' assertion that no duty exists

absent a special relationship between Defendants and Plaintiff or the cartel members who use firearms for violent purposes in Mexico. While special relationships may give rise to a duty of care, they are not required when public policy supports the existence of a legal obligation. *Gipson*, 150 P.3d at 232–33. To support their position that a special relationship is required, Defendants rely on *Bloxham v. Glock Inc.* (Doc. 19 at 50), a case in which the Arizona Court of Appeals found that, due to a lack of a special relationship, a firearm manufacturer and the operators of a gun show owed no duty to prevent a third party who purchased a firearm at the gun show from harming others. *See* 53 P.3d 196, 199–02 (Ariz. App. 2002). In *Bloxham*, however, there was no allegation that the defendants had violated any laws, and the court therefore distinguished *Crown v. Raymond*, 764 P.2d 1146 (Ariz. App. 1988), in which the Arizona Court of Appeals held that a defendant's violation of a statute prohibiting the furnishing of a firearm to a minor without parental consent constituted negligence per se. *Bloxham*, 53 P.3d at 202; *see also Crown*, 764 P.2d at 1148–49. Here, Plaintiff alleges that Defendants' conduct violated federal statutes that "are designed to prevent crime by keeping guns out of the hands of certain persons who have a heightened risk of misusing guns or are otherwise not entitled to possess them. (Doc. 1 at 53 ¶ 134 (citing 18 U.S.C. § 921 *et seq.*).) Because Plaintiff alleges that Defendants violated federal statutes intended to prevent firearm misuse, this action is similar to *Crown* and distinguishable from *Bloxham*. Although there does not appear to be Arizona Supreme Court authority directly on point, *Crown* supports a finding that statutes regulating the sale of firearms may establish a tort duty of care.[10]

In addition to alleging the violation of statutes designed to prevent firearm misuse, the Complaint plausibly alleges that Plaintiff and its citizens, as victims of gun violence,

---

[10] "When interpreting state law, federal courts are bound by decisions of the state's highest court" and, in the absence of any such decisions, "must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Strother v. S. Cal. Permanente Med. Grp.*, 79 F.3d 859, 865 (9th Cir. 1996) (internal quotation marks omitted); *see also Medical Lab. Mgmt. Consultants v. American Broad. Cos.*, 306 F.3d 806, 812 (9th Cir. 2002) ("When a decision turns on applicable state law and the state's highest court has not adjudicated the issue, a federal court must make a reasonable determination of the result the highest state court would reach if it were deciding the case." (internal quotation marks omitted)).

are within the class of persons the statutes at issue are designed to protect.  Accordingly, the Complaint adequately alleges a duty of care arising from public policy identified from federal statutes.

The Court is unconvinced by Defendants' arguments that the Second Amendment and A.R.S. § 12-714(A) negate recognizing a duty of care here.  The Second Amendment does not protect unlawful firearm sales.  *See District of Columbia v. Heller*, 554 U.S. 570, 626–27 (2008) (Second Amendment does not prohibit "laws imposing conditions and qualifications on the commercial sale of arms" or laws forbidding felons from possessing firearms).  And A.R.S. § 12-714(A) is intended to protect from liability businesses engaged in the lawful, rather than unlawful, sale of firearms.  *See* A.R.S. § 12-714(B)(3).[11]

Because the Complaint adequately alleges a duty of care under a negligence per se theory, and Defendants raise no other grounds for dismissal of Plaintiff's negligence, gross negligence, and negligence per se claims, the Court will deny Defendants' Motion to Dismiss as to those claims.

### 4.  Public Nuisance

"[A] public nuisance is broadly defined as an unreasonable interference with a right common to the general public."  *Mutschler v. City of Phoenix*, 129 P.3d 71, 77 (Ariz. App. 2006) (internal quotation marks omitted).  The interference "must affect a considerable number of people or an entire community or neighborhood."  *Spur Indus., Inc. v. Del E. Webb Dev. Co.*, 494 P.2d 700 (Ariz. 1972).  "Private parties may bring public nuisance claims in Arizona if the alleged nuisance caused the plaintiff special injury, meaning damage that is different in kind or quality from that suffered by the public in common."  *Hopi Tribe v. Arizona Snowbowl Resort Ltd. P'ship*, 430 P.3d 362, 363–64 (Ariz. 2018) (internal quotation and alteration marks omitted).

Defendants argue that Plaintiff lacks standing to assert a claim for public nuisance because it is not a member of the general public; that Mexico has not alleged any special

---

[11] Furthermore, A.R.S. § 12-714(A) is not directly applicable, as it applies only to civil actions brought in Arizona courts by political subdivisions of the State.

injury; and that the sale of lawful products cannot be a basis for a public nuisance claim. (Doc. 19 at 49–50.)  Plaintiff argues that recklessly supplying a dangerous product may constitute a public nuisance even if the product itself is lawful, and that the special injury requirement is not applicable because it is an element only of a private plaintiff's *prima facie* public nuisance claim rather than a claim asserted by a government.  (Doc. 26 at 47–48.)

"[A] foreign nation is generally entitled to prosecute any civil claim in the courts of the United States upon the same basis as a domestic corporation or individual might do."  *Pfizer, Inc. v. Gov't of India*, 434 U.S. 308, 318–19 (1978).  Plaintiff provides no authority for its position that, when suing in the United States, it should be treated as a governmental entity rather than a private party.  The Court finds that Plaintiff is entitled to prosecute a public nuisance claim upon the same basis as a private plaintiff and, therefore, that Plaintiff must allege a special injury in order to state a *prima facie* claim. Plaintiff's Complaint alleges a variety of injuries resulting from Defendants' alleged public nuisance (Doc. 1 at 114–15 ¶¶ 267–273), but it fails to allege how these injuries differ in kind or quality from those suffered by the public in common, and Plaintiff does not argue in response to Defendants' Motion to Dismiss that it can satisfy the special injury requirement.  Accordingly, the Court will grant Defendants' Motion to Dismiss to the extent it seeks dismissal of Plaintiff's public nuisance claim.

### 5.  Negligent Entrustment

To state a claim for negligent entrustment under Arizona law, a plaintiff must allege that the defendant supplied "'directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely . . . to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use.'"  *Verduzco v. Am. Valet*, 377 P.3d 1016, 1019 (Ariz. App. 2016) (quoting Restatement (2d) of Torts § 390 (1965)). Section 390 of the Restatement (Second) of Torts is a special application of the rule set forth in Section 308, which provides: "It is negligence to permit a third person to use a

thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others." Restatement (2d) of Torts § 308; *see also* Restatement § 390 cmt. b.  The "right to control the chattel" is an "essential element of a negligent entrustment claim."  *Tissicino v. Peterson*, 121 P.3d 1286, 1289 (Ariz. App. 2005) (reversing summary judgment in favor of mother alleged to have entrusted gun to son who used it to shoot another due to genuine issue of material fact regarding whether mother had right to control gun).

Defendants argue that the Complaint fails to state a claim for negligent entrustment because Defendants did not own or control the firearms at issue when they were criminally misused in Mexico and there is no relationship between Defendants and the criminals using the firearms in Mexico.  (Doc. 19 at 21–22.)  Defendants further argue that application of Arizona's negligent entrustment doctrine has not been extended to sellers of goods, and that extending the doctrine to sellers would be "akin to imposing absolute liability on a product seller for any misuse by a buyer at any time in the future." (*Id.* at 22–23.)

Plaintiff argues that the Complaint states a claim for negligent entrustment by alleging that Defendants sold firearms despite indicators of straw purchasing and trafficking.  (Doc. 26 at 28–29.)  Plaintiff further argues that there is wide support for the proposition that sellers may be considered suppliers of chattels for purposes of the negligent entrustment rule.  (*Id.* at 29–30.)

Comment a to Section 390 of the Restatement (Second) of Torts states that the negligent entrustment rule "applies to sellers."  Arizona has adopted Section 390 of the Restatement.  *See Estate of Hernandez v. Arizona Bd. of Regents*, 866 P.2d 1330, 1340 (Ariz. 1994) (noting that "Arizona's courts have repeatedly followed" Restatement § 390).  Furthermore, the Arizona Supreme Court has applied Restatement § 390 in finding that a tavern owner has a duty of reasonable care in selling liquor to those who, by reason of immaturity or over-indulgence, may injure themselves or others.  *See Brannigan*, 667

P.2d at 216.  The Arizona Supreme Court's decision in *Brannigan*, and Arizona's adoption of Restatement § 390, support the proposition that the doctrine of negligent entrustment under Arizona law extends to product sellers.  Defendants rely on the Texas Supreme Court's decision in *In re Academy, Ltd.*, but that case is inapposite because Texas—unlike Arizona—has not adopted Section 390 of the Restatement.  *See* 625 S.W.3d 19, 31 (Tex. 2021).

Viewing the factual allegations of the Complaint in the light most favorable to Plaintiff, Plaintiff alleges that Defendants supplied firearms to third persons who were essentially cartel agents and who Defendants had reason to know would use the firearms in a manner involving unreasonable risk of physical harm to themselves and others.  At the time of the sales, Defendants had control of the firearms and could have prevented them from being used for violent purposes by cartels in Mexico by refusing to sell them when red flags indicated the seller was a straw purchaser or firearm trafficker.  The Court finds the Complaint adequately states a claim for negligent entrustment under Arizona law.

### 6.  Unjust Enrichment

An unjust enrichment claim under Arizona law requires proof of the following five elements: "(1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law."  *Wang Elec., Inc. v. Smoke Tree Resort, LLC*, 283 P.3d 45, 49 (Ariz. App. 2012).  Stated another way, a plaintiff must allege that it "conferred a benefit upon the defendant . . . at [the] plaintiff's expense" and "it would be unjust to allow [the] defendant to keep the benefit."  *USLife Title Co. of Ariz. v. Gutkin*, 732 P.2d 579, 584 (Ariz. App. 1986).

Defendants argue that the Complaint fails to allege that Mexico conferred a benefit on Defendants at its expense and further fails to allege the absence of an adequate alternative legal remedy.  (Doc. 19 at 48–49.)  Plaintiff argues that the benefit unjustly conferred upon Defendants was Mexico's expenditure of money to pay for the costs of

the harm caused by Defendants' unlawful firearm sales—e.g., externalities.  (Doc. 26 at 45–47.)

The Court finds that Plaintiff's Complaint adequately alleges that Defendants were unjustly enriched by Plaintiff bearing the costs of correcting harm that Defendants caused for purposes of increasing their profits.  *See Pyeatte v. Pyeatte*, 661 P.2d 196, 202 (Ariz. App. 1982) ("A benefit may be any type of advantage, including that which saves the recipient from any loss or expense"); *City of Boston v. Smith & Wesson Corp.*, No. 199902590, 2000 WL 1473568, at *18 (Mass. Super. July 13, 2000) (finding plaintiffs stated a claim for unjust enrichment by alleging they bore the cost of correcting harm caused by conduct undertaken by the defendants in pursuit of profit, e.g., externalities); *City of Los Angeles v. Wells Fargo & Co.*, 22 F. Supp. 3d 1047, 1061 (C.D. Cal. 2014) (same).  Plaintiff has also alleged a connection between, and an absence of justification for, the enrichment and impoverishment: Defendants profit from selling firearms to straw purchasers and firearm traffickers, Defendants' sales result in the flow of firearms to cartels in Mexico, and Plaintiff bears the cost of harm inflicted by the resultant cartel violence.   Defendants have not identified an available alternative legal remedy. Accordingly, Defendant's Motion to Dismiss will be denied as to Plaintiff's unjust enrichment claim.

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

**IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. 18) is **granted in part and denied in part**.  The Motion is **granted** as to Plaintiff's CFA, RICO, and public nuisance claims.  The Motion is otherwise **denied**.  The remaining claims in this action are Counts One, Three, Four, Five, Six, and Eight[12] of the Complaint.

Dated this 22nd day of March, 2024.

_____
Honorable Rosemary Márquez
United States District Judge

---

[12] Count Eight asserts a claim for punitive damages.  Defendants do not argue in their Motion to Dismiss that the factual allegations of the Complaint are insufficient to support a claim for punitive damages.