1

DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300
(520) 322-5000

2

3

4

Ryan O'Neal (AZ # 031919)
roneal@dmyl.com
Attorneys for Plaintiff

5

6

**IN THE UNITED STATES DISTRICT COURT**

7

**DISTRICT OF ARIZONA**

8

Estados Unidos Mexicanos,

9

*Plaintiff*,

10

*vs.*

11

Diamondback Shooting Sports, Inc., an
Arizona corporation; SNG Tactical, LLC,
an Arizona limited liability company;
Loan Prairie, LLC D/B/A The Hub, an
Arizona limited liability company; Ammo
A-Z, LLC, an Arizona limited liability
company; Sprague's Sports, Inc., an
Arizona corporation,

NO. 4:22-cv-00472-TUC-RM

12

13

14

15

16

*Defendants*

17

18

**PROPOSED STIPULATED PROTOCOL FOR THE DISCOVERY OF
ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS**

19

20

        The Parties to the above-captioned litigation (this "action" or this "litigation"), through their

21

counsel, have stipulated and agreed to give effect to this Joint Stipulated Protocol for Discovery of

22

Electronically Stored Information and Hard Copy Documents ("ESI Protocol"), to facilitate

23

discovery in this action.

24

25

26

All productions in this litigation will also be subject to the Stipulated Protective Order (ECF No. 68) separately entered by the Court in this litigation and no provision herein shall contradict the Parties' rights and obligations with respect to any information designated under that Order.

**A.    SCOPE**

1.    **General**. The procedures and protocols set forth in this Protocol shall govern the production of ESI and hard copy documents in this matter, unless the Parties agree in writing to change them or they are changed by the Court at the request of a Party.

2.    **Disputes.** The Parties shall meet and confer in good faith on any issue regarding discovery, as necessary, including any issues relating to ESI custodians and data sources, that arise under this Protocol or otherwise. The failure to include a specific meet and confer obligation with respect to any provision in this agreement in no way negates the obligation. In the event the Parties cannot reach agreement on a disputed matter, the Parties shall submit the matter to the Court in accordance with the Court's procedures for submitting discovery disputes.

3.    **Federal Rules.** Nothing in this Protocol alters a party's rights, obligations, and responsibilities under the applicable Federal Rules of Civil Procedure, nor does anything in this Protocol impose burdens beyond those imposed by the Federal Rules of Civil Procedure. The parties reserve all objections under the Federal Rules of Civil Procedure for matters relating to the production of ESI.

**B.    DEFINITIONS**

1.    **"Documents"** shall have the same definition as set forth in Federal Rule of Civil Procedure 34.

2.    **"Electronically stored information"** or **"ESI,"** shall have the same definition as set forth in Federal Rules of Civil Procedure 34.

3. **"Extracted Text"** means the text extracted from a Document, and includes all header, footer, and document body information when reasonably available.

4. **"Load/Unitization file"** means an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A Load/Unitization file will also contain data relevant to the individual Documents, including extracted and user-created metadata.

5. **"Media"** means an object or device, including but not limited to a disc, tape, computer or other device, whether or not in the Producing Party's physical possession, on which data is or was stored.

6. **"Native Format"** means and refers to the format of ESI in which it was generated and/or as used by the Producing Party in the usual course of its business and in its regularly conducted activities.

7. **"OCR text"** means text generated through Optical Character Recognition Process of image bitmap picture representation of the documents.

8. **"Metadata"** means (i) information associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage or validity of the electronic file or (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted or otherwise manipulated by a user of such system.

9. **"Static Image"** means or refers to a represenantion of ESI produced by converting a native file into a standard image format capable of being viewed and printed on standard

computer systems. A Tagged Image File Form (TIFF) image is an example of a static image.

10.     **"Parties"** means or refers collectively to the named Plaintiffs and Defendants in the above-captioned matter, as well as any later added plaintiffs and defendants. "Party" shall refer to a plaintiff or defendant, individually.

11.     **"Producing Party"** means or refers to a Party in the above-captioned matter from which production of ESI or hard copy documents are sought.

12.     "**Requesting Party**" means or refers to a Party in the above-captioned matter that seeks production of ESI or hard copy documents from another Party or a third party.

## C.     PRESERVATION

The Parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI and/or Documents will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, each Party agrees that it shall use reasonable efforts to preserve relevant ESI that (i) was created or received between October 18, 2012[1] and the date on which a Party reasonably anticipated litigation concerning the issues raised in these actions, and (ii) is in existence as of the date of this Protocol. Each Party further agrees that it has a duty to preserve relevant ESI that was created or received between the date on which the Party reasonably anticipated litigation and the conclusion of this litigation. All Protected Material shall be maintained pursuant the Stipulated Protective Order and destroyed pursuant to normal business practice, local data protection laws, and the Stipulated Protective Order at the completion of this Litigation.

If a producing party learns that responsive, non-duplicative ESI that existed as of the date

---

[1] The parties agree that this date applies for purposes of this Protocol only. The parties will negotiate the relevant time period for purpose of discovery responses separately and/or address the issue with the Court.

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

upon which the duty to presere ESI arose was lost, destroyed, or is no longer retrievable, the producing party shall explain, to the extent the information is reasonable available, where and when the ESI was last retrievable and in its original form, and the circumstances lead to its loss or destruction.  Nothing in this agreement alters the Producing Party's obligation to demonstrate the unavailabity of such information pursuant to Federal Rule of Civil Procedure 29(b)(2)(B).

To help contain costs, the Parties agree to the following:

1. **Types of ESI That Need Not Be Preserved or Searched**. The Parties agree that there is no need to preserve or collect ESI from the following sources which are deemed to not likely contain relevant information and to be not reasonably accessible:

a.   Voice messages in any form, including without limitation voicemails and voice memos;

b.   random access memory (RAM) or other ephemeral data;

c.   on-line access data such as temporary internet files, histories, caches, cookies, etc.;

d.   data in metadata fields that are frequently updated automatically, such as last-opened dates, except as specified in this Protocol (the metadata fields identified in Exhibit 1);

e.   text and instant messages unless such methods of communication were used for government or business purposes;

f.   data contained on mobile devices, including but not limited to email, calendar data, and contact data, provided a copy of any potentially relevant data would routinely have also appeared on the computer system utilized by a Party;

g.    personal computers and personal e-mail not regularly used for business activities; and

h.   disaster recovery systems (with the exception of backup tapes that are actively used

for information retrieval and tapes storing ESI of persons likely to have discoverable information, if the information contained on those tapes is not otherwise available).

**D.       SEARCH PROTOCOL**

1.   **Protocol For Agreeing on Custodians**. In order to reduce the burden of searching the electronic files and data sources the Parties agree to meet and confer on the Agreed Custodians as detailed below. If the Parties are unable to reach agreement on the Agreed Custodians, the Parties reserve their rights to bring to the Court any dispute concerning the identification of appropriate Custodians or additional custodians under the Federal Rules of Civil Procedure or rules of the Court.

2.   **Protocol For Using Search Filters**. The Parties agree that the application of search terms is an appropriate step to reasonably identify potentially responsive documents or to cull ESI once the material is collected from the appropriate data source. Each Party shall take reasonable steps to develop search terms to identify potentially responsive documents including undertaking reasonable steps to validate those search terms. The Parties agree to meet and confer to agree on reasonable search terms and date ranges as a means to identify relevant ESI for review, as detailed below. Notwithstanding the foregoing, to the extent any Party identifies responsive ESI or responsive documents not identified by the use of search terms or filters, all such non-privileged documents must be produced, subject to the Parties' objections to discovery requests.

3.   **Timing and Process for Determining Custodians and Search Terms**. The Parties agree that they will cooperated with the express objective of reaching agreement on a mutually agreeable terms with respect to the search terms, custodians, and schedule for exchange of proposed custodians and search terms, collection, initial production, etc.

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

4.  **Other Matters**

a.  Each Party is obligated to retain, but not search, documents, ESI and information in the possession of each Disputed Custodian and/or source throughout the pendency of this litigation.

b.  The Parties agree to meet and confer in good faith to discuss processes that will allow for the identification of any additional potentially relevant documents not identified by the keyword search methodology processes described herein. The Parties may discuss various potential methods, including use of statistical analysis and/or technology-assisted review algorithms as a means of supplementing the keyword search term process described above.

c.  Pursuant to Federal Rule of Civil Procedure 26(g), once a Producing Party has substantially completed its production in response to a request for production of documents, it will so certify, in writing, to the Requesting Party.

d.  The fact that a document is captured by the application of a search protocol does not mean that such document is responsive to any propounded discovery request or otherwise relevant to this litigation. The discovery requests, objections thereto, agreements of the Parties and any Court orders shall govern the scope of documents to be produced. Notwithstanding the foregoing, to the extent any Party identifies responsive ESI or documents not identified by the use of search terms or filters, all such non-privileged documents must be produced, subject to the Parties' objections to discovery requests.

e.  In the event that any Party determines in good faith, after attempting to use the agreed search terms, that its use of any of those search terms is unreasonably burdensome and inefficient, then it shall meet and confer with the Party that propounded the document request to which it is responding. The relevant Parties shall negotiate in good faith to modify the agreed search terms. In the absence of a mutually acceptable agreement to modify the agreed search terms,

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

a Party may apply to the Court to modify the terms.

f.    The Parties will continue to meet and confer regarding any search process issues as necessary and appropriate during discovery. This Protocol does not address or resolve any other objection to the scope of the Parties' respective discovery requests, and it does not prevent any Party from undertaking searches of its own ESI for any purpose at any time.

5.    **De-duplication of Production**. The Parties shall use reasonable, good faith efforts to avoid the production of duplicate ESI.

a.    To the extent that exact duplicate documents (based on MD5 or SHA-1 hash values, or some other mutually agreeable method), reside within a party's ESI data set, each party may produce only a single copy of a responsive document or record ("Single Production Copy"), provided that de-duplication shall not break apart document families. Exact duplicate shall mean bit-for-bit identicality of the document content. For exact duplicate documents, the Producing Party will produce the metadata described herein for the Single Production Copy.

b.    No Party shall eliminate duplicates by manual review or some method other than by use of the technical comparison using MD5 or SHA-1 hash values outlined above without meeting and conferring with the Requesting Party to determine a mutually acceptable alternative.

c.    The Producing Party can either de-duplicate documents within custodians, or across custodians, provided they comply with the following or meet and confer with the Requesting Party to determine a mutually acceptable procedure:

(i) If the Producing Party is de-duplicating across custodians, the Producing Party shall populate a field of data that identifies each custodian who had a copy of the produced document (the "duplicate custodian" field) in addition to a separate field of data identifying the custodian whose document is produced.

(ii) If the Producing Party is de-duplicating within custodians only, there is no need to create or provide the duplicate custodian field.

6. **Cost Shifting.** If a Producing Party reasonably believes that producing particular ESI poses a particularly undue burden or cost as a result of the ESI not being reasonably accessible, such Party, at or before the time the production is due under the Federal Rules of Civil Procedure, shall describe the nature of the objection with reasonable particularity and indicate whether it is willing to offer an alternative to production. The Parties shall promptly meet and confer in an attempt to resolve the issues and, if no resolution is reached, seek appropriate relief from the Court. In such case, the Court may apportion the costs of electronic discovery in accordance with and only as allowed by the Federal Rules of Civil Procedure; provided, however, that such apportionment shall not include the costs of producing documents as agreed above. Nothing in this section or the remainder of this protocol precludes the Requesting Party from opposing any applications for shifting of costs.

7. **Deleted Files**. If a Producing Party learns that ESI created on or after October 18, 2012 and known to be responsive to a formal discovery request, once existed but was lost, was destroyed, or becomes no longer available, the Producing Party shall notify the Requesting Party of that fact; provided, however, that this section shall not apply to ESI that was lost, was destroyed, or became no longer available pursuant to the Producing Party's document retention and/or destruction policy, or pursuant to national, federal, state, or local laws or regulations, before the date on which the Producing Party's duty to preserve evidence for this matter was triggered.

**E.    FORMAT OF PRODUCTION**

1. **Paper Production Format**. All hard copy documents shall be produced either as static images (the images will be in black-and-white, single page, 300 DPI, Group IV* .TIFF images,

DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

with corresponding OCR text in document level .TXT format and standard load files, which can be used with commercially available litigation software packages, and the Default Production Fields ("DPF") as described and designated with a "DPF" in Exhibit 1, where reasonably available) or as kept by the parties in the usual course of business pursuant to Federal Rule of Civil Proceedure 34(b)(2)(E)(i), The Parties will accommodate reasonable requests for production of specific images in color to the extent available. Producing such Paper Documents in such form does not change their character from Paper Documents into ESI.

2.   If a document is more than one page, to the extent possible, the unitization of the document and any attachments or affixed notes should be maintained as it existed when collected by the Producing Party. Parties will unitize their documents using physical unitization (i.e., a manual review of the paper to determine what physically constitutes a document like page numbers or headers). If unitization cannot be reasonably maintained, the original unitization should be documented in the data load file or otherwise electronically tracked if reasonably possible.

The Parties shall not be obligated to produce paper versions of ESI documents, unless the paper version has marginalia or other markings that render it distinct from the ESI version.

3.   **ESI Production Format**. The following provisions shall generally govern the production format and procedure for ESI and are subject to the other provisions contained herein.

a.   **Production of ESI (both Native and Non-Native)**. All responsive ESI except that which is produced in Native Format pursuant to paragraph (b) should be produced in black-and-white, single page, at least 300 DPI, Group IV*.TIFF images with corresponding extracted full text or OCR text. Excel files will be produced natively providing links to the native documents and TIFF placeholders. When the native Excel file is produced, the Producing Party must preserve the integrity of the electronic document's contents, i.e., the original formatting and color of the

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd, Suite 200
Tucson, AZ 85716-5300

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

document, its metadata and, where applicable, provided that these obligations may be modified on a "going forward" basis as may be set forth in any subsequent order for preservation of documents and ESI. Notwithstanding these provisions, if a Producing Party's ESI entire production is relatively small and produced in PDF or an otherwise searchable format, the parties may meet and confer and determine whether is it is necessary or practicable to produce the documents in accordance with the production format requirements of this Protocol. If the parties cannot agree, the objecting party shall bring the issue to the court via motion.

Each of the Metadata and coding fields set forth in Exhibit 1 which can be extracted from a Document shall be produced for that Document. The Parties are not obligated to populate manually any of the fields in Exhibit 1 if such fields cannot be reasonably extracted from a Document, with the exception of DPF that are generated in the course of collection, review and production. If metadata are not produced because they do not exist or because they are not reasonably accessible, then the field will be left blank. All productions will include these additional specifications:

- a load file for images;
- delimited load files (.dat) containing a field with the full path and filename to native files produced and the metadata fields identified below (for ESI);
- document-level .txt files for all native documents containing extracted full text or OCR text (OCR only if extracted text is not available or if the document has been redacted);
- Bates number branding and Confidentiality designation (if any) on the face of the image; and
- all hidden text (e.g., track changes, hidden columns, comments, notes, markups, etc.) will be expanded, extracted, and rendered in the TIFF file; this specifically includes, but is not limited to, the inclusion of any notes or comments contained within any PowerPoint slides/presentations that are produced in .TIFF format.

b. **Production of Native Format ESI**. The production of Structured Data, which the Parties may, from time to time, agree is also to be produced in its Native Format, is governed by

Section F.4. below. For documents whose Native Format is multi-media, the original native files shall be produced. A TIFF placeholder embossed with the corresponding confidentiality designation and bates number shall be produced for all ESI produced in Native Format. Responsive ESI produced in Native Format shall be produced with all metadata contained in or associated with that file to the extent technologically feasible consistent with paragraph (a). Nothing in this protocol shall limit a Party's ability to elect to produce other forms of responsive ESI in Native Format.

Extracted Text taken from native files will be provided at a document level. There will be one text file per document, using the same name as the beginning Bates number (Document ID) of the document. The extracted text file for a document will reside in the same location (file directory) as the images for that document. The text file associated with any redacted document will exclude redacted text (i.e., the Producing Party can OCR the redacted image of the unstructured ESI and replace the original extracted text).

No Party may attach to any pleading or any correspondence addressed to the Court, Special Master, or any adverse or third party, or submit as an exhibit at a deposition or any other judicial proceeding, a copy of any native format document produced by any Party without ensuring that either the corresponding slip sheet is attached to the document or the corresponding Bates number and confidentiality legend, as designated by the Producing Party, appears on the document.

c. **Bates Numbering.** All images must be assigned a Bates number that must always: (1) be unique across the entire document production; (2) maintain a constant length (0-padded) across the entire production; (3) contain no special characters or embedded spaces; and (4) be sequential within a given document.

d. **Request for Documents in Native Format**. If a Party reasonably concludes that

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd, Suite 200
Tucson, AZ 85716-5300

production in Native Format of any document(s) initially produced in .TIFF format is necessary (e.g., to decipher the complete meaning, context, or content, to determine if there is any relevant "hidden text" in the document, to determine if there is any important use of color in the document, etc.), such party may request production of the original document in Native Format. The parties agree to meet and confer in good faith with respect to any such request.

d. **Appearance and Content**. No document may be intentionally manipulated to change how the source document would have appeared if printed out to a printer attached to a computer viewing the file, without prior agreement, except as is necessary to expand and render hidden text as described above. Therefore, subject to any appropriate redaction, each document's electronic image shall convey the same information and image as the original document. If Responsive ESI presents imaging or formatting problems, the Parties shall meet and confer in an attempt to resolve the problem.

e. **Color**. The Parties will accommodate requests made in good faith for the production of a color image of specific documents originally produced in greyscale .TIFF format where reasonably necessary to decipher the complete meaning, context, or content of the documents. Such responsive ESI shall be produced in a manner that preserves, to the maximum extent possible, the integrity of multi-page groups of documents.

f. **Load File**. To the extent production is made in an electronic format susceptible to creation of a Load File, the Producing Party shall provide a Load File to accompany the native files and TIFF images that are produced, to facilitate the use of the produced images by a document management or litigation support system as described above. Load files shall contain the parent/child (e.g., Email/Attachment, Memo/Attachment, Letter/Enclosure) relationships of documents, when possible.

PROPOSED STIPULATED ESI PROTOCOL

For all produced paper and loose ESI (whether produced in Native or TIFF Image), a standard Opticon image load file indicating document boundaries and location of images will accompany the images. The fields that should be included are detailed in Exhibit 2.

When producing a multi-page document, images for the document should not span multiple directories. In addition, a Producing Party should not include more than 1,000 images in a single directory unless a document is more than 1,000 pages.

g.  **Document Numbering for TIFF Images**. Each page of a document produced as TIFF images shall have a legible, unique Document Number electronically "burned" onto the image at a location that does not obliterate, conceal or interfere with any information from the source document (i.e., the "Bates Label"). Each file produced in Native Format shall be associated with a unique Document Number included on the TIFF placeholder provided with the native file or, where not produced with a TIFF placeholder, the storage device (e.g., CD, USB, hard drive) containing such native ESI data shall be labeled with a Document Number. The Document Number for each document shall be created so as to identify the Producing Party and the Document Number. Each Party shall have a unique identifying name. Each page of each production shall have a unique number.

h.  **Production Media**. If documents are produced on CD-ROM, DVD, external hard drive (with standard PC compatible interface), via secure FTP site, or such other readily accessible computer or electronic media as the Parties may hereafter agree upon (the "Production Media"). Each Production Media shall include a unique identifying label. Bates numbered documents and files may also be produced via a secure cloud-based storage service. Each Production shall be accompanied by cover letter that includes the following information

     • Name of the litigation and case number;

- Name of the producing party;

- Date of the production;

- Bates number range; and

- Confidentiality Designation.

To Maximize the security of information in transit, the producing Party may encrypt any Media on which documents or electronic files are produced. In such cases, the producing Party shall transmit the encryption key or password to the requeting Party, under separate cover, contemporaneously with sending the encrypted media.

i.   **Attachments**. Email attachments and embedded files or links must be mapped to their parent by the Document or Production number. If attachments or embedded files are combined with their parent documents, then "BegAttach" and "EndAttach" fields (or the functional equivalent) listing the unique beginning and end number for each attachment or embedded document must be included.

j.   **Time**. When processing ESI for review and for production in TIFF format, the Producing Party will instruct its vendor to turn off any automatic date stamping. When processing ESI, EST should be selected as the time zone and the Producing Party will note the time zone used in its processing. To the extent that a Party has already processed ESI using a different time zone, the Producing Party will note the time zone used in its processing. In such instance, a Party may consistently produce all ESI processed using the same time zone. When a metadata field includes a date and/or time, it shall be provided in the following format: mm/dd/yyyy HH:mm:ss.

k.   **Redactions**. To the extent that a responsive document contains (a) privileged content or (b) non-responsive Confidential or Highly Confidential content (as those terms are defined in the Stipulated Protective Order), the Producing Party may produce that document in a

redacted form. Where a document contains both privileged and non-privileged responsive content, the Producing Party shall redact the privileged material and produce the remainder of the document as redacted.

l. **Foreign Language Text**.  The Parties will use reasonable industry standards, software, and techniques, or their reasonable equivalents, (including but not limited to the use of UTF-8 format for text and loadfiles) to attempt to ensure that all technologies and processes used to collect, process and produce the text of any document—including all TIFF conversion and OCR processes, and the extraction of text from native files—preserves all foreign language text, punctuation and other characteristics as they exist in the source native file.

m. **Non-Responsive Attachments**. The Parties agree that if a Producing Party determines that an entire attachment to a responsive parent is non-responsive, that attachment may be withheld and replaced in the production with a slip sheet that reads "Withheld Non-Responsive." The Producing Party must retain all such withheld attachments and provide the Requesting Party with a log stating the title of each withheld attachment and its page count. For such fully non-responsive attachments, a placeholder slip-sheet endorsed "Withheld Non-Responsive" will be produced to capture the family relationship.

4. **Structured Data**. If a response to discovery requires production of discoverable information contained in a database, the Producing Party may produce such information in Excel or .csv format. To the extent a response to discovery requires production of discoverable electronic information contained in a database and it cannot reasonably be produced in either Excel or .csv format, in advance of producing information, the Parties agree to meet and regarding the format of the production (e.g., commercial database, or some other agreed-upon format).

5. **Confidentiality of Produced ESI**. Responsive ESI, whether produced as .TIFF images or

in Native Format, shall be produced pursuant to the terms of the Stipulated Protective Order.

6. **Third-Party Software**. To the extent ESI produced pursuant to this Protocol cannot be rendered or viewed without the use of proprietary third-party software, the Parties shall cooperate and seek to attempt to minimize any expense or burden associated with production of such ESI. The Parties shall meet and confer to address such issues as may arise with respect to obtaining access to any such software and operating manuals which are the property of a third party. The Producing Party will, to the extent possible, produce commercially-available third-party software or proprietary manuals to the Receiving Party. If ESI cannot be rendered without the use of non-commercially available third-party software or proprietary manuals and the Producing Party is unable to provide such third-party software, the Parties shall meet and confer in an attempt to resolve any issues of access to the ESI.

## F.   PRIVILEGE LOGS AND REDACTIONS OF PRIVILEGED MATERIALS

1.     **Scope of Log.**  Pursuant to the Federal Rules of Civil Procedure, all withholdings from discovery on the basis of the attorney-client privilege, the work product doctrine, the joint defense or common interest privilege, or other applicable privilege (each encompassed by the term "privilege" as used hereafter), must be logged. The producing party bears the burden of establishing that any document, communication, information, or other content that is withheld from discovery the basis of an asserted privilege is in fact privileged and/or otherwise properly withheld. None of the following shifts or changes this burden.

2.     **Timing of Logs.**  Rolling privilege logs will be produced within sixty (60) days following the production of the documents from which the withheld documents relate.

3.     **Logging Exemptions.** Consistent with the Protective Order, the Parties agree that the following privileged Documents and ESI ("privileged materal") need not be included on the

privilege log.

a. Materials produced in redacted form, with only the privileged portions withheld; provided that any redactions should be narrowly drawn so that the basis for the redaction can be gleaned from the non-privileged, non-redacted information on the document.

b. Communications and/or work product created by outside counsel to a Party and their associated attorneys and support staff, including paralegal and secretarial personnel, and either not shared with anyone or shared only within, between, and among outside counsel.

c. Materials regarding activities undertaken in compliance with the duty to preserve information (including, but not limited to, litigation hold letters), which are protected from disclosure under Federal Rules of Civil Procedure 26(b)(3)(A) and (B).

d. Any communications exclusively between a Producing Party and its in-house counsel responsible for litigation matters, outside counsel, an agent of outside counsel other than the Party, any non-testifying experts, or with respect to information protected by Fed. R. Civ. P. 26(b)(4), testifying experts.

e. Any privileged materials or work product created or received by a Party's in-house counsel responsible for litigation matters, outside counsel, an agent of outside counsel other than the Party, any non-testifying experts, or, with respect to information protected by Fed. R. Civ. P. 26(b)(4), testifying experts.

**4. Privilege Log Content.**

a. unique document identification number;

b. Bates number, including BEGBATES and ENDBATES (if a document is indicated in the production by a slipsheet);

c. document type;

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

   d.    family relationship, if applicable, including BEGATTACH (if not produced) or BEGBATESATTACH (if produced) and ENDATTACH (if not produced) or ENDBATESATTACH (if produced) (i.e., identification of parent emails and all attachments);

   e.    date (date sent for correspondence such as emails, memos, and letters; date created for other documents);

   f.    to;

   g.    from;

   h.    cc;

   i.    bcc;

   j.    for email communications, information sufficient to identify the email addresses of each sender or recipient (which by default can be satisfied by available metadata fields including this information);

   k.    all privilege(s) or protection(s) claimed;

   l.    a description of the document, its subject matter, and its contents sufficient to establish the privilege under Fed. R. Civ. P. 26(b)(5); and

   m.    an indication of whether the document has been produced in redacted form or withheld entirely.

   In addition to the Privilege Log itself, each party shall produce a single list of every attorney mentioned in the privilege log, identified by full name, employer, and job title and Attorneys appearing in any log entry should be denoted (i.e., by the placing of an "*" next to the attorney's name).

   **5.      Privilege Log Information Requests.** If a Requesting Party believes in good faith that it has not received sufficient information (e.g., the identity and employer of non-attorney participants in a communication) to adequately assess a claim of privilege with respect to any redacted document, or a document withheld and included on a Privilege Log by a Producing Party, it may make a request to the Producing Party for such additional information. A Producing Party

will consider and respond to any such request within seven (7) business days.

6.    **Logging Document Families.** Each member of a document family (a group of related documents that include parent and child documents, e.g., a parent email and subsequent emails, and any attachments thereto), over which a claim of privilege is being made must be separately logged. For example, where an email includes four attachments, the email and each of the four attachments must be logged in five separate entries if the producing party believes all five documents are (or any portion of them is) privileged.

7.    **Email Chains.** A party asserting a privilege to withhold an entire email chain may include on a privilege log an entry for only the most complete version of such email chain and include that single document on the privilege log, provided that if any of the earlier emails in the chain had a substantially different subject line (i.e., not including automatic changes to a subject line when, for example, an email is forwarded or responded to) or different recipients, such information must be added to the privilege log entry (unless the earlier email(s) was itself withheld and independently logged).

8.    **Amendment and Supplementation.** The parties agree to meet and confer in good faith regarding whether, in the context of a particular log entry or entries, the circumstances warrant supplemental provision of applicable custodial information. Should it be necessary at any time for the Producing Party to provide an amended log, the Producing Party shall provide a redline or otherwise mark the amended log to show changes from the prior log.

G.    **DUPLICATE PRODUCTION NOT REQUIRED**

A Party producing responsive ESI need not produce the identical document in paper format, except that, in specific cases in which ESI produced by a Party may, for some reason, be unreadable or otherwise subject to question, a Requesting Party may reasonably request a

Producing Party to produce paper copies of previously produced ESI.

## H.    OBJECTIONS TO ESI PRODUCTION

If any Party objects to producing the requested ESI on the grounds that such information is not reasonably accessible because of undue burden or cost, or because production in the requested format is asserted to be not reasonably accessible because of undue burden or cost, the Party, at or before the time the production is due under the Federal Rules of Civil Procedure, shall describe the nature of the objection with reasonable particularity and indicate whether the Producing Party is willing to offer an alternative.

The Parties do not waive any objections to the relevance, responsiveness, production, discoverability, possession, custody, control, or confidentiality of Documents, including (without limitation) objections regarding the burden, over-breadth, or relevance of document requests related to Documents, and objections regarding local and national data and privacy laws. Nothing in this Protocol shall be interpreted to require the disclosure of irrelevant information, relevant information that is overly burdensome, or relevant information protected by the attorney-client privilege, work product immunity, or any other applicable privilege or immunity or is otherwise not discoverable.

By entering this Protocol, a Party is not giving up its right to review its documents for privilege or any other reason (including to identify non-responsive documents) and the existence of this Protocol cannot be used to compel a Party to produce documents without review.

The Parties will meet and confer in an attempt to resolve the objections if necessary.

## I.    DESIGNATED ESI LIAISON

Each Party shall designate an individual(s) to act as e-discovery liaison(s) for purposes of meeting, conferring, and attending court hearings on the subject ("Designated ESI Liaison"). The

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

Designated ESI Liaison must:

    1.  be prepared to participate in e-discovery discussions and dispute resolution;

    2.  be knowledgeable about the Party's e-discovery efforts;

    3.  be, or have reasonable access to those who are, familiar with the Party's electronic systems and capabilities in order to explain those systems and answer relevant questions; and

    4.  be, or have reasonable access to those who are, knowledgeable about the technical aspects of e-discovery, including electronic document storage, organization, and format issues, and relevant information retrieval technology, including search methodology.

    Respectfully submitted this 17 day of May, 2024

DECONCINI MCDONALD YETWIN & LACY, P.C.


By: /s/ *Ryan O'Neal*
       Ryan O'Neal
       2525 E. Broadway Blvd., Suite 200
       Tucson, AZ 85716-5300
       Attorneys for Plaintiff

| | |
|---|---|
| /s/ Steve D. Shadowen<br>Steve D. Shadowen (*pro hac vice*)<br>Tina J. Miranda (*pro hac vice*)<br>Nicholas W. Shadowen (*pro hac vice*)<br>SHADOWEN PLLC<br>1135 W. 6th Street, Suite 125<br>Austin, TX 78703<br>Phone: 855-344-3298<br>sshadowen@shadowenpllc.com<br>tmiranda@shadowenpllc.com<br>nshadowen@shadowenpllc.com | /s/ Jonathan E. Lowy<br>Jonathan E. Lowy (*pro hac vice*)<br>Global Action on Gun Violence<br>805 15th Street NW<br>#601<br>Washington, DC 20005<br>Phone: (202) 415-0691<br>jlowy@actiononguns.org |
| /s/ Louis W. Horowitz<br>Louis W. Horowitz, Esq.<br>LORBER, GREENFIELD & POLITO, LLP<br>3930 E. Ray Road, Suite 260<br>Phoenix, AZ 85044 | /s/ William W. Drury<br>William W. Drury, Esq.<br>RENAUD COOK DRURY MESAROS, PA<br>One North Central, Ste. 900<br>Phoenix, AZ 85004-4117<br>wdrury@rcdmlaw.com |

PROPOSED STIPULATED ESI PROTOCOL

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd, Suite 200
Tucson, AZ 85716-5300

and

/s/ Christopher Renzulli
Christopher Renzulli, Esq. (Pro Hac Vice)
Peter Malfa, Esq. (Pro Hac Vice)
Jeffrey Malsch, Esq. (Pro Hac Vice)
RENZULLI LAW FIRM LLP
One North Broadway, Suite 1005
White Plains, NY 10601

Attorneys for Defendants Diamondback
Shooting Sports, Inc., Loan Prairie, LLC d/b/a
The Hub, SNG Tactical, LLC and Sprague's
Sports, Inc.

and

/s/ Anthony M. Pisciotti
Anthony M. Pisciotti, Esq. (Pro Hac Vice)
Danny Lallis, Esq. (Pro Hac Vice)
Ryan Erdreich, Esq. (Pro Hac Vice)
PISCIOTTI LALLIS ERDREICH
30 Columbia Turnpike, Suite 205
Florham Park, NJ 07932
apisciotti@pisciotti.com
dlallis@pisciotti.com
rerdreich@pisciotti.com

and

/s/ Brian E. Cieniawski
Colt B. Dodrill
Brian E. Cieniawski
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP
2231 East Camelback Road, Suite 200
Phoenix, AZ 85016

Attorneys for Defendant Ammo A-Z, LLC

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd, Suite 200
Tucson, AZ 85716-5300

PROPOSED STIPULATED ESI PROTOCOL

23

**EXHIBIT 1**

**DEFAULT PRODUCTION FIELDS TO BE PRODUCED**

| Field | Data Type | Loose Native Files and Attachments | Email and Attachments | Calendar Entries |
|---|---|---|---|---|
| BegDoc | Integer-Text | Start Bates | Start Bates | StartBates |
| EndDoc | Integer-Text | End Bates | End Bates | EndBates |
| AttachCount | Integer-Text | Number of attachments | Number of attachments | Number of attachments |
| BegAttach | Integer-Text | Starting Bates number of document family | Starting Bates number of document family | Starting Bates number of document family |
| EndAttach | Integer-Text | Ending Bates number of document family | Ending Bates number of document family | Ending Bates number of document family |
| Custodian | Text-paragraph | Custodian of the document | Custodian of the document | Custodian of the document |
| DuplicateCustodian | Text-paragraph | All custodians of the document with the same md5 hash value, even if de-duplicated prior to production | All custodians of the document with the same md5 hash value, even if de-duplicated prior to production | All custodians of the document with the same md5 hash value, even if de-duplicated prior to production |
| From | Text-paragraph | | Sender of message | Sender of calendar invite |
| To | Text-paragraph | | Recipients of message | Recipients of calendar invite |
| CC | Text-paragraph | | Copied recipients | |
| BCC | Text-paragraph | | Blind copied recipients | |
| Subject | Text-paragraph | | Subject of message | Subject of calendar appointment |

PROPOSED STIPULATED ESI PROTOCOL

24

| Field | Data Type | Loose Native Files and Attachments | Email and Attachments | Calendar Entries |
|---|---|---|---|---|
| DateSent | Date (mmddyyyy) | | Date message sent | Date calendar invite sent (if any) |
| TimeSent | Time (HH:mm:ssZ) | | Time message sent | Time calendar invite sent (if any) |
| DateCreated | Date (mmddyyyy) | Date file was created | | |
| TimeCreated | Time (HH:mm:ssZ) | Time file was created | | |
| DateReceived | Date (mmddyyyy) | Date file was received | | |
| TimeReceived | Time (HH:mm:ssZ) | Time file was received | | |
| DateModified | Date (mmddyyyy) | Date file was last modified | | |
| TimeModified | Time (HH:mm:ssZ) | Time file was last modified | | |
| Title | Text-paragraph | Title from document metadata | | |
| Author | Text-paragraph | Document authors from metadata | | |
| LastModifiedBy | Text-paragraph | Document modifier from metadata | | |
| MD-5 Hash value Value or SHA-I Hash Value | Integer-Text | Hash value | Hash value | Hash value |
| Confidentiality Designation | Text-paragraph | Indicates confidentiality designation and confidentiality level | Indicates confidentiality designation and confidentiality level | Indicates confidentiality designation and confidentiality level |
| Redaction | Integer-Text | Indicates whether a redaction has been made to any page of the document | Indicates whether a redaction has been made to | Indicates whether a redaction has been made to |

PROPOSED STIPULATED ESI PROTOCOL

25

| Field | Data Type | Loose Native Files and Attachments | Email and Attachments | Calendar Entries |
|---|---|---|---|---|
| | | | any page of the document | any page of the document |

DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

PROPOSED STIPULATED ESI PROTOCOL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

## **EXHIBIT 2**

## **REQUESTED LOAD FILE FORMAT FOR ESI**

1.   **Delimited Text File.** A delimited text file (DAT File) containing the fields listed in [CROSS REFERENCE] should be provided. The delimiters for the file should be Concordance defaults:

·          Comma – ASCII character 20 (¶)

·          Quote – ASCII character 254 (þ)

·          Newline – ASCII character 174 (®)

2.   **Image Cross-Reference File (Opticon Load File)**. The Opticon cross-reference file is a comma delimited file consisting of six fields per line. There must be a line in the cross-reference file for every image in the database. The format for the file is as follows:

ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount.

ImageID: The unique designation that Concordance and Opticon use to identify an image. This should be the Bates Number of the Document.

VolumeLabel: The name of the volume.

ImageFilePath: The full path to the image file.

DocumentBreak: If this field contains the letter "Y," then this is the first page of a Document. If this field is blank, then this page is not the first page of a Document.

FolderBreak: Leave empty.

BoxBreak: Leave empty.

PageCount: Number of pages in the Document.

3.   **Sample Data**

PROD00000001,VOL001,E:\100\ PROD00000001.TIF,Y,,2

1    PROD00000002, VOL001,E:\100\ MT00000002.TIF,,,,

2    PROD00000003, VOL001,E:\100\ MT00000003.TIF,Y,,,4

3    PROD00000004, VOL001,E:\100\ MT00000004.TIF,,,,

4    PROD00000005, VOL001,E:\100\ MT00000005.TIF,,,,

5    PROD00000006, VOL001,E:\100\ MT00000006.TIF,,,,

DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

PROPOSED STIPULATED ESI PROTOCOL

**CERTIFICATE OF SERVICE**

I, Ryan O'Neal, hereby certify that this document was filed with the Clerk of the Court via CM/ECF. Those attorneys who are registered with the Court's electronic filing systems may access this filing through the Court's CM/ECF system, and notice of this filing will be sent to these parties by operation of the Court's electronic filings system.

Dated: May 17, 2024                    /s/ Ryan O'Neal
                                       Ryan O'Neal