DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 EAST BROADWAY BLVD., SUITE 200
TUCSON, AZ 85716-5300
(520) 322-5000

Ryan O'Neal (AZ # 031919)
roneal@dmyl.com
Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Estados Unidos Mexicanos,<br>*Plaintiff*<br><br>*vs.*<br><br>Diamondback Shooting Sports, Inc.,<br>*et al.*,<br><br>*Defendants* | **CONSOLIDATED MOTION TO COMPEL**<br><br>**MEMORANDUM OF POINTS AND AUTHORITY**<br><br>No. 4:22-cv-00472-TUC-RM |

COMES NOW Plaintiff Estados Unidos Mexicanos, by and through undersigned counsel, and pursuant to Rule 37(a)(3)(B)(iv) of the Federal Rules of Civil Procedure, hereby moves this Court for an Order directing Defendants[1] to produce documents responsive to Requests 2-10, 13, 15, 19, 21-24, and 30-32 in Plaintiff's First Set of Requests for Production of Documents notwithstanding Defendants' erroneous assertions that certain documents are privileged under either: (1) a federal appropriations rider, known as the Tiahrt Amendment; and/or (2) the "Arizona Audits Reports Privilege."

---

[1] "Defendants" include Diamondback Shooting Sports, Inc. ("Diamondback"), SnG Tactical, LLC ("SnG"), Loan Prairie, LLC D/B/A The Hub ("Loan Prairie"), Sprague's Sports, Inc.'s ("Sprague's"), and Ammo A-Z, LLC ("Ammo A-Z").

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

This Motion is appropriate because counsel for the parties have consulted with each other and have been unable to reach a satisfactory resolution to the pending discovery issues. In support of this Motion, Plaintiff submits the following Memorandum of Points and Authorities, and a separately filed Declaration, Statements of Discovery Deficiencies pursuant to L.R.Civ 37.1, and Statement of Counsel pursuant to L.R.Civ 7.2(j).

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants refuse to produce highly relevant documents that contain critical information about the crime guns they sold that were trafficked to Mexico. This information—which includes sales records, mandatory reporting forms, and law enforcement inquiries and investigational documents regarding Defendants' firearm sales—goes to the heart of Plaintiff's case.

Defendants erroneously claim that they are entitled to shield this critical information from Plaintiff, the Court, and a jury. In an effort to improperly avoid their discovery obligations, Defendants argue that a federal budget appropriations rider, known as the Tiahrt Amendment ("Appropriations Rider") applies here. But the Appropriations Rider only restricts how a federal agency—the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF)—can use appropriated funds; it does not allow private parties to shield documents during litigation. Even if Defendants' impermissibly broad reading of the Appropriations Rider were correct, many of the documents Defendants are withholding would still be subject to discovery. Defendants also claim an "Arizona Audits Reports Privilege" allows them to withhold discovery, but that privilege is inapplicable. Defendants should be compelled to produce the requested documents.

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

**BACKGROUND**

Defendants are gun dealers that "know or should know that their reckless and unlawful business practices," including sales of assault weapons, straw sales, bulk sales, multiple sales, and repeat sales "supply dangerous criminals in Mexico and the U.S." (Doc. No. 1, ¶ 1.) Plaintiff seeks to prove, *inter alia*, that Defendants sold firearms that were illegally used in Mexico, including the "illustrative and not exhaustive" examples in the Complaint. (Doc. No. 50, at 14.)

Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiff served a First Set of Requests for Production of Documents, seeking highly relevant documents in Defendants' possession. Meiseles Decl., Ex. 1.[2] Defendants indisputably possess these documents. As federal firearms licensees (FFLs), Defendants are required to maintain "records of importation, production, shipment, receipt, sale, or other disposition of firearms," 18 U.S.C. § 923(g)(1)(A); *see also* 27 CFR § 478.121; records of all firearm sales, recorded on Form 4473, *see* 27 CFR §§ 478.124, 478.129(b); records of all firearms acquisition and dispositions ("A&D"), *see* 27 CFR §§ 478.125(e), 478.129(e); and records of multiple sales, recorded on ATF Forms 3310.4 and 3310.12, *see* 18 U.S.C. § 923(g)(3)(a); 27 C.F.R. §§ 478.126a, 478.129(c). These records are central to Plaintiff's claims and would show that Defendants negligently sold firearms in straw sales, bulk sales, repeat sales, and multiple sales, which are highly indicative of gun trafficking, and would allow Plaintiff to prove that Defendants sold specific firearms recovered in Mexico.

---

[2] All exhibits referenced herein are exhibits to the Meiseles Declaration.

The Appropriations Rider's focus is on information possessed by ATF, not Defendants, including some of the forms described above, as well as "trace data." "Tracing" is a tool used by law enforcement to determine the history of a firearm recovered at a crime scene. When law enforcement finds a firearm at a crime scene, the agency submits a request to ATF's National Tracing Center (NTC), which then sends a "trace request" to every licensee in the distribution chain of the firearm to obtain additional information to assist in its investigation of the crime.[3] "These tracing records are maintained in the Firearm Tracing System, an electronic database that logs the 'trace data' for each individual trace." *Ctr. for Investigative Reporting v. United States DOJ*, 14 F.4th 916, 923 (9th Cir. 2021). Trace data from ATF is not at issue in this motion.

In their July 24, 2024, Responses and Objections ("R&Os"), Defendants stated that they intended to withhold most of the relevant documents and data they possess. *See* Exs. 2-6.[4] Though they are not ATF, and no governmentally-appropriated funds would be used to produce the documents, in their privilege logs Defendants invoked the Appropriations Rider to justify their refusal to produce Forms 4473, 3310.4, 3310.12, 5030.5 (Reports of Violations), A&D records,[5] and correspondence with ATF or other law enforcement, including regarding trace requests, surveillance requests, potential straw purchasers, and

---

[3] *See* Bureau of Alcohol, Tobacco, Firearms, and Explosives, National Tracing Center, https://www.atf.gov/firearms/national-tracing-center.

[4] Defendants cannot seem to agree which documents are subject to protection under the Appropriations Rider. Ammo A-Z objected to RFPs 2-10, 19, 21, and 24. Diamondback, Loan Prairie, and SnG objected to RFPs 2-10, 13, 22-23, and 24. Sprague's objected to RFPs 2-10, 13, 15, 24, and 30-32.

[5] Ammo A-Z did not claim privilege over A&D records. *See* Ex. 10.

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

ATF inspections.[6] *See* Exs. 7-11. Defendants also invoked "the Arizona Audits Reports Privilege" for Forms 5030.5 and specified correspondence with ATF (Ammo A-Z invoked it for all the same documents as it invoked the Appropriations Rider). *Id.*

Plaintiff served a response to the R&Os on August 5, 2024, *see* Ex. 12; Defendants replied on August 27, 2024, *see* Ex. 13; the parties met and conferred on September 4, 2024, but did not reach a resolution. The Court granted leave to file written briefing pursuant to this Court's Scheduling Order (Doc. No. 88). This Motion to Compel follows.

## LEGAL STANDARD

"[P]re-trial discovery is ordinarily 'accorded a broad and liberal treatment.'" *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Thus, "[t]he Federal Rules of Civil Procedure allow parties to obtain discovery on any matter 'relevant to any party's claim or defense.'" *Shaw v. Bank of Am. Corp.*, 946 F.3d 533, 541 (9th Cir. 2019) (quoting Fed. R. Civ. Proc. 26(b)(1)).

## ARGUMENT

### I.  THE APPROPRIATIONS RIDER ONLY RESTRICTS ATF'S USE OF APPROPRIATED FUNDS TO PRODUCE CERTAIN DATA

The Appropriations Rider was part of the 2012 Appropriations Act, which appropriated funds to ATF and attached "limitations riders" restricting how ATF could spend those funds. The Rider appears below the heading "Bureau of Alcohol, Tobacco,

---

[6] Ignoring this Court's acknowledgment that the Complaint's straw purchase examples are "illustrative and not exhaustive," (Doc. No. 50, at 14), Defendants' privilege logs (other than Sprague's) only identify documents associated with the Complaint's illustrative examples. This blatant disregard for the Court's opinion is the subject of ongoing discussions among counsel and does not impact the resolution of this motion.

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

Firearms and Explosives – Salaries and Expenses." *See* Consol. and Further Continuing

Approp. Act, 2012, Pub. L. No. 112-55, 125 Stat. 552, 609 (2011). It provides an allocation

of funds for ATF, and it is the sixth of nine riders that limit how ATF may spend those

appropriated funds. The Rider states in relevant part:

> Provided further, That, during the current fiscal year and in each fiscal year thereafter, ***no funds appropriated under this or any other Act may be used to disclose*** part or all of the contents of the Firearms Trace System database maintained by the National Trace Center of the Bureau of Alcohol, Tobacco, Firearms and Explosives or any information required to be kept by licensees pursuant to section 923(g) of title 18, United States Code, or required to be reported pursuant to paragraphs (3) and (7) of such section, except to [certain law enforcement and national security agencies] unless such disclosure of such data to any of the [law enforcement and national security agencies] would compromise the identity of any undercover law enforcement officer or confidential informant, or interfere with any case under investigation; and no person or entity described in [the law enforcement and national security agencies exceptions] shall knowingly and publicly disclose such data; ***and all such data shall be immune from legal process, shall not be subject to subpoena or other discovery***, shall be inadmissible in evidence, and shall not be used, relied on, or disclosed in any manner, nor shall testimony or other evidence be permitted based on the data, in a civil action in any State (including the District of Columbia) or Federal court . . .

*Id.* at 609-610; *see also* Appendix (emphasis added).

Breaking down the text, the Rider states that the "funds appropriated" to ATF cannot

"be used to disclose part or all of the contents of the Firearms Trace System database" "or

any information required to be kept by licensees pursuant to [18 U.S.C. § 923(g)], or

required to be reported pursuant to [§ 923(3), (7)]." *Id.*

The Appropriations Rider then provides several exceptions and clarifications

relating to "such data"—that is, the designated information that ATF cannot disclose using

its appropriated funds. *Id*. The Appropriations Rider first provides three exceptions to allow

ATF to use appropriated funds to disclose the information to: "(1) a Federal, State, local, or tribal law enforcement agency, or a Federal, State, or local prosecutor; or (2) a foreign law enforcement agency solely in connection with or for use in a criminal investigation or prosecution; or (3) a Federal agency for a national security or intelligence purpose." *Id.*

The Appropriations Rider then limits these exceptions: "unless such disclosure of such data to any of the entities described in (1), (2) or (3) of this proviso would compromise the identity of any undercover law enforcement officer or confidential informant, or interfere with any case under investigation." *Id.* (emphasis added). Next, the Rider states that the law enforcement entities covered by the exceptions cannot either disclose the ATF's information upon receipt: "and no person or entity described in (1), (2) or (3) shall knowingly and publicly disclose such data." *Id.* (emphasis added).

Finally, and most relevant here, the Appropriations Rider states: "and all such data shall be immune from legal process, shall not be subject to subpoena or other discovery, shall be inadmissible in evidence, and shall not be used, relied on, or disclosed in any manner, nor shall testimony or other evidence be permitted based on the data, in a civil action . . ." (emphasis added).

## A. The Plain Text of the Appropriations Rider Demonstrates that it Only Restricts ATF's Use of Appropriated Funds

Ignoring the plain text of the Rider, Defendants wrongly argue that the "all such data" that is "immune from legal process" and not "subject to subpoena or discovery" is not limited to data disclosed by ATF with appropriated funds. Instead, Defendants claim the Appropriations Rider exempts them from their discovery obligations to produce

documents Defendants possess—even though none of the ATF's appropriated funds would be used for the disclosure.

Defendants are wrong. The Appropriations Rider refers to "<u>such</u> data" and the "such" refers to the previous part of the Rider that limits ATF's use of appropriated funds. *See Slack Techs., LLC v. Pirani*, 598 U.S. 759, 766 (2023) ("The word 'such' usually refers to something that has already been 'described' or that is 'implied or intelligible from the context or circumstances.'" (citations omitted)). Congress first restricted ATF from using appropriated funds to disclose specified data except to specific law enforcement entities; then it carved out exceptions to the law enforcement exceptions for when disclosure of "such data"—that is, the data disclosed by ATF using appropriated funds—would impede law enforcement; then it restricted the law enforcement entities to whom the exceptions applied from disclosing "such data"; and then Congress provided a final evidentiary limitation on all the <u>same</u> "such data" that, as relevant here, they are immune from legal process and not subject to discovery. "[W]ords repeated in different parts of the same statute generally have the same meaning," and so the "such data" relied on by Defendants can only be interpreted to refer to the same "such data" as in the rest of the Appropriations Rider. *Law v. Siegel*, 571 U.S. 415, 422 (2014).

In sum, the first two uses of "such data" in the Appropriations Rider indisputably refer to data disclosed by ATF using appropriated funds. Congress used "such data" twice in referring to the limitations on the exceptions to the Appropriations Rider: (1) "unless such disclosure of such data" would harm specific law enforcement activities; and (2) none of the specified law enforcement agencies "shall knowingly and publicly disclose such

DECONCINI McDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

data." *Id.* The third use of "such data"—especially within three words of the second use of the phrase—clearly refers to all the same "such data." *See Siegel*, 571 U.S. at 422.[7]

Context resolves any doubt as to the plain meaning of "such data." *See FCC v. AT&T Inc.*, 562 U.S. 397, 404 (2011) ("The construction of statutory language often turns on context."). The Appropriations Rider is, of course, focused on appropriations. And an interpretation of "such data" to mean data disclosed pursuant to an appropriation gives the phrase its "ordinary meaning." *Id.*

The Ninth Circuit confirmed this interpretation of the plain text. In analyzing the Appropriations Rider, the Ninth Circuit explained that the Rider and each of its precursors provided that "beginning in the current fiscal year 'and thereafter, no funds appropriated under this or any other Act with respect to any fiscal year may be used to disclose part or all of the contents of the Firearms Trace System database'" and that each "Rider since 2005 also qualified this general 'use of funds prohibition' with varying limitations and exceptions." *Investigative Reporting*, 14 F.4th at 925 (citation omitted). Thus, the Ninth Circuit recognized that each limitation and exception to the Appropriations Rider relates directly to the "use of funds prohibition." *Id.*

The extent of Congress' use of its "power of the purse" to control ATF is to place restrictions and limitations on ATF's disclosure of specified information. But nowhere in

---

[7] Defendants attempt to argue that Congress hid an elephant in a mousehole, *see Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001), and included the prefatory word "all" as a secret extension of the Appropriations Rider to include information "regardless of who possesses the information," Ex. 13, at 4. But the "all" before the third reference to "such data" clearly indicates that the evidentiary limitations apply to both data obtained directly from ATF and to data obtained from one of the law enforcement agencies.

the Appropriations Rider did Congress purport to go beyond using its power of the purse to restrict private actors, such as Defendants, or exempt them from the rules of civil procedure or discovery. If Congress also wanted to restrict gun dealers from disclosing certain information, it could have done so, as it did with law enforcement. *Cf. Robertson v. Seattle Audubon Soc'y*, 503 U.S. 429, 440 (1992) ("Congress nonetheless may amend substantive law in an appropriations statute, as long as it does so clearly."). But Congress chose not to do so. The Court should grant Plaintiff's Motion to Compel.[8]

**B. Any Ambiguity in the Text of the Appropriations Rider Must Be Construed Against Defendants**

Though the text unambiguously establishes that the Appropriations Rider does not restrict Defendants from disclosing information they possess, pursuant to the "canon[] of interpretation" for evidentiary privileges, any ambiguity in the text must be narrowly construed. *Green v. Brennan*, 578 U.S. 547, 553-54 (2016). The Supreme Court has "often recognized that statutes establishing evidentiary privileges must be construed narrowly because privileges impede the search for the truth." *Pierce Cnty. v. Guillen*, 537 U.S. 129, 144-45 (2003) (collecting cases); *see also Baldridge v. Shapiro*, 455 U.S. 345, 360 (1982). Assuming, *arguendo*, that both Plaintiff and Defendants' interpretations are "permissible,"

---

[8] Defendants assert that "ATF is not typically in possession of 'information required to be kept by licensees pursuant to Section 923(g),' and therefore, this statutory language would serve no purpose unless it applied to the records and information maintained by active FFLs on behalf of the ATF." Ex. 13, at 3. But, of course, as Defendants admit on the same page of their letter, ATF often collects information required to be kept by licensees, such as Forms 4473s. Therefore, rather than being superfluous, this statutory language intentionally exempts ATF from disclosing A&D records and Forms 4473s that "are required to be kept by a federal firearms licensee per 923(g)." *Caruso v. United States BATF*, 495 F. App'x 776, 777-78 (9th Cir. 2012).

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

then Plaintiff's "narrower view of the privilege," limiting it only to data that requires the

expenditure of federal funds, is favored. *Guillen*, 537 U.S. at 145.

### C. Precedent Confirms that the Appropriations Rider Only Restricts ATF's Use of Appropriated Funds to Produce Certain Data

In addition to the text, other courts' interpretations of the Appropriations Rider

confirm Plaintiff's common-sense, textual understanding of it. Analyzing an identical

provision in a 2006 version of the Rider, Judge Weinstein held that "such data" refers to

data that ATF may have disclosed using appropriated funds, and "[t]he rider has no

application to data that is not to be disclosed through the use of federally appropriated

funds." *City of New York v. Beretta U.S.A. Corp.*, 429 F. Supp. 2d 517, 526 (E.D.N.Y

2006); *see also City of N.Y. v. A-1 Jewelry & Pawn, Inc.*, No. 06-cv-2233, 2008 U.S. Dist.

LEXIS 8789, at *12 (E.D.N.Y. Feb. 6, 2008) ("nothing in either the 2006 Act prohibits

disclosure, by defendants, of the 4473 Forms and Multiple Sales Forms").[9]

Similarly, the Department of Justice, in an intervention brief in a similar discovery

dispute in Wisconsin, stated the position of the United States that the Appropriations Rider

is an "appropriations rider [that] does not prohibit the discovery of the records of a private

federal firearms licensee. Rather, it is a federal funding restriction that limits ATF's release

of certain information." Ex. 14, at 7 (Memorandum of Intervenor United States of America

in *Lopez et al., v. Badger Guns, Inc., et al.*, No. 10-cv-018530 (Milwaukee County Wis.

Mar. 30, 2012)) (emphasis added). The *Badger* court agreed with the U.S. (and Plaintiff's)

---

[9] Defendants criticize Plaintiff's reliance on case law pre-dating the 2012 Appropriations Rider, Ex. 13, at 4, but every version of the Rider since 2006 contains language virtually identical to the phrase relied on by Defendants. *See* Appendix.

DECONCINI McDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

reading, rejecting virtually identical objections by a firearms dealer to discovery of private FFL records, including trace requests from the ATF possessed by the FFL, and holding that the dealer had to produce "such data" in its possession. Ex. 15, at 4-6 (June 25, 2012, Tr. of Oral Ruling in *Lopez*). ATF also agrees that "an FFL, in response to a request for production, may produce copies of the Forms 4473 maintained by the FFL." *City of N.Y. v. Bob Moates' Sport Shop, Inc.*, 252 F.R.D. 133, 135 (E.D.N.Y. 2008).

The only cases Defendants can muster are inapposite. The trial court decision in *Williams v. Beemiller, Inc.*, 42 Misc. 3d 438, 442 (Erie Cnty. Sup. Ct. 2013)—issued after the court's dismissal was unanimously reversed—is non-binding and did not consider the full text of the Rider. *Beemiller* held that "defendants may not assert the Tiahrt Amendment as a shield to insulate all private business records—including those mandated by 18 USC § 923—simply because ATF may have had access to them." *Id.* at 443. (Defendants have produced virtually no such private business records.) And while the court erroneously held that "trace data" was protected because "all such data 'relates back to the first half of the Amendment,'" *id.* at 441, the court did not consider that the first half of the Appropriations Rider is limited to information disclosed with appropriated funds, or, as the Ninth Circuit subsequently put it, that the "such data" limitation "qualifie[s]" the prefatory "general 'use of funds prohibition,'" *Investigative Reporting*, 14 F.4th at 925.[10]

Defendants also point to a recent district court decision in *Estados Unidos*

---

[10] For the same reasons, Defendants' reliance on another New York state trial court decision, which relied on *Beemiller*, is misplaced. *See* Ex. 16 (*Chiapperini v. Gander Mountain Company, Inc.*, Index No. 14/5717 (Monroe Co. Sup. Ct., Sept. 30, 2016)).

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

*Mexicanos v. Smith & Wesson Brands, Inc.*, but that court only considered trace data <u>from ATF</u>, and held—without the benefit of briefing by the parties—only that an expert witness could not rely on "ATF trace data," including such data disclosed to Mexico under the law enforcement exception to the Rider. No. 21-cv-11269, 2024 U.S. Dist. LEXIS 140194, at *24 (D. Mass. Aug. 7, 2024). Further, that decision may be appealed.

### D. Legislative History, If Considered, Makes Clear That the Appropriations Rider Does Not Apply to Defendants' Documents

Legislative history, if considered, provides even more support for Plaintiff's position. To start, the House Committee on Appropriations report for the operative 2012 Appropriations Rider stated that its "recommendation makes permanent a number of <u>funding prohibitions</u> carried in previous years, related to . . . firearms trace data." H.R. Rep. 112-169, at 55 (2012) (emphasis added). Consistent with Plaintiff's interpretation, the report summarizes the Appropriations Rider as: "language that permanently <u>prohibits expenses to disclose</u> part or all of the contents of the Firearms Trace System database or any information required to be kept by licensees . . . ." *Id.* at 112 (emphasis added).

The history of the earlier iterations of the Rider also demonstrates that it was included specifically to restrict <u>ATF's</u> ability to disclose information. The 2003 original version of the Appropriations Rider, *see* Appendix, was passed to negate a Seventh Circuit decision ordering <u>ATF</u> to disclose information the City of Chicago sought in a FOIA request, *see City of Chi. v. United States Dep't of the Treasury*, 423 F.3d 777, 779 (7th Cir. 2005); *see also* 149 Cong. Rec. S2422 (Feb. 13, 2003) (statement of Sen. Durbin). And the relevant language here—"and all such data shall be immune from legal process and shall

not be subject to subpoena or other discovery in any civil action"—was included in the 2005 version of the Appropriations Rider, *see* Appendix, after the Seventh Circuit held that the prior Riders did not prohibit ATF's disclosure of information so long as the City of Chicago covered ATF's production expenses, *see City of Chi.*, 423 F.3d at 779-780.[11]

Defendants assert that Congress would have wanted to restrict disclosure of information in their possession because the "legislature's intent was to prevent 'widespread disclosure of [sensitive law enforcement] information to the public at large.'" Ex. 13, at 4 (quoting H.R. Rep. 108-576, at 30 (2004)). But the requested documents are not sensitive law enforcement information and discovery production is not necessarily to the public at large. In any event, this Court "cannot replace the actual text with speculation as to Congress' intent." *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 89 (2017) (citation omitted). "Legislation is, after all, the art of compromise, the limitations expressed in statutory terms often the price of passage, and no statute yet known pursues its stated purpose at all costs." *Id.* (cleaned up). And the same Report cited by Defendants states that the Rider was intended "to make clear that <u>ATF</u> shall not make these law enforcement records available to anyone other than to law enforcement agencies for a bona fide criminal investigation." H.R. Rep. 108-576, at 30 (emphasis added). Moreover, given that the Appropriations Rider was originally "slipped into the Appropriations Bill at the last minute," 149 Cong. Rec. S2422 (statement of Sen. Durbin), and "[i]t was not the subject

---

[11] After a different federal court considering information disclosed by ATF held that the prior Riders were not retroactive, *see City of N.Y. v. Beretta U.S.A. Corp.*, 228 F.R.D. 134, 147 (E.D.N.Y. 2005), the 2006 Rider added the evidentiary limitations included in the operative 2012 bill. *See* Appendix.

of hearings," 149 Cong. Rec. H 7241, 7244 (statement of Rep. Moran), determining the subjective desires of the legislature is a fool's errand.

Indeed, in 2006, Congress considered, and refused, to provide Defendants with the restriction they wish the Appropriations Rider provided. Congress rejected legislation that would have included the Appropriations Rider's evidentiary restrictions in Title 18 of the U.S. Code without the appropriations limitations. *See* Appendix (quoting Firearms Corrections and Improvements Act, § 9, H.R. 5005, 109th Cong. (2d Sess. 2006)).

Text, precedent, and legislative history all confirm that nothing in the Appropriations Rider allows Defendants—five private litigants—to shirk their discovery obligations. The Motion to Compel should be granted.

## E. The Appropriations Rider Does Not Provide For the Sweeping Immunity Defendants Claim

Even if there was a basis for holding that the Appropriations Rider applies to some information possessed by Defendants, the Appropriations Rider would still not afford the broad protections Defendants claim. Even excising the "use of funds prohibition," *Investigative Reporting*, 14 F.4th at 925, from the Appropriations Rider, it only covers (1) "the contents of the Firearms Trace System"; and (2) "information required to be kept by licensees pursuant to [18 U.S.C. § 923(g)], or required to be reported pursuant to [§ 923(g)(3), (7)]." 125 Stat. at 609. The Rider could not shield other documents, such as emails exchanged between Defendants and ATF, Forms 5030.5, and Defendants' invoices, that are not part of the Firearms Trace System database and are not required to be kept or reported under § 923(g). For example, ATF trace requests and "communication between

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

ATF and any Defendant addressing information about a particular firearm transaction and/or possibly pertaining to a firearm associated with a criminal" are not part of the Firearms Trace System. Ex. 13, at 3. There is no basis to withhold these documents.

## II. THE ARIZONA AUDIT PRIVILEGE DOES NOT APPLY HERE

Defendants separately incorrectly claim that "the Arizona Audits Reports Privilege" applies and have withheld ATF Forms 5030.5 (Reports of Violations) and correspondence between Defendants and ATF or other law enforcement agencies on that basis. *See* Exs. 7-11. Arizona's Health and Safety Audit Privilege Act states that "[e]xcept as provided in sections 12-2324, 12-2325 and 12-2326, any part of an audit report conducted by an organization is privileged and is not admissible as evidence or subject to discovery." A.R.S. § 12-2323(A). Defendants have failed to meet their burden of establishing the privilege's applicability. *Id.* § 12-2323(E).

*First*, A.R.S. § 12-2323(A) only applies to a formal audit "that relates to <u>occupational</u> health, health or safety." A.R.S. § 12-2321(3) (emphasis added). The Arizona legislature deliberately limited this privilege to occupational health and safety; as introduced, the bill applied to "occupational health or public health or safety," but an amendment to the bill struck "*public*."[12] None of the withheld documents relate to

---

[12] Floor Amendment Explanation, Crandell Floor Amendment, H.B. 2485, Health and Safety Audit Privilege, 51st Cong., 1st Reg. Sess. (Ariz. April 9, 2013), *available at* https://www.azleg.gov/legtext/51leg/1R/adopted/2485CRANDELL1128.pdf; *see also* Fact Sheet for H.B. 2485, Health and Safety Audit Privilege, 51st Cong., 1st Reg. Sess. (Ariz. April 15, 2013), *available at* https://www.azleg.gov/legtext/51leg/1r/summary/s.2485ps_aspassed.pdf (explaining that the background of the bill was the federal and state "Occupational Safety and Health" standards for employee "occupational safety and health.").

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

occupational health or safety.

*Second*, the privilege only applies to "an audit report conducted by an organization," A.R.S. § 12-2323(A), which does not include a government agency, *see id.* § 12-2321(4). So audits and inspections conducted by ATF are not protected.

*Third*, the privilege "does not apply to . . . information required by a regulatory agency to be collected, developed, maintained or reported" or "[i]nformation obtained by observation, sampling or monitoring by a regulatory agency." *Id.* § 12-2326(A). But Defendants' argument that the Appropriations Rider also applies is predicated on the documents being "information required to be kept by licensees" or "required to be reported" by § 923(g). 125 Stat. at 609. And Form 5030.5, ATF's Report of Violations, is based on ATF's observation during an inspection of the FFL. *See, e.g.*, *Lumber Jack Bldg. Ctrs. v. Alexander*, 536 F. Supp. 2d 804, 805 (E.D. Mich. 2008).[13]

*Fourth*, Defendants have waived the privilege over documents shared with ATF as they have not produced a "confidentiality agreement." A.R.S. § 12-2324(B)(3).[14]

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's Motion and order Defendants to produce the responsive documents.

---

[13] "[I]f the court finds that [Defendants] intentionally or knowingly claimed the privilege for nonprivileged materials prescribed in § 12-2326," they could be "subject to sanctions" or a civil penalty of up to $10,000. A.R.S. § 12-2325(D).

[14] If the Court were inclined to hold that Defendants met their burden, Plaintiff requests the opportunity to establish that the documents would show "evidence of noncompliance with a health or safety law and [that] appropriate efforts to achieve compliance with the law were not promptly initiated and pursued with reasonable diligence after the discovery of the noncompliance." A.R.S. § 12-2325(A).

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

1   Respectfully submitted this 13th day of September 2024

2                                        DeConcini McDonald Yetwin & Lacy, P.C.

3
                                         By: /s/*Ryan O'Neal*
4                                              Ryan O'Neal
5                                              2525 E. Broadway Blvd., Suite 200
                                               Tucson, AZ 85716-5300
6                                              Attorneys for Plaintiff

7

8

9   /s/ Steve D. Shadowen              /s/ Jonathan E. Lowy
    Steve D. Shadowen (*pro hac vice*)  Jonathan E. Lowy (*pro hac vice*)
10  Tina J. Miranda (*pro hac vice*)    Yaacov (Jake) Meiseles (*pro hac vice*)
    Nicholas W. Shadowen (*pro hac vice*)  Global Action on Gun Violence
11  SHADOWEN PLLC                       805 15th Street NW
12  1717 W. 6th Street, Suite 290       #601
    Austin, TX 78703                    Washington, DC 20005
13  Phone: 855-344-3298                 Phone: (202) 415-0691
14  sshadowen@shadowenpllc.com          jlowy@actiononguns.org
    tmiranda@shadowenpllc.com           jmeiseles@actiononguns.org
15  nshadowen@shadowenpllc.com
16

17

18

19

20

21

22

23

24

25

26

27

28

DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

1

**CERTIFICATE OF SERVICE**

2

    I, Ryan O'Neal, hereby certify that this document was filed with the Clerk of the

3

Court via CM/ECF. Those attorneys who are registered with the Court's electronic filing

4

systems may access this filing through the Court's CM/ECF system, and notice of this

5

filing will be sent to these parties by operation of the Court's electronic filings system.

6

7

Dated: September 13, 2024             /s/ *Ryan O'Neal*

8

                                  Ryan O'Neal

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECONCINI McDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

**Statutory Appendix**

**2003 Tiahrt Rider**

**Consolidated Appropriations Resolution, 2003, Pub. L. No. 108-7, 117 Stat. 11, 473-74 (2003)**

SEC. 644. No funds appropriated under this Act or any other Act with respect to any fiscal year shall be available to take any action based upon any provision of 5 U.S.C. 552 with respect to records collected or maintained pursuant to 18 U.S.C. 846(b), 923(g)(3) or 923(g)(7), or provided by Federal, State, local, or foreign law enforcement agencies in connection with arson or explosives incidents or the tracing of a firearm, except that such records may continue to be disclosed to the extent and in the manner that records so collected, maintained, or obtained have been disclosed under 5 U.S.C. 552 prior to the date of the enactment of this Act.

**2004 Tiahrt Rider**

**Consolidated Appropriations Act, 2004, Pub. L. No. 108-199, 118 Stat. 3, 53 (2004)**

*Provided further*, That no funds appropriated under this or any other Act may be used to disclose to the public the contents or any portion thereof of any information required to be kept by licensees pursuant to section 923(g) of title 18, United States Code, or required to be reported pursuant to paragraphs (3) and (7) of section 923(g) of title 18, United States Code, except that this provision shall apply to any request for information made by any person or entity after January 1, 1998.

**2005 Tiahrt Rider**

**Consolidated Appropriations Act, 2005, Pub. L. No. 108-447, 118 Stat. 2809, 2859-60 (2004)**

*Provided further*, That no funds appropriated under this or any other Act with respect to any fiscal year may be used to disclose part or all of the contents of the Firearms Trace System database maintained by the National Trace Center of the Bureau of Alcohol, Tobacco, Firearms, and Explosives or any information required to be kept by licensees pursuant to section 923(g) of title 18, United States Code, or required to be reported pursuant to paragraphs (3) and (7) of such section 923(g), to anyone other than a Federal, State, or local law enforcement agency or a prosecutor solely in connection with and for use in a bona fide criminal investigation or prosecution and then only such information as pertains to the geographic jurisdiction of the law enforcement agency requesting the

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

disclosure and not for use in any civil action or proceeding other than an action or proceeding commenced by the Bureau of Alcohol, Tobacco, Firearms, and Explosives, or a review of such an action or proceeding, to enforce the provisions of chapter 44 of such title, and all such data shall be immune from legal process and shall not be subject to subpoena or other discovery in any civil action in a State or Federal court or in any administrative proceeding other than a proceeding commenced by the Bureau of Alcohol, Tobacco, Firearms, and Explosives to enforce the provisions of that chapter, or a review of such an action or proceeding; except that this proviso shall not be construed to prevent the disclosure of statistical information concerning total production, importation, and exportation by each licensed importer (as defined in section 921(a)(9) of such title) and licensed manufacturer (as defined in section 921(a)(10) of such title).

## 2006 Tiahrt Rider

**Science, State, Justice, Commerce, and Related Agencies Appropriations Act, 2006, Pub. L. No. 109-108, 119 Stat. 2290, 2295-96 (2006)**

*Provided further*, That no funds appropriated under this or any other Act with respect to any fiscal year may be used to disclose part or all of the contents of the Firearms Trace System database maintained by the National Trace Center of the Bureau of Alcohol, Tobacco, Firearms and Explosives or any information required to be kept by licensees pursuant to section 923(g) of title 18, United States Code, or required to be reported pursuant to paragraphs (3) and (7) of such section 923(g), to anyone other than a Federal, State, or local law enforcement agency or a prosecutor solely in connection with and for use in a bona fide criminal investigation or prosecution and then only such information as pertains to the geographic jurisdiction of the law enforcement agency requesting the disclosure and not for use in any civil action or proceeding other than an action or proceeding commenced by the Bureau of Alcohol, Tobacco, Firearms and Explosives, or a review of such an action or proceeding, to enforce the provisions of chapter 44 of such title, and all such data shall be immune from legal process and shall not be subject to subpoena or other discovery, shall be inadmissible in evidence, and shall not be used, relied on, or disclosed in any manner, nor shall testimony or other evidence be permitted based upon such data, in any civil action pending on or filed after the effective date of this Act in any State (including the District of Columbia) or Federal court or in any administrative proceeding other than a proceeding commenced by the Bureau of Alcohol, Tobacco, Firearms and Explosives to enforce the provisions of that chapter, or a review of such an action or proceeding; except that this proviso shall not be construed to prevent the disclosure of statistical information concerning total production, importation, and exportation by each licensed importer (as defined in section 921(a)(9) of such title) and licensed manufacturer (as defined in section 921(a)(10) of such title).

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

## 2006 Failed Legislation to Codify Tiahrt

**Firearms Corrections and Improvements Act, § 9, H.R. 5005, 109th Cong. (2d Sess. 2006)**

SEC. 9. TRACE DISCLOSURE

Section 923(g) of title 18, United States Code, is amended by adding at the end the following:

"(8)(A) Information required to be kept by licensees pursuant to this subsection, or required to be reported pursuant to paragraphs (3) and (7) of this subsection, and information in the firearms trace system database maintained by the National Trace Center of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, shall not be—

"(i) disclosed to any entity, except to a Federal, State, local, or foreign law enforcement agency or a Federal, State, or local prosecutor solely in connection with and for use in a bona fide criminal investigation or prosecution, and only to the extent that the information pertains to the geographic jurisdiction of the law enforcement agency or prosecutor requesting the disclosure; or

"(ii) made available for use in any civil action or proceeding other than—

"(I) an action or proceeding commenced by the Attorney General to enforce this chapter; or

"(II) a review of such an action or proceeding.

"(B) The information described in subparagraph (A) shall be immune from legal process, shall not be subject to subpoena or other discovery, and shall not be admissible as evidence, and testimony or other evidence relying on the information shall not be admissible, in any civil action in a State or Federal court, or in any administrative proceeding other than a proceeding commenced by the Bureau of Alcohol, Tobacco, Firearms, and Explosives to enforce this chapter, or a review of such an action or proceeding.

"(C) This subsection shall not be construed to prevent the disclosure of statistical information concerning total production, importation, and exportation by each licensed importer and licensed manufacturer."

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

**2008 Tiahrt Rider**

**Consolidated Appropriations Act, 2008, Pub. L. No. 110-161, 121 Stat. 1844, 1903-04 (2007)**

*Provided further*, That, beginning in fiscal year 2008 and thereafter, no funds appropriated under this or any other Act may be used to disclose part or all of the contents of the Firearms Trace System database maintained by the National Trace Center of the Bureau of Alcohol, Tobacco, Firearms and Explosives or any information required to be kept by licensees pursuant to section 923(g) of title 18, United States Code, or required to be reported pursuant to paragraphs (3) and (7) of such section 923(g), except to: (1) a Federal, State, local, tribal, or foreign law enforcement agency, or a Federal, State, or local prosecutor, solely in connection with and for use in a criminal investigation or prosecution; or (2) a Federal agency for a national security or intelligence purpose; and all such data shall be immune from legal process, shall not be subject to subpoena or other discovery, shall be inadmissible in evidence, and shall not be used, relied on, or disclosed in any manner, nor shall testimony or other evidence be permitted based on the data, in a civil action in any State (including the District of Columbia) or Federal court or in an administrative proceeding other than a proceeding commenced by the Bureau of Alcohol, Tobacco, Firearms and Explosives to enforce the provisions of chapter 44 of such title, or a review of such an action or proceeding; except that this proviso shall not be construed to prevent: (A) the disclosure of statistical information concerning total production, importation, and exportation by each licensed importer (as defined in section 921(a)(9) of such title) and licensed manufacturer (as defined in section 921(a)(10) of such title); (B) the sharing or exchange of such information among and between Federal, State, local, or foreign law enforcement agencies, Federal, State, or local prosecutors, and Federal national security, intelligence, or counterterrorism officials; or (C) the publication of annual statistical reports on products regulated by the Bureau of Alcohol, Tobacco, Firearms and Explosives, including total production, importation, and exportation by each licensed importer (as so defined) and licensed manufacturer (as so defined), or statistical aggregate data regarding firearms traffickers and trafficking channels, or firearms misuse, felons, and trafficking investigations.

**2009 Tiahrt Rider**

**Omnibus Appropriations Act, 2009, Pub. L. No. 111-8, 123 Stat. 524, 575-76 (2009)**

*Provided further*, That, beginning in fiscal year 2009 and thereafter, no funds appropriated under this or any other Act may be used to disclose part or all of the contents of the Firearms Trace System database maintained by the National Trace Center of the Bureau of Alcohol, Tobacco, Firearms and Explosives or any information required to be kept by licensees pursuant to section 923(g) of title 18, United States Code, or required to be

DeCONCINI McDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

reported pursuant to paragraphs (3) and (7) of such section 923(g), except to: (1) a Federal, State, local, tribal, or foreign law enforcement agency, or a Federal, State, or local prosecutor, solely in connection with and for use in a criminal investigation or prosecution; or (2) a Federal agency for a national security or intelligence purpose; and all such data shall be immune from legal process, shall not be subject to subpoena or other discovery, shall be inadmissible in evidence, and shall not be used, relied on, or disclosed in any manner, nor shall testimony or other evidence be permitted based on the data, in a civil action in any State (including the District of Columbia) or Federal court or in an administrative proceeding other than a proceeding commenced by the Bureau of Alcohol, Tobacco, Firearms and Explosives to enforce the provisions of chapter 44 of such title, or a review of such an action or proceeding; except that this proviso shall not be construed to prevent: (A) the disclosure of statistical information concerning total production, importation, and exportation by each licensed importer (as defined in section 921(a)(9) of such title) and licensed manufacturer (as defined in section 921(a)(10) of such title); (B) the sharing or exchange of such information among and between Federal, State, local, or foreign law enforcement agencies, Federal, State, or local prosecutors, and Federal national security, intelligence, or counterterrorism officials; or (C) the publication of annual statistical reports on products regulated by the Bureau of Alcohol, Tobacco, Firearms and Explosives, including total production, importation, and exportation by each licensed importer (as so defined) and licensed manufacturer (as so defined), or statistical aggregate data regarding firearms traffickers and trafficking channels, or firearms misuse, felons, and trafficking investigations.

## 2010 Tiahrt Rider

**Consolidated Appropriations Act, 2010, Pub. L. No. 111-117, 123 Stat. 3034, 3128-29 (2009)**

*Provided further*, That, beginning in fiscal year 2010 and thereafter, no funds appropriated under this or any other Act may be used to disclose part or all of the contents of the Firearms Trace System database maintained by the National Trace Center of the Bureau of Alcohol, Tobacco, Firearms and Explosives or any information required to be kept by licensees pursuant to section 923(g) of title 18, United States Code, or required to be reported pursuant to paragraphs (3) and (7) of such section 923(g), except to: (1) a Federal, State, local, or tribal law enforcement agency, or a Federal, State, or local prosecutor; or (2) a foreign law enforcement agency solely in connection with or for use in a criminal investigation or prosecution; or (3) a Federal agency for a national security or intelligence purpose; unless such disclosure of such data to any of the entities described in (1), (2) or (3) of this proviso would compromise the identity of any undercover law enforcement officer or confidential informant, or interfere with any case under investigation; and no person or entity described in (1), (2) or (3) shall knowingly and publicly disclose such data; and all such data shall be immune from legal process,

shall not be subject to subpoena or other discovery, shall be inadmissible in evidence, and shall not be used, relied on, or disclosed in any manner, nor shall testimony or other evidence be permitted based on the data, in a civil action in any State (including the District of Columbia) or Federal court or in an administrative proceeding other than a proceeding commenced by the Bureau of Alcohol, Tobacco, Firearms and Explosives to enforce the provisions of chapter 44 of such title, or a review of such an action or proceeding; except that this proviso shall not be construed to prevent: (A) the disclosure of statistical information concerning total production, importation, and exportation by each licensed importer (as defined in section 921(a)(9) of such title) and licensed manufacturer (as defined in section 921(a)(10) of such title); (B) the sharing or exchange of such information among and between Federal, State, local, or foreign law enforcement agencies, Federal, State, or local prosecutors, and Federal national security, intelligence, or counterterrorism officials; or (C) the publication of annual statistical reports on products regulated by the Bureau of Alcohol, Tobacco, Firearms and Explosives, including total production, importation, and exportation by each licensed importer (as so defined) and licensed manufacturer (as so defined), or statistical aggregate data regarding firearms traffickers and trafficking channels, or firearms misuse, felons, and trafficking investigations.

## 2012 Tiahrt Rider

Consolidated and Further Continuing Appropriations Act, 2012, Pub. L. No. 112-55, 125 Stat. 552, 609-10 (2011)

Provided further, That, during the current fiscal year and in each fiscal year thereafter, no funds appropriated under this or any other Act may be used to disclose part or all of the contents of the Firearms Trace System database maintained by the National Trace Center of the Bureau of Alcohol, Tobacco, Firearms and Explosives or any information required to be kept by licensees pursuant to section 923(g) of title 18, United States Code, or required to be reported pursuant to paragraphs (3) and (7) of such section, except to: (1) a Federal, State, local, or tribal law enforcement agency, or a Federal, State, or local prosecutor; or (2) a foreign law enforcement agency solely in connection with or for use in a criminal investigation or prosecution; or (3) a Federal agency for a national security or intelligence purpose; unless such disclosure of such data to any of the entities described in (1), (2) or (3) of this proviso would compromise the identity of any undercover law enforcement officer or confidential informant, or interfere with any case under investigation; and no person or entity described in (1), (2) or (3) shall knowingly and publicly disclose such data; and all such data shall be immune from legal process, shall not be subject to subpoena or other discovery, shall be inadmissible in evidence, and shall not be used, relied on, or disclosed in any manner, nor shall testimony or other evidence be permitted based on the data, in a civil action in any State (including the District of Columbia) or Federal court or in an administrative proceeding other than a proceeding commenced by the Bureau of Alcohol, Tobacco, Firearms and Explosives to

enforce the provisions of chapter 44 of such title, or a review of such an action or proceeding; except that this proviso shall not be construed to prevent: (A) the disclosure of statistical information concerning total production, importation, and exportation by each licensed importer (as defined in section 921(a)(9) of such title) and licensed manufacturer (as defined in section 921(a)(10) of such title); (B) the sharing or exchange of such information among and between Federal, State, local, or foreign law enforcement agencies, Federal, State, or local prosecutors, and Federal national security, intelligence, or counterterrorism officials; or (C) the publication of annual statistical reports on products regulated by the Bureau of Alcohol, Tobacco, Firearms and Explosives, including total production, importation, and exportation by each licensed importer (as so defined) and licensed manufacturer (as so defined), or statistical aggregate data regarding firearms traffickers and trafficking channels, or firearms misuse, felons, and trafficking investigations.