DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300
(520) 322-5000

Ryan O'Neal (AZ # 031919)
roneal@dmyl.com
Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Estados Unidos Mexicanos,<br>*Plaintiff*<br><br>*vs.*<br><br>Diamondback Shooting Sports, Inc.,<br>*et al.*,<br><br>*Defendants* | **PLAINTIFF'S REPLY IN SUPPORT OF ITS CONSOLIDATED MOTION TO COMPEL**<br><br>**Oral Argument Requested**<br><br>No. 4:22-cv-00472-TUC-RM |

Plaintiff Estados Unidos Mexicanos submits this Reply to Defendants' Response (ECF 95) ("Opp.") to Plaintiff's Consolidated Motion to Compel (ECF 89) ("Mot.").

Defendants "bear[] the burden of persuasion" to show that discovery of relevant information should not be allowed. *Roehrs v. Minn. Life Ins. Co.*, 228 F.R.D. 642, 645 (D. Ariz. 2005); *see also United States v. Abrahams*, 905 F.2d 1276, 1283 (9th Cir. 1990). But Defendants do not come close to meeting their burden of showing that the Appropriations Rider[1] entitles private FFLs to deny Plaintiff its "broad right of discovery." *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993). Instead, Defendants set forth an interpretation of the Appropriations Rider that ignores the plain text, the appropriations context, the evidentiary

---

[1] Defined terms and references to exhibits are the same as in Plaintiff's Motion.

DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

privilege rule, the deference owed to the Department of Justice and ATF, the ample precedent rejecting their interpretation, and the relevant legislative history. Similarly, Defendants ignore three of the four reasons why Arizona's audit privilege does not apply, and present meritless arguments on the fourth. The Court should grant the Motion.

**ARGUMENT**

## I.  THE APPROPRIATIONS RIDER DOES NOT APPLY HERE
### A. Defendants' Textual Arguments Are Baseless

Appropriations riders, or limitations, are "amendments to an appropriations bill which 'prohibit the use of money for part of the [bill's] purpose while appropriating for the remainder of it.'" Neal E. Devins, *Regulation of Government Agencies Through Limitation Riders*, 1987 Duke L.J. 456, 461 (1987). Riders "are distinct from legislative provisions, which have the effect of either making new law or changing existing law"[2] and can be "distinguishe[d]" because riders begin with a negative phrasing limiting the use of funds.[3]

The Appropriations Rider is one such rider. (Mot. at 5-10.) It begins with a negative restriction on ATF's funding: "no funds appropriated . . . may be used to disclose part or all of the contents of the Firearms Trace System database," "or any information required to be kept by licensees pursuant to [18 U.S.C. § 923(g)], or required to be reported pursuant to [§ 923(3), (7)]." Consol. and Further Continuing Approp. Act, 2012, Pub. L. No. 112-55, 125 Stat. 552, 609 (2011). The Rider then provides exceptions allowing ATF to use

---

[2] Cong. Research Serv., R41634, *Limitations in Appropriations Measures: An Overview of Procedural Issues* 2 (Updated May 16, 2023).

[3]  Jacqueline Lash & Brady Cassis, *The Use and Misuse of Appropriations Riders* 5 (Harvard L. Sch. Briefing Papers on Fed. Budget Pol'y, No. 50) (May 10, 2015).

DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

appropriated funds to disclose those three categories of information to specified law enforcement entities. *See id.* Next, it carves out exceptions to the law enforcement exceptions for when disclosure of "such data"—that is, the three categories of data disclosed by ATF using appropriated funds—would impede law enforcement. *Id.* at 609-610. It then restricts the law enforcement entities to whom the exceptions apply from disclosing "such data" disclosed by ATF. *Id.* at 610. Finally, the Rider provides an evidentiary limitation on "all such data"; as relevant here, the data are immune from legal process and not subject to discovery. The third use of "such data" has the same meaning as the earlier uses of the phrase; it refers to the same "such data" disclosed by ATF with appropriated funds. *See Slack Techs., LLC v. Pirani*, 598 U.S. 759, 766-67 (2023).

This interpretation makes sense as each part of the Appropriations Rider relates to appropriations. Congress restricted ATF from using appropriated funds to disclose three categories of data except to law enforcement, and then placed limitations on that data, if disclosed by ATF, not allowing the data to be used in litigation. Defendants' interpretation excises the funding limitation, which is contrary to the text, and ignores the appropriations context. Indeed, the Ninth Circuit agrees with Plaintiff that the Rider, like all such riders, contains a "general 'use of funds prohibition' with varying limitations and exceptions." *Ctr. for Investigative Reporting v. United States DOJ*, 14 F.4th 916, 925 (9th Cir. 2021).[4]

Defendants' discussion of the Appropriations Rider (Opp. at 5-9) contains four

---

[4] Though *Investigative Reporting* considered a different issue, (Opp. at 16), it comprehensively analyzed each provision in each version of the Rider and interpreted it the same as Plaintiff. *See* 14 F.4th at 924-26. In any event, "[w]ell-reasoned dicta is the law of the circuit." *Enying Li v. Holder*, 738 F.3d 1160, 1164 n.2 (9th Cir. 2013).

incorrect arguments as to why it applies outside the appropriations context to data possessed by private FFLs. <u>First</u>, Defendants argue that "[t]here is no qualifying language providing that the information required to be kept by licensees must also be in the possession of the ATF to trigger protection." (Opp. at 6-7.) Not so. The Appropriations Rider states "no funds appropriated under this or any other Act may be used to disclose part or all of the contents of the Firearms Trace System database . . . or any information required to be kept by licensees . . ." 125 Stat. at 609. Without the "no funds appropriated" qualifier, the clause "any information required to be kept by licensees" has no meaning.

<u>Second</u>, though Defendants incorrectly cast away the Ninth Circuit's comprehensive analysis of the Appropriations Rider because *Investigative Reporting* "involved a FOIA request to ATF," (Opp. at 16), Defendants rely extensively (*id.* at 7-8, 11-12) on *City of Chicago v. U.S. Dep't of Treasury, Bureau of Alcohol, Tobacco & Firearms*, which also involved "a FOIA request to ATF." 423 F.3d 777, 778 (7th Cir. 2005). In fact, both of those cases support Plaintiff. As Plaintiff argues here, *Chicago* held that "the clear antecedent to the phrase 'such data'" is all the data referenced earlier in the Rider. *Id.* at 780-81. *Chicago* concerned information requested from ATF and, therefore, had no need to mention the prefatory "no funds appropriated" antecedent. 125 Stat. at 609.[5]

<u>Third</u>, even assuming *arguendo* that the passive voice in the Rider's discovery limitation clause "pulls the actor off the stage," *Bartenwerfer v. Buckley*, 598 U.S. 69, 75

---

[5] Defendants' assertion (Opp. at 3-4) that emails responding to trace requests are "covered by the Tiahrt Amendment" is incorrect, as they are not kept in the trace database. *See, e.g.*, *Investigative Reporting*, 14 F.4th at 923 (summarizing contents of the trace database).

DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

(2023), Defendants identify the wrong actor, (Opp. at 8-9). At most, the passive voice indicates that Congress was "agnostic," *id.*, as to the <u>user</u> of "such data" in litigation, i.e., who sends the subpoena or introduces the evidence. But what data comprise "such data" is not in passive voice; it refers to the data described in the Rider's earlier clauses.

<u>Fourth</u>, the second of the three exceptions at the end of the Rider is not superfluous. (Opp. at 9-10, 14-15.) It reads: "except that this proviso [the Rider] shall not be construed to prevent . . . (B) the sharing or exchange of such information among and between [law enforcement]." 125 Stat. at 610.[6] Without this exception, the Rider's restrictions on law enforcement "knowingly and publicly disclos[ing] such data," 125 Stat. at 610, could be construed to preclude law enforcement from sharing with each other information received from ATF using appropriated funds.[7] So the exception was added "to dispel confusion as to whether localities may share trace information amongst themselves." Angela Jacqueline Tang, *Taking Aim at Tiahrt*, 50 Wm. & Mary L. Rev. 1787, 1815 (2009).

Defendants relegate four additional meritless textual arguments to the end of their opposition.[8] (Opp. 13-15.) <u>First</u>, Plaintiff's interpretation does not render the "information required to be kept by licensees" clause superfluous. (Opp. at 14.) During investigations, ATF collects forms required to kept by FFLs, and, "[w]hen an FFL goes out of business,

---

[6] Defendants wrongly assert that this exception "relate[s] to the use of statistical information." (Opp. at 9.) Exception (B) modifies the "such information" described prior to the "except"; it does not modify the first exception.

[7] Though Defendants repeatedly misconstrue Plaintiff's interpretation as limiting the Rider to a restriction on "federal funding," (Opp. at 15; *see also id.* at 12), it also restricts law enforcement from disclosing information received from ATF with appropriated funds.

[8] Defendants list five arguments, but the argument about the exception for law enforcement exchanging information is repeated as their third argument and so not addressed again.

DECONCINI McDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

the ATF Forms 4473 and [A&D] records are sent to an ATF warehouse." Ex. 13 at 3 n.2.[9] In fact, the Ninth Circuit has invoked the clause to exempt ATF from disclosing Forms 4473 and A&D records because they "are required to be kept by a federal firearms licensee per 923(g)." *Caruso v. United States BATF*, 495 F. App'x 776, 778 (9th Cir. 2012).

<u>Second</u>, even though ATF might not be subject to suit or subpoena in state court (Opp. at 14), the Rider's inclusion of state court proceedings is not superfluous. For example, were this case in state court, the Appropriations Rider could still apply to information Plaintiff received from ATF pursuant to the law enforcement exceptions or information requested pursuant to a FOIA or *Touhy* request.

<u>Next</u>, Defendants argue that Congress "modified the Tiahrt Amendment" to extend the protections afforded to ATF data in its appropriations bill to thousands of private FFLs "by adding semi-colons in 2008." (Opp. at 6 n.3, 15.) But Congress does not "hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001).[10]

<u>Finally</u>, Defendants' argument that it would be unauthorized "surgery" to interpret the Appropriations Rider as applying to appropriations because the funding limitation is referenced only "one time" (Opp. at 15) ignores that this prefatory negative funding limitation is exactly how Congress drafts appropriations riders. Lash & Cassis, *supra* n.3.

## B.  Between Two Reasonable Interpretations, Plaintiff's Would Control

[9] During the parties' meet and confer, Defendants' counsel represented that many relevant ATF forms were sent to ATF when certain Defendants received new licenses.

[10] Moreover, the Committee "recommend[ed] bill language similar to previous years . . . prohibit[ing] funding to be used to disclose certain firearms trace data." H.R. Rep. 110-240, at 63 (2007). The Ninth Circuit has also rejected the argument that "all such data" is unmoored from the funding limitation. *Investigative Reporting*, 14 F.4th at 925.

DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

Defendants completely ignore two independent textual reasons why Plaintiff's interpretation controls—even if Defendants' interpretation were also reasonable.

<u>First</u>, Defendants ignore the Supreme Court's rule "that statutes establishing evidentiary privileges must be construed narrowly because privileges impede the search for the truth." (Mot. at 10-11 (quoting *Pierce Cnty. v. Guillen*, 537 U.S. 129, 144-45 (2003).) Thus, Plaintiff's "narrower view of the privilege" controls. (*Id.*)

<u>Second</u>, Defendants ignore the Department of Justice and ATF's explanations (Mot. at 11-12) that the "appropriations rider does not prohibit the discovery of the records of a private federal firearms licensee." Ex. 14, at 7. Under *Skidmore* deference, the "executive [branch's] thorough, reasoned, and consistent guidance on this question provides additional persuasive evidence of the [Rider's] probable, if not plain, meaning." *Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. United States Dep't of Homeland Sec.*, 107 F.4th 1064, 1085 (9th Cir. 2024) (Johnstone, J., concurring) (citations omitted); *California v. Azar*, 950 F.3d 1067, 1085-90 (9th Cir. 2020) (deferring to agency interpretation of appropriations rider).

## C. Defendants' Precedent Arguments Are Baseless

Defendants completely ignore the only federal court decisions to consider the scope of discovery under the Appropriations Rider. (Mot. at 11 (citing *City of New York v. Beretta U.S.A. Corp.*, 429 F. Supp. 2d 517, 526 (E.D.N.Y 2006); *City of N.Y. v. A-1 Jewelry & Pawn, Inc.*, No. 06-cv-2233, 2008 U.S. Dist. LEXIS 8789, at *12 (E.D.N.Y. Feb. 6, 2008).) Defendants also ignore the decision in *Lopez et al., v. Badger Guns, Inc., et al.*, No. 10-cv-018530 (Milwaukee County Wis. June 25, 2012), which likewise completely rejected their interpretation of the Rider. (Mot. at 11-12 (citing Ex. 15, at 4-6).)

Instead, Defendants rely heavily on *Williams v. Beemiller, Inc.*, 42 Misc. 3d 438 (Erie Cnty. Sup. Ct. 2013), which is not persuasive (Mot. at 12) because unlike *Beretta*, *A-1*, and *Badger*, it did not consider that the "such data" limitation "qualifie[s]" the prefatory "general 'use of funds prohibition.'" *Investigative Reporting*, 14 F.4th at 925.

In any event, *Beemiller* actually supports Plaintiff, as it held that the Rider does not "insulate all private business records—including those mandated by 18 USC § 923— simply because the ATF may have had access to them." *Id.* at 443. In *Beemiller*, "Plaintiffs' evidentiary submissions" included "copies of the . . . Form 4473 for each transaction." *Williams v. Beemiller, Inc.*, 159 A.D.3d 148, 154 (App. Div. 4th Dept. 2018). Thus, Defendants' authority mandates that they produce ATF forms, such as Forms 4473s.[11]

## D.  Defendants' Appeals to Legislative History Are Unpersuasive

Defendants' arguments can be boiled down to a request that the Court write into the Appropriations Rider a protection that Congress did not grant them. Defendants acknowledge that the original 2003 version "directly reference[d]" FOIA. (Opp. at 10.) They also acknowledge that "Congress enacted the Tiahrt Riders and strengthened the antidisclosure language in response to judicial decisions that subjected [firearms trace system] data to FOIA disclosure." (*Id.* (citation omitted).) But Defendants cherry-pick from the legislative history of the 2004 and 2005 Riders, extrapolate that Congress was allegedly "concerned about" disclosure of "records in the possession of ATF *and* FFLs," and ask the

---

[11] Defendants acknowledge that the other New York state trial court decision they rely on, *Chiapperini v. Gander Mountain Company, Inc.*, Index No. 14/5717 (Monroe Co. Sup. Ct., Sept. 30, 2016), considered *Beemiller* to be "highly persuasive," (Opp. at 13 (quoting Ex. 16, at 13)), and, like *Beemiller*, it did not consider the entirety of the Appropriations Rider.

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

Court to rewrite the Rider accordingly.[12] (Opp. at 11-12.)

To start, though Defendants have argued that "any reference to prior iterations [of the Rider] are not relevant," Ex. 13 at 2, Defendants ignore the legislative history of the 2012 operative Rider (Mot. at 13), which stated that it "makes permanent a number of <u>funding prohibitions</u> carried in previous years, related to . . . firearms trace data," H.R. Rep. 112-169, at 55 (2012) (emphasis added), and that the Rider "permanently <u>prohibits expenses to disclose</u> part or all of the contents of the Firearms Trace System database or any information required to be kept by licensees . . . ." *Id.* at 112 (emphasis added).

In any event, the 2004 and 2005 legislative histories show only that Congress considered disclosure of information from ATF. Defendants argue that the changes from the 2003 Rider, which referenced FOIA, and the 2004 Rider, which did not reference FOIA, indicate that Congress intended to "broaden[]" the Appropriations Rider to include private FFLs. (Opp. at 10-11.) But neither the text (which has the same funding limitation as the operative Rider), nor legislative history indicate that Congress intended to make such a major change. Defendants rely exclusively on Senator Jack Reed's statement in opposition, which noted that the Appropriations Rider "prohibits release of any information regarding firearms production or sale that is required to be kept by gun dealers or manufacturers," but ignore his explanation that he meant <u>ATF</u> releasing such information: "ATF has in the past made this information available under [FOIA]." 150 Cong. Rec. S71 (Jan. 21, 2004). Further, the Supreme Court discounts "reliance upon the views of [a bill's]

---

[12] *But see United States v. McIntosh*, 833 F.3d 1163, 1178 (9th Cir. 2016) (rejecting consideration of "expressions of intent in legislative history" of an appropriations rider).

DeCONCINI McDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

1  legislative opponents." *NLRB v. Fruit Packers*, 377 U.S. 58, 66 (1964).

2  Defendants also highlight isolated statements that the 2005 Rider was "not related

3  to budgetary considerations" and was concerned with "the privacy of business records."

4  (Opp. at 10-11.). But the Committee expressly intended to restrict ATF disclosure of such

5  records; the revisions responded to the Seventh Circuit holding that, under the 2004 Rider,

6  ATF still had to provide requested data to Chicago if the City covered ATF's production

7  expenses. *See Chicago*, 423 F.3d at 779. Defendants acknowledge that Congress revised

8  the Rider because of the "recent actions in Federal courts"—which did not involve FFLs.

9  H.R. Rep. 108-576, at 30 (2004).[13] And the Committee explained that it was including

10 "language to make clear that <u>ATF shall not make these law enforcement records available</u>

11 . . . ." *Id.* at 30 (emphasis added). Congress did what it said and closed the loophole allowing

12 ATF disclosure if the City paid; it did not "tuck[] an important expansion to the reach of

13 the [Appropriations Rider] into convoluted language in a relatively obscure provision

14 concerning [appropriations to the ATF]." *Sackett v. EPA*, 598 U.S. 651, 677 (2023).[14]

15 In sum, a statute excluding private FFLs from their ordinary discovery obligations

16 "may be a statute some would prefer, but it is not the statute we have." *Va. Uranium, Inc.*

17 *v. Warren*, 587 U.S. 761, 770 (2019). If Defendants were correct that Congress secretly

---

[13] Defendants also cite *Watkins v. ATF*, No. 04-cv-800 (GK), 2005 WL 2334277, at *1 (D.D.C. Sept. 1, 2005), another a FOIA action.

[14] Contrary to Defendants' focus on Congress' "concerns," (Opp. at 10), as the United States explained in *Badger*, "Congress had ample reason to be particularly concerned about the release of information in ATF's trace databases" because "[u]nlike the records of private FFLs," ATF databases "include information that connects various firearms with investigative information provided by law enforcement agencies." Ex. 14, at 8.

extended the unique exemptions from the Federal Rules of Civil Procedure and Evidence to FFLs, "the subject undoubtedly would have surfaced somewhere in the [Rider's] text." *Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264, 274 (2023). Moreover, Defendants ignore that some members of Congress recognized as much and, in 2006, tried to enact legislation to include FFLs, but they did not have the votes. (Mot. at 15.) This Court should not rewrite the Appropriations Rider and do what Congress declined to do.

## II. THE ARIZONA AUDIT PRIVILEGE DOES NOT APPLY HERE

The Court need not hesitate in rejecting Defendants' assertion of the Arizona audit report privilege because Defendants failed to address three of Plaintiff's four reasons (Mot. at 16-17) why the privilege does not apply. *See Fiori v. Peoria Police Dep't*, No. 19-cv-03074-PHX-DJH, 2020 U.S. Dist. LEXIS 2650, at *3 (D. Ariz. Jan. 8, 2020).

For the one basis Defendants address, they argue (at 16) that their audits were undertaken to "evaluate [their] compliance" with "an industry standard of excellence," not with an occupational health or safety law. A.R.S. § 12-2322(A). But Defendants assert the privilege over "ATF regulatory compliance audits" (Opp. at 17) and have not identified any unrelated additional audits in their privilege logs, (Exs. 7-11).

Defendants alternatively argue that "counsel representing the employees of the State of Arizona" previously asserted the privilege over documents not related to an occupational health or safety audit. (Opp. at 17.) But that counsel was a private law firm (*id.* at 31), no party raised the issue, and the court did not address the privilege.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's Motion.

DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

Respectfully submitted this 4th day of October 2024

DeConcini McDonald Yetwin & Lacy, P.C.

By: /s/*Ryan O'Neal*
        Ryan O'Neal
        2525 E. Broadway Blvd., Suite 200
        Tucson, AZ 85716-5300
        Attorneys for Plaintiff

/s/ Steve D. Shadowen                      /s/ Jonathan E. Lowy
Steve D. Shadowen (*pro hac vice*)         Jonathan E. Lowy (*pro hac vice*)
Tina J. Miranda (*pro hac vice*)           Yaacov (Jake) Meiseles (*pro hac vice*)
Nicholas W. Shadowen (*pro hac vice*)      Global Action on Gun Violence
SHADOWEN PLLC                              805 15th Street NW
1717 W. 6th Street, Suite 290              #601
Austin, TX 78703                           Washington, DC 20005
Phone: 855-344-3298                        Phone: (202) 415-0691
sshadowen@shadowenpllc.com                 jlowy@actiononguns.org
tmiranda@shadowenpllc.com                  jmeiseles@actiononguns.org
nshadowen@shadowenpllc.com

**CERTIFICATE  OF SERVICE**

I, Ryan O'Neal, hereby certify that this document was filed with the Clerk of the Court via CM/ECF.  Those attorneys who are registered with the Court's electronic filing systems may access this filing through the Court's CM/ECF system, and notice of this filing will be sent to these parties by operation of the Court's electronic filings system.


Dated: October 4, 2024                    /s/ *Ryan O'Neal*
                                                      Ryan O'Neal

DeCONCINI McDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300