LORBER, GREENFIELD & POLITO, LLP
Louis W. Horowitz, Esq. [S.B. #020842]
3930 E. Ray Road, Suite 260
Phoenix, AZ 85044
TEL: (602) 437-4177
FAX: (602) 437-4180
lhorowitz@lorberlaw.com

RENZULLI LAW FIRM LLP
Christopher Renzulli, Esq. (*Pro Hac Vice*)
Peter Malfa, Esq. (*Pro Hac Vice*)
Jeffrey Malsch, Esq. (*Pro Hac Vice*)
One North Broadway, Suite 1005
White Plains, NY 10601
TEL: (914) 285-0700
FAX: (914) 285-1213
crenzulli@renzullilaw.com
pmalfa@renzullilaw.com
jmalsch@renzullilaw.com

*Attorneys for Defendants Diamondback Shooting Sports, Inc.,
Loan Prairie, LLC d/b/a The Hub, SNG Tactical, LLC and Sprague's Sports, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Estados Unidos Mexicanos,<br><br>Plaintiff,<br><br>*vs.*<br><br>Diamondback Shooting Sports, Inc., an Arizona corporation; SNG Tactical, LLC, an Arizona limited liability company; Loan Prairie, LLC D/B/A The Hub, an Arizona limited liability company; Ammo A-Z, LLC, an Arizona limited liability company; Sprague's Sports, Inc., an Arizona corporation,<br><br>Defendants. | Case No: 4:22-cv-00472-TUC-RM<br><br>**MOTION TO STAY**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES** |

COME NOW Defendants, by and through undersigned counsel, and respectfully move this Court for an Order staying all further proceedings in this matter until the U.S. Supreme

Court issues a decision in a closely related case, *Smith & Wesson Brands, et al. v. Estados Unidos Mexicanos*, 23-1141 (Order List: 603 U.S. \_\_), which may require the dismissal of all claims in this case.[1] In support of this Motion, Defendants submit the following Memorandum of Points and Authorities.

## DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO STAY FURTHER PROCEEDINGS

## SUMMARY OF THE ARGUMENT

In this case, Estados Unidos Mexicanos ("Mexico") seeks to hold five Arizona-based federally licensed firearms dealers responsible for the criminal or unlawful misuse of firearms by third parties ("Dealer Case"). The claims in this case are nearly identical to those in an earlier case Mexico filed in the United States District Court for the District of Massachusetts, *Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*, Case No. 21-11269-FDS ("Manufacturer Case"), in which it seeks to hold seven federally licensed firearms manufacturers and one federally licensed firearms distributor responsible for the criminal or unlawful misuse of firearms by third parties. In both cases, Mexico argues that federal firearm licensees ("FFLs") are aiding and abetting the criminal cartels in Mexico, resulting in harm to Plaintiff and its citizens.

Defendants in the Manufacturer Case and the Dealer Case moved to dismiss Mexico's claims pursuant to the Protection of Lawful Commerce in Arms Act, 15 U.S.C. §§ 7901-03 ("PLCAA"), a federal immunity statute that prohibits claims against FFLs for damages and other relief arising from the criminal or unlawful misuse of firearms by third parties. The U.S. Supreme Court has accepted a petition for a writ of certiorari by the defendants in the Manufacturer Case to address the issue of whether proximate cause principles prohibit Mexico's claims that FFLs are liable for violence committed by drug cartels in Mexico. The Supreme Court also accepted the question whether Mexico's "aiding and abetting" claim against

---

[1] Counsel for the parties have consulted with each other and Plaintiff does not consent to a stay. This Court has indicated that a pre-motion conference is not required for the relief requested herein.

the defendants qualifies as a predicate exception in the PLCAA. A decision by the Supreme Court in the Manufacturer Case will be directly applicable to, and likely require the immediate dismissal of, Mexico's claims in this case as it cannot survive a federal proximate cause analysis and on the basis that Defendants have immunity. PLCAA grants exactly this type of immunity- it does not merely provide an ordinary defense to liability but states in unmistakable terms that qualifying suits "may not be brought in any Federal or State court." 15 U.S.C. §7902(a). Given the prospect that the predicate exception will not be available to Mexico to proceed in this case, allowing costs and burdensome discovery to continue while the Supreme Court addresses this issue runs counter to the intent of Congress when it passed the PLCAA. Congress recognized that the severe costs of defending suits like this one could pressure firearms companies to curtail their business practices, jeopardizing democratic control. *See* 15 U.S.C. § 7901(a)(8). PLCAA grants exactly this type of immunity: it does not merely provide an ordinary defense to liability but states in unmistakable terms that qualifying suits "may not be brought in any Federal or State court." 15 U.S.C. §7902(a). Further, even if the forthcoming decision is not wholly dispositive, it certainly will provide further guidance to this Court on the novel claims brought by Mexico in both cases and should narrow the claims and scope of discovery in this case. This Court should therefore stay all further proceedings pending the Supreme Court's decision in the Manufacturer Case.

**FACTUAL BACKGROUND**

Unable to control cartel violence within its own borders, Mexico filed the Manufacturer Case in the United States District Court for the District of Massachusetts on August 4, 2021. Ex. A, Manufacturer Case Complaint. Although the Complaint in the Manufacturer Case lacks detail on the exact chain of events, the broad outline is clear: Defendants lawfully manufacture and sell firearms in the United States to licensed wholesale distributors, who then lawfully resell those firearms to a series of licensed retail dealers. The dealers resell the firearms to domestic retail customers, some of whom allegedly purchase them illegally, and then some subset of these illegal purchasers provide them to smugglers. The smugglers then illegally transport the firearms into Mexico, where they wind up in the hands of cartel members or other criminals,

who use them to commit crimes. *Id.* ¶¶ 378-79, 450-64.

Defendants in the Manufacturer Case filed motions to dismiss Mexico's Complaint on numerous grounds, including that its claims were barred by the PLCAA. The U.S. District Court for the District of Massachusetts dismissed Mexico's claims in their entirety on September 30, 2022, on the basis that they are barred by the PLCAA, without considering the other grounds raised. *See Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc., et al.*, 633 F. Supp. 3d 425 (D. Mass. 2022).

Less than two weeks after the Manufacturer Case was dismissed, on October 10, 2022, Mexico filed the Dealer Case. *See* ECF Doc. 1. Although the Complaint in the Dealer Case also lacks detail on the exact chain of events, the gist is the same:  Defendants sell or transfer lawful firearms to U.S. citizens within the state of Arizona. A small percentage of these customers are alleged to have illegally transferred firearms to other persons in Arizona or attempted to illegally smuggle them into Mexico. Some of those firearms allegedly wound up in the hands of criminals in Mexico. *Id*. ¶¶ 24-116, 119-125.  The Complaint in the Dealer Case contains similar allegations to the Complaint in the Manufacturer Case (including some of the same exact language) and asserts the same causes of action for negligence, public nuisance, negligence per se, gross negligence, unjust enrichment and restitution, and punitive damages. Ex. A, ¶¶ 507-519, 524-541, 558-560; compared to ECF Doc. 1, ¶¶ 262-273, 285-302, 311-313.

Mexico later appealed the dismissal of its Complaint in the Manufacturer Case. On January 22, 2024, the First Circuit issued a decision reversing the district court's conclusion that the PLCAA bars Mexico's claims and remanded the decision to the district court for further proceedings. *Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc., et al*, 91 F.4th 511 (1st Cir. 2024). There is an exception to the PLCAA for an "action in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which the relief if sought." 15 U.S.C. § 7903(5)(A)(iii) ("predicate exception"). The First Circuit concluded that the claims in Mexico's Complaint satisfied the predicate exception because it "adequately alleges that defendants have been aiding and abetting the sale of firearms by dealers

4

in knowing violation of relevant state and federal laws," and such acts could be a proximate cause of Mexico's claimed harm. 91 F.4th at 529.

Defendants in this case filed a Joint Motion to Dismiss (ECF Doc. 18), which was granted in part and denied in part on March 22, 2024. *See* ECF Doc. 50. The Order dismissed Mexico's claims against Defendants based upon the Racketeer Influenced and Corrupt Organizations Act (RICO), the Consumer Fraud Act, and for public nuisance. However, relying on the First Circuit's decision in the Manufacturer Case, this Court denied the motion to dismiss the remaining claims, holding that Mexico's aiding and abetting claim satisfied the predicate exception – stating, "the Complaint adequately alleges that Defendants' knowing violation of firearm-specific statutes proximately caused Plaintiff's injuries for purposes of the predicate exception to the PLCAA. *See Estados Unidos Mexicanos*, 91 F.4th at 529–38." *See* ECF Doc. 50 (Order on Motion to Dismiss) at 14:25–15:2. In fact, this Court may recall a line of inquiry it posed to Defendants' counsel at oral argument asking why these retailer defendants are entitled to dismissal based on a lack of proximate cause, when the First Circuit held that the manufacturers were not.

After this Court issued its decision, additional motion practice and discovery ensued. *See* ECF Docs. 62-65, 74, 83-87, 89, 90-94. Fact discovery remains in its preliminary stages, with the parties exchanging initial disclosures and objections and responses to their initial sets of written discovery. If a stay is not issued, substantial further motion practice regarding the scope and adequacy of discovery will be filed.[2]

In the meantime, the defendants in the Manufacturer Case filed a petition for a writ of certiorari on April 18, 2024, to have the First Circuit's decision reviewed. Exhibit B, Petition for

---

[2] On August 7, 2024, Plaintiff sent almost identical 13-page letters to each defendant claiming various discovery deficiencies in their objections and responses to Plaintiff's First Set of Requests for Production (outlining issues beyond those set forth in the pending Motion to Compel. On September 23, 2024, Defendants sent a 27-page letter to Plaintiff's counsel addressing discovery deficiencies in Plaintiff's responses to Defendants' First Set of Joint Interrogatories and Requests for Production. While the parties continue to meet and confer on these issues, they are not ripe for consideration until the Court rules on the Tiahrt and Arizona Audit privilege issues.

a Writ of Certiorari dated April 18, 2024. On October 4, 2024, the U.S. Supreme Court granted certiorari, placing the case on its October 2024 docket. Exhibit C, Order List of cases in which the petition for certiorari was granted. The Supreme Court's decision is expected to be issued by the end of the October 2024 term, which is June 26, 2025.

## ARGUMENT

This Court denied Defendants' motion to dismiss Mexico's claims for negligence, negligent entrustment, negligence per se, gross negligence, unjust enrichment and restitution, and punitive damages based on its conclusion that the "Complaint adequately alleges that Defendants' knowing violation of firearm-specific statutes proximately caused Plaintiff's injuries for purposes of the predicate exception to the PLCAA. *See Estados Unidos Mexicanos*, 91 F.4th at 529–38." ECF Doc. 50 at 14:25–15:2. It would appear that this Court found the First Circuit's decision highly persuasive and relied upon it in denying Defendants' motion based on the PLCAA's predicate exception and its proximate cause analysis.

However, the First Circuit's decision on these precise issues is now in question because the Supreme Court has agreed to review it. The questions that will be decided by the Supreme Court are:

1. Whether the production and sale of firearms in the United States is the "proximate cause" of alleged injuries to the Mexican government stemming from violence committed by drug cartels in Mexico.

2. Whether the production and sale of firearms in the United States amounts to "aiding and abetting" illegal firearms trafficking because firearms companies allegedly know that some of their products are unlawfully trafficked.

Answers to these questions in favor of the defendants in the Manufacturer Case will be dispositive to Mexico's claims here. If the Supreme Court holds that the production and sale of firearms in the United States is not the "proximate cause" of alleged injuries to the Mexican government stemming from violence committed by drug cartels in Mexico, this Court will be required to dismiss Mexico's claims. Similarly, if the Supreme Court holds that the production and sale of firearms in the United States does not amount to "aiding and abetting" illegal firearms trafficking simply because firearms companies allegedly know that some of their

6

products are unlawfully trafficked, this Court will be required to dismiss Mexico's claims.

A district court has "broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In determining whether to grant a stay, the United States Court of Appeals for the Ninth Circuit follows the *Landis* framework:

> Where it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed. Among those competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof and questions of law which could be expected to result from a stay.

*Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005). "The *Landis* test 'typically applies to stays of proceedings pending the resolution of a related action in another court,' and has been applied to evaluate whether to stay proceedings." *Murguia v. Langdon*, No. 119CV00942ADABAM, 2023 WL 6308325, at *3 (E.D. Cal. Sept. 28, 2023); see also, *Fazaga v. Fed. Bureau of Investigation*, No. SACV 11-00301-CJC (VBKx), 2020 WL 13830211, at *1 (C.D. Cal. Sept. 29, 2020) (applying *Landis* factors to motion to stay claims against government pending possible writ of certiorari). "Under the first two Landis factors, the Court must balance the hardships of the parties if the action is stayed or if the litigation proceeds." *Murguia* at *3. Here, each of these factors weighs strongly in favor of granting a stay.

Further, while not involving a request for a stay, the Fifth Circuit was faced with an analogous situation and resolved it with the same result. In *Blanchard v. Teledyne Movible Offshore, Inc.*, 612 F.2d 971 (5th Cir. 1980), the court was asked to address an issue through the use of F.R.C.P. 54(b). However, after the district court's certification, the Unites States Supreme Court granted a petition for certiorari in another matter, which it determined "may dispositively resolve the issue before us." *Id.* at 972. Because of the Supreme Court's intervening act, the Fifth Circuit found that using Rule 54(b) was not appropriate to review the district court's order,

and set aside the judgment and remanded the case until final judgment was entered. *Id*. In effect, the Fifth Circuit decided that the Supreme Court's forthcoming decision would likely resolve the issue before it, and therefore, it "stayed" issuing any type of intervening decision by sending the case back to the district court. Here, since the Court does not have the option of remanding the case to a lower court, it should follow the same path and stay this matter until the Supreme Court provides it with guidance on how to resolve these claims at the pleading stage.

### 1. There is No Possible Damage Imposed by an Eight Month Stay

This case is likely going to take several years to complete all discovery and address dispositive motions. Thus, this case will not be adjudicated before the Supreme Court issues a dispositive decision in the Manufacturer Case. An eight-month delay must be considered relatively minor given the realistic timeframe to conclude all activities in this matter. In fact, given that the case is already two years old, and Plaintiff has yet to produce any substantive evidence connecting a firearm transaction by any Defendant to harm suffered in Mexico, Plaintiff cannot complain that an eight-month delay would somehow "damage" it. Written discovery is not close to being complete, no fact depositions are scheduled, and the expert phase of discovery is currently well beyond the horizon.

The fact that the Supreme Court's decision will be issued by June 26, 2025 also weighs in favor of a stay being issued because the time period for the stay is definitive. While indefinite stays or "guesses" as to duration are disfavored, here, the Supreme Court issues all decisions from the current docket on or before the end of its term (https://www.supremecourt.gov/oral_arguments/calendarsandlists.aspx). See *ThermoLife Int'l LLC v. Neogenis Labs Inc.*, No. CV-18-02980-PHX-DWL, 2021 WL 2226192, at *3 (D. Ariz. June 2, 2021). Although the Ninth Circuit has expressed hesitation to stay cases where the delay could be indefinite or lengthy, it has noted that stays can be proper and appropriate, and, "it is within the district court's discretion to grant or deny such stays, after weighing the proper factors." *See Blue Cross and Blue Shield of Ala. V. Unity Outpatient Surgery Ctr., Inc.*, 490 F.3d 718, 724 (9th Cir. 2007). All that is required to overcome the "indefinite" or "lengthy" obstacle to a stay is a "reasonable" period of time; and here, a definitive eight-month period must be

8

considered reasonable under the circumstances. *Id*. (citing *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 106667 (9th Cir. 2007)). There are no potential procedural delays or roadblocks that would cause this stay to continue indefinitely, or for any longer than what is being requested herein.

An eight month delay will not "make a greater difference in witness' memories or the loss of evidence." *Murguia* at *3. Further, [c]onducting substantial, unrecoverable, and wasteful discovery and pretrial motions practice on matters that could be mooted by a pending appeal may amount to hardship or inequity sufficient to justify a stay." *Id*.; *see also*, *Flores v. Bennett*, 675 F. Supp. 3d 1052, 1062 (E.D. Cal. 2023) (issuing a stay pending an appeal because "litigation costs to conduct discovery and file dispositive motions while awaiting a binding appellate decision covering the same issues that the parties present to this Court would likely cause *1063 unnecessary waste of the parties' resources.")

**2. Plaintiff and Defendants will Suffer Significant Hardships**

Plaintiff will not be materially prejudiced or harmed if this matter is stayed. In contrast, Defendants (and Plaintiff) will be required to expend significant resources, including time and money, over the next eight months, continuing to complete fact discovery and engage in motion practice, all possibly for naught given a likely favorable outcome in the Supreme Court. "The balance of hardships tips sharply in [movant's] favor" when "[a]t most, a stay would slightly delay [non-movant] from receiving [discovery], as such a delay is not 'substantial harm.'" *Forrest* at *2. Here, if the case if precluded pursuant to the PLCAA, it must end immediately. The PLCAA generally bars any "qualified civil liability action" from being "brought" in "any Federal or State court," including any claim "against a manufacturer or seller of a [firearm]" based on harms "resulting from the criminal or unlawful misuse of a [firearm] by . . . a third party." 15 U.S.C. §§ 7902(a), 7903(5)(A). Congress even took the step of mandating that any such claims pending on the PLCAA's effective date in 2005 "shall be immediately dismissed." Id. § 7902(b). Courts across the country have recognized that the PLCAA provides threshold immunity from suit (as opposed to being merely a defense to ultimate liability). *See, e.g., City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 398 (2d Cir. 2008) (PLCAA bars "the

commencement or the prosecution of qualified civil liability actions."). Thus, requiring Defendants to continue to engage in discovery is a hardship Congress intended to eliminate. *See also, e.g., In re Acad., Ltd.*, 625 S.W.3d 19, 32-36 (Tex. 2021) (directing judgment for defendant based on PLCAA immunity from suit, finding that trial "'would defeat the substantive right' granted by the PLCAA."); *Jefferies v. District of Columbia*, 916 F. Supp. 2d 42, 47 (D.D.C. 2013) (PLCAA reflects congressional intent to "weed out, expeditiously, claims the PLCAA bars.").

As acknowledged by Mexico at the outset of this case, these Defendants account for a negligible number of firearms that might have been recovered in Mexico at crime scenes. The Complaint alleges that out of 26,860 firearms recovered in Mexico at crime scenes between 2014-2018, only 4,444 were connected to Arizona (either manufactured, distributed or sold in Arizona). Compl. ¶ 28. Further, Arizona is "home to almost 1,500 gun dealerships." *Id.* ¶ 31. As such, these five defendants represent only 0.33% of the dealers in Arizona. Thus, even if Mexico were to put Defendants out of business within the next eight months, such a result, at best, would simply reduce the number of firearms going to Mexico from Arizona by a total of approximately fifteen firearms over a four-year span. That is less than one firearm, per defendant, per year. Defendants again note that this case can never have any real impact on firearms violence occurring in Mexico, and certainly an eight-month delay will not increase or reduce the level of violence there.

Plaintiff and Defendants would both be prejudiced and unduly burdened if a stay is not granted as both will be required to continue spending significant resources to complete fact and expert discovery. Presently, there are significant discovery issues in this case that have been and will need extensive briefing and argument. *See* ECF Docs. 62-65, 74, 83-87, 89, 90-94. Even after this Court resolves the pending and forthcoming threshold discovery disputes, substantial discovery must still be disclosed by Plaintiff to establish a prima facie case against each Defendant. A decision issued by the Supreme Court in a closely related case in just a matter of months will save both parties substantial costs related to discovery.

**3. A Stay Will Promote the Orderly Course of Justice and Serve the Public Interest**

The interests of both the public and – specifically – this Court, strongly justify a stay of this litigation. Allowing the Supreme Court to resolve dispositive issues before this case proceeds any further promotes the public's interest in the efficient, fair, and uniform administration of the judicial system. "Courts typically stay cases when the outcome of another proceeding will have preclusive effect on the pending issues." *Flores* at 1063 (citing *Safari Club Int'l v. Bonta*, No. 222CV01395DADJDP, 2023 WL 3505373, at *1 (E.D. Cal. May 17, 2023)). Given the questions to be decided by the Supreme Court, if it rules in favor of the defendants in the Manufacturer Case, its decision will be dispositive of the remaining claims in this case.

A stay will also ensure judicial efficiency by avoiding the need for this Court to issue decisions on the pending motions or address future discovery motions that are inevitable. Thus, even if the Court finds a balancing of the first two *Landis* factors neutral, the issue of judicial economy weighs heavily in favor of a stay. *See Babaria v. Blinken*, No. 22-CV-05521-SI, 2023 WL 187497, at *2-3 (N.D. Cal. Jan. 13, 2023). This factor also weighs heavily in favor of staying further proceedings in this case.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant their motion to stay this action pending the U.S. Supreme Court's decision in the Manufacturer Case, set this matter for a status conference on, or shortly after, July 8, 2025, to address the procedural status based on the Supreme Court's decision, and grant such other relief as it deems just and proper.

Dated: October 18, 2024

        LORBER, GREENFIELD & POLITO, LLP

        By:   Louis W. Horowitz, Esq.
              3930 E. Ray Road, Suite 260
              Phoenix, AZ 85044
              lhorowitz@lorberlaw.com

        and

RENZULLI LAW FIRM LLP

By: */s/ Jeffrey Malsch*
Christopher Renzulli, Esq. (*Pro Hac Vice*)
Peter Malfa, Esq. (*Pro Hac Vice*)
Jeffrey Malsch, Esq. (*Pro Hac Vice*)
One North Broadway, Suite 1005
White Plains, NY 10601
crenzulli@renzullilaw.com
pmalfa@renzullilaw.com
jmalsch@renzullilaw.com

*Attorneys for Defendants Diamondback Shooting Sports, Inc., Loan Prairie, LLC d/b/a The Hub, SNG Tactical, LLC and Sprague's Sports, Inc.*

PISCIOTTI LALLIS ERDREICH

By: Anthony Pisciotti, Esq. (*Pro Hac Vice*)
Danny Lallis, Esq. (*Pro Hac Vice*)
Ryan Erdreich, Esq. (*Pro Hac Vice*)
30A Vreeland Road, Suite 300
Florham Park, NJ 07932
apisciotti@pisciotti.com
dlallis@pisciotti.com
rerdreich@pisciotti.com

and

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

By: Colt B. Dodrill, Esq.
Brian E. Cieniawski, Esq.
Arizona Bar No. 013185
2231 East Camelback Road, Suite 200
Phoenix, Arizona 85016
Colt.Dodrill@wilsonelser.com
Brian.Cieniawski@wilsonelser.com

*Attorneys for Defendant Ammo A-Z, LLC*

**CERTIFICATE OF SERVICE**

I, Jeffrey Malsch, hereby certify that this document was filed with the Clerk of the Court via CM/ECF. Those attorneys who are registered with the Court's electronic filing system may access this filing through the Court's CM/ECF system, and notice of this filing will be sent to these parties by operation of the Court's electronic filings system.

Dated: October 18, 2024

By: */s/ Jeffrey Malsch*
Jeffrey Malsch
jmalsch@renzullilaw.com

13