**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Estados Unidos Mexicanos,<br><br>            Plaintiff,<br><br>v.<br><br>Diamondback Shooting Sports Incorporated, et al.,<br><br>           Defendants. | No. CV-22-00472-TUC-RM<br><br>**ORDER** |

Pending before the Court is Plaintiff's Consolidated Motion to Compel, in which Plaintiff requests an Order compelling Defendants to produce documents responsive to Requests 2-10, 13, 15, 19, 21-24, and 30-32 in Plaintiff's First Set of Requests for Production. (Doc. 89.)[1] Defendants filed a Response in opposition (Doc. 95), and Plaintiff filed a Reply (Doc. 96). The Court finds the Motion appropriate for resolution without oral argument.

**I.     Legal Standard**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). A party may move to compel production under Rule 37 of the Federal Rules of Civil Procedure if a party fails to produce documents as requested under Rule 34. Fed. R. Civ. P. 37(a)(3)(B)(iv). "Once the moving party establishes that the information requested is within the permissible scope of discovery, the burden shifts to the"

---

[1] Plaintiff attaches a certificate of personal consultation in compliance with LRCiv 7.2(j). (Doc. 89-3.)

nonmovant to demonstrate why the requested discovery should not be allowed. *Khalilpour v. CELLCO P'ship*, No. C-09-02712-CW(MEJ), 2010 WL 1267749, at *1 (N.D. Cal. Apr. 1, 2010). The nonmovant may meet its burden by showing that the information being sought is privileged. *Id.*; *see also Myhre v. Seventh-Day Adventist Church Reform Movement Am. Union Int'l Missionary Soc'y*, 298 F.R.D. 633, 637 (S.D. Cal. 2014) ("The party opposing discovery bears the burden of resisting disclosure."); *but see Ellis v. Cambra*, No. 1:02-cv-05646-AWI-SMS-PC, 2008 WL 860523, at *4 (E.D. Cal. Mar. 27, 2008) (noting that it is the movant's "burden on [a] motion to compel to demonstrate why the [nonmovant's] objection [to a discovery request] is not justified").

**II.     Discussion**

Requests 2-10, 13, 19, and 21 of Plaintiff's First Set of Requests for Production seek documents related to Defendants' sale and purchase of firearms, ammunition, and firearm accessories, including forms that Defendants are required to maintain pursuant to 18 U.S.C. § 923(g). (Doc. 89-1 at 14-17.) Request 15 seeks documents concerning employees who participated in or were present at specified firearm sales. (*Id.* at 16.) Requests 22-24 seek documents relating to communications with, and actions by, law enforcement agencies, including the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). (*Id.* at 17.) Requests 30-32 seek policies relating to firearm sales, including suspect sales, as well as policies relating to cooperation with law enforcement. (*Id.* at 18-19.)

Defendants argue that the requested documents are protected from disclosure by the Tiahrt Amendment to the Consolidated and Further Continuing Appropriations Act, Pub. L. No. 112-55, 125 Stat. 552, 609-10 (2012).[2] (*See* Doc. 89-1 at 32-211; Doc. 95 at 1-16.) In addition, Defendants assert that certain documents are privileged pursuant to Arizona's Health and Safety Audit Privilege Act, A.R.S. § 12-2321, *et seq.* (*See* Doc. 89-1 at 180-211; Doc. 95 at 16-17.)

---

[2] All Defendants asserted protection pursuant to the Tiahrt Amendment in their objections to Requests 2-10, and Defendants inconsistently asserted Tiahrt Amendment protection in their objections to Requests 13, 15, 19, 21-24, and 30-32. (*See* Doc. 89-1 at 32-211.)

**A. Tiahrt Amendment**

Congress has attached a provision known as the Tiahrt Amendment, or Tiahrt Rider, to its Consolidated Appropriations Acts of 2003, 2005, 2008, 2010, and 2012. *See Ctr. for Investigative Reporting v. U.S. Dep't of Justice*, 14 F.4th 916, 924 (9th Cir. 2021). Each version of the Tiahrt Amendment has prohibited ATF from using appropriated funds to disclose firearms tracing records, subject to varying limitations and exceptions. *Id.* at 925.

The operative version of the Tiahrt Amendment is attached to the Consolidated and Further Continuing Appropriations Act of 2012,[3] which appropriates specified sums to various agencies for the fiscal year ending September 30, 2012. The Act appropriates funds to ATF subject to a number of exceptions restricting ATF's use of the appropriated funds. *See* 125 Stat. at 609-10. The exception at issue provides as follows:

> [D]uring the current fiscal year and in each fiscal year thereafter, no funds appropriated under this or any other Act may be used to disclose part or all of the contents of the Firearms Trace System database maintained by the National Trace Center of the Bureau of Alcohol, Tobacco, Firearms and Explosives or any information required to be kept by licensees pursuant to section 923(g) of title 18, United States Code, or required to be reported pursuant to paragraphs (3) and (7) of such section, except to: (1) a Federal, State, local, or tribal law enforcement agency, or a Federal, State, or local prosecutor; or (2) a foreign law enforcement agency solely in connection with or for use in a criminal investigation or prosecution; or (3) a Federal agency for a national security or intelligence purpose; unless such disclosure of such data to any of the entities described in (1), (2) or (3) of this proviso would compromise the identity of any undercover law enforcement officer or confidential informant, or interfere with any case under investigation; and no person or entity described in (1), (2) or (3) shall knowingly and publicly disclose such data; **and all such data shall be immune from legal process, shall not be subject to subpoena or other discovery, shall be inadmissible in evidence, and shall not be used, relied on, or disclosed in any manner, nor shall testimony or other evidence be permitted based on the data, in a civil action in any State (including the District of Columbia) or Federal court** or in an administrative proceeding other than a proceeding commenced by the Bureau of Alcohol, Tobacco, Firearms and Explosives to enforce the provisions of chapter 44 of such title, or a review of such an action or proceeding; except that this proviso shall not be construed to prevent: (A) the disclosure of statistical information concerning total production, importation, and exportation by each licensed importer (as defined in section 921(a)(9) of such title) and licensed manufacturer (as defined in section 921(a)(10) of such title); (B) the sharing or exchange of such

---

[3] The 2012 Tiahrt Amendment repealed the earlier versions and constitutes the currently operative statutory language. *See Ctr. for Investigative Reporting*, 14 F.4th at 927.

>information among and between Federal, State, local, or foreign law enforcement agencies, Federal, State, or local prosecutors, and Federal national security, intelligence, or counterterrorism officials; or (C) the publication of annual statistical reports on products regulated by the Bureau of Alcohol, Tobacco, Firearms and Explosives, including total production, importation, and exportation by each licensed importer (as so defined) and licensed manufacturer (as so defined), or statistical aggregate data regarding firearms traffickers and trafficking channels, or firearms misuse, felons, and trafficking investigations[.]

*Id.* (emphasis added).

The parties' dispute centers on the meaning of the term "such data" in the language stating: "all such data shall be immune from legal process, shall not be subject to subpoena or other discovery, shall be inadmissible in evidence, and shall not be used, relied on or disclosed in any manner . . . in a civil action in any State . . . or Federal court." 125 Stat. at 610. Defendants argue that "such data" refers broadly to the three categories of information delineated earlier in the statute: the contents of ATF's trace database and information required to be maintained and reported pursuant to 18 U.S.C. § 923(g). (Doc. 95 at 1-16.) Plaintiff contends that "such data" refers only to data disclosed by ATF using appropriated funds. (Doc. 89 at 1-15.)

In interpreting statutory language, the Court begins "with the language of the statute itself," *Republic of Sudan v. Harrison*, 587 U.S. 1, 8 (2019), including "the particular statutory language at issue, as well as the language and design of the statute as a whole," *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988).[4] The Tiahrt Amendment prohibits ATF from using appropriated funds to disclose firearms tracing data and information required to be kept and reported pursuant to 18 U.S.C. § 923(g), sets forth exceptions under which disclosure is permissible, and imposes limitations on the use of disclosed data. The term "such data" appears multiple times in the Amendment, and the Court presumes the term carries the same meaning in each instance in which it is

---

[4] The Court construes the Tiahrt Amendment according to the plain language of the statute and in light of applicable canons of statutory interpretation. The limited relevant legislative history is not particularly helpful in interpreting the statutory language at issue and, furthermore, "[i]t is a fundamental principle of appropriations law that [courts] may only consider the text of an appropriations rider, not expressions of intent in legislative history." *United States v. McIntosh*, 833 F.3d 1163, 1178 (9th Cir. 2016).

- 4 -

used. *See Law v. Siegel*, 571 U.S. 415, 422 (2014) ("words repeated in different parts of the same statute generally have the same meaning"). The most natural reading of the term "such data" as used in the Tiahrt Amendment is data within the three delineated categories that is in ATF's possession and subject to disclosure by ATF using appropriated funds. The Tiahrt Amendment "has no application to data that is not to be disclosed through the use of federally appropriated funds." *City of New York v. Beretta U.S.A. Corp.*, 429 F. Supp. 2d 517, 526 (E.D.N.Y. 2006). The Amendment does not restrict Defendants' disclosure of their private business records. *See Lopez v. Badger Guns, Inc.*, No. 10-cv-018530 (Milwaukee Cnty. Wis. June 25, 2012) (Doc. 89-1 at 251).

This interpretation aligns with that of the United States, which has taken the position that the Tiahrt Amendment "applies to information maintained by" ATF and "does not restrict the discovery of . . . the private business records of a federal firearms licensee." Memorandum of Intervenor at 2, *Lopez v. Badger Guns, Inc.*, No. 10-CV-018530 (Milwaukee Cnty. Wis. Mar. 30, 2012) (Doc. 89-1 at 229). The interpretation is also in accord with the principle "that statutes establishing evidentiary privileges must be construed narrowly because privileges impede the search for the truth." *Pierce Cnty. v. Guillen*, 537 U.S. 129, 144 (2003).

Defendants' more expansive interpretation would constitute a significant, substantive change in the discovery obligations of federal firearms licensees. "While appropriation acts . . . can substantively change existing law, there is a very strong presumption that they do not." *Bldg. & Constr. Trades Dep't, AFL-CIO v. Martin*, 961 F.2d 269, 273 (D.C. Cir. 1992). If Congress wishes to change substantive law in an appropriations statute, it must do "so clearly." *Robertson v. Seattle Audubon Soc'y*, 503 U.S. 429, 440 (1992). The language of the Tiahrt Amendment does not clearly establish the significant substantive change in law advocated by Defendants.

Defendants argue that the Court's interpretation of the Tiahrt Amendment would render superfluous key statutory language. (Doc. 95 at 13-15.) First, Defendants argue that the language "any information required to be kept by licensees" would be

superfluous if the statute's discovery immunity applied only to information in ATF's possession. (*Id.* at 14.) But Defendants' argument itself ignores key statutory language, which prohibits ATF from using appropriated funds to disclose information required to be kept by licensees pursuant to 18 U.S.C. § 923(g). *See* 125 Stat. at 610. ATF collects forms required to be kept by federal firearms licensees under certain circumstances, as Defendants concede in their discovery dispute correspondence. (*See* Doc. 89-1 at 223.) Accordingly, interpreting the Tiahrt Amendment as applying only to information in ATF's possession and subject to disclosure using appropriated funds does not render superfluous the statutory language concerning information required to be kept by licensees.

Defendants also argue that the Court's interpretation would render superfluous the Tiahrt Amendment's prohibition on discovery of protected information in state court actions, since ATF is not subject to suit or subpoena in state court. (Doc. 95 at 14.) But as Plaintiff notes (Doc. 96 at 6), the statutory language concerning state court actions is necessary to protect information received from ATF pursuant to permissible disclosures. Defendants also argue that the Court's interpretation would render superfluous the statutory language permitting the sharing of protected information among law enforcement agencies (Doc. 95 at 14-15), but again, this language applies to information received from ATF pursuant to permissible disclosures.

The Court will grant Plaintiff's Motion to Compel with respect to documents that Defendants have withheld pursuant to the Tiahrt Amendment.

**B. Arizona Health and Safety Audit Privilege Act**

In their privilege logs, Defendants asserted the "Arizona Audits Reports Privilege" over ATF forms 5030.5 and correspondence related to ATF audits. (Doc. 89-1 at 181-82, 205, 209-11.) Defendants also asserted the Arizona Audit Reports Privilege with respect to ATF forms and law enforcement correspondence regarding investigations, self-reporting, and requests for trace information. (*See id.* at 190-92, 195, 199-206, 209.)

Plaintiff argues that the privilege established by Arizona's Health and Safety

Audit Privilege Act applies only to formal audits relating to occupational health or safety; that it does not apply to audits conducted by government agencies such as ATF; that it does not apply to information required by a government agency to be maintained and reported, or information obtained by observation by a regulatory agency; and that Defendants have waived the privilege with respect to documents shared with ATF by failing to produce a confidentiality agreement. (Doc. 89 at 16-17.) In response, Defendants argue that the privilege applies not only to documents created for audits evaluating an organization's compliance with a health or safety law but also to documents created for audits evaluating an organization's compliance "with an industry standard of excellence with respect to safety, reliability or training," and that the documents at issue here—"Defendants' internal audits conducted to maintain industry standards and government compliance, as well as any records received from the ATF after a regulatory compliance audit"—fall within that latter category. (Doc. 95 at 16-17 (citing A.R.S. § 12-2322(A).)

Arizona's Health and Safety Audit Privilege Act states: "Except as provided in §§ 12-2324, 12-2325 and 12-2326, any part of an audit report conducted by an organization is privileged and is not admissible as evidence or subject to discovery in . . . [a] legal or an equitable civil action." A.R.S. § 12-2323(A)(1). The party asserting the privilege bears the burden of demonstrating its applicability. *Id.* § 12-2323(E). Here, Defendants have not met their burden of demonstrating the applicability of the privilege. Indeed, Defendants have failed to respond to the majority of Plaintiff's arguments concerning inapplicability of the privilege.

For purposes of the privilege, the term "audit report" is limited to audit reports "prepared by an organization." A.R.S. § 12-2321(2). An "organization" is "a public or private company, corporation, political subdivision organized under [A.R.S. § 48-101 *et seq.*], firm, enterprise or institution, or any part or combination of these entities, whether incorporated or not, that has its own functions and administration." A.R.S. § 12-2321(4). Defendants have not shown that ATF is an organization within the meaning of the statute

and have therefore failed to show that the privilege shields documents concerning ATF audits. Furthermore, the privilege does not apply to documents, communications, and other information "required by a regulatory agency to be collected, developed, maintained or reported under a health or safety law." A.R.S. § 12-2326(A)(1). Defendants concede that ATF's firearms regulations constitute a health or safety law (Doc. 95 at 17), and therefore the privilege does not apply to documents required to be collected, developed, maintained, or reported under those regulations. The privilege also does not apply to information obtained by observation by a regulatory agency. A.R.S. § 12-2326(A)(2). To the extent Defendants' privilege logs assert the privilege over law enforcement correspondence and similar documents, Defendants have not shown that such documents constitute audit reports within the meaning of Arizona's Health and Safety Audit Privilege Act, and Defendants do not appear to defend those assertions of privilege in their Response to Plaintiff's Motion to Compel. (*See* Doc. 95 at 16 (asserting that the Arizona Audit Privilege applies only to "Defendants' internal audits" and "any records received from the ATF after a regulatory compliance audit").) Finally, Defendants refer to internal safety and industry compliance audits in their Response to Plaintiff's Motion to Compel (*id.* at 16-17), but their privilege logs do not appear to list any documents related to any such internal audits.

The Court will grant Plaintiff's Motion to Compel with respect to documents that Defendants have withheld pursuant to Arizona's Health and Safety Audit Privilege Act.

**IT IS ORDERED** that Plaintiff's Motion to Compel (Doc. 89) is **granted**. Defendants' objections to production based on the Tiahrt Amendment and Arizona's Health and Safety Audit Privilege Act are **overruled**.

. . . .

. . . .

. . . .

. . . .

. . . .

**IT IS FURTHER ORDERED** that the parties shall jointly file a proposed amended scheduling order within **ten (10) days** of the date this Order is filed.

Dated this 29th day of January, 2025.

_____
Honorable Rosemary Márquez
United States District Judge