DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 EAST BROADWAY BLVD., SUITE 200
TUCSON, AZ 85716-5300
(520) 322-5000

Ryan O'Neal (AZ # 031919)
roneal@dmyl.com
Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Estados Unidos Mexicanos,<br><br>*Plaintiff,*<br><br>vs.<br><br>Diamondback Shooting Sports, Inc., *et al.*,<br><br>*Defendants* | NO. 4:22-cv-00472-TUC-RM<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ANSWERS TO INTERROGATORIES** |

## I. Introduction

Defendants' motion to compel should be denied, first, because Defendants have failed to propound reasonably tailored discovery requests, and then compounding that error, they filed this motion "without prior personal consultation with the other party and a sincere effort to resolve the matter," in violation of L.R. 7.2 and without conferring on agreed custodians and search terms as required by this Court's Order establishing protocols for document discovery. ECF.79. Defendants admit that the Government has offered to meet and confer on custodians and search terms, as required by ECF.79, but Defendants insist that it would be a "waste of time and effort" for Defendants to engage in such discussions. Defendants have also exceeded the permitted number of interrogatories based on their compound and duplicative drafting for these requests. The Government offered to withdraw this objection if Defendants would agree to propound no more interrogatories without showing good cause and mutually limit document requests to a total of 150. Defendants rejected this offer and instead chose to stand on their own numerosity objections, which they used to answer none of the Government's interrogatories as propounded in Plaintiff's Second Set of Interrogatories to Defendants.

In addition to these overarching issues related to Defendants' basic willingness to cooperate in discovery, there are two discrete sets of legal questions about which the parties have substantive disagreements, and the Government welcomes the Court's rulings on those issues. The first of these is how to address the Government's disclosure of data obtained from ATF that may be protected by the Tiahrt Amendment, the same provision that this Court addressed previously in resolving the Government's motion to compel

Defendants' business records. On this point, the Government's Tiahrt objection is not the same as Defendants' overruled Tiahrt objection. However, the Government has a practical proposal that will allow the Court to avoid ruling on the scope and applicability of Tiahrt. The Government is also prepared to challenge the continued applicability of the Tiahrt Rider, if necessary, especially as it relates to specific types of reports that the Government receives from ATF which can be provided in supplemental briefing if necessary.

The second legal issue involves the applicability of the public duty and act of state doctrines. The Government is aware, of course, that this Court previously denied the Government's motion to strike certain of Defendants' affirmative defenses based on these doctrines, but that did not close the door on these issues or allow overly broad discovery. As raised here, the Government provides additional case law and discussion regarding the impact of these doctrines on the scope of discovery, and the Government asks that those objections be sustained.

## II.  Factual Background

Defendants served the Government with their First Set of Interrogatories, numbered 1-18, on July 10, 2024. The Government provided its responses on August 4, 2024. On September 23, 2024, the Defendants sent a deficiency letter, asking that the Government withdraw its objections and provide supplemental responses on all of Defendants' interrogatories. After some delay occasioned by Defendants' motion for a stay—and refusal to engage on discovery issues while that motion remained pending—the Government provided written responses to Defendants' letter on February 7, 2025, and sought to schedule a personal conference to discuss Defendants' concerns as required by

L.R. 7.2. The Defendants rejected the idea of a personal conference to address the Government's discovery responses, stating in an email dated March 14, 2025, that "further discussions are a waste of time and effort." On March 26, 2025, Defendants changed course and requested to set aside some time during an already-scheduled meet and confer on the Defendants' discovery responses to discuss the Government's responses. That conference occurred on April 4, 2025. Approximately one hour of the parties' two-hour discussion was devoted to addressing the Government's discovery responses, and that is the sole amount of time that Defendants have devoted to personal consultation on all of Defendants' 128 document requests and 18 interrogatories. Defendants sent a follow-up letter on April 5, 2025, and the Government responded, as agreed, on April 11, 2025. This motion followed on April 15, 2025.

**III.     General objections, objections to definitions and instructions.**

The Government has advised Defendants that it is not withholding information based on its General Objections. ECF.122-8.2. These objections are withdrawn. With respect to the Government's objections to definitions and instructions, Defendants admit that such objections are proper. ECF.122.7. The Government's objection as to time frame is well-founded and should be sustained, as argued in the Government's Response in Opposition to Defendants' Motion to Compel Responses to Requests for Production (RIO RFP) at IX.B. Defendants' objections regarding the Government's definition of Mexico are also addressed at RIO RFP, Section VI.

The Government has advised Defendants that it is not asserting "Mexican discovery privileges," but instead is noting that government officials in Mexico are bound by

Mexican law in determining what information they can release and under what circumstances. The Government understands that U.S. courts are unlikely to knowingly issue any order that would require a government official in Mexico to violate Mexican law, and the Government does not believe any such circumstance will arise here. Nevertheless, the Government does object to Defendants' request that this Court "order that Mexico must produce responsive material that Mexico has refused to produce by improperly hiding behind purported Mexican law." ECF.122.8.

### IV. Contention Interrogatories (Int. Nos. 2 and 4).

Defendants' motion appears to seek updated responses only for Interrogatory Nos. 2, 4-18. The Government takes this limitation to be an acknowledgement that contention interrogatories should be answered at a later date, as Interrogatory No. 1 (identify all persons expected to be called as a witness at trial) and Interrogatory No. 3 (identify all evidence to be used at trial) plainly qualify as contention interrogatories. *See SEC v. Moshayedi*, 2013 WL 12172127, at *1 (C.D. Cal. Mar. 21, 2013). ("[C]ontention interrogatories which . . . require[] counsel to disclose legal theories and work product . . . are premature prior to the taking of substantial discovery, do nothing to further the adjudication of the case, and pose a greater burden than a benefit."); *HTC Corp. v. Tech. Props. Ltd.*, 2011 WL 97787, at *2 (N.D. Cal. Jan. 12, 2011) ("courts tend to deny contention interrogatories filed before substantial discovery has taken place") (internal quotation omitted) (finding contention interrogatories premature even after defendants had produced 3.7 million pages of documents, held two depositions, and scheduled two more). Interrogatory Nos. 2 (admissions made by Defendants) and 4 (damage calculations) are

also contention interrogatories, since these are matters generally produced as the parties are closer to trial.

### 1. Interrogatory No. 2 (admissions made by Defendants)

To the extent that Interrogatory No. 2 seeks "previous statements," as covered by Fed. R. Civ. P. 26(b)(3)(C), it is not a contention interrogatory, and the Government responded on that basis that it has no responsive documents. Defendants are incorrect to assert that this response is "no substantive answer at all." ECF.122.15. The fact that the Government is not in possession of adverse statements made by Defendants should not be surprising. Even so, the Government has, in accordance with the ESI protocol, offered to confer with Defendants concerning search terms and custodians for an agreed search of electronic records, so that Defendants can be assured that the Government has conducted a reasonable search for such materials. Defendants have not responded to this request.

### 2. Interrogatory No. 4 (damage calculations)

To the extent that Interrogatory No. 4 is not a contention interrogatory and seeks only currently available information about the Government's calculation of damages, the Government has produced responsive information consisting of relevant Government budgets and reports. Defendants are incorrect to assert that the Government has provided "no substantive answer at all." ECF.122.16. In response to the Defendants' request that the Government produce more detailed damage information, the Government states that its investigation as to damages is ongoing and this interrogatory will be updated when the Government is in a position to make additional substantive statements regarding the structure of its damage model and an estimate of the damages it will seek at trial.

The Government's numerosity objections are also well-founded and should be sustained. The Government objected to Interrogatory No. 4 on the grounds that it constitutes at least 12 interrogatories, including subparts, causing Defendants to exceed the permitted number of interrogatories. *See* ECF.122-9.2-4, 9. Under Rule 33(a)(1), each "discrete subpart" of an interrogatory is counted as a separate interrogatory when applying the 25-interrogatory limit. Although there is no precise test for determining "discreteness" of interrogatory subparts, most courts, including this one, follow the "related question" approach, which provides that an interrogatory's subparts are "discrete" (requiring separate counting) if they are not "logically or factually subsumed within and necessarily related to the primary question." *Berkadia Real Est. Advisors LLC v. Wadlund*, 2023 WL 2072494, at *7 (D. Ariz. Feb. 17, 2023) (emphasis omitted) (quoting *Trevino v. ACB American Inc.*, 232 F.R.D. 612, 614 (N.D. Cal. 2006)). The Court recently explained the applicable test as asking whether the "subsequent question [can] stand alone," or is "independent of the first question," such that "the first question could be answered fully and completely without answering the second." *Id*. (cleaned up) (quoting *Am. Bankers Ins. Co. of Fla. v. Nat'l Fire Ins. Co. of Hartford*, 2020 WL 8996760, at *1 (N.D. Cal. July 9, 2020) (describing the test formulated by *Kendall v. GES Exposition Serv., Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997)).

Here, Interrogatory No. 4 seeks three discrete categories of information related to each of 12 separate injuries alleged in the Government's Complaint. Each subpart of Interrogatory No. 4 can be answered fully and completely with respect to any one of the 12 alleged injuries without answering the other two subparts as to that alleged injury or the three subparts as to any of the other alleged injuries. Because the subparts of Interrogatory

No. 4 are not "logically or factually subsumed within and necessarily related to" each other with respect to a single alleged injury (or any of the other alleged injuries), the Court should sustain the Government's numerosity objection and rule that Defendants exceeded their 25-interrogatory limit. District courts have sustained similar objections in analogous contexts, including, for example, where a single interrogatory sought information regarding the factual basis for each denial in an answer to a complaint (as opposed to the present case, where the interrogatory seeks information related to each injury alleged in the complaint) or the factual basis for each denial to a request for admission. *See, e.g.*, *Alexander v. 1328 Uptown, Inc.*, 2019 WL 4929931, at *14 (D. Minn. Oct. 7, 2019) ("[s]erving a single interrogatory seeking 'all facts upon which [the defendants] base such denial' for over 50 denials [in an answer to a complaint] amounts to over 50 interrogatories").[1]

## V. Interrogatory No. 5 (claims for restitution)

Interrogatory No. 5 is overbroad to the extent that it seeks information concerning "all claims or requests for funds or other relief . . . made to any person, organization (legal or illegal), or government . . . concerning Your alleged harm from firearms related violence

---

[1] *Acquired Capital I, L.P. v. Chattahoochee Mortg. & Invs. Corp.*, 2011 WL 13232095, at *4 (N.D. Ga. Feb. 28, 2011) (sustaining defendants' objection to single interrogatory where "their answer to the complaint contains at least twenty-six denials and, therefore, the interrogatory would have at least twenty-six subparts, thereby exceeding the twenty-five written interrogatories, including subparts, that are allowed under Rule 33"); *Wildearth Guardians v. Pub. Serv. Co. of Colo.*, 2010 WL 5464313, at *4 (D. Colo. Dec. 29, 2010) (a single interrogatory that "itself contain[ed] distinct and separate subparts seeking information on the Plaintiff's more than 100 denials [to requests for admission]" "well-exceed[ed] the . . . interrogatory limit").

in or affecting Mexico." *See Myles v. Cnty. of San Diego,* 2016 WL 6070328, at *4 (S.D. Cal. Oct. 17, 2016) (party need not respond to requests that are "extremely overbroad, would produce large amounts of irrelevant information, and are not tailored to the needs of this case"); *see also Excel Fortress Ltd. v. Wilhelm*, 2018 WL 6067255, at *2 (D. Ariz. Nov. 20, 2018) ("[T]he court is not obligated to impose limiting constructions on interrogatories that are overbroad . . . but may simply deny the request to compel further responses.") (internal citation omitted).

The core of the request seems to be about whether the Government has sought formal restitution for the same wrongs alleged here in some other forum. To that extent, the request is not objectionable, and the Government has provided its answer: none. Defendants' statement that the Government has provided "no substantive answer" to this interrogatory is incorrect, *see* ECF.122.17; the response plainly states that, as narrowed, the Government has no responsive information to this request.

Even so, the Government has offered to meet and confer on search terms. Defendants have not responded to this proposal. No order to compel is warranted.

**VI.   Interrogatory No. 6: numbers of weapons recovered annually in Mexico**

Having obtained additional responsive information since providing its original response, the Government is preparing an updated response to Interrogatory No. 6, including withdrawing the numerosity objection and producing responsive documents. This updated response will be served on or about May 16, 2025. No order to compel as to the previous response is warranted.

## VII. Interrogatory No. 7: how firearms are recovered and reported

Defendants admitted in their September 2024 deficiency letter that the Government's answer to this interrogatory was substantively responsive, with the exception of the time frame. Defendants defined the relevant time frame in their requests as January 2004 to the present. As explained in RIO RFP at IX.G, Defendants' proposal for a 20-year lookback from the date of filing is insupportable in a case with at most a 4-year statute of limitations. In the event that the parties agree on a relevant time frame, or this Court orders a relevant time frame, the Government will update this response accordingly.

With respect to information regarding "how" the Government "implemented" updates and improvements to its tracking of firearms and related data through RECAF,[2] the Government maintains that finding a technical person to discuss how particular changes were implemented is unnecessary and not relevant to any issues in the case. To the extent that what Defendants want is information about how RECAF works and why the information collected in RECAF is accurate and reliable, the Government is willing to provide additional information on those issues but request that Defendants comply with their obligations to confer on these issues, so that the Government can ensure that information collected will be responsive and sufficient. *See* ECF.79.1-2.

---

[2] Fiscalia General de la Republica of Mexico ("FGR") maintains a database known as Registro Criminal de Armas de Fuego (RECAF), which holds information on firearms recovered by law enforcement in Mexico.

## VIII. Interrogatory No. 8: communications concerning Defendants

This Interrogatory asks the Government to "[i]dentify all Your communications . . . with anyone . . . [including some carve-outs for attorney-client communications with "Counsel of Record"] concerning Defendants." The request is written broadly, does not define "Counsel of Record" and does not exclude communications occurring after suit is filed. The Government responded appropriately to this request, objecting to the overbreadth, but providing a substantive response that, to the extent that the request sought non-privileged communications created prior to the date that suit was filed, the response was "none." Defendants are incorrect in asserting that this is no substantive response. To the extent that Defendants seek additional assurances that a reasonable search has been conducted, the Government asks that the Court order Defendants to comply with ECF.79 and propose requested custodians[3] and search terms.

## IX. Interrogatory No. 9-13 (mitigation and contributory negligence)

These requests seek information about the Government's efforts to mitigate the harm caused by Defendants and Defendants' allegations that the Government is somehow guilty of contributory negligence in failing to stop Defendants' illegal activities from impacting the Mexican people. As such, they are not proper subjects for discovery.

---

[3] As noted in previous correspondence, the Government will accept proposed custodians by agency, rather than by name of a particular public official, if Defendants wish to proceed in that manner.

### A. Act of State Doctrine.

The act of state doctrine bars claims, counterclaims, and affirmative defenses where "(1) there is an official act of a foreign sovereign performed within its own territory; and (2) the relief sought or the defense interposed [in the action would require] a court in the United States to declare invalid the [foreign sovereign's] official act." *Sea Breeze Salt, Inc. v. Mitsubishi Corp.*, 899 F.3d 1064, 1069 (9th Cir. 2018) (quoting *Credit Suisse v. U.S. Dist. Court*, 130 F.3d 1342, 1346 (9th Cir. 1997)). In addressing this issue previously, in the context of the Government's motion to strike certain of Defendants' affirmative defenses, the Court reserved judgment on the question of whether the Government could show the substantive requirements for application of the act of state doctrine. ECF.102.6. The Government now provides additional authority on these points.

First, the act of state doctrine applies to affirmative defenses when the governmental entity is the plaintiff. *See e.g. Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 438–39 (1964) (rejecting the argument that a sovereign plaintiff which voluntarily brings an action in American courts should be stripped of its right to invoke the act of state doctrine as a defense to a counterclaim and upholding application of act of state doctrine to bar counterclaims against a foreign sovereign plaintiff); *Fogade v. ENB Revocable Tr.*, 263 F.3d 1274, 1296 (11th Cir. 2001) (invalidating defendants' argument that the act of state doctrine should not be applied where it is raised only as a response or bar to affirmative defenses, since "[t]hat argument is inconsistent" with Supreme Court precedent); *Empresa Cubana Exportadora De Azucar y Sus Derivados v. Lamborn & Co.*, 652 F.2d 231, 239 (2d Cir. 1981) ("Depriving a sovereign plaintiff of its act of state defense to counterclaims

would be just as arbitrary and unfair as stripping it of its right to invoke any other affirmative defense, such as the statute of limitations or res judicata"); *Bank Tejarat v. Varsho–Saz,* 723 F.Supp. 516, 521–22 (C.D. Cal. 1989) (applying the act of state doctrine and striking defendant's affirmative defenses of "setoff" and "unclean hands").

And it applies here. Initially, it is uncontroversial that Defendant's affirmative defenses challenge official acts (efforts to combat gun trafficking and cartel violence) of a foreign sovereign (the Government) in its own territory (Mexico). *Sea Breeze Salt,* 899 F.3d at 1069 (setting out two-prong test for applicability of the act of state doctrine); *see also Nocula v. UGS Corp.*, 520 F.3d 719, 728 (7th Cir. 2008) ("The decision of a foreign sovereign to exercise its police power through the enforcement of its criminal laws plainly qualifies as an act of state.") Defendants cannot claim these efforts and policies are insufficient evidence of an "act of state" while at the same time claiming that these actions are comparatively responsible for the harm alleged here. *Bank Tejarat*, 723 F. Supp. at 518.

The second prong of the applicable test is also met here because Defendant's affirmative defenses "would require the court to judge the legality of acts of [the Government] completed within [its own] territory." *Bank Tejarat*, 723 F.Supp. at 521–22. Defendant's comparative fault, mitigation of harm, unclean hands, and proximate cause defenses all aim to evaluate the "success" of the Government's efforts to stop gun trafficking and cartel violence within its border (and ultimately condemn them) in order to blame the Government for the harm Defendants' illegal conduct caused and, thus, are precluded under the act of state doctrine. *See Nocula*, 520 F.3d at 728 (barring inquiry into the appropriateness of foreign sovereign's criminal investigation and prosecution).

Because the act of state doctrine bars Defendants' affirmative defense of contributory fault, the act of state doctrine also bars compelling discovery related to those defenses since such discovery would be rendered irrelevant by the doctrine's application.

Application of the *Sabbatino* factors also weighs in favor of applying the act of state doctrine here. First, "if there is no international consensus condemning [the Government's] actions, this factor weighs in favor of applying the act of state doctrine." There is no international consensus condemning the Government's efforts to curb cartel violence. Second, this case has potentially important implications for our foreign relations. *See Sea Breeze*, 899 F.3d at 1073 ("[T]he less important the implications of an issue are for our foreign relations, the weaker the justification for exclusivity in the political branches."). The United States clearly has an interest in the Government of Mexico succeeding in its efforts to curb cartel violence. And finally, weighing in favor of apply the act of state doctrine, "it is undisputed that the government of Mexico continues to exist." *Id*. at 1074.

**B. Public Duty Doctrine.**

Under the public duty doctrine, a governmental entity is understood to have a general duty to the public as a whole, not a specific duty of care in tort to each particular person or entity that comes into contact with a governmental agency. *See e.g. DeHoney v. Hernandez*, 595 P.2d 159 (Ariz. 1979) (holding the state had no duty in negligence for a tort claim against a police department for failure to act); *Morgan v. D.C.*, 468 A.2d 1306, 1310, 1319 (D.C. 1983) (finding that liability for wrongful death claim failed as a matter of law because police department had no general duty to protect individual citizens from harm caused by criminal conduct); *Salar v. U.S.*, 2006 WL 8441185, at *1 (D. Ariz. June

13, 2006) (holding that under the public duty doctrine "there is no general duty of law enforcement personnel or agencies to protect persons from the wrongs committed by others."). As one federal district court explained: "[t]he public duty doctrine does not merely make governmental entities immune from liability…rather, it makes them immune from fault because it eliminates a duty on the governmental entities in the first instance." *In re New England Compounding Pharmacy, Inc. Prod. Liab. Litig.*, 251 F. Supp. 3d 294, 298 (D. Mass. 2017). In the absence of having a relevant duty of care in tort, a governmental body cannot be found as a legal matter to be negligent or contributorily negligent because the first rule of tort liability is that a specific duty of care must exist before negligence can be found. *See Sanders v. Alger*, 394 P.3d 1083, 1085 (Ariz. 2017) (explaining that whether a duty of care is owed "is a threshold issue" and that "absent some duty, an action for negligence cannot be maintained."); *Durr v. City of Scottsdale*, 2024 WL 4664437, at *3 (D. Ariz. Nov. 4, 2024) ("The question of duty is a threshold issue and a question of law for the Court to decide 'before the case-specific facts are considered.'") (quoting *Gipson v. Casey*, 150 P.3d 228, 232 (Ariz. 2007)).

### B. Additional specific issues raised by these interrogatories.

**ROG 9** asks for "all communications . . . concerning remediating cartel related violence *within the borders of Mexico"* in the 20 years prior to Plaintiff's filing of its complaint. As explained above—and Defendants well note in their request—the Government's national security and police power decisions regarding cartels are made and performed in Mexico. Therefore, this requests inquiries into an "official act of a foreign sovereign performed within its territory." *See Liu v. Republic of China,* 642 F. Supp. 297,

302 (N.D. Cal. 1986) (dismissal of claim against a sovereign is appropriate where finding fault on the sovereign's part would necessarily involve "probing inquiry" into the sovereign's "national security and intelligence affairs"); *Nocula v. UGS Corp.*, 520 F.3d 719, 728 (7th Cir. 2008) (barring inquiry into a foreign sovereign's prosecution and investigation because "the decision of a foreign sovereign to exercise its police power through the enforcement of its criminal laws plainly qualifies as an act of state.").

Additionally, Defendants assert that the Government is "well aware" that official government reports describing efforts to remediate cartel violence is "not what Defendants sought with these Interrogatories." That is simply incorrect. The reports are responsive. Without any ability to evaluate what Defendants would propose as far as custodians or search terms, the Government stands on its objections to producing any information on this topic beyond what is available in public reports.

**ROG 10**, asking for "all communications . . . concerning coordinated efforts with foreign countries . . . regarding firearm violence, illegal firearm trafficking, or cartel violence," is similarly prohibited by the act of state and public duty doctrines. Agreements to coordinate with foreign powers are quintessential official acts because sovereigns decide to enter into these agreements within their own borders and because "the governmental action here could not have been taken by a private citizen." *Mujica v. Occidental Petroleum Corp.,* 381 F. Supp. 2d 1164, 1190 (C.D. Cal. 2005) (citing *Clayco Petroleum Corp. v. Occidental Petroleum Corp.,* 712 F.2d 404, 408 (9th Cir.1983)). Defendants' affirmative defenses would require the Court to render invalid the Government's coordinated efforts and agreements with other foreign sovereigns regarding national security risks such as

firearms and cartel violence, affecting Mexican citizens in Mexican territory and, thus, is barred by the act of state doctrine. Even so, Defendants provide no indication in their motion or otherwise how the Government's efforts to remediate cartel violence, either domestically or as a matter of foreign policy relate to whether Defendants made illegal sales of weapons into Mexico.[4]

**ROG 11** requests that the Government identify "all [its] efforts to mitigate all costs, expenditures, damages, losses, or harms" attributable to Defendants' conduct related to firearm trafficking. This request is barred by the act of state doctrine. The Government's domestic military actions, application of police power, national security decisions, and resource allocation choices are all quintessential official acts of state occurring entirely within that state's borders that are barred under the act of state doctrine. *Sea Breeze Salt*, 899 F.3d at 1075 (decisions about distribution *en masse* of Mexico's sovereign resources are "exactly the kind of powers" that are "peculiar to sovereigns."); *Roe v. Unocal Corp.,* 70 F.Supp.2d 1073, 1079 (C.D. Cal. 1999) (military actions are quintessential acts of state) military actions are quintessential acts of state); *Liu,* 642 F. Supp. at 302.

**ROG Nos 12-13** ask for 'all" of the Government's "efforts to investigate and prosecute" criminal cartels and those who possess illegal firearms in Mexico. For the same reasons stated previously, these requests are impermissible under the act of state doctrine.

---

[4] Additionally, Int. No. 10 should be counted as two interrogatories, since it seeks information both about "complaints" and "disagreements" with foreign governments as well as "joint efforts, task forces, bilateral agreements, or coordinated efforts." These topics are discrete in the sense that they relate to very different types of interactions with foreign governments and are not "logically or factually subsumed within and necessarily related to the primary question." *Berkadia Real Est.*, 2023 WL 2072494, at *7.

*See Bank Tejarat,* 723 F.Supp. at 521–22 (striking affirmative defenses of "offset" and "unclean" hands because they required a court to render invalid Iran's restitution claim alleging that defendant violated Iranian law and injured a government-owned bank within Iranian territory); *see also Nocula*, 520 F.3d at 728.

## X.   Interrogatory No. 14-18: numerosity objections

The Government maintains its numerosity objections to these requests. As discussed above, Int. No. 4 should be counted as 12 interrogatories, and Int. No. 10 should be counted as 2. In the event these objections are overruled, the Government stands on its Tiahrt objections (ECF.133) and its RIO RFP, and its overbreadth and proportionality objections. In the event that these objections are overruled, the Government requests that the Court order Defendants (again) to comply with their obligations to meet and confer with the Government regarding appropriate custodians and search terms.

## XI.   Conclusion

Defendants' motion to compel should be denied. To the extent that Defendants state in the conclusion of their motion that the Court should "impose sanctions on Mexico for its egregious conduct," there is no explanation of what this conduct is, or what would be the basis for the imposition of sanctions. The title of the motion also omits any reference to sanctions. The Government respectfully requests that in the event Defendants seek sanctions in some additional filing, that the Government be permitted to respond. Fed. R. Civ. P. 37(a).

Respectfully submitted this 15th day of May 2025,

                                                        DECONCINI MCDONALD YETWIN & LACY, P.C.

                                                        By: */s/ Ryan O'Neal*
                                                              Ryan O'Neal
                                                              2525 E. Broadway Blvd., Suite 200
                                                              Tucson, AZ 85716-5300
                                                              Attorneys for Plaintiff

| */s/ Steve D. Shadowen* | */s/ Jonathan E. Lowy* |
|---|---|
| Steve D. Shadowen (*pro hac vice*) | Jonathan E. Lowy (*pro hac vice*) |
| Tina J. Miranda (*pro hac vice*) | Yaacov (Jake) Meiseles (*pro hac vice*) |
| Nicholas W. Shadowen (*pro hac vice*) | Global Action on Gun Violence |
| SHADOWEN PLLC | 805 15th Street NW |
| 1717 W. 6th Street, Suite 290 | #601 |
| Austin, TX 78703 | Washington, DC 20005 |
| Phone: 855-344-3298 | Phone: (202) 415-0691 |
| sshadowen@shadowenpllc.com | jlowy@actiononguns.org |
| tmiranda@shadowenpllc.com | jmeiseles@actiononguns.org |
| nshadowen@shadowenpllc.com | |

**CERTIFICATE OF SERVICE**

I, Ryan O'Neal, hereby certify that this document was filed with the Clerk of the Court via CM/ECF. Those attorneys who are registered with the Court's electronic filing systems may access this filing through the Court's CM/ECF system, and notice of this filing will be sent to these parties by operation of the Court's electronic filings system.

Dated: May 15, 2025                                         /s/ *Ryan O'Neal*
                                                              Ryan O'Neal