**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Estados Unidos Mexicanos, | No. CV-22-00472-TUC-RM |
| Plaintiff, | **ORDER** |
| v. | |
| Diamondback Shooting Sports Incorporated, et al., | |
| Defendants. | |

Plaintiff Estados Unidos Mexicanos ("Plaintiff" or "Mexico") sues five Arizona firearm dealers—Diamondback Shooting Sports, Inc.; SnG Tactical LLC; Loan Prairie LLC d/b/a/ the Hub; Ammo A-Z, LLC; and Sprague's Sports, Inc. (collectively, "Defendants")—alleging that they knowingly "participate in trafficking military-style weapons and ammunition to drug cartels in Mexico" through "reckless and unlawful business practices," including straw sales, bulk sales, and repeat sales. (Doc. 1 at 4, 12 ¶¶ 1, 23.) Currently pending before the Court are Plaintiff's Motions to Compel (Docs. 118, 119), Defendants' Motion for Protective Order (Doc. 121), Defendants' Motions to Compel (Docs. 122, 123, 124), Plaintiff's Motion to Strike (Doc. 156), and Plaintiff's Motion for Leave to File Surreply (Doc. 157).

## I.     Motion to Strike

Defendants attach two affirmations of counsel to their Reply in Support of Motion for Protective Order. (Doc. 140-1, Doc. 140-2.) Plaintiff moves to strike the affirmations on the ground that new evidence cannot be submitted on reply. (Doc. 156.) In the

alternative, Plaintiff seeks leave to file a surreply arguing why the affirmations do not establish undue burden for purposes of Defendants' Motion for Protective Order.  (*Id.*)

Defendants argue that the affirmations do not constitute new evidence because they merely re-state, in a different form, the same representations made under Federal Rule of Civil Procedure 11(b) in Defendants' Motion for Protective Order. (Doc. 161.) Defendants further argue that Plaintiff suffered no prejudice from the affirmations being attached to Defendants' Reply, and that Plaintiff is simply seeking to have the last word.  (*Id.* at 4-5.) Finally, Defendants argue that Plaintiff improperly included the surreply as part of its Motion to Strike, thereby improperly putting it on the record without advance leave of Court.  (*Id.* at 5.)

In reply, Plaintiff argues that representations made in a motion do not constitute evidence, and that the affirmations attached to Defendants' Reply do not simply restate the representations made in the Motion for Protective Order but, instead, add further details. (Doc. 163.)  Plaintiff also maintains that it properly attached its proposed surreply to its Motion to Strike.  (*Id.* at 2.)

As an initial matter, the Court agrees with Defendants that Plaintiff improperly filed its proposed surreply as an attachment to its Motion to Strike.  The Local Rules of Civil Procedure authorize the filing of a motion, response, and reply, *see* LRCiv 7.2(a)-(d), but leave of Court is required to file a surreply.  Pursuant to the District of Arizona Case Management/Electronic Case Filing Administrative Policies and Procedures Manual ("CM/ECF Manual"), any proposed "documents that cannot be filed without a court order . . . must be electronically lodged using the 'Lodged Proposed Document' event." CM/ECF Manual § II(H).

The Court will excuse the improper filing in this instance and grant Plaintiff leave to file the surreply, but the Court will deny Plaintiff's request to strike the affirmations attached to Defendants' Reply in Support of Motion for Protective Order.  "[C]ourts typically do not consider new evidence first submitted in a reply brief because the opposing party has no opportunity to respond to it."  *Crandall v. Starbucks Corp.*, 249 F. Supp. 3d

1087, 1104 (N.D. Cal. 2017).  However, "[a] district court does not abuse its discretion in considering new arguments or evidence if the opposing party had an opportunity to respond." *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1188 (9th Cir. 2024).  Although the affirmations attached to Defendants' Reply largely repeat the representations made in Defendants' Motion, given the difference in form and the additional details provided, the Court finds that Plaintiff should have the opportunity to address the affirmations directly via its proposed surreply.

## II.    Motion for Leave to File Surreply

Plaintiff seeks leave to file a surreply to Defendants' omnibus Reply in Support of Motions to Compel.  (Doc. 157.)  Plaintiff argues that a surreply should be allowed because Defendants raised new arguments in the omnibus Reply, including an argument that Plaintiff waived privilege for certain documents by not including them on a privilege log, and an argument that Plaintiff should be required to produce the entirety of the Registro Criminal de Armas de Fuego ("RECAF")[1] database.  (Doc. 157 at 3.)

In response, Defendants contend that Plaintiff again improperly submitted its surreply as an attachment to its Motion.  (Doc. 160 at 3.)  Defendants further contend that Plaintiff's purported basis for filing a surreply is misleading and insufficient because Defendants raised the issue concerning Plaintiff's privilege log in their Motions to Compel and Plaintiff's RECAF database has been at the heart of Defendants' Motions to Compel. (*Id.* at 3-5.)  Defendants ask the Court to deny Plaintiff's Motion for Leave and to strike Plaintiff's proposed surreply from the docket.  (*Id.* at 6.)

The Court agrees that Defendants' omnibus Reply did not raise new arguments such that granting leave to file a surreply is warranted.[2]  The Court also agrees, as discussed above, that Plaintiff improperly filed the proposed surreply as an attachment to its Motion for Leave, rather than lodging it as a proposed document.  Accordingly, the Court will deny

---

[1] Plaintiff avers that the Fiscalia General de la Republica de Mexico maintains a database known as RECAF that holds information on firearms recovered by law enforcement in Mexico.  (Doc. 137 at 15 n.9.)
[2] To the extent the Reply does raise new arguments, the Court has not considered them herein.

Plaintiff's Motion for Leave and grant Defendants' request to strike the proposed surreply. *See* LRCiv 7.2(m)(1) (a party may seek to strike a filing that is prohibited or not authorized by a statute, rule, or court order).

### III. Discovery Motions

#### A. Legal Standard

Parties may obtain discovery—including via interrogatories pursuant to Rule 33 of the Federal Rules of Civil Procedure and requests for production pursuant to Rule 34— "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Evidence is relevant if it has any tendency to make a fact of consequence in determining the action either more or less probable. Fed. R. Evid. 401. In determining proportionality, the Court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Information that falls within Rule 26(b)(1)'s scope of discovery "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

If a party fails to answer an interrogatory submitted under Rule 33 or fails to produce documents as requested under Rule 34, the party seeking discovery may file a motion to compel under Rule 37. Fed. R. Civ. P. 37(a)(3)(B)(iii)-(iv). "Once the moving party establishes that the information requested is within the permissible scope of discovery, the burden shifts to the" nonmovant to demonstrate why the requested discovery should not be allowed. *Khalilpour v. CELLCO P'ship*, No. C-09-02712-CW(MEJ), 2010 WL 1267749, at *1 (N.D. Cal. Apr. 1, 2010).

"Any discovery motion brought before the Court without prior personal consultation with the other party and a sincere effort to resolve the matter, may result in sanctions." LRCiv. 7.2(j).

. . . .

### B.    Discussion

The parties ask the Court to resolve disputes concerning nearly every interrogatory and request for production ("RFP") in Plaintiff's First and Second Set of Interrogatories, Plaintiff's First Set of RFPs, Defendants' First Set of Interrogatories, and Defendants' First and Second Set of RFPs.  (Docs. 118, 119, 121, 122, 123, 124.)  The Court addresses below certain issues that appear to be intractable and on which the parties require judicial guidance.  However, it appears that many of the parties' disputes could be resolved via further good-faith personal consultation, or are otherwise not yet ripe for judicial resolution.

Although the parties met and conferred prior to bringing their discovery disputes to the Court's attention, the Court finds that neither party did so sincerely and in good faith. The Court orders the parties to continue their efforts to resolve disagreements concerning contention interrogatories, assertions of privilege and privilege logs, searches of electronically stored information ("ESI"), redactions, and the disclosure of documents containing information subject to confidentiality agreements or privacy protections.  The parties must comply with the Protective Order and ESI Protocol Order (Docs. 68, 79), including by meeting and conferring with respect to ESI custodians and data sources.  In addition, with the below guidance, the Court orders the parties to continue their efforts to resolve disagreements concerning overbreadth, undue burden, lack of proportionality, vagueness, and lack of particularity, including disagreements concerning whether information can be obtained from less burdensome sources, such as publicly available sources.  *See* Fed. R. Civ. P. 26(b)(2)(C).[3]

---

[3] The Court notes that Defendants have failed to meet and confer in good faith to narrow patently overbroad discovery requests.  For example, Defendants refused to negotiate in good faith to narrow RFPs 1 and 2 of Defendants' First Set of RFPs, which ask Plaintiff to produce all documents and communications concerning Defendants, cartels, firearms, firearm trafficking, and Plaintiff's injuries.  (Doc. 122-1 at 7-8.)  The Court presumes that Mexico has in its possession, custody, and control many millions of documents that mention cartels or firearms, and Defendants have wholly failed to show that all such documents are relevant or that producing them would be proportional to the needs of this case. (*See* Doc. 123 at 4-5.)  Similarly, Defendants request production of 10 million records that were allegedly hacked from Mexico, but Defendants wholly fail to establish the relevance and proportionality of all ten million records.  (Doc. 122-1 at 8; *see also* Doc. 122-2 at 10-13; Doc. 123 at 6-7; Doc. 124 at 14-15.)  If Defendants continue to take

- 5 -

1    Because the Court finds that all parties have failed to engage in discovery in a

2    professional, transparent, and cooperative manner, the Court finds that an award of

3    expenses to any party would not be just and therefore declines to shift costs to any particular

4    party at this time.  *See* Fed. R. Civ. P. 37(a)(5).  However, the Court warns the parties that

5    future failures to act in good faith during discovery may result in sanctions, including, if

6    appropriate, an order shifting costs to the attorney(s) advising the unacceptable conduct.

### 1.    Reasonable Time Period for Discovery

8    Plaintiff's First Set of Interrogatories defines the relevant time period as October 1,

9    2016, through present, while Plaintiff's Second Set of Interrogatories and First Set of RFPs

10   define the relevant period as January 1, 2010, through present.  (Doc. 118-2 at 11; Doc.

11   119-3 at 2, 78.)  Defendants objected to Plaintiff's proposed time periods and argued that

12   the responsive period for Plaintiff's discovery requests should be set at two years preceding

13   the filing of this lawsuit.  (*See, e.g.*, Doc. 119-3 at 27, 29-30, 38, 40-41, 49, 51-52, 59-62,

14   69, 71-72.)  However, Defendants' First Set of Interrogatories and First and Second Sets

15   of RFPs define the relevant period for Defendants' discovery requests as January 1, 2004,

16   through the present, based on the Complaint's reference to the expiration in 2004 of an

17   assault weapons ban in the United States.  (Doc. 122-1 at 5; Doc. 122-2 at 7; Doc. 122-3 at

18   8.)

19   In its Motions to Compel and in response to Defendants' Motions to Compel,

20   Plaintiff argues that the relevant period for Defendants' discovery requests and most of

21   Plaintiff's discovery requests should begin on October 1, 2016—roughly six years

22   preceding the filing of this lawsuit.  (Doc. 118 at 6-7; Doc. 119 at 15; Doc. 137 at 29-30.)

23   Plaintiff argues that the responsive period for RFPs "related to duty of care, knowledge of

24   risks and harms, training materials, and policies and practices" should begin on January 1,

25   2010, because Defendants' knowledge of red flags indicative of firearm trafficking can be

26   demonstrated from information long predating the statute of limitations, and some

27   informational, policy, and training materials may date back to 2010 but remain operative

28   unreasonable positions in discovery and continue to refuse to meet and confer in good faith,
the Court will impose sanctions.

years later.  (Doc. 118 at 7-8.)  Plaintiff argues that the responsive period should extend to the present because Plaintiff seeks injunctive relief for alleged ongoing negligence and harm.  (*Id.* at 8.)

In response to Plaintiff's Motions to Compel, Defendants argue that Plaintiff's discovery requests should be limited to the longest applicable statute of limitations, four years.  (Doc. 134 at 5-6.)  However, Defendants agree to compromise to a six-year responsive period.  (*Id.* at 6.)  Defendants continue to argue that the responsive period for their own discovery requests should begin in 2004.  (Doc. 155 at 8.)  Defendants argue that limiting the period for their own discovery requests "would exclude potentially highly relevant information showing that Mexico caused the gun violence epidemic for decades, and failed to mitigate it, far predating the statute of limitations at issue in this case."  (*Id.*)

"The statute of limitations is not a rigid barrier separating discoverable information from information outside the scope of discovery."  *Gottesman v. Santana*, No. 16-cv-2902-JLS(JLB), 2017 WL 5889765, at *5 (S.D. Cal. Nov. 29, 2017).  "[C]ourts permit parties to take discovery of information outside the period of limitations where such information is shown to meet the broadly defined standard for relevance."  *Board of Trustees of Kern Cnty. Elec. Workers' Pension Fund v. Trinity Constr. Enters., Inc.*, No. 1:24-CV-00563-JLT-CDB, 2025 WL 1233872, at *2 (E.D. Cal. Apr. 29, 2025).

The Court agrees that evidence predating the longest applicable four-year statute of limitations may be relevant to the parties' claims and defenses.  However, Defendants have failed to show that the period governing their discovery requests should begin in 2004 merely because Plaintiff's Complaint mentions the 2004 expiration of a United States assault weapons ban.  Furthermore, the relevance of evidence decreases and the burden of production increases with age.  Balancing the burden and expense of the proposed discovery with its likely benefit, the Court finds that a reasonable period for all parties' discovery requests is October 1, 2016, to the present.[4]  Documents such as training materials fall within this period if they were operative during the period, even if they were

---

[4] The Court agrees with Plaintiff that the period should extend to the present given that Plaintiff alleges ongoing harm and seeks injunctive relief.

1  created before the period.

2           **2.    Substantive Scope of Discovery**

3           The parties have raised myriad objections arguing overbreadth, undue burden,

4  irrelevance, and lack of proportionality.  Many of the parties' concerns fall into two

5  primary categories.  First, Defendants take the position that they should not be required to

6  produce sales records concerning any firearms beyond those specifically identified by

7  Plaintiff as having been recovered at crime scenes in Mexico, whereas Plaintiff argues that

8  all Defendants' sales records should be produced and has refused to provide Defendants

9  with information concerning firearms recovered at crime scenes in Mexico.  Second,

10  Plaintiff takes the position that it should not be required to produce any information

11  relevant to the issue of whether it contributed to or failed to mitigate harm arising from

12  firearm violence within its borders.  The Court addresses below the parties' arguments

13  concerning these issues.  The Court also addresses several other issues concerning

14  relevance, but the Court declines to address all of the parties' overbreadth, undue burden,

15  relevance, and proportionality objections at this time, as it appears many of the objections

16  can be resolved through continued sincere personal consultation in light of the guidance

17  provided herein.

18           **a.  Defendants' Sales Records**

19           Defendants have at times taken the position that they should be required to disclose

20  only those sales records relating specifically to the firearms mentioned in Plaintiff's

21  Complaint.  (*See* Doc. 118-2 at 107, 115, 123, 131.)  Defendants now appear to take the

22  position that their sales records are discoverable if they relate to any firearm recovered at

23  a crime scene in Mexico during the responsive period, whether or not that firearm is

24  specifically mentioned in the Complaint.  (*See* Doc. 121 at 8.)  The former position is

25  unreasonable because the firearms discussed in Plaintiff's Complaint were mentioned for

26  illustrative purposes only, as this Court has already recognized.  (*See* Doc. 50 at 14.)  With

27  respect to Defendants' revised position, Plaintiff contends that all Defendants' sales

28  records are relevant because they may reveal patterns and practices showing notice of red

flags indicative of straw purchases and/or firearm trafficking.  (Doc. 133 at 8-9.)

The Court agrees with Plaintiff that sales records beyond those relating to firearms recovered at crime scenes in Mexico are relevant to Plaintiff's ability to establish Defendants' notice of red flags.  However, Defendants' sales records are irrelevant to the extent they relate to firearms purchased for lawful purposes.  In light of Rule 26(b)(1)'s scope of discovery, the Court finds that Defendants' sales records are discoverable to the following extent: sales records from October 1, 2016, through present are relevant: (a) if they relate to any firearms recovered at a crime scene in Mexico during the responsive period; (b) if they relate to any other firearms for which Defendants received trace requests or other law enforcement communications during the responsive period; and/or (c) if they relate to any other firearms, ammunition, or firearm accessories sold to the same individuals who purchased any firearm in categories (a) and (b).[5]  As discussed below, Plaintiff must produce to Defendants information concerning the make and serial number of firearms recovered at crime scenes in Mexico, such that Defendants can compare the information to their records and determine whether they sold any of the recovered firearms.  The Court finds that Plaintiff has not established the relevance of records related to Defendants' firearm, ammunition, and firearm accessory purchases.[6]

To the extent paper records must be scanned and converted to electronic form to enable Defendants to produce responsive records to Plaintiff, the Court finds that Defendants have failed to establish that producing the records—as limited above—would cause an undue burden or that it would be disproportionate to the needs of this case.  The record reflects cost estimates only for two of the five Defendants, and the cost estimates do not reflect the limitations on relevance and responsive period set forth above.  Defendants have provided little information from which this Court can discern the percentage of

---

[5] With this guidance on relevance, the parties shall continue to meet and confer regarding the production of related documents, such as law enforcement communications.

[6] Plaintiff argues that records of Defendants' acquisitions is relevant because it could "reveal how soon a Defendant sold a firearm after acquiring it, which may indicate whether it was a special order."  (Doc. 147 at 11 n.16.)  However, Plaintiff's Complaint does not allege, and Plaintiff has not shown, that special order sales are more likely to have indicia of illegality.

1   records which are kept electronically versus in paper form by each Defendant.

2   Furthermore, the Court cannot determine whether the submitted cost estimates represent

3   an undue burden in light of Defendants' financial resources because—as addressed

4   below—Defendants have refused to produce information concerning their finances.  Given

5   the breadth and scope of this litigation, and the damages at issue, the Court finds that the

6   evidence of undue burden submitted by Defendants is insufficient.

7                    **b.    Tiahrt Amendment**

8             Congress has attached a provision known as the Tiahrt Amendment, or Tiahrt Rider,

9   to its Consolidated Appropriations Acts of 2003, 2005, 2008, 2010, and 2012.  *See Ctr. for*

10  *Investigative Reporting v. U.S. Dep't of Justice*, 14 F.4th 916, 924 (9th Cir. 2021).  Each

11  version of the Tiahrt Amendment has prohibited the Bureau of Alcohol, Tobacco, Firearms

12  and Explosives ("ATF") from using appropriated funds to disclose firearm tracing records,

13  subject to varying limitations and exceptions.  *Id.* at 924-25.

14            Plaintiff expresses concern that the Tiahrt Amendment does not permit it to disclose

15  information received from ATF.  (Doc. 133 at 14-16.)  However, Plaintiff states that it

16  would like to disclose and introduce at trial the contents of its RECAF database, which

17  include trace reports connecting Defendants to recovered firearms.  (*Id.* at 15.)  Plaintiff

18  states that, if Defendants produce all their sales records, Plaintiff can provide data from

19  RECAF that did not originate from ATF and that identifies which of Defendants' firearms

20  were recovered in Mexico.  (*Id.* at 16.)  Barring that solution, Plaintiff requests leave to

21  provide supplemental briefing regarding why the Tiahrt Amendment should not restrict

22  Plaintiff from producing or introducing at trial information obtained from ATF.  (*Id.*)

23  Defendants contend that Plaintiffs' Tiahrt Amendment objection is frivolous because this

24  Court already overruled objections that Defendants raised under the Tiahrt Amendment.

25  (Doc. 140 at 3-4.)

26            Plaintiff's Tiahrt Amendment concerns are distinct from the Tiahrt Amendment

27  objections previously raised by Defendants.  (*See* Doc. 95 at 1-16.)  In resolving

28  Defendants' previously raised objections, the Court found that the Tiahrt Amendment

"does not restrict Defendants' disclosure of their private business records." (Doc. 111 at 5.) However, the 2012 Tiahrt Amendment provides for limited disclosure of trace data to foreign law enforcement agencies and then explicitly prohibits such agencies from "knowingly and publicly disclos[ing] such data." Pub. L. No. 112-55, 125 Stat. 552, 609-10 (2012). Accordingly, although the Tiahrt Amendment does not restrict a firearm dealer's disclosure of its own private business records, it does contain an express limitation on foreign law enforcement agencies' disclosure of trace data received from ATF.

It appears that Plaintiff has in its possession, custody, and control information concerning the make and serial numbers of firearms recovered at crime scenes in Mexico, and that Plaintiff can disclose that information without needing to disclose trace data received from ATF.[7] Accordingly, the Court declines to resolve Plaintiff's Tiahrt Amendment concerns at this time. If Plaintiff cannot produce information concerning the make and serial numbers of firearms recovered at crime scenes in Mexico without disclosing trace data received from ATF, then the Court grants Plaintiff permission to file a supplemental brief addressing whether the Tiahrt Amendment prohibits the production. Plaintiff may also file a supplemental brief addressing the Tiahrt Amendment if Plaintiff seeks to use trace data received from ATF in connection with any disputes concerning Defendants' determinations of which recovered firearms were sold by Defendants.

### c.  Mitigation and Comparative Fault

Plaintiff has raised numerous relevance objections arising from its position that, as a governmental entity, it has no legal duty in tort "to provide for the general welfare" and, therefore, Defendants have no viable theory of failure to mitigate or comparative fault based on Plaintiff's efforts to combat gun violence. (Doc. 122-6 at 15; *see also, e.g.*, *id.* at 19-23; Doc. 122-4 at 61, 64, 69, 75, 77, 79-80.) And in response to Defendants' Motions to Compel, Plaintiff argues that the act of state and public duty doctrines bar affirmative defenses that challenge Plaintiff's official acts or assert Plaintiff's contributory negligence. (Doc. 137 at 22-28; Doc. 138 at 11-18.)

---

[7] Information concerning recovered firearms not sold by Defendants is relevant to issues of causation and comparative fault.

1    Plaintiff is free to argue at summary judgment that the act of state and public duty

2    doctrines preclude certain defenses.  However, Plaintiff's position that Defendants are not

3    entitled to discovery related to theories of failure to mitigate or comparative fault is

4    baseless in light of this Court's Order on Plaintiff's previously filed Motion to Strike

5    Affirmative Defenses.  (*See* Doc. 102.)  In that Order, the Court noted the necessity of

6    discovery into the fault of all parties contributing to harm from firearm violence in Mexico,

7    and the Court declined to strike Defendants' defenses concerning proximate causation,

8    comparative fault, failure to mitigate, and unclean hands stemming from Plaintiff's alleged

9    failure to control cartel violence within its borders.  (*Id.* at 4-8, 12-14.)

10    Because Defendants' defenses concerning proximate causation, comparative fault,

11    failure to mitigate, and unclean hands remain part of this litigation, Plaintiff cannot

12    categorically refuse to produce information relevant to those defenses.  However, requests

13    for information relevant to issues of causation, comparative fault, failure to mitigate, and

14    unclean hands are limited to the responsive period of October 1, 2016, to the present and

15    must fall within the permissible scope of discovery under Rule 26(b)(1).[8]

16    **d.    Other Issues Concerning Overbreadth and Undue Burden**

17    Defendants argue that their financial records, including profits data, balance sheets,

18    and tax returns, are irrelevant to Plaintiff's claims and that discovery of the financial

19    records is premature to the extent the records relate to punitive damages.  (Doc. 134 at 12-

20    13.)  Plaintiff argues that Defendants' refusal to produce financial information is

21    unsupported by law, as such information is relevant to Plaintiff's claims, including

22    Plaintiff's unjust enrichment claim and Plaintiff's request for punitive damages.  (Doc. 118

23    at 16; Doc. 147 at 11-12.)  Regardless of whether discovery concerning punitive damages

24    is premature, Defendants' financial records are relevant to Plaintiff's unjust enrichment

25    claim.  *See Sun Valley Ranch 308 Ltd. P'ship ex rel. Englewood Props., Inc. v. Robson*,

---

26    [8] Discovery requests related to the 2014 disappearance of students from the Ayotzinapa

27    Rural Teachers' College (*see, e.g.*, Doc. 122-2 at 14) fall outside the responsive period and
are otherwise not relevant and proportionate to the needs of the case.  The parties shall
continue their meet-and-confer efforts regarding Defendants' other discovery requests

28    relevant to causation and comparative fault, including requests concerning the Merida
Initiative.

294 P.3d 125, 131 (Ariz. App. 2012) (stating elements of unjust enrichment claim). Defendants' categorical refusal to produce their financial records is without legal justification.

RFP 22 of Defendants' Second Set of RFPs requests "[a]ll Documents concerning all Foreign Agent Registrations concerning this Action, the subject matter thereof, or the representation of You in connection with this Action or the subject matter thereof." (Doc. 122-2 at 13.) Among other objections, Plaintiff objected to relevance and proportionality and stated that RFP 22 is vague, ambiguous, and grammatically indecipherable. (Doc. 122-5 at 60-61.) Instead of working with Plaintiff to clarify the RFP, Defendants simply dug in, arguing in a September 23, 2024 letter and in their Motion to Compel that the request is not vague, ambiguous, or grammatically indecipherable. (*See* Doc. 122-7 at 22; Doc. 124 at 16.) Defendants' refusal to clarify this RFP in response to Plaintiff's objections exemplifies Defendants' failure to meet and confer in good faith. Not only is RFP 22 grammatically confusing, but Defendants have failed to establish the relevance of the documents sought. Accordingly, Plaintiff need not respond to RFP 22 of Defendants' Second Set of RFPs.

Defendants argue that the Court should either order Plaintiff to produce responsive records possessed by its branches, agencies, and political subdivisions, or alternatively hold that Plaintiff cannot recover any damages other than those incurred by the federal government of Mexico. (Doc. 122 at 9-10; Doc. 124 at 6.) In response, Plaintiff argues that the fact that it does not have custody and control over certain files for purposes of discovery is wholly unrelated to its standing to proceed in *parens patriae* on behalf of its citizens. (Doc. 137 at 21-22.) Plaintiff need only produce information within its "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). Defendants' argument concerning the scope of Plaintiff's recoverable damages is premature and more properly raised at the summary judgment stage.

. . . .

. . . .

- 13 -

### 3.    Interrogatories—Numerosity

Plaintiff and Defendants both assert numerosity objections against one another, arguing that the opposing party has exceeded the 25-interrogatory limit because subparts of their interrogatories should be counted as separate interrogatories, but arguing that their own interrogatories should each count as only one for purposes of the numerical limit.  (*See* Doc. 119 at 7-9; Doc. 122 at 12-13, 16-20; Doc. 135 at 6-10; Doc. 138 at 2, 7-8, 18; Doc. 148 at 2-5; Doc. 155 at 10.)

Rule 33 provides that, "[u]nless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts."  Fed. R. Civ. P. 33(a)(1).  The rule does not define the term "discrete subparts," and there is little circuit court guidance on the issue.   The Advisory Committee Notes to the 1993 Amendment to Rule 33 state the following:

> Parties cannot evade [the 25-interrogatory] presumptive limitation through the device of joining as "subparts" questions that seek information about discrete separate subjects.   However, a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication.

Fed. R. Civ. P. 33, Advisory Committee Notes to 1993 Amendment.

District courts have taken varying approaches to determining when a subpart of an interrogatory should be counted as a separate interrogatory for purposes of Rule 33's numerical limit.   Some courts apply a "common-theme" approach, in which "an interrogatory containing subparts directed at eliciting details concerning a common theme should be considered a single question[.]"  8B Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2168.1 (3d ed. updated 2025); *see also Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*, 315 F.R.D. 191, 195-196 (E.D. Tex. 2016) (collecting cases adopting this approach).  However, "[w]hat constitutes 'a common theme' . . . is subject to widely divergent views, and "if the concept of 'common theme' is given a sufficiently broad interpretation, there is almost no limit to the use of multiple subparts that could qualify as falling within a single interrogatory."  *Erfindergemeinschaft*,

315 F.R.D. at 196.

Other courts, including many district courts within the Ninth Circuit, apply a related-question test, in which "subparts that are logically or factually subsumed within and necessarily related to the primary question should not be treated as separate interrogatories." *Moser v. Navistar Int'l Corp.*, No. 4:17-CV-00598, 2018 WL 3614012, at *6 (E.D. Tex. July 27, 2018); *see also Rambus Inc. v. NVIDIA Corp.*, No. C-08-03343 SI, 2011 WL 11746749, at *14 (N.D. Cal. Aug. 24, 2011); *Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 445 (C.D. Cal. 1998); *Erfindergemeinschaft*, 315 F.R.D. at 196 (collecting cases applying related-question test). Put another way, "[i]f the first question can be answered fully and completely without answering the second question, then the second question is totally independent of the first and not factually subsumed within it." *Dimitrijevic v. TV&C GP Holding Inc.*, No. H-04-3457, 2005 WL 8164073, at *2 (S.D. Tex. Aug. 24, 2005) (internal quotation and alteration marks omitted); *see also Kendall v. GES Exposition Servs., Inc.*, 174 F.R.D. 684, 685–86 (D. Nev. 1997) (asking whether subsequent question can stand alone); *Erfindergemeinschaft*, 315 F.R.D. at 196.

Ultimately, "the issue of 'discreteness' cannot reliably be captured by a verbal formula," turning instead "on a case-by-case assessment of the degree to which the subpart is logically related to the primary question in the interrogatory, as opposed to being separate and distinct." *Erfindergemeinschaft*, 315 F.R.D. at 197. In determining discreteness, courts should be mindful of "the competing purposes of Rule 33(a)(1): allowing reasonable latitude in formulating an inquiry to elicit as complete an answer as possible, while at the same time not allowing the multiplication of interrogatories to the point that it defeats the purposes underlying the 25-interrogatory limit." *Id.* at 196-197.

With these principles in mind, the Court turns to the parties' specific numerosity objections.

### a.    Plaintiff's Interrogatories

Defendants argue that Interrogatory One of Plaintiff's First Set of Interrogatories constitutes at least 164 and as many as 27,552 separate interrogatories. (Doc. 119-3 at 28,

39, 50, 60, 70.) The Court disagrees. The interrogatory asks Defendants to identify all electronic devices and databases used by Defendants' employees and agents that contain information related to firearm sales. (*Id.* at 8-9.) The interrogatory contains subparts and references an attached list of firearms in order to provide specific details regarding the electronic devices and databases whose identification is being sought, but the subparts of the interrogatory are logically subsumed within the primary question.

Defendants argue that Interrogatory Two of Plaintiff's First Set of Interrogatories consists of a minimum of 164 and as many as 7,380 separate interrogatories. (Doc. 119-3 at 29-30, 41, 51-52, 62, 71-72.) The Court finds that Interrogatory Two consists of three separate interrogatories for purposes of Rule 33's numerical limit, because the interrogatory asks Defendants to identify all employees or former employees[9] in three discrete categories: those responsible for firearm sales identified in a referenced attachment, those involved in communications with ATF or other law enforcement agencies regarding Defendants' firearm sales, and those responsible for training employees on firearm sales.

Defendants argue that Interrogatory Three of Plaintiff's First Set of Interrogatories consists of a minimum of 8 and as many as 16 separate interrogatories. (Doc. 119-3 at 30-31, 41-42, 53, 62-63, 73.) The interrogatory asks Defendants to identify all video surveillance cameras or other recording devices operational at Defendants' point-of-sale locations and to provide details concerning each such device, including where the device was installed, the time period during which it was operational, whether it recorded audio and/or video, how often it recorded, what prompted recordings, the dates for which recordings are available, and information concerning deleted recordings. (Doc. 119-3 at 9.) This interrogatory primarily seeks information concerning recording devices, and the subparts merely provide details regarding the information being requested. Therefore, this interrogatory counts as one interrogatory for purposes of the numerical limit.

---

[9] The interrogatory requests identification of the names of the employees or former employees, along with other details such as job position, dates of employment, job duties, and involvement in the delineated categories. The Court finds that these other details are subsumed within the primary request for the identification of the individuals.

Defendants' numerosity objections to Interrogatories Four through Nine of Plaintiff's Second Set of Interrogatories appear to be premised on Defendants' position that Plaintiff already exceeded Rule 33's 25-interrogatory limit in its First Set of Interrogatories. (*See, e.g.*, Doc. 119-3 at 92-98, 105-111, 118-125, 133-143.) Although Defendants argue in their Response to Plaintiff's Motion to Compel that Plaintiff's use of embedded requests "continues throughout the first and second sets of interrogatories," (Doc. 135 at 6), Defendants do not specifically explain in their Response or in their interrogatory objections why any particular interrogatory in Plaintiff's Second Set of Interrogatories should be counted as more than one interrogatory. To the extent the interrogatories in Plaintiff's Second Set of Interrogatories contain subparts, the Court finds that they are logically subsumed within the primary question of each interrogatory.

Plaintiff argues that Interrogatories One through Three of its First Set of Interrogatories should not count toward Rule 33's numerical limit at all, because the interrogatories request basic information that Defendants should have disclosed in the ordinary course of discovery. (Doc. 119 at 15-17; Doc. 148 at 9-10.) In support of this argument, Plaintiff cites a case in which the court allowed a party to exceed the numerical limitation of Rule 33 due to the party's inability to obtain basic initial disclosure information pursuant to Rule 26(a). (*See* Doc. 119 at 17 and Doc. 148 at 9 (citing *Thomas v. Yates*, No. 1:05-cv-01198-LJO-JMD-HC, 2009 WL 3273280, at *7 (E.D. Cal. Oct. 9, 2009).) However, Plaintiff states in its Reply that its request to not count its First Set of Interrogatories against Rule 33's presumptive numerical limit "is not driven by Defendants' failure to make sufficient initial disclosures but rather by their inability to engage in transparent and cooperative discovery negotiations." (Doc. 148 at 4.) The Court finds that Plaintiff has not adequately supported its request to discount Interrogatories One through Three in calculating the number of Plaintiff's interrogatories for purposes of Rule 33's numerical limit.

In conclusion, the Court finds that Plaintiff's first nine interrogatories should count as twelve interrogatories for purposes of Rule 33's numerical limit, because Interrogatory

Two consists of three separate interrogatories.

### b.    Defendants' Interrogatories

Defendants argue that Plaintiff waived its numerosity objections by selectively answering interrogatories.  (Doc. 122 at 13.)   However, because Plaintiff objected to numerosity and did not respond to any interrogatories it considered to have surpassed the 25-interrogatory limit, the Court finds that Plaintiff did not waive its numerosity objections. *See TIW Holdings LLC v. Hotbox Farms LLC*, No. 3:24-cv-00126-AN, 2025 WL 1112840, at *3 (D. Or. Apr. 15, 2025) (no waiver of numerosity objection where responding party responds to first 25 interrogatories and objects to the remainder).

Plaintiff raises numerosity objections to Interrogatories Four, Ten, and Fourteen through Eighteen of Defendants' First Set of Interrogatories.   Interrogatory Four asks Plaintiff to provide details concerning each cost, expenditure, damage, loss or harm that Plaintiff attributes to Defendants in this action, including (a) the nature and amount of the damage; (b) the time period for which recovery is sought; and (c) how and when the damage was determined or calculated.   (Doc. 122-3 at 10.)   Plaintiff argues that Interrogatory Four of Defendants' First Set of Interrogatories consists of a minimum of 12 and a maximum of 36 separate interrogatories, because it seeks three discrete categories of information related to 12 separate injuries alleged in Plaintiff's Complaint.  (Doc. 122-6 at 14; Doc. 138 at 7-8.)   Applying the same approach applied to Plaintiff's interrogatories, the Court disagrees.  Interrogatory Four seeks information concerning Plaintiff's damages, with specification regarding the details being sought.  The subparts of this interrogatory are logically subsumed within the primary question, and therefore this interrogatory consists of a single interrogatory.

Interrogatory Ten of Defendants' First Set of Interrogatories asks Plaintiff to identify all communications concerning "complaints, disagreements, requests for assistance, acknowledgement of efforts, joint efforts, task forces, bilateral agreements, or coordinated efforts with foreign countries . . . regarding firearms violence, illegal firearm trafficking or cartel fueled violence."   (Doc. 122-3 at 12.)   Plaintiff argues that this

interrogatory should count as two interrogatories because it seeks information about two discrete types of interactions: complaints and disagreements, versus joint efforts, task forces, bilateral agreements, and coordinated efforts. (Doc. 122-6 at 21-22; Doc. 138 at 17 n.4.) The Court disagrees that this interrogatory should count as two interrogatories merely because it seeks information about interactions that can be characterized as either adversarial or cooperative. The interrogatory seeks firearm or cartel-related communications with foreign countries, and the subparts of the interrogatory detail the types of communications being sought. Applying the same approach applied to Plaintiff's interrogatories, the Court finds that the subparts of this interrogatory are logically subsumed within the primary question. Accordingly, Interrogatory Ten consists of one interrogatory.

Interrogatory Fourteen of Defendants' First Set of Interrogatories asks Plaintiff to identify every firearm recovered or associated with a crime in Mexico during the responsive period, including the chain of custody for each such firearm and whether any illegal possessor was a member of a criminal cartel in Mexico. (Doc. 122-3 at 12-13.)[10] Plaintiff argues that this interrogatory should count as two interrogatories, because information regarding the cartel affiliation of firearm possessors is a discrete inquiry from information about the firearm itself. (Doc. 122-6 at 25.) The Court finds that the request for chain-of-custody information is logically subsumed within the request for identification of the firearms, but the Court agrees with Plaintiff that the request for the cartel affiliation of any illegal possessors is a discrete, independent inquiry. Accordingly, Interrogatory Fourteen consists of two interrogatories for purposes of Rule 33's numerical limit.

Interrogatory Fifteen of Defendants' First Set of Interrogatories asks Plaintiff to identify every firearm traced by Mexico, including the model and serial number, as well as the chain of custody for each firearm from the original manufacturer to the illegal possessor, the facts surrounding the firearm's presence in Mexico, and Mexico's

---

[10] To the extent Plaintiff is concerned that the Tiahrt Amendment may restrict its ability to fully answer Defendants' interrogatories, Plaintiff may file a supplemental brief, as set forth above.

investigation or prosecution of anyone in connection with the firearm.  (Doc. 122-3 at 13.)  Plaintiff argues that this interrogatory should count as two interrogatories, because the inquiry regarding the investigation or prosecution of anyone in connection with the firearms is discrete from the inquiry for information about the firearms.  (Doc. 122-6 at 26-27.)  The Court agrees.  Although chain-of-custody information is logically subsumed within the request for identification of the firearms, the request for information concerning Mexico's investigation or prosecution of anyone in connection with the firearms is a discrete and independent inquiry.  Accordingly, Interrogatory Fifteen consists of two interrogatories.

Interrogatory Sixteen of Defendants' First Set of Interrogatories seeks information regarding each firearm recovered or associated with a crime in Mexico that was at any time legally possessed in Mexico, including the facts surrounding the firearm's legal presence and use in Mexico, Mexico's investigation or prosecution of anyone in connection with the firearm, and the damages that Plaintiff incurred in connection with the firearm.  (Doc. 122-3 at 13.)  Plaintiff argues that this interrogatory consists of three separate and discrete inquiries: one inquiry seeking information about the firearms at issue, one inquiry seeking information concerning the investigation or prosecution of anyone in connection with the firearms at issue, and one seeking information concerning the damages associated with the firearms at issue.  (Doc. 122-6 at 28.)  The Court agrees that Interrogatory Sixteen consists of three discrete interrogatories.

Plaintiff's numerosity objections to Interrogatories Seventeen and Eighteen of Defendants' First Set of Interrogatories appear to be premised on Plaintiff's position that Defendants already exceeded Rule 33's numerical limit.  (Doc. 122-6 at 29-30.)  Plaintiffs do not appear to argue that either interrogatory contains discrete subparts that should be counted as separate interrogatories for purposes of the numerical limit.  The Court has reviewed the interrogatories and finds that each should count as one interrogatory for purposes of the 25-interrogatory limit.

In conclusion, Interrogatories Four and Fifteen of Defendants' First Set of

Interrogatories each consist of two interrogatories, and Interrogatory Sixteen consists of three. Accordingly, Defendants' First Set of Interrogatories contains 22 separate interrogatories.

## IV. Conclusion

With the above guidance, the Court orders the parties to continue to meet and confer in good faith to resolve their remaining discovery disputes.

**IT IS ORDERED**:

1. Plaintiff's Motion to Strike (Doc. 156) is **partially granted and partially denied**. The Motion is denied to the extent Plaintiff asks the Court to strike the affirmations attached to Defendants' Reply in Support of Motion for Protective Order. The Motion is granted to the extent Plaintiff requests leave to file a Surreply. The Court has considered the Surreply attached to Plaintiff's Motion to Strike.

2. Plaintiff's Motion for Leave to File Surreply (Doc. 157) is **denied**. The Surreply attached to the Motion for Leave (Doc. 157 at 6-10) is **stricken** from the record.

3. Plaintiff's Motions to Compel (Docs. 118, 119), Defendants' Motion for Protective Order (Doc. 121), and Defendants' Motions to Compel (Docs. 122, 123, 124) are **partially granted and partially denied**, as set forth above.

Dated this 21st day of October, 2025.

_____
Honorable Rosemary Márquez
United States District Judge