DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 EAST BROADWAY BLVD., SUITE 200
TUCSON, AZ 85716-5300
(520) 322-5000

Ryan O'Neal (AZ # 031919)
roneal@dmyl.com
Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Estados Unidos Mexicanos,<br><br>*Plaintiff*<br><br>*vs.*<br><br>Diamondback Shooting Sports, Inc., *et al.*,<br><br>*Defendants* | **PLAINTIFF'S REPLY IN SUPPORT OF EMERGENCY MOTION TO PRESERVE EVIDENCE**<br><br>**MEMORANDUM OF POINTS AND AUTHORITY**<br><br>No. 4:22-cv-00472-TUC-RM |

Plaintiff Estados Unidos Mexicanos submits this Reply to Defendant Diamondback Shooting Sports, Inc.'s Opposition, ECF 173 ("Opp."), to Plaintiff's Emergency Motion to Preserve Evidence, ECF 171 ("Mot."). For the reasons discussed below and in Plaintiff's prior briefing, the Court should grant Plaintiff's motion.

In the middle of fact discovery, Diamondback seeks to destroy a significant set of documents—many of which it has yet to produce, despite the Court having ordered it to do so. Order at 21, ECF 165 ("October Order"). It does so, allegedly, to reclaim a 10' x 15' storage room and to allow its employees to stop performing the same ATF searches they've been performing for years. The only alternative it presents is to demand that Plaintiff pay six figures to scan and preserve those records itself. Diamondback's audacious attempt to destroy

its records contravenes fundamental principles of document retention and would significantly harm Plaintiff's ability to prove its claims. Accordingly, we ask this Court to preserve the status quo by granting Plaintiff's emergency motion.

## I. Diamondback Cannot Comply with its Preservation and Discovery Obligations if it Destroys These Records by October 30

To fully comply with its ongoing discovery obligations, including but not limited to complying with the Court's October Order, Diamondback must preserve its sales records beyond its self-imposed October 30 deadline. Diamondback's arguments to the contrary—namely that it has already "substantially completed" its production of certain documents, and that it can produce others by October 30 if Plaintiff performs certain tasks—are factually inaccurate and ignore the full scope of Diamondback's discovery obligations.

### *A. Discovery is Ongoing*

Diamondback's response misses the forest for the trees. It spends almost the entirety of its response litigating the production of certain subcategories of documents without recognizing its broader obligations to preserve potentially relevant documents *throughout* litigation. A party's "duty to preserve . . . applies throughout litigation . . . . So long as a party owes this duty to opposing counsel, it must suspend any existing policies related to deleting or destroying files and preserve all relevant documents related to the litigation." *Larios v. Lunardi*, 442 F. Supp. 3d 1299, 1305 (E.D. Cal. 2020) (internal citation omitted).

Fact discovery remains open, and Plaintiff is entitled to pursue additional discovery as new evidence emerges. For example, interviews and depositions of Diamondback employees, straw purchasers, or other witnesses may identify previously unknown transactions, customers, or trafficking pathways, thereby necessitating the production of sales records not



DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

previously recognized as relevant. Indeed, the records themselves—once they are produced—might point to the existence of other discoverable records. Diamondback therefore cannot assume that its current production efforts will exhaust its future discovery obligations or justify the destruction of potentially relevant records before discovery concludes.

***B. Diamondback's Productions of Categories (a) and (b) are Incomplete***

Apart from those broadly applicable obligations, Diamondback's claims as to specific documents also fall short. To begin, Diamondback's assertion that it has "substantially completed" its production of sales records related to categories (a) and (b) of the Court's October Order, Opp. at 2, 8–9, fails on its face: "substantial completion" is not a permissible threshold at which to destroy documents. Plaintiff has a right to full discovery—not just most of it. Furthermore, Diamondback's claim of "substantial[] completion" is untrue:

*First*, as Plaintiff has informed Diamondback, its production of category (a) documents was "significantly deficient in identifying all the relevant guns." Declaration of Carina Bentata (Bentata Decl.), Ex. 1, at 1 (Aug. 26, 2026, Letter from J. Steisel to J. Malsch). Accordingly, Diamondback will need to review its records to identify missing matches, and so cannot assert that the remaining sales records do not contain relevant evidence.[1]

[1] Diamondback feigns ignorance and outrage that Plaintiff possesses trace data. *See* Opp. at 4 n.5. But this issue was explicitly litigated in the motion to compel, *see* Pls.' Response to Defs.' Mot. for Protective Order, ECF 133 at 14–16. The Court concluded that, to avoid potential issues under the Tiahrt Amendment, Plaintiff should only disclose the make and serial numbers of recovered firearms, and Defendants should match those firearms to their records, *see* October Order at 10–11. The Court did not, however, fully rule on the limitations under Tiahrt. Plaintiff recently noted deficiencies in Defendants' productions and anticipates seeking the Court's guidance to determine how to permissibly address those deficiencies in light of Tiahrt.

*Second*, while Plaintiff produced an initial list of firearms recovered in Mexico to Defendants in December 2025, it repeatedly informed Defendants that it would need to supplement the list with (1) firearms recovered in 2016 and 2017; and (2) an updated list two months before the close of fact discovery of newly recovered firearms. Bentata Decl., Ex. 2, at 3 nn.3, 4 (Nov. 5, 2025, Letter from T. Miranda to C. Renzulli); Ex. 3, at 1 n.1 (Dec. 10, 2025, Letter from T. Miranda to C. Renzulli). Defendants raised no objection, nor did Diamondback raise the issue of its expiring license. Bentata Decl., Ex. 4 (Jan. 8, 2026, Letter from J. Malsch to J. McGrath). Plaintiff confirmed in a later letter that, "the Government is still investigating the extent to which data from 2016 – 2017 is available." Bentata Decl., Ex. 5 (Feb. 2, 2026, Letter from J. McGrath to J. Malsch).[2] Thus, Diamondback's production of category (a) documents will need to be supplemented with those categories.

*Third*, even if Diamondback could produce the remaining responsive sales records for categories (a) and (b) before October 30, doing so would leave Plaintiff with no meaningful opportunity to review the production and identify deficiencies. Such review is not a futile exercise: Plaintiff's review of Diamondback's prior production uncovered numerous omissions and missing documents. *See, e.g.*, Steisel Decl. Ex. 1 at 6–8, ECF 171-1. Litigants are not permitted to make an initial production of documents, declare themselves satisfied, and then destroy the documents they chose not to produce.[3]

[2] Plaintiff intends to produce a list of the firearms recovered in 2016–17 shortly, and also still intends to provide a complete updated list two months before the close of fact discovery.

[3] Even with respect to the sales records already produced, the parties have a pending dispute regarding the scope of Defendants' redactions. Bentata Decl., Ex. 6 (Sept. 3, 2026, Email from J. McGrath to J. Malsch). Because the Court may require Diamondback to remove redactions, Diamondback must preserve unredacted versions of the produced records.



DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

### *C. Diamondback Cannot Adequately Complete Production of Category (c) Documents by October 30*

In addition, Diamondback has not demonstrated that it can produce—or even that it intends to produce—all category (c) documents by October 30. Diamondback concedes that it has not searched for category (c) documents, on the asserted ground that it was waiting for Plaintiff to provide a "master list" from the documents Diamondback produced in categories (a) and (b). *See* Opp. 4–5, 8–9. Plaintiff's proposal to provide such a list after the completion of categories (a) and (b) was made without knowing that Diamondback intended to make its records unavailable on October 30. Diamondback, despite knowing about this "deadline," did not inform Plaintiff of this cutoff date search for category (c) documents.[4] Given that the universe of category (c) documents is likely greater than categories (a) and (b), even if Plaintiff could provide a master list by September 14, as Diamondback requests, *see* Opp. at 12, it is highly unlikely that Diamondback could complete this production before October 30.

Moreover, any master list that Plaintiff could provide by September 14 would be incomplete because, as explained above, the complete list of purchasers from categories (a) and (b) is still unknown. *See supra* at 3–4. And even if Diamondback were able to make an

[4] Notably, while Diamondback asks Plaintiff to create a master list, this list will be based on the documents that *Diamondback* has produced, and therefore Diamondback already possesses this information and could create such a list itself. Additionally, to the extent Diamondback is suggesting Plaintiff has delayed in creating this master list, Plaintiff received Diamondback's production related to category (b) documents only nine days ago. This production included 8,367 pages of documents, Ex. 7 (Aug. 25, 2026, Email from J. Malsch to J. McGrath), and Plaintiff is still in the process of reviewing them and creating a list of the purchasers mentioned in them.

DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

initial production of category (c) documents before October 30, Plaintiff would still need the opportunity to review the production for deficiencies before the records become unavailable.

Separately, it is unclear whether Diamondback intends to fully produce category (c) documents, or if it instead seeks to relitigate its burden objections. Diamondback's Opposition states: "[t]he production of category-(c) documents remains a potential issue for the parties and the Court, depending upon the burden, which will not be known until Plaintiff produces its 'master list.'" Opp. at 9. Diamondback's letter to Plaintiff on August 17, 2026, also evidenced a lack of intent to produce category (c) documents, stating that "for category (c), Diamondback would be forced to search through thousands of paper records" and asking whether Plaintiff would be "willing to forgo" category (c) documents altogether. Steisel Decl. Ex. 1 at 3, ECF 171-2. To the extent that Diamondback claims that producing category (c) documents is overly burdensome, the Court has already addressed and rejected this very argument, *see* ECF 165 at 9–10, and therefore Diamondback's request would amount to an improper and meritless motion for reconsideration. *See, e.g.*, *Champion Power Equip. Inc. v. Firman Power Equip. Inc.*, No. 23-cv-02371-PHX-DWL, 2025 WL 3187101, at *10 (D. Ariz. Nov. 14, 2025) (rejecting party's attempt to raise "objections the Court previously rejected" as, "in effect, disguised requests for reconsideration"); *MLC Intell. Prop., LLC v. Micron Tech., Inc.*, No. 14-cv-03657-SI, 2019 WL 5269014, at *6 (N.D. Cal. Oct. 17, 2019) (rejecting opposition brief that "effectively seeks reconsideration of the Court's orders").

For these reasons, Diamondback's documents must be preserved to allow for a meaningful production and review of the category (c) documents ordered by the Court.

DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

**II. Diamondback's Options for Preservation are Not Unduly Burdensome**

The fact that paper records require storage space is a fact of life; it is not an undue burden. Courts have recognized that storing such records is an obligation for all parties in litigation, and one that may require some effort and expense: "The obligation to retain discoverable materials is an affirmative one." *Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 557–58 (N.D. Cal. 1987).

One of the few courts to have addressed the unusual request to destroy preserved, accessible records rejected it roundly. In *Al Otro Lado, Inc. v. Nielsen*, 328 F.R.D. 408 (S.D. Cal. 2018), the defendants—much like Diamondback—sought to alter their recordkeeping practices to save costs in a way that would "result in the destruction of all . . . data from their current system that has not otherwise been retained." *Id.* at 414. The court made clear that bowing to a party's preferred business methods, or the most cost-effective ones, is not a sufficient excuse for deviating from discovery obligations. *Id.* at 418–419 ("That litigation may require a party to deviate from its normal data ESI management protocols is not unusual, or on its face, a viable basis for objection."). The same principle holds here.

As discussed in Plaintiff's prior briefing, Diamondback can comply with its preservation obligations with minimal burden by simply renewing its license.[5] That

[5] As Plaintiff's motion sets forth, Diamondback could also turn its records over to a successor licensee. *See* Mot. at 13–15. Diamondback contends that its other license would not qualify as a successor, citing an unnamed ATF official who was seemingly not informed that the records of the litigation hold. *See* Kingsley Decl., Ex. A, ECF. 173-2. Diamondback cites no ATF regulation, guidance, or commentary supporting its contention. That said, because Diamondback has stated no such claim of impossibility with respect to renewing its license, Plaintiff will rest on its earlier arguments and focus here on renewal.

Diamondback employees must search through paper records in response to trace requests from law enforcement is unavailing. Opp. at 10–11. Responding to trace requests by searching its paper records is presumably what Diamondback has done for its entire existence, and while Diamondback submits that responding to a trace request may take 30 minutes to an hour, it provides no other information sufficient to quantify that burden.[6] Given Diamondback's representation that the license has not been used since December 2023, the frequency of trace requests associated with that license is presumably diminishing over time.[7] Ultimately, Diamondback has not demonstrated that the mild inconvenience of occasionally searching through paper records—a requirement borne of Diamondback's own choice to maintain paper records until 2023—is sufficiently burdensome to justify spoliating discoverable and relevant evidence or forcing Plaintiff to spend over $200,000. Diamondback's complaint over storage space, *see* Opp. at 10, is similarly unpersuasive.

Moreover, Diamondback overlooks the fact that, if it renews its license, it can still close its business and submit its paper records to ATF when its preservation obligations

[6] Are those searches happening once a year? Once a month? Once a week? How much are employees paid for the 30–60 minutes they are searching for them? One gun connected to crime per week, at 45 minutes of search time, for a $25-an-hour employee, would result in an annual cost to Diamondback of $975. Add in the $30-per-year license cost, and Diamondback's annual cost to preserve the records is roughly $1,000, or 1/200th of what Diamondback has demanded from Plaintiff to preserve the same records.

[7] In fact, if Diamondback is receiving trace requests at such a high volume that responding to those requests is taking up a significant amount of employee time, this high volume of trace requests is relevant and discoverable information for this case.

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

conclude.[8] The alleged inconveniences tied to renewal that Diamondback identifies need only persist as long as its preservation obligations remain in effect, and not a day longer.

Finally, Diamondback's burden arguments ring hollow in light of its submission that it has retained its paper records since December 2023 solely due to the "uncertainty surrounding the scope of discovery in this case prior to the Court issuing its discovery Order on October 22, 2025." Opp. at 2–3, 6. Under this rationale, Diamondback was willing and able to store its paper records for several years in anticipation of discovery. Only now that discovery is underway and Diamondback has been ordered to produce documents is Diamondback suddenly no longer willing to continue preserving its records. It provides no explanation why continuing to maintain its paper records for another few months, in the same manner as it has done for the entirety of its business and this litigation, is suddenly too burdensome for it to bear.

## III. If Diamondback Chooses Not to Renew its License, Then It Bears the Burden of Preserving the Records

If Diamondback elects not to renew its license, it must bear the cost of preserving its records through other means, such as scanning them. Diamondback's attempt to shift that cost to Plaintiff is not properly raised and is unavailing regardless; it should be denied.

"[T]he presumption is that the responding party must bear the expense of complying with discovery requests." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978).

[8] *See* Bureau of Alcohol, Tobacco and Firearms, *Federal Firearms Licensee Information Service Provided by the U.S. Department of the Treasury* Fed. Firearm Licensee Newsletter at 6 (Feb. 1999), https://www.atf.gov/media/28801/download (laying out the process for licensees who wish to discontinue business prior to expiration of their license).

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

Should a party wish to shift the costs of preservation to its opponent, it must move for a protective order on the "allocation of expenses" under Rule 26(c)(1)(B). The party seeking a protective order bears the burden of demonstrating "good cause and the 'particular need' for protection." *Al Otro Lado,* 328 F.R.D. at 415. Motions for cost-shifting are granted only in extreme circumstances: "When a discovery request seeks accessible data . . . it is typically inappropriate to consider cost-shifting." *Zubulake v. UBS Warburg LLC*, 216 F.R.D. 280, 284 (S.D.N.Y. 2003); *see also SiteLock LLC v. GoDaddy.com LLC,* No. 19-cv-02746, 2020 WL 6135189, at *12 n.8 (D. Ariz. Oct. 19, 2020) (citing *Zubulake* in denying a cost-shifting request); Notes to Fed. R. Civ. P. 26 note (the fact that Rule 26(c)(1)(B) allows for cost-shifting "does not imply that cost-shifting should become a common practice. Courts and parties should continue to assume that a responding party ordinarily bears the costs of responding.").

Diamondback has filed no such cost-shifting motion. Instead, it attempted to do by letter to Plaintiff what it may do only by court order. Diamondback thereby attempts to circumvent Rule 26's procedural protections: it did not take on its affirmative burden, it did not demonstrate good cause or a particular need, and it did not certify that it had attempted to resolve the matter. Instead, it threatened to destroy the protected records without asking leave of the Court unless Plaintiff agreed to pay Diamondback's preservation costs.[9] If

[9] In addition, a motion premised on the burden of the costs of scanning would again amount to a procedurally improper motion for reconsideration, given the Court's rejection of this argument in its October 22 Order. *See supra* at 6–7; *See* October Order at 9–10, ECF 165.

DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

Diamondback wishes to charge Plaintiff for preserving its documents, it must ask the Court to do so. Until such a motion is properly filed, the Court should not countenance it.

Nonetheless, should the Court reach the cost-shifting question here, it is clear that Diamondback should bear its own costs. A party seeking to actively destroy its own records during the pendency of litigation is unprecedented enough; to ask Plaintiff to pay to stop them is beyond the pale. And indeed, the balance of costs is asymmetrical—preserving the records through scanning would cost Plaintiff far more than it would cost Diamondback to preserve the records through renewal. *See supra* at 6–8. Diamondback's attempt to distract from that calculus by citing to Mexico's gross national product, Opp. at 3, is a red herring. By that logic, any governmental entity or Fortune 500 company would be required to pay its opponents' discovery costs. The truth is that here, Diamondback is the one with the minimal preservation costs, and it is Diamondback that is attempting to subvert the normal rules of discovery to foist large, one-sided costs on its opponent.[10]

## IV. Conclusion

For the foregoing reasons, the Court should grant Plaintiff's Motion.

[10] Should the Court consider shifting preservation costs to Plaintiff, Plaintiff disputes the reasonableness of those costs. The quoted cost of $204,460 to scan 302,500 pages, *see* Bentata Decl., Ex. 8 (Complete Legal Invoice), is significantly greater than what parties have spent on similar projects and includes expenses unrelated to scanning itself. *See Cohlmia v. St. John Med. Ctr.*, 693 F.3d 1269, 1288 (10th Cir. 2012) ($20,000 for almost 300,000 pages); *Verona v. U.S. Bancorp*, No. 09-cv-00057, 2013 WL 12291483, at *2 (E.D.N.C. Mar. 29, 2013) ($9,294.65 for over 200,000 pages); *U.S. ex rel. Lewis v. Walker*, No. 06-cv-00016, 2012 WL 1672992, at *2 (M.D. Ga. May 14, 2012) ($10,602 for nearly 200,000 pages).

Respectfully submitted this 3rd day of September, 2026.

DECONCINI MCDONALD YETWIN & LACY, P.C.

By: /s/*Ryan O'Neal*

Ryan O'Neal
2525 E. Broadway Blvd., Suite 200
Tucson, AZ 85716-5300
Attorneys for Plaintiff

/s/ Steve D. Shadowen
Steve D. Shadowen (*pro hac vice*)
Tina J. Miranda (*pro hac vice*)
Nicholas W. Shadowen (*pro hac vice*)
SHADOWEN PLLC
1717 W. 6th Street, Suite 290
Austin, TX 78703
Phone: 855-344-3298
sshadowen@shadowenpllc.com
tmiranda@shadowenpllc.com
nshadowen@shadowenpllc.com

/s/ Julia R. McGrath
Julia R. McGrath (*pro hac vice*)
Laurel Boman (*pro hac vice forthcoming*)
Sarah Zimmerman (*pro hac vice forthcoming*)
BERGER MONTAGUE PC
1818 Market Street, Ste 3600
Philadelphia, PA 19103

Marit Vike (*pro hac vice forthcoming*)
BERGER MONTAGUE PC
1001 G Street, NW, Ste. 400 East
Washington, DC 20001

James Hannaway (*pro hac vice forthcoming*)
BERGER MONTAGUE PC
1229 Tyler Street NE, Ste. 205
Minneapolis, MN 55413

Mariyam Hussain (*pro hac vice*)
BERGER MONTAGUE PC

/s/ Jonathan E. Lowy
Jonathan E. Lowy (*pro hac vice*)
Jake Steisel (*pro hac vice*)
GLOBAL ACTION ON GUN VIOLENCE
805 15th Street NW
#601
Washington, DC 20005
Phone: (202) 415-0691
jlowy@actiononguns.org
jsteisel@actiononguns.org

/s/ Dana Mulhauser
Dana Mulhauser (*pro hac vice*)
Carina Bentata Gryting (*pro hac vice*)
EVERYTOWN LAW
450 Lexington Ave.
P.O. Box 4184
New York, NY 10017

/s/Paul Bateman, Jr.
Paul Bateman, Jr. (*pro hac vice*)
Danna Abrahim (*pro hac vice forthcoming*)
SPERLING KENNY NACHWALTER
321 North Clark Street, 25th Floor
Chicago, IL 60654

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

505 Montgomery Street, Ste. 625
San Francisco, CA 94111

DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

**CERTIFICATE OF SERVICE**

I, Ryan O'Neal, hereby certify that this document was filed with the Clerk of the Court via CM/ECF. Those attorneys who are registered with the Court's electronic filing systems may access this filing through the Court's CM/ECF system, and notice of this filing will be sent to these parties by operation of the Court's electronic filings system.

Dated: September 3, 2026

/s/ *Ryan O'Neal*
Ryan O'Neal